1    Daniel C. Girard (State Bar No. 114826)
     *dcg@girardgibbs.com*
2    Jordan Elias (State Bar No. 228731)
     *je@girardgibbs.com*
3    Elizabeth A. Kramer (State Bar No. 293129)
     *eak@girardgibbs.com*
4    **GIRARD GIBBS LLP**
5    601 California Street, Suite 1400
     San Francisco, CA 94104
6    Telephone: (415) 981-4800
7    Facsimile: (415) 981-4846

8    Counsel for Plaintiffs

9

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTHERN CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| RICHARD SAN MIGUEL and DELORES LAWTY, individually and on behalf of all others similarly situated, <br><br>            Plaintiffs, <br> v. <br><br> HP INC., <br><br>            Defendant. | Case No. 5:16-cv-05820 <br><br> **PLAINTIFFS' OPPOSITION TO HP INC.'S MOTION TO DISMISS THE COMPLAINT** <br><br> Date: February 2, 2017 <br> Time: 1:30 p.m. <br> Place: Courtroom 8 <br> Judge: Hon. Lucy H. Koh |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .....................................................................2

SUMMARY OF FACTUAL ALLEGATIONS ......................................................................2

LEGAL STANDARD .............................................................................................................2

ARGUMENT ..........................................................................................................................3

    I.     PLAINTIFFS HAVE STANDING TO SUE. ..........................................................3

    II.    PLAINTIFFS STATE A CLAIM FOR UNFAIR BUSINESS PRACTICES IN VIOLATION OF THE UCL. ....................................................................................6

          A.    Plaintiffs Seek Relief Based on HP's Unfair—as Opposed to Fraudulent—Conduct. ..........................................................................6

          B.    Plaintiffs' Factual Allegations Satisfy All Three Tests for Unfair Competition. ......................................................................................6

                1.    The Facts as Pled Plausibly Meet the Balancing Test............................7

                2.    The Facts as Pled Plausibly Meet the Section 5 Test. ..........................11

                3.    The Facts as Pled Plausibly Meet the Tethering Test. .........................13

    III.    PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT............................15

CONCLUSION .....................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andren v. Alere, Inc.*,
    2016 WL 4761806 (S.D. Cal. Sept. 13, 2016) ................................................................15

*Andresen v. Maryland*,
    427 U.S. 463 (1976) ................................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................3

*Association for L.A. Deputy Sheriffs v. County of Los Angeles*,
    648 F.3d 986 (9th Cir. 2011) ..................................................................................3

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753 (9th Cir. 2015) ..................................................................................15

*Atlantic Refining Co. v. FTC*,
    381 U.S. 357 (1965) ................................................................................11, 13

*Bardin v. Daimlerchrysler Corp.*,
    39 Cal. Rptr. 3d 634 (Cal. Ct. App. 2006) ..............................................................9, 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................3

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ..................................................................................5, 6

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
    2013 WL 140039 (N.D. Cal. Jan. 10, 2013) ............................................................11

*Burlington Ins. Co. v. Devdhara*,
    2009 WL 2901624 (N.D. Cal. Sept. 3, 2009) ..........................................................3

*Camacho v. Automobile Club of S. Calif.*,
    48 Cal. Rptr. 3d 770 (Cal. App. Ct. 2006) ..............................................................12

*Campos v. Bank of Am., Inc.*,
    2012 WL 2862603 (N.D. Cal. July 11, 2012) ..........................................................14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999) ................................................................6, 7, 13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................................6

*Continental Car-Na-Var Corp. v. Moseley*,
    148 P.2d 9 (Cal. 1944) ................................................................................14

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
  370 U.S. 690 (1962) .................................................................................5

*Cox v. Valley Hope Association*,
  2016 WL 4680165 (W.D. Mo. Sept. 6, 2016) ..........................................5

*Cullen v. Netflix, Inc.*,
  2013 WL 140103 (N.D. Cal. Jan. 10, 2013) ...........................................10

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ..........................................................10, 14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ..............................................................9, 14

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ...................................................10

*Engalla v. Permanente Med. Group, Inc.*,
  938 P.2d 903 (Cal. 1997) ........................................................................6

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ...............................................................................2, 3

*Foamation, Inc. v. Wedeward Enters., Inc.*
  947 F. Supp. 1287 (E.D. Wis. 1996) ......................................................11

*Forouzesh v. Starbucks Corp.*,
  2016 WL 4443203 (C.D. Cal. Aug. 19, 2016) .......................................15

*FTC v. Sperry & Hutchinson Co.*,
  405 U.S. 233 (1972) .................................................................................7

*FTC v. Texaco, Inc.*,
  393 U.S. 223 (1968) ..........................................................................11, 14

*Gianino v. Alacer Corp.*,
  2010 WL 11468710 (C.D. Cal. Aug. 4, 2010) .......................................10

*Hill v. Roll Int'l Corp.*,
  128 Cal. Rptr. 3d 109 (Cal. Ct. App. 2011) ...........................................15

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .................................................................3

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) .....................................................8

*In re: Lenovo Adware Litig.*,
  2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ..........................................5

iii

*In the Matter of Int'l Harvester Co.*,
   104 F.T.C. 949 (1984) ..................................................................................................12

*Johnson v. Riverside Healthcare Sys., LP*,
   534 F.3d 1116 (9th Cir. 2008) ........................................................................................3

*Kenery v. Wells Fargo N.A.*,
   2015 WL 5138635 (N.D. Cal. Sept. 1, 2015) .................................................................6

*Klein v. Chevron USA, Inc.*,
   137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012) ..................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*,
   63 P.3d 937 (Cal. 2003) ................................................................................................15

*Kowalsky v. Hewlett-Packard Co.*,
   2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ................................................................8

*Kwikset Corp. v. Super. Ct.*,
   246 P.3d 877 (Cal. 2011) ...........................................................................................3, 12

*Lee v. Toyota Motor Sales*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ............................................................................5

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ......................................................................................14

*Lozano v. AT & T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ......................................................................................4, 7

*Lucasey Mfg. Corp. v. Anchor Pad Int'l, Inc.*,
   698 F. Supp. 190 (N.D. Cal. 1988) ...............................................................................10

*Maytag Co. v. Meadows Mfg. Co.*,
   35 F.2d 403 (7th Cir. 1929) ..........................................................................................10

*Northwest Power Prod., Inc. v. Omark Indus., Inc.*,
   576 F.2d 83 (5th Cir. 1978), *cert. denied*, 439 U.S. 1116 (1979) ...............................14

*Palmer v. Apple, Inc.*,
   2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) .............................................................9, 14

*Progressive W. Ins. Co. v. Yolo Cty. Super. Ct.*,
   37 Cal. Rptr. 3d 434 (Cal. Ct. App. 2005) ..................................................................7, 10

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016) .........................................................................10

*Sanchez v. Bear Stearns Residential Mortg. Corp.*,
   2010 WL 1911154 (S.D. Cal. May 11, 2010) ................................................................14

iv

*Shein v. Canon U.S.A., Inc.*,
  2009 WL 1774287 (C.D. Cal. June 22, 2009) ............................................................3

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
  85 Cal. Rptr. 2d 301 (Cal. Ct. App. 1999) ..............................................................7, 8

*State Farm Mut. Auto. Ins. Co. v. Dempster*,
  344 P.2d 821 (Cal. Ct. App. 1959) ........................................................................14

*Sun Microsystems, Inc. v. Microsoft Corp.*,
  87 F. Supp. 2d 992 (N.D. Cal. 2000) ......................................................................11

*Symbolic Aviation, Inc. v. PNCEF, LLC*,
  2010 WL 3584509 (S.D. Cal. Sept. 8, 2010) ...........................................................14

*Visa U.S.A. Inc. v. First Data Corp.*,
  2006 WL 1310448 (N.D. Cal. May 12, 2006) ............................................................5

*Williamson v. McAfee, Inc.*,
  2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ..........................................................10

**Statutes**

Cal. Civ. Code. § 3426.1(a) ...................................................................................10

**Other Authorities**

McCarthy on Trademarks and Unfair Competition § 1:23 (4th ed.) (Dec. 2016 update). ...................14

**Rules**

Fed. R. Civ. P. 8(a)(2) ..........................................................................................2

# INTRODUCTION

This consumer class action arises from Defendant HP Inc.'s ("HP") conduct in disabling tens of thousands of HP printers across the country that were using ink cartridges manufactured by HP's competitors.  By implementing a remote "firmware update" that rendered these printers inoperable, HP gained an unfair advantage over its ink competitors while harming consumers whose HP printers were running on the competing cartridges.  As alleged in the complaint, HP acted to increase its profits from sales of its ink cartridges priced above those of its competitors.  The frozen printers displayed misleading statements that the cartridges were damaged or missing, in an apparent effort to steer consumers to purchase HP-branded cartridges.  Plaintiffs and other consumers whose printers stopped working lost time and money because of HP's conduct, and the HP printers of many consumers remain inoperable.

HP violated the UCL because its unexpected act injured consumers and competition in the market for printer ink.  Consumers reasonably expected their printers to continue to run on the replacement cartridges they had bought.  Instead, they were forcibly deprived of working printers essential to their home offices and small businesses.  They could not reasonably avoid paying a premium for HP-branded cartridges, or buying a new printer, as a result of HP's deliberate act.  And they were denied use of the competing cartridges they had already bought.  Thus, instead of competing lawfully, on the basis of higher quality or lower prices, HP imported software into consumers' printers without their knowledge or permission—limiting consumer choice and taking market share from the competition.

HP's motion to dismiss misreads the complaint.  Plaintiffs do not sue on a warranty or fraud theory, or broadly assert that HP was "inherently obligated to make its printers compatible with any and all third-party cartridges."  HP's Motion to Dismiss ("MTD") at 2.  HP's violation occurred not at the point of sale, but after the printers had been sold and after the affected consumers had already been printing documents using compatible, non-HP cartridges.  If HP believed third-party cartridge sellers were infringing its intellectual property, HP could have pursued relief directly from the infringer or infringers, rather than taking adverse action against innocent consumers.  None of HP's arguments justifies its unfair method of competing.  Its motion to dismiss should be denied.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs have standing to sue HP for unfair competition.

2.      Whether Plaintiffs state a claim for unfair conduct in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").

3.      Whether Plaintiffs state a claim for unjust enrichment.

**SUMMARY OF FACTUAL ALLEGATIONS**

On September 13, 2016, Defendant HP Inc. implemented a firmware update that caused thousands of HP printers in homes and small offices to fail in unison.  Compl. ¶ 1.  The disabled printers displayed a message indicating that the ink cartridges were "missing or damaged" when, in reality, that was not true.  *Id.* ¶¶ 2, 16, 33-34.  The purpose and consequence of HP's update was to disable printers with functioning ink cartridges made by HP's competitors.  *Id.* ¶¶ 1, 40.

HP obtains substantial profits from selling ink cartridges that are priced above those of its competitors.  Compl. ¶¶ 20-25.  HP's update was designed to—and did—(a) induce consumers to purchase higher-priced HP ink cartridges and other HP products and services, and (b) impede HP's competitors from selling replacement ink cartridges compatible with HP printers.  *Id.* ¶¶ 19, 40-41.  HP issued a public apology for its unannounced act of disabling printers on which consumers were relying.  *Id.* ¶ 43.  HP also stated that in the future, it "will continue to use . . . authentication methods that may prevent some third-party supplies from working."  ECF No. 19-2 at page 3 of 5.

Because of HP's conduct, HP printer owners like Plaintiffs Richard San Miguel and DeLores Lawty ("Plaintiffs") experienced economic injury in the form of expenditures of time and money to continue to fulfill their document printing needs.  Compl. ¶¶ 10-19.  Ms. Lawty, for example, spent several hours on the phone with HP representatives and ultimately purchased a replacement printer from HP.  *Id.* ¶¶ 17, 19.  And Mr. San Miguel had to find an alternate means of printing once HP's firmware update caused his printer to stop working.  *Id.* ¶¶ 10-14.

**LEGAL STANDARD**

A cause of action must be supported by "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  While they have done so here, Plaintiffs were not required to plead "detailed factual allegations" to

state their claims.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Erickson*, 551 U.S. at 93 ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.") (citations and alteration omitted).

"[A] Rule 12(b)(6) motion is viewed with disfavor and is rarely granted."  *Burlington Ins. Co. v. Devdhara*, No. 09-cv-00421-SBA, 2009 WL 2901624, at *5 (N.D. Cal. Sept. 3, 2009) (internal quotations and citation omitted); *accord Shein v. Canon U.S.A., Inc.*, No. 08-cv-7323-CAS, 2009 WL 1774287, at *6 (C.D. Cal. June 22, 2009).  Plaintiffs need only set forth enough facts to state claims that are facially plausible.  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008).  "Indeed, it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test."  *Id.* (citation omitted).  The test calls for "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

The Court accepts all complaint allegations as true, considers them as a whole, and draws all reasonable inferences in Plaintiffs' favor.  *Association for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

## ARGUMENT

## I.   PLAINTIFFS HAVE STANDING TO SUE.

"There are 'innumerable ways' that a consumer can show economic injury from unfair competition" and, "[a]t the pleading stage, of course, allegations of economic injury suffice." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 & n.4 (9th Cir. 2013) (citing *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885, 888-89 (Cal. 2011)).  HP's challenges to constitutional and statutory standing are unavailing in view of the allegations that Plaintiffs lost time and money due to HP's violations. Compl. ¶¶ 14, 17, 19, 65.

HP attempts to recast Plaintiffs' complaint of unfair competition as arising from a warranty duty.  According to HP, "Plaintiffs are essentially alleging that compatibility with third-party ink cartridges was a basis of their bargain with HP when they bought their printers," and "have not alleged that they were deprived of an agreed-upon benefit in purchasing their printers."  MTD at 7 (citation omitted).  But Plaintiffs do *not* allege that HP failed to deliver a benefit of the bargain connected with their earlier printer purchases.  It is HP's unfair conduct *after* purchase that injured

consumers and competition and is actionable here.  Compl. ¶¶ 61(a)-(h), 65.  Plaintiffs have standing based upon their concrete harm attributable to the challenged conduct.  *Id.* ¶¶ 14, 17, 19.

HP misconstrues the complaint's references to HP's Warranty.  *See* MTD at 7.  HP's arguments that it offered no guarantee (MTD at 7-8) are beside the point where Plaintiffs do not assert a broken promise or other point-of-sale injury.  Plaintiffs referred in their complaint to the Warranty not to invoke an express guarantee but to show that HP reinforced the reasonable expectations of consumers that they could purchase and use compatible ink cartridges in their HP printers.  Compl. ¶¶ 44-46, 61(d); *see Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (observing that "the common law's emphasis on reasonable expectations" is pertinent to "[t]he legal analysis required under the UCL").

HP's Warranty provides that it is "not affect[ed]" by consumers' "use of a non-HP or refilled cartridge . . . ."  Compl. ¶ 45.  Hence, the Warranty contemplates the permissible use of non-HP cartridges without adverse effect.  *Id.* ¶ 44.  The Warranty therefore supports the reasonableness of Plaintiffs' (and other consumers') routine practice of buying more affordable, non-HP replacement cartridges when their printers run out of ink.  *Id.* ¶ 10 (Mr. San Miguel), ¶ 15 (Ms. Lawty); *cf. Lozano*, 504 F.3d at 736 (stating that "evidence about individual knowledge and expectations may help the court determine the extent of the harm for the purposes of the UCL's balancing test.").  The Warranty further shows that HP recognized and accepted the practice of relying on non-HP cartridges *before* HP impaired the printers of consumers who engaged in this practice.  And HP later acknowledged that the use of non-HP ink is important to consumers when it released an "optional firmware patch" that purportedly "permits the use of third-party ink cartridges" deemed acceptable by HP.  MTD at 4.

HP's proffered remedy should be subject to discovery, and HP cannot defeat Plaintiffs' unfair competition claim by carving it into pieces: The misleading printer screen messages, which claimed that the non-HP ink cartridges were "missing or damaged," cannot be construed in isolation when they form part of an allegedly unlawful scheme.  *See* MTD at 8.  "The complexity of an illegal scheme may not be used as a shield to avoid detection," *Andresen v. Maryland*, 427 U.S. 463, 482 n.10 (1976), and Plaintiffs "should be given the full benefit of their proof without tightly

compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Visa U.S.A. Inc. v. First Data Corp.*, No. C 02-01786 JSW, 2006 WL 1310448, at *11 (N.D. Cal. May 12, 2006) (quoting *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962)).  In this case, the misleading error messages went hand-in-glove with the injurious firmware update, heightening the unfairness by steering people to purchase HP's goods in the secondary market.  Compl. ¶¶ 32-34, 61(g).  HP's narrow focus on the aspect of its scheme that confused people does not detract from Plaintiffs' out-of-pocket loss.

In the standing cases upon which HP relies—unlike in this case—plaintiffs sued on benefit-of-the-bargain theories to recover for alleged deception at the point of sale.  *See* MTD at 8.  The failure of plaintiffs in those cases to plead a related injury is irrelevant to Plaintiffs' allegations of concrete injury from HP's post-sale unfair methods of competition.  HP relies heavily on *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009); but, as Judge Whyte has found, *Birdsong* "is of only limited value" because the plaintiffs there alleged no injury at all.  *In re: Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *5 (N.D. Cal. Oct. 27, 2016).  The Ninth Circuit concluded in *Birdsong* that those plaintiffs—who claimed iPods cause hearing loss—lacked standing because "they do not claim that they, or anyone else, have suffered or are substantially certain to suffer hearing loss from using an iPod."  590 F.3d at 961.

In contrast to the *Birdsong* plaintiffs, who alleged only a "hypothetical risk of hearing loss" to *other* consumers who might "choose to use their iPods in a risky manner," *id*., Plaintiffs here allege that HP's conduct resulted in actual harm.  Compl. ¶¶ 14, 19, 65.  Such allegations were missing in *Cox v. Valley Hope Association*, No. 16-cv-4127, 2016 WL 4680165, at *5 (W.D. Mo. Sept. 6, 2016) (plaintiff failed to allege overpayments for a service that defendant allegedly misrepresented), and from *Lee v. Toyota Motor Sales*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014) (plaintiff failed to allege any negative experience with defendant's product).

*Birdsong*'s rejection of warranty and product defect theories does not erect a substantive hurdle to Plaintiffs' UCL claims, because they are untethered to either of those liability theories.  While the *Birdsong* plaintiffs' failure to "allege[]that they were deprived of an agreed-upon benefit" defeated their "benefit of the bargain theory," the Ninth Circuit nowhere suggested that such

5

allegations are necessary for UCL claims that are not grounded in warranty principles.  590 F.3d at 961.  The court was simply explaining why the claim in *Birdsong* failed, not purporting to state what a UCL plaintiff must allege in every case to have standing.  Accordingly, this Court should reject HP's misplaced reliance on the final paragraph in *Birdsong*.  *See* MTD at 1, 7, 8.

## II.   PLAINTIFFS STATE A CLAIM FOR UNFAIR BUSINESS PRACTICES IN VIOLATION OF THE UCL.

### A.   Plaintiffs Seek Relief Based on HP's Unfair—as Opposed to Fraudulent—Conduct.

HP likewise attempts to rewrite the complaint as sounding in fraud (*see* MTD at 5), even though neither the word "fraud" nor any of its variants appear in the complaint and Plaintiffs allege that HP's conduct is "unfair" under the UCL, not that the conduct is fraudulent under the UCL or at common law.  Compl. ¶¶ 60-62, 65(a)-(d), 66, 67.  The complaint contains no allegations of express or implied misrepresentation, concealment, nondisclosure, scienter, intent to defraud, justifiable reliance, or damage resulting from fraud.  *Cf. Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (reciting elements of a fraud claim in California) (quoting *Engalla v. Permanente Med. Group, Inc.*, 938 P.2d 903, 917 (Cal. 1997)).  As HP recognizes, "Plaintiffs assert their UCL claim only under the prong prohibiting 'unfair' business acts or practices."  MTD at 6.  Rule 9(b) therefore does not apply.

In *Kearns*, the Ninth Circuit held that a plaintiff needed to "state with particularity the circumstances constituting fraud" because the plaintiff alleged fraudulent conduct and a conspiracy to misrepresent facts.  567 F.3d at 1126.  Plaintiffs here allege no such thing.[1]  Plaintiffs assert no claim under the fraudulent prong of the UCL.  Nor is their claim for unfairness premised wholly on misleading statements, as was the case in *Kenery v. Wells Fargo, N.A.*, No. 13-CV-02411-BLF, 2015 WL 5138635, at \*3 (N.D. Cal. Sept. 1, 2015).

### B.   Plaintiffs' Factual Allegations Satisfy All Three Tests for Unfair Competition.

The UCL was "intentionally framed" with "broad, sweeping language" to enable courts to address "the innumerable new schemes which the fertility of man's invention would contrive."  *Cel-*

---

[1] Even if Plaintiffs did allege fraudulent conduct (which they do not), only the specific allegations of fraud, not the complaint as a whole, would be subject to Rule 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003).

*Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999) (internal quotation marks and citation omitted).  In a UCL unfairness case brought by a consumer, courts apply one or more of three tests to assess the sufficiency of a claim: (1) the traditional balancing test; (2) the FTC Act Section 5 test; or (3) the *Cel-Tech* tethering test.

HP acknowledges the balancing and tethering tests, but seeks to avoid the Section 5 test (MTD at 9), citing dicta in a Ninth Circuit decision criticizing that test.  MTD at 14 n.4 (citing *Lozano*, 504 F.3d at 736).  Yet the Ninth Circuit is not the arbiter of matters of substantive California law, and the California Supreme Court has never repudiated the Section 5 test.  In fact, the Section 5 test may be the most appropriate standard for this case.  HP's sharp practices confused and harmed consumers who were dependent on its products, and may be "regarded as opposed to good morals because characterized by deception, bad faith, fraud or oppression, or as against public policy because of their dangerous tendency unduly to hinder competition or create monopoly."  *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 241 (1972) (citation omitted).

HP also focuses excessively on the tethering test (MTD at 9-11), which the California Supreme Court expressly declined to adopt for consumer cases.  *Cel-Tech*, 973 P.2d at 544 n.12 (citing *Sperry & Hutchinson*, 405 U.S. 233); *see also Progressive W. Ins. Co. v. Yolo Cty. Super. Ct.*, 37 Cal. Rptr. 3d 434, 453 (Cal. Ct. App. 2005) (noting that the California Supreme Court has not extended *Cel-Tech*'s tethering test to consumer cases "since that decision was announced," and concluding that "section 17200's 'unfair' prong should be read more broadly in consumer cases because consumers are more vulnerable to unfair business practices than businesses and without the necessary resources to protect themselves from sharp practices.").

Plaintiffs state a claim for unfairness under all three tests.

### 1.    The Facts as Pled Plausibly Meet the Balancing Test.

"The test of whether a business practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'"  *South Bay Chevrolet v. General Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 316 (Cal. Ct. App. 1999) (citations omitted).  In HP's cramped reading, this balancing

7

test "requires Plaintiffs to establish that the conduct at issue 'offend an established public policy.'"
MTD at 12 (emphasis omitted).  But courts have framed the balancing test in the disjunctive—as
forbidding a practice that "offends an established public policy *or* when the practice is immoral,
unethical, oppressive, unscrupulous or substantially injurious to consumers."  *South Bay*, 85 Cal.
Rptr. 2d at 316 (emphasis added); *accord In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953,
990 (N.D. Cal. 2016) (noting that "parties may proceed with a UCL claim under the balancing test by
either alleging immoral, unethical, oppressive, unscrupulous, or substantially injurious conduct by
Defendants *or* by demonstrating that Defendants' conduct violated 'an established public policy.")
(emphasis in original).  Further, the UCL applies to marketplace violations (like those alleged here)
that do not arise directly from sales transactions.  *See, e.g.*, *Kowalsky v. Hewlett-Packard Co.*, No. 10-
CV-02176-LHK, 2011 WL 3501715, at *7 (N.D. Cal. Aug. 10, 2011) (upholding claim based in part
on well-pled allegations that "HP's post-sale conduct was also unfair under the UCL.").

Here, HP's conduct—made possible by advances in technology—was unscrupulous,
oppressive, and substantially injurious to Plaintiffs and similarly situated consumers:

- HP rendered Plaintiffs' printers inoperable without notice.  Compl. ¶¶ 3, 11, 16,
  61(e).

- HP deprived Plaintiffs, through no fault of their own, of the use of printers on
  which they depended to transact business and manage important aspects of their
  lives.  *Id*. ¶¶ 1, 11, 16, 65(a).

- Plaintiffs depended on compatible non-HP ink cartridges of their choice and
  reasonably expected their printers to continue to function.  *Id*. ¶¶ 10, 15, 45.

- HP disabled printers running on competing cartridges even though HP
  contemplated the use of non-HP cartridges in these printers.  *Id*. ¶ 44.

- HP displayed misleading messages on the disabled printers that induced
  consumers to purchase HP's own products.  *Id*. ¶¶ 13, 16, 61(g).

- Plaintiffs expended time and money as a result of HP's forcible modification of
  their printers, including by purchasing HP products.  *Id*. ¶¶ 14, 17-19, 65(c).

- HP executed its remote firmware update to fend off competition and restrict
  consumer options in the ink cartridge aftermarket.  *Id*. ¶¶ 36-43.

- As a result of this conduct, HP profited from sales of its printers and ink
  cartridges and from servicing printers it had disabled.  *Id*. ¶¶ 19, 41, 47.

1   The cases HP cites are inapposite.  Unlike the plaintiff in *Palmer v. Apple, Inc.*, No. 15-cv-

2   5808-RMW, 2016 WL 1535087, at *6 (N.D. Cal. Apr. 15, 2016), who supported his cause of action

3   with a single paragraph reciting the UCL standard, Plaintiffs here allege particularized facts and how

4   those facts specifically violate the UCL.  The allegations of HP's course of conduct and its adverse

5   effects are far from "conclusory."  MTD at 12.  And Plaintiffs do not sue on a warranty theory, which

6   renders *Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 643 (Cal. Ct. App. 2006), irrelevant.

7   HP nonetheless claims that Plaintiffs offer "no more than conclusions" that the harm to

8   consumers from HP's conduct outweighs any utility.  MTD at 12-13 (quoting Compl. ¶ 63).  That is

9   not an accurate reading of the complaint as a whole.  Plaintiffs describe the factual motivation for

10   HP's conduct: "to repel competition" in the ink cartridge aftermarket (*id.* ¶ 40)—a market yielding

11   higher profit margins than the market for printers (*id.* ¶¶ 23-24)—and "to restrict the choices available

12   to its customers, induce them to purchase more HP products, and protect HP's profits from sales of

13   non-HP products."  *Id.* ¶ 41.  These are plausible motives and HP's conduct benefits only HP, to the

14   substantial detriment of consumers and competition.

15   Plaintiffs further allege that "[t]here are reasonably available alternatives" to HP's unfair act,

16   "such as refraining from disabling printers," that would advance HP's legitimate interests in promoting

17   good customer experiences and excluding infringing use. Compl. ¶ 63.  In other words, HP could have

18   achieved the same utility without harming Plaintiffs the way it did.  For example, instead of disabling

19   printers, HP could have provided incentives for consumers to use HP-branded cartridges, or notified

20   consumers of the risks (if any) of using competing cartridges.  Or, instead of disabling printers, HP

21   could have demanded that any manufacturers of counterfeit ink cartridges stop selling such products,

22   as discussed below.  In short, Plaintiffs plausibly allege that HP did not have to "brick" these printers

23   to deal with any infringement or to offer consumers a "better" experience.

24   None of HP's cases suggests that the harm to consumers from HP's conduct at issue here could

25   be outweighed by any benefit.  *See* MTD at 13.  To the contrary, the courts in HP's cited cases

26   dismissed UCL unfairness claims for failing to allege *any* factual basis to infer that harm outweighed

27   utility.  *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)

28   ("no more than conclusions") (citation omitted); *Cullen v. Netflix, Inc.*, No. 11-cv-1100-EJD, 2013

WL 140103, at *9 (N.D. Cal. Jan. 10, 2013) ("unsupported and conclusory assertions"); *Williamson v. McAfee, Inc.*, No. 14-cv-00158-EJD, 2014 WL 4220824, at *7 (N.D. Cal. Aug. 22, 2014) (lack of allegations "go[ing] towards comparing the harm to consumers against the utility"); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) ("does not allege any basis for concluding that this injury outweighs [defendants'] reasons"); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012) ("nothing" supported the unfairness claim); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1118 (N.D. Cal. 2016) ("failed to allege how these numerous benefits outweigh the [harm]").

In this case, Plaintiffs set forth adequate factual matter to state a claim based on the experience of consumers in suddenly losing working printers. HP's motives for its firmware update should be subject to discovery. *See, e.g.*, *Progressive W. Ins. Co.*, 37 Cal. Rptr. 3d at 453 (holding that "[t]he balancing test required by the unfair business practice prong of section 17200 is fact intensive and is not conducive to resolution at the demurrer stage."); *Gianino v. Alacer Corp.*, No. 09-cv-01247, 2010 WL 11468710, at *4 (C.D. Cal. Aug. 4, 2010) (finding that "facts and evidence have not yet been adduced, therefore, the issue of whether Plaintiffs have properly supported their claim under the UCL's unfairness prong is more appropriately considered on a motion for summary judgment.").

HP is entitled to act reasonably to protect its intellectual property. But HP's assertions of infringement are unsupported and overlook that a competitor may lawfully acquire knowledge of HP's trade secrets by means of "reverse engineering" and "independent derivation." Cal. Civ. Code. § 3426.1(a). Moreover, Plaintiffs had no reasonable means of knowing whether a particular replacement ink cartridge may have infringed HP's intellectual property. Under the case law, it was inequitable for HP to have punished downstream consumers for any infringement they had nothing to do with. A strong policy favors direct enforcement against infringers over indirect acts toward their customers. *Lucasey Mfg. Corp. v. Anchor Pad Int'l, Inc.*, 698 F. Supp. 190, 193 (N.D. Cal. 1988) ("Public policy . . . favors litigation of patent rights against the alleged wrongful manufacturer and restraint of suits against customers for the same relief until the original suit is determined.") (citing *Maytag Co. v. Meadows Mfg. Co.*, 35 F.2d 403, 410 (7th Cir. 1929)). Similarly, where competitor IP disputes have spillover effects on consumers lacking knowledge or responsibility for any infringement,

courts seek to ensure that the consumers receive the information they need without being burdened. *Compare, e.g.*, *Foamation, Inc. v. Wedeward Enters., Inc.*, 947 F. Supp. 1287 (E.D. Wis. 1996) (barring a manufacturer from notifying its competitor's customers of alleged infringement where the manufacturer's copyright was likely invalid), *with Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-cv-3428-PSG, 2013 WL 140039, at *7-8 (N.D. Cal. Jan. 10, 2013) (requiring an enjoined infringer to notify its customers that some product features were infringing).

### 2.   The Facts as Pled Plausibly Meet the Section 5 Test.

Courts have long applied the FTC Act and its state analogues to prevent a single firm from imposing unduly burdensome conditions on a significant volume of commerce.  In one competitor case in this District, the court preliminarily enjoined an act of unfair competition in the form of an unauthorized, coercive distribution of "extensions to the java.* class libraries, which ensured that applications created with Microsoft's Java development tools were tied to its virtual machine and operating system."  *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992, 995 (N.D. Cal. 2000).  The court explained that "Microsoft's Java tools products did not compete on their merits alone, but also possessed the added, unfair advantage of offering the only way of creating hybrid Java/native applications that run on Microsoft's non-compliant virtual machine."  *Id.* at 1001. Importantly, notwithstanding Microsoft's market power, "a 'full-scale economic analysis of competitive effect' is not required" to enjoin such an unfair method of competition.  *Id.* at 999-1000 (citing *Atlantic Refining Co. v. FTC*, 381 U.S. 357, 369-71 (1965), where the Supreme Court affirmed an injunction against an unfair method of competition that, while "not a tying arrangement" that would require a showing of market power if challenged under the antitrust laws, involved "the utilization of economic power in one market to curtail competition in another.").  Likewise, in *FTC v. Texaco, Inc.*, 393 U.S. 223 (1968), the Court reinstated an injunction against Texaco for its inducement of its gas station dealers to use only Goodrich tires and batteries where Goodrich was paying Texaco for the exclusive deal.  *Id.* at 225-27.  Just as the arrangement in Texaco was "inherently coercive" to the dealers who depended on a supply of Texaco gasoline, so did HP's conduct here coerce the consumers who depended on their printers into forgoing competitive options in a related market.  *Id.* at 229-30 ("The nonsponsored brands do not compete on the even terms of price and quality competition . . . .").

As informed by the case law, the FTC Act Section 5 test for assessing the sufficiency of a UCL unfairness claim asks whether "(1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." *Camacho v. Automobile Club of S. Calif.*, 48 Cal. Rptr. 3d 770, 777 (Cal. App. Ct. 2006); *see also In the Matter of Int'l Harvester Co.*, 104 F.T.C. 949, 1073-74 (1984) (discussing the policies giving rise to the three elements).

All three elements are satisfied here. First, Plaintiffs adequately allege that their injury is substantial. Plaintiffs sustained injury to their personal property when HP rendered their printers unusable. Compl. ¶¶ 11-12, 16-18. Ms. Doty spent $129 on a new HP printer (*id.* ¶ 19), and other consumers in her position replaced ink cartridges "priced below the corresponding HP cartridges" with more expensive HP cartridges. *Id.* ¶ 25. The cost of replacing these cartridges can be substantial, which is why printer owners "frequently purchase" more affordable competing cartridges. *Id.* Plaintiffs also allege economic injury in the form of diminished value of their altered printers. *Id.* ¶ 65(d); *see Kwikset*, 246 P.3d at 885-86 (Cal. 2011) (holding that a plaintiff may show economic injury under the UCL from "hav[ing] a present or future property interest diminished.").

Second, Plaintiffs adequately allege that the harm caused by HP outweighs any benefit to consumers or competition. There is no justification on the face of the complaint for leaving Plaintiffs without functional printers, violating their reasonable expectations, causing them to spend time and money, and unfairly curtailing their purchasing options. HP also explicitly warned that it might take similar measures again in the future. *See* ECF No. 19-2 at page 3 of 5; *Klein v. Chevron USA, Inc.*, 137 Cal. Rptr. 3d 293, 321 (Cal. Ct. App. 2012) (declining to conclude, absent factual development, that harms were outweighed by benefits).

Third, Plaintiffs sufficiently allege that their injuries were not reasonably avoidable. *See In the Matter of Int'l Harvester Co.*, 104 F.T.C. at 1073-74 (explaining that the third element of the Section 5 test is geared to "halt some form of seller behavior that unreasonably creates or takes advantage of an obstacle to the free exercise of consumer decisionmaking."). These printer failures were unannounced and unexpected. Compl. ¶¶ 10, 16, 61(e). HP publicly apologized. *Id.* ¶ 43. Plaintiffs did not know and had no reasonable means of finding out that HP would impair their

12

1    printers if they used ink cartridges made by HP's competitors.  *Id.* ¶ 64.  To the contrary, HP's

2    Warranty reinforced the expectation that using competing ink cartridges was fine.  *Id.* ¶¶ 44-46.

### 3.    The Facts as Pled Plausibly Meet the Tethering Test.

4    While there is no requirement that Plaintiffs in this consumer case must satisfy the tethering

5    test, *see Cel-Tech*, 973 P.2d at 544 n.12, the facts stated in the complaint are sufficient to do so.  A

6    direct competitor's "unfair" act or practice violates the tethering test if it "significantly threatens or

7    harms competition."  *Cel-Tech*, 973 P.2d at 540 (footnote omitted).  Here, as HP recognizes (MTD at

8    10), Plaintiffs allege that HP's conduct "contravenes the legislatively declared policy against unfair

9    methods of competition."  Compl. ¶ 60.  HP tethering argument (MTD at 9-11) mistakes Plaintiffs'

10   causes of action (Compl. ¶¶ 61(a)-(h)) for the facts giving rise to them.  Plaintiffs allege the central

11   facts that characterize this anticompetitive behavior—the relevant market, the challenged practice, its

12   anticompetitive motive, its adverse effects on competition in the relevant market, and its harm to

13   consumers and consumer options in that market.

14   The complaint contains facts regarding the nature of HP's printer and printer ink businesses.

15   Compl. ¶¶ 20-27.  The complaint alleges that HP timed the activation of its firmware so that more

16   printers would be incapacitated.  *Id.* ¶¶ 36-39.  The complaint further alleges that HP took this action

17   to repel competition in the ink cartridge market.  *Id.* ¶ 40.  And the complaint alleges that HP's

18   anticompetitive conduct was intended to deny competitive choices to the owners of HP printers.  *Id.*

19   ¶¶ 14, 17, 19, 41.  No more is required to demonstrate significant harm to competition.

20   Contrary to HP's demand for factual allegations that would satisfy the antitrust rule of reason

21   (MTD at 11), Plaintiffs need not allege that HP's conduct violates the Cartwright Act.  That approach

22   would disallow recovery for unfair methods of competition that do not violate the antitrust laws.  *See*

23   *Cel-Tech*, 973 P.2d at 540 (holding that a "practice is prohibited as 'unfair' . . . even if not

24   'unlawful'") (citation omitted); *see also Atlantic Refining*, 381 U.S. at 369 ("It has long been

25   recognized that there are many unfair methods of competition that do not assume the proportions of

26   antitrust violations.").  HP's argument indeed "fails to perceive that the purposes of antitrust law and

27   unfair competition law generally conflict" in that antitrust law prohibits cartelization and

28   monopolization—economic conditions that restrain competition—whereas unfair competition law

prohibits *unrestrained* competition, i.e., the law of the jungle.  *Northwest Power Prod., Inc. v. Omark Indus., Inc.*, 576 F.2d 83, 88 (5th Cir. 1978), *cert. denied*, 439 U.S. 1116 (1979).  Separate and apart from antitrust law,

> [t]he law of unfair competition has developed as a kind of Marquis of Queensbury code for competitive in-fighting.  To pursue the analogy, it would be equally as unacceptable for the contestants in a prize-fight to agree privately to "throw the fight" as it would be for one contestant to insert a horseshoe in his glove.  In the law of trade regulation, antitrust law rules out the private "fix" and unfair competition law outlaws unfair excesses in the competitive battle. . . . A competitor must win in the marketplace on the merits, not by the use of tactics that confuse or deceive buyers.

1 McCarthy on Trademarks and Unfair Competition § 1:23 (4th ed.) (Dec. 2016 update).

In attempting to justify its tactics here, HP cites cases involving materially distinguishable situations.  *See Bardin*, 39 Cal. Rptr. 3d at 646 (dismissing claim based on contractual breach); *Palmer*, 2016 WL 1535087, at *6-7 (relevant "conclusory" paragraph merely recited UCL standard); *Sanchez v. Bear Stearns Residential Mortg. Corp.*, No. 09-cv-2056-JLS, 2010 WL 1911154, at *7 (S.D. Cal. May 11, 2010) (complaint merely asserted practice was "unfair"); *Eclectic*, 751 F.3d at 996 (no discussion of tethering); *Campos v. Bank of Am., Inc.*, No. 11-cv-0431-SBA, 2012 WL 2862603, at *9 (N.D. Cal. July 11, 2012) (failure to articulate public policy behind judicial foreclosure statute); *Symbolic Aviation, Inc. v. PNCEF, LLC*, No. 10-cv-1228-WQH, 2010 WL 3584509, at *8 (S.D. Cal. Sept. 8, 2010) (failure to allege "actual or threatened impact"); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136-37 (9th Cir. 2014) ("very general allegation" of "favoring businesses that submit to Yelp's manipulative conduct"); *Davis*, 691 F.3d at 1170 ("no factual allegations" to support claim).

Unlike in any of those cases, Plaintiffs allege facts that support a cause of action tethered to the established public policy against artificially hindering or unfairly thwarting business competition on the merits.  *See Texaco*, 393 U.S. at 229 (enjoining a practice that suppressed the availability of secondary products "most favored by customers for price and quality."); *State Farm Mut. Auto. Ins. Co. v. Dempster*, 344 P.2d 821, 826-27 (Cal. Ct. App. 1959) (Tobriner, J.) (affirming an injunction as modified and distinguishing *Continental Car-Na-Var Corp. v. Moseley*, 148 P.2d 9 (Cal. 1944), as involving a defendant's lawful sales on the basis of "his ability to meet or excel, in [customers'] judgment, the quality, price and adaptability of similar products offered by his competitors.").

14

### III.   PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT.

HP contends that unjust enrichment is a remedy derived from Plaintiffs' standalone UCL claim, and that Plaintiffs' unjust enrichment claim fails along with their UCL claim.  *See* MTD at 14.  But HP's own authority, *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015), demonstrates this unjust enrichment claim is viable.  The court there *reversed* the dismissal of an unjust enrichment claim based on allegations that the defendant enticed the purchase of products through false and misleading labeling, causing the defendant to be unjustly enriched.  *Id.* at 762.  And in other cases cited by HP, courts dismissed unjust enrichment claims where the complaint was inadequately pled.  *See Andren v. Alere, Inc.*, No. 16-cv-1255-GPC, 2016 WL 4761806, at *8 (S.D. Cal. Sept. 13, 2016); *Forouzesh v. Starbucks Corp.*, No. 16-cv-3830-PA, 2016 WL 4443203, at *5 (C.D. Cal. Aug. 19, 2016); *Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 118 (Cal. Ct. App. 2011).

Plaintiffs here paid money to HP for printers that HP purposely disabled.  Compl. ¶¶ 10-12, 15-18.  Plaintiffs reasonably expected their printers would function with compatible ink cartridges.  *Id.* ¶¶ 11, 16, 44-46.  Plaintiffs paid HP money to replace the cartridges and printers that HP rendered inoperable.  *Id.* ¶¶ 19, 41.  HP has kept in full the money Plaintiffs paid it.  *Id.* ¶¶ 71-72.  Based on the facts as alleged, Plaintiffs' unjust enrichment claim is well-pled.  *See Astiana*, 783 F.3d at 762 ("This straightforward statement is sufficient"); *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 949 (Cal. 2003) ("Actual direct victims of unfair competition may obtain restitution as well.").

### CONCLUSION

HP's motion to dismiss should be denied.  Should the Court be inclined to grant the motion in part or in full, Plaintiffs respectfully request leave to amend under Rule 15(b).


Dated:  January 6, 2017                         Respectfully submitted,

                                                **GIRARD GIBBS LLP**

                                                /s/ *Jordan Elias*

                                                Daniel C. Girard (State Bar No. 114826)
                                                Jordan Elias (State Bar No. 228731)
                                                Elizabeth A. Kramer (State Bar No. 293129)
                                                601 California Street, Suite 1400
                                                San Francisco, CA 94104

15

Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dcg@girardgibbs.com
je@girardgibbs.com
eak@girardgibbs.com

*Counsel for Plaintiffs*