Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Elizabeth A. Kramer (State Bar No. 293129)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
Email: *dcg@girardgibbs.com*
Email: *je@girardgibbs.com*
Email: *eak@girardgibbs.com*


*Counsel for Plaintiffs*
*Richard San Miguel and DeLores Lawty*


# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION


| | |
|---|---|
| RICHARD SAN MIGUEL and DELORES LAWTY, individually and on behalf of all others similarly situated, | Case No. 5:16-cv-05820-LHK |
| Plaintiffs, | **DECLARATION OF ELIZABETH A. KRAMER IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED [N.D. CAL. CIV. L.R. 3-12, 7-11]** |
| v. | |
| HP INC., | |
| Defendant. | |

I, Elizabeth A. Kramer, declare and state as follows:

1.     I am an associate at the law firm of Girard Gibbs LLP, counsel for Plaintiffs Richard San Miguel and DeLores Lawty. I have personal knowledge of the facts stated herein and if called upon to do so I could and would testify competently thereto.

2.     This declaration is made in support of Plaintiffs' Administrative Motion to consider whether the *Doty* Action is related to the above captioned action.

3.     Attached as Exhibit 1 is a true and correct copy of the Second Amended Complaint filed in the *Doty* Action.

4.     A stipulation to relate the cases was not secured in the instant matter, as is typically required by Local Rule 7-11(a), because determining whether the *Doty* Action and this case are "related" lies within the sole discretion of this Court.  It is my understanding, however, that counsel in the *Doty* Action consent to this filing.


I declare under penalty of perjury under the laws of the United States of America that the aforementioned is true and accurate.  Executed this 8th day February, 2016 in San Francisco, California


/s/ Elizabeth A. Kramer_____

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2017, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to all counsel of record registered in the CM/ECF system.

I also caused a copy of the foregoing document to be served via email on:

Adrian Robert Bacon
**Law Offices of Todd Friedman PC**
324 South Beverly Drive Suite 725
Beverly Hills, CA 90212
Email: abacon@attorneysforconsumers.com

Todd M. Friedman
**Law Offices of Todd M. Friedman, PC**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Email: tfriedman@toddflaw.com

*Counsel for Robert Doty*

                                    /s/ *Elizabeth A. Kramer*

DECLARATION OF ELIZABETH A. KRAMER IN SUPPORT OF PLAINTIFFS'
ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED
CASE NO. 5:16-CV-05820-LHK

**EXHIBIT 1**

Todd M. Friedman (216752)
Adrian R. Bacon (280332)
Law Offices of Todd M. Friedman, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff, Robert Doty and all others similarly situated*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DOTY, individually, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    vs.<br><br>HP, INC. and DOES 1-10,<br><br>          Defendant(s). | Case No. 5:16-cv-02063-GHK-RAO<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>(1)  Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq.*) and<br>(2)  Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*)<br>(3)  Violation of the Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*)<br><br>**Jury Trial Demanded** |

1    Plaintiff Robert Doty ("Plaintiff"), individually and on behalf of all other

2    members of the public similarly situated, allege as follows:

3                              **NATURE OF THE ACTION**

4        1.      Plaintiff brings this class action Complaint against Defendant HP,

5    INC. (hereinafter "Defendant") to stop Defendant's practice of modifying and

6    corrupting Purchasers' printers by forcing unauthorized changes to their firmware

7    and to obtain redress for all Purchasers Nationwide ("Class Members") who,

8    within the applicable statute of limitations period, had their HP Printers modified

9    to stop recognizing and accepting third party ink cartridges.

10       2.      Defendant is a Delaware corporation with its principal place of

11   business and headquarters in California and is engaged in the manufacture, sale,

12   and distribution of printers and related equipment and services throughout the

13   world with a large share of its business done in California.

14       3.      On or around September 13, 2016, thousands of HP Printer owners in

15   the United States and other countries started experiencing problems and crashes

16   with their HP Printers, since said printers stopped recognizing and accepting third

17   party ink cartridges (i.e. ink cartridges which had not been manufactured by HP,

18   Inc. but were compatible with the HP Printers before September 13, 2016.

19       4.      In an effort to dominate the ink cartridge marketplace, HP forced

20   firmware modifications to the HP Printers which were specifically designed and

21   programmed to reject, starting on September13, 2016, all third party ink

22   cartridges, including any said third party ink cartridge which had already been

23   purchased and installed by Class Members and which were already properly

24   working in their HP Printers.

25       5.      The Class Members were not informed by HP of this plan to program

26   a rejection of third party ink cartridges. HP's goal was to program the HP Printers,

27   after their sale to Class Members, so that said HP Printers would only be able to

28

1  communicate with and therefore only accept HP branded ink cartridges, which
2  cost approximately twice as much, in order for HP to greatly increase its profits to
3  the detriment of Class Members.

4      6.    Plaintiff and similarly situated Purchasers purchased printers that
5  were represented as having certain features and capacities.

6      7.    Plaintiff and similarly situated Purchasers relied on these
7  representations when purchasing their printers.

8      8.    When purchasing these printers, Plaintiff and similarly situated
9  Purchasers desired and believed to have obtained printers with the capacity to use
10 third party ink-cartridges.

11     9.    Plaintiff and similarly situated purchasers were not told at the time of
12 purchase that their HP Printer would at some time in the future reject the less
13 expensive third party replacement ink cartridges.

14     10.   Furthermore, Plaintiff and similarly situated Purchasers were not
15 informed by HP of the modifications in question and did not consent to HP
16 unilaterally pushing such modifications into their HP Printer, rendering the
17 printers fundamentally altered and making the printers no longer what Plaintiff
18 and similarly situated Purchasers had bargained for.

19     11.   For these reasons and others, Plaintiff brings this class action
20 complaint on behalf of himself and individuals similarly situated against
21 Defendant for its illegal, deceptive, and unconscionable actions in violating the
22 privacy rights of hundreds of thousands of individuals nationwide in order to
23 obtain an unfair and illegal competitive advantage.

24                    **JURISDICTION AND VENUE**

25     12.   This class action is brought pursuant to Federal Rule of Civil
26 Procedure 23.

27     13.   This matter is properly venued in the United States District Court for

28

1    the Central District of California, in that Defendant forced the modification on

2    Plaintiff's printer at his home in the County of Riverside, California.    Plaintiff

3    resides in the Central District of California and Defendant does business, inter alia,

4    in the Central District of California.

5        14.    There is original federal subject matter jurisdiction over this matter

6    pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb.

7    18, 2005), by virtue of 28 U.S.C. §1332(d)(2), which explicitly provides for the

8    original jurisdiction of federal courts in any class action in which at least 100

9    members are in the proposed plaintiff class, any member of the plaintiff class is a

10   citizen of a State different from the State of citizenship of any defendant, and the

11   matter in controversy exceeds the sum of $5,000,000.00, exclusive of interests and

12   costs.

13       15.    In the case at bar, there are at least 100 members in the proposed Class

14   and Sub-classes, the total claims of the proposed Class members are in excess of

15   $5,000,000.00 in the aggregate, exclusive of interests and costs, and Plaintiffs and

16   the class are citizens throughout various States across the United States.

17                           **THE PARTIES**

18       16.    Plaintiff is a citizen and resident of the State of California, County of

19   Riverside.

20       17.    Defendant HP, INC. is a Delaware corporation with its principal place

21   of business and state of incorporation in California.    Defendant conducts a large

22   share of its business within California and in this judicial district.

23       18.    Plaintiff is informed and believes, and thereon alleges, that each and

24   all of the acts and omissions alleged herein were performed by, or is attributable

25   to, Defendant and/or its employees, agents, and/or third parties acting on its behalf,

26   each acting as the agent for the other, with legal authority to act on the other's

27   behalf.    The acts of any and all of Defendant's employees, agents, and/or third

28

1   parties acting on its behalf, were in accordance with, and represent, the official

2   policy of Defendant.

3       19.   Plaintiff is informed and believes, and thereon alleges, that said

4   Defendant is in some manner intentionally, negligently, or otherwise responsible

5   for the acts, omissions, occurrences, and transactions of each and all its employees,

6   agents, and/or third parties acting on its behalf, in proximately causing the

7   damages herein alleged.

8       20.   At all relevant times, Defendant ratified each and every act or

9   omission complained of herein.   At all relevant times, Defendant, aided and

10  abetted the acts and omissions as alleged herein.

11                          **PLAINTIFF'S FACTS**

12      21.   On or about December 14, 2015, Plaintiff purchased an HP Officejet

13  Pro 8610e printer online from www.store.hp.com.

14      22.   In purchasing the printer, Plaintiff paid more than valuable

15  consideration. Including taxes and fees, plaintiff paid over $107.99.

16      23.   When shopping for a printer, Plaintiff was looking for a printer that

17  had the most features.

18      24.   When viewing the features of the HP Officejet Pro 8610e, Plaintiff

19  discovered that the printer used 950, 950xl, 951, and 951xl ink cartridges.

20  Defendant affirmatively represented on the face of its carton, that the printer used

21  950, 950xl, 951, and 951xl ink cartridges. The 950, 950xl, 951, and 951xl labels

22  are generic part numbers for all cartridges that are compatible in size and function

23  for Plaintiff's printer.   Much like a car part, generic and original equipment

24  manufacturer cartridges exist for each of these generic cartridge models.   For

25  instance, one HP brand 950 XL high yield black ink cartridge, with an advertised

26  page yield of 2300 pages retails for $30.99 on amazon.com with free shipping with

27  amazon prime.   Meanwhile, 3 x IKONG 950 XL high yield black ink cartridges,

28

with an advertised page yield of 2300 pages retails for $30.99 on amazon.com retail for $15.00 on amazon.com with free shipping with amazon prime. In this particular example, HP's ink cartridge costs six times as much as the generic counterpart, and both of these products have the same part number of "950XL.".

25. Nowhere on any advertisements viewed by Plaintiff, including on the carton or packaging of his printer, did Plaintiff see any representations by Defendant that Plaintiff would only be able to use HP brand ink-cartridges. In addition, it was common industry practice and all of the printers previously purchased by Plaintiff allowed the use of third party ink cartridges. These representations and omissions made Plaintiff believe that he could use any brand of 950, 950xl, 951, and 951xl ink cartridges, including third party ink cartridges when purchasing the printer.

26. The ability to use a generic third party ink cartridge was material and important to Plaintiff in deciding which printer to purchase, given that generic ink cartridges are much less expensive than HP brand ink cartridges.

27. Defendant had a duty to disclose to Plaintiff and other reasonable consumers on the face of its packaging, that it maintained the right to restrict HP printers' functionality to only permit a user to utilize an HP brand ink cartridge, because a reasonable consumer would find this detail highly important to their decision to purchase an HP brand printer over another brand, and because a consumer would reasonably expect that, absent being told otherwise, they would be able to use generic third party ink cartridges with their HP printer.

28. Plaintiff was aware that ink cartridges contributed to a significant cost of the printer over its lifetime at the time of purchase. As a result, this was one of the most significant features of the printer that Plaintiff was seeking when examining the features of the printers and determining which printer to purchase. In fact, Plaintiff forwent purchasing other printers, such as a Lexmark brand

1    printer, in favor of the HP Officejet Pro 8610e because of his belief that he could

2    use third party ink cartridges. Had Plaintiff known that he would be unable to use

3    third party ink cartridges, Plaintiff would have purchased a different printer.

4         29.    Upon receiving the printer, Plaintiff's beliefs were reaffirmed when

5    he opened the box of his printer, which contained  a card that represented that

6    Plaintiff could use 950, 950xl, 951, and 951xl ink cartridges with the printer.  The

7    printer ink card contained an advertisement which stated "Say it best with Original

8    HP ink."  Plaintiff believed from this statement that Defendant was advertising its

9    own original equipment manufacturer brand product, and recommending that

10   Plaintiff chose it over generic ink cartridges.  Plaintiff reasonably inferred from

11   this advertisement that Defendant was representing that generic ink cartridges

12   would be compatible with his printer.

13        30.    Plaintiff began using the printer with the preinstalled HP ink

14   cartridge.

15        31.    Over the life of the printer, Plaintiff used both HP ink cartridges and

16   third party ink cartridges; however, was unable to get the third party ink cartridges

17   to work.

18        32.    On one such occasion, Plaintiff purchased a 950 and 951 ink

19   cartridges just as HP represented was compatible with the printer from Ink Supply

20   Outlet. Plaintiff paid valuable consideration for these cartridges.  Plaintiff did not

21   maintain receipts for the cartridges, but recalls that HP brand cartridges were

22   typically between $20-$30 each for the single cartridge, and $90-$99 for the

23   combo color/black cartridge packs, while generic cartridges were significantly less

24   expensive.

25        33.    Upon coming home and installing the ink cartridge, Plaintiff could

26   not get the ink cartridge to work and was instead greeted with an error message.

27   One such error message stated "Non-HP Cartridges.  HP Cannot guarantee the

28

CLASS ACTION COMPLAINT

quality or reliability of non-HP supplies." The error message had an "OK" button below the error message. Plaintiff then received another error message which stated "Cartridge Problem. Until cartridges are installed, please make sure the printer is turned on to avoid damage to the printer."

34.    In or around September of 2016, Plaintiff had discovered that HP, Inc. had forced a firmware modification on his computer that prevented him from using third party ink-cartridges.

35.    Upon learning this, Plaintiff felt ripped off, cheated, and violated by Defendant.

36.    Plaintiff never authorized Defendant to force this modification on him in any way nor at any time.

37.    Defendant manufactured, sold and modified Plaintiff's printer.

38.    Such business tactics rely on falsities, deception and force against a reasonable Purchaser.

39.    Defendant expressly represented to Plaintiff, through written statements, that Plaintiff's printer would have certain features and functioning. For instance, Defendant represented to Plaintiff that his printer would be compatible with all 950, 950xl, 951, and 951xl ink cartridges, on the face of its standard packaging, when in fact this statement was false and misleading to a reasonable consumer. Defendant made the same statements on materials inside of the box of its printer, including the aforementioned ink cartridge card.

40.    When purchasing the printer, Plaintiff planned on using third party ink-cartridges because HP ink-cartridges were much more expensive.

41.    Plaintiff was under the impression that when purchasing the printer, Plaintiff would be able to use third party ink-cartridges. When Plaintiff purchased the printer, almost every printer allowed the use of third party ink-cartridges and so Plaintiff reasonably believed that he would be able to use third party ink-

cartridges. In fact, when he purchased the printer, he was able to use third party ink-cartridges. Defendant had made a material representation to this effect by omitting the crucial fact that Defendant had intended to prevent Plaintiff's use of a third party ink-cartridge in order to obtain a substantial profit from Plaintiff.

42.    It was Plaintiff's understanding at the time of purchasing the printer that ink-cartridges represent a large amount of the cost associated with the printer.

43.    Plaintiff was also of the understanding that third party ink-cartridges are often much cheaper than HP brank ink-cartridges.

44.    Plaintiff relied on Defendant's representations and omissions that Plaintiff would be able to purchase and use third party ink-cartridges with his printer.

45.    Plaintiff alleges that such representations and forced modifications were part of a common scheme to mislead Purchasers, invade their privacy rights and obtain an unfair competitive advantage against its business rivals in the current marketplace.

46.    Not only were such representations clearly false because the printer was completely altered through the course of his use, but the forced modification completely robbed Plaintiff of any use of third party ink-cartridges.

47.    Plaintiff would not have purchased the printer if he knew that the above-referenced statements made by Defendant were false and that Defendant would forcibly control and modify his printer.

48.    Defendant benefited from falsely advertising the features and functions of the printer and from forcing unwanted and destructive modifications on Plaintiff's and similarly situated Purchasers' Printers. Defendant benefited on the loss to Plaintiff and provided nothing of benefit to Plaintiff in exchange.

49.    Plaintiff is informed, believes, and based thereon alleges that Defendant engaged in the exact same false misrepresentations and practices with

1   respect to all the HP Officejet Pro 8610e model printers like the one that Plaintiff

2   purchased as well as all  the OfficeJet, OfficeJet Pro and/or OfficeJet Pro X line

3   printers. Hereafter, these model printers shall be collectively referred to as "Class

4   Products."

5        50.   On September 28, 2016 as well as on October 31, 2016, Plaintiff sent

6   Defendant letters  via Certified Mail pursuant to Section 1770 of Consumer Legal

7   Remedies Act, to provide notice to Defendant of its alleged violations and to

8   correct, repair, replace, or rectify the goods alleged to be in violation of the

9   Consumer Legal Remedies Act. Defendant has failed to respond favorably at this

10  time.

11       51.   In addition, concurrently with the filing of the First Amended

12  Complaint, Plaintiff filed a venue affidavit, pursuant to California Civil Code

13  Section 1780(d).

## CLASS ACTION ALLEGATIONS

15       52.   Plaintiff brings this action, on behalf of himself and all others

16  similarly situated, and thus, seeks class certification under Federal Rule of Civil

17  Procedure 23.

18       53.   The class Plaintiff seeks to represent (the "Class") is defined as

19  follows:

20           All United States Citizens who, between the applicable
             statute of limitations and the present, had an HP Printer
21           that was modified to reject third party-ink cartridges.

22       54.   As used herein, the term "Class Members" shall mean and refer to the

23  members of the Class described above.

24       55.   Excluded from the Class are Defendant, its affiliates, employees,

25  agents, and attorneys, and the Court.

26       56.   Plaintiff reserves the right to amend the Class, and to add additional

27  subclasses, if discovery and further investigation reveals such action is warranted.

28

CLASS ACTION COMPLAINT

57.     Upon information and belief, the proposed class is composed of thousands of persons. The members of the class are so numerous that joinder of all members would be unfeasible and impractical.

58.     No violations alleged in this complaint are contingent on any individualized interaction of any kind between class members and Defendant.

59.     Rather, all claims in this matter arise from the identical and affirmative forced modifications.

60.     There are common questions of law and fact as to the Class Members that predominate over questions affecting only individual members, including but not limited to:

    (a)     Whether Defendant engaged in unlawful, unfair, or deceptive business practices in forcibly modifying Plaintiff and other Class Members printers;

    (b)     Whether Defendant made misrepresentations with respect to the printers originally sold to Purchasers;

    (c)     Whether Defendant profited from both the initial sale and use of the printer and the forced modification;

    (d)     Whether Defendant violated California Bus. & Prof. Code §§ 17200, *et seq.*, California Bus. & Prof. Code §§ 17500, *et seq.*, and Cal. Civ Cod. §§ 1750, *et seq.*,

    (e)     Whether Plaintiff and Class Members are entitled to equitable and/or injunctive relief;

    (f)     Whether Defendant's unlawful, unfair, and/or deceptive practices harmed Plaintiff and Class Members; and

    (g)     The method of calculation and extent of damages for Plaintiff and Class Members.

61.     Plaintiff is a member of the class he seeks to represent

62.     The claims of Plaintiff are not only typical of all class members, they are identical.

63.     All claims of Plaintiff and the class are based on the exact same legal theories.

64.     Plaintiff has no interest antagonistic to, or in conflict with, the class.

65.     Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member, because Plaintiff bought a printer from Defendant during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concerns the same business practices described herein irrespective of where they occurred or were experiences.  Plaintiff's claims are typical of all Class Members as demonstrated herein.

66.     Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent himself and the class.

67.     Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION

### Violation of the California False Advertising Act

### (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

68.     Plaintiff incorporates by reference each allegation set forth above.

69.     Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

70.     California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

71.     Defendant misled Purchasers by making misrepresentations and untrue statements about its printers, namely, Defendant sold printers advertised to include particular features and functions and then forced modifications without their consent.

72.     Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable Purchasers like Plaintiff and other Class Members.

73.     As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money and property.  Plaintiff reasonably relied upon Defendant's representations regarding the printers, namely that his printer would function in a particular way.  In turn Plaintiff and other Class Members ended up with printers that turned out be entirely different than advertised.

74.     Plaintiff alleges that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

75.     Defendant advertised to Plaintiff and other putative class members, through written representations and omissions made by Defendant and its employees, that its operating system would include particular features.

76.     Defendant knew that the Printers did not in fact include the features it was said to include.

77.     Thus, Defendant knowingly sold Printers to Plaintiff and other

1  putative class members and then forcibly removed its originally advertised
2  features.

3      78.    The misleading and false advertising described herein presents a
4  continuing threat to Plaintiff and the Class Members in that Defendant persists and
5  continues to engage in these practices, and will not cease doing so unless and until
6  forced to do so by this Court.   Defendant's conduct will continue to cause
7  irreparable injury to Purchasers unless enjoined or restrained.  Plaintiff is entitled
8  to preliminary and permanent injunctive relief ordering Defendant to cease their
9  false advertising and forced modification of property, as well as disgorgement and
10 restitution to Plaintiff and all Class Members Defendant's revenues associated
11 with their false advertising and forced modification of property, or such portion of
12 those revenues as the Court may find equitable.

**SECOND CAUSE OF ACTION**

**Violation of Unfair Business Practices Act**

**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

16     79.    Plaintiff incorporates by reference each allegation set forth above.

17     80.    Actions for relief under the unfair competition law may be based on
18 any business act or practice that is within the broad definition of the UCL.  Such
19 violations of the UCL occur as a result of unlawful, unfair or fraudulent business
20 acts and practices.   A plaintiff is required to provide evidence of a causal
21 connection between a defendant's business practices and the alleged harm--that is,
22 evidence that the defendant's conduct caused or was likely to cause substantial
23 injury. It is insufficient for a plaintiff to show merely that the defendant's conduct
24 created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory
25 definition of unfair competition covers any single act of misconduct, as well as
26 ongoing misconduct.

**UNFAIR**

81. California Business & Professions Code § 17200 prohibits any "unfair … business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to Purchasers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

82. UCL cases have applied a variety of tests for what constitutes an "unfair" business practice. *See Durrell v. Sharp HealthCare*, 183 Cal. App.. 4th 1350, 1365 (2010). Here, the Plaintiff satisfies all three,

83. The FTC test requires a Purchaser must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to Purchasers or competition; and, (3) is not one that Purchasers themselves could reasonably have avoided.

84. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to forcibly modify their Printers. Now, Plaintiff and members of the class are forced to purchase HP brand ink cartridges that are routinely around three to six times the price of third party ink cartridges and throw away the third party ink cartridges that they have purchased or else they will be unable to use the printers that they purchased. Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class.

85.    Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any Purchaser.  Defendant altered and destroyed Plaintiff's printer in order to obtain a competitive advantage in the marketplace. Plaintiff forewent purchasing other printers, including a Lexmark brand printer, a competitor of Defendant, as a result of Defendant's representations. In addition, Plaintiff and the class members are unable to purchase less expensive ink cartridges from third party companies in competition with Defendant for the ink cartridge business and marketplace, denying them a marketplace choice that they reasonably expected to be available at the time of purchase.

86.    Another test for unfairness under the UCL is the antitrust test, which analyzes whether the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because it effects are comparable to or the same as a vaiolation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*., 20 Cal. 4th 163, 187 (1999).

87.    By forcing Plaintiff and members of the class to purchase HP brand ink cartridges, exclusively, Defendant has gained an unfair advantage in the marketplace and has hindered competition for third party ink cartridges. Class Members, including Plaintiff, are unable to purchase ink cartridges from third parties, making the sale of these ink cartridges for HP printers obsolete. As a result, Defendant has unfairly usurped the business of these third parties and forces Plaintiff and class members to pay three times the price of other ink cartridges. In addition, the Defendant, without any competition, can now continue to raise the prices of their ink cartridges. Defendant's actions tend to harm competition in the ink cartridge market by reducing competition in the marketplace due to an artificial and manufactured software restriction.  This software restriction does not offer

any countervailing benefit to the marketplace. While HP asserts that the restriction of use of third party ink cartridges is meant to prevent consumers from using unreliable third party products, Plaintiff alleges that this is a ruse meant to deceive consumers and prevent competition of third party aftermarket competitors who undercut HP prices, in an effort to diversify the portfolio of options available to consumers who wish to purchase products of a different and lower price point. As such, HP's conduct constitutes an attempt to monopolize, as defined by § 2 of the Sherman Antitrust Act 15 U.S. Code § 2, which states in pertinent part as follows:

> "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court."

88.    Further, Defendant's false representations and omissions, forced Plaintiff and third parties to rely on these representations when choosing which printers to buy. Ink cartridges are a significant cost over the lifetime of the printer and the Defendant used the good will of other competitors who allow the use of third party ink cartridges to induce Plaintiff and Class members to believe that they would be able to use third party ink cartridges and pay significantly less than what they in fact need to pay. As a result, at the time of sale, Defendant caused Plaintiff and Class members to forgo purchasing printers from other brands due to false representations.

89.    A third test under for determining unfairness under the UCL is a balancing test as to whether the business practices is "immoral, unethical,

oppressive, unscrupulous or substantially injurious to consumers." *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999).

90.    Here all of these factors weigh heavily in favor of Defendant's business practices being unfair.

91.    The Defendant took advantage of the market and of consumers to usurp a monopoly and deprive businesses and consumers from engaging in transactions that these businesses and consumers would have otherwise provided had Defendant not made false representations and omissions and had Defendant not invaded the printers of consumers and corrupted them. In so doing, Defendant has acted, immorally, unethically, oppressively, unscrupulously, and has caused a substantial injury to consumers as detailed above.

92.    Finally, the injury suffered by Plaintiff and members of the Sub-Class is not an injury that these Purchasers could reasonably have avoided.

93.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

## FRAUDULENT

94.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a Purchaser must allege that the fraudulent business practice was likely to deceive members of the public.

95.    The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

96.    Here, not only were Plaintiff and the Class members likely to be deceived, but these Purchasers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase Printers under

the basic assumption that they included certain features and functionality. Due to the unequal bargaining powers of Defendant and Class Members, , it is likely that Defendant's fraudulent business practice would deceive other members of the public.

97.  As explained above, Defendant deceived Plaintiff and other Class Members by representing the Printers as including the HP Smart Install feature, falsely represented the features of the Printers.

98.  Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

### UNLAWFUL

99.  California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

100.  As explained above, Defendant deceived and invaded the privacy rights of Plaintiff and other Class Members by representing the Printers as including particular features and then modifying their functionality.

101.  Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to purchase the Printers, in violation of California Business and Professions Code Section 17500, et seq. Had Defendant not falsely advertised, marketed or misrepresented the Printers, Plaintiff and Class Members would not have purchased the Printers. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

102.  Defendant also engaged in unlawful attempts to monopolize, as defined by § 2 of the Sherman Antitrust Act  15 U.S. Code § 2.

103.  Finally, Defendant violated the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et. seq.*, as described below.  These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq.*

104.   Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.   Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**THIRD CAUSE OF ACTION**

**Violation of Consumer Legal Remedies Act**

**(Cal. Civ. Code § 1750 *et seq.*)**

105.   Plaintiff incorporates by reference each allegation set forth above herein.

106.   Defendant's actions as detailed above constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1770 to the extent that Defendant violated the following provisions of the CLRA:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have. Cal. Civ. Code § 1770(5);

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  Cal. Civ. Code § 1770(7);

c. Advertising goods or services with intent not to sell them as advertised; *Cal. Civ. Code* §1770(9);

d. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; *Cal. Civ. Code* §1770(14); and

e. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; *Cal. Civ. Code* §1770(16).

107. As discussed above, Defendant made false and misleading representations regarding the features and functions included with the Class Products by omitting the material facts at the time of sale that the printers would not allow the use of third party ink-cartridges and could only use HP ink-cartridges.

108. As explained above, Defendant expressly represented to Plaintiff, through written statements, that Plaintiff's printer would have certain features and functioning. When purchasing the printer, Plaintiff planned on using third party ink-cartridges because HP ink-cartridges were much more expensive. Plaintiff was under the impression that when purchasing the printer, Plaintiff would be able to use third party ink-cartridges. When Plaintiff purchased the printer, almost every printer allowed the use of third party ink-cartridges and so Plaintiff reasonably believed that he would be able to use third party ink-cartridges. In fact, when he purchased the printer, he was able to use third party ink-cartridges. Defendant had made a material representation to this effect by omitting the crucial fact that Defendant had intended to prevent Plaintiff's use of a third party ink-cartridge in order to obtain a substantial profit from Plaintiff. It was Plaintiff's understanding at the time of purchasing the printer that ink-cartridges represent a large amount of the cost associated with the printer. Plaintiff was also of the understanding that third party ink-cartridges are often much cheaper than HP brank ink-cartridges. Plaintiff relied on Defendant's representations and omissions that Plaintiff would be able to purchase and use third party ink-cartridges with his printer.

109. Plaintiff is informed, believes, and based thereon alleges that Plaintiff's experience is typical of the Class. The cost of the printer is an important

consideration when deciding which printer to purchase. It is common knowledge that the largest cost of the printer over its life-time are ink-cartridges. It is also commonly known that brand name ink-cartridges are much more expensive than third party ink-cartridges. Purchasers rely on this information when deciding which printers to use. By representing that purchasers would be able to use third party ink-cartridges, by omitting the material fact that Purchasers would not be able to use third party ink-cartridges, knowing that Purchasers would reasonably believe that they could, Defendant has made false and misleading representations regarding the features and functions included with the Class Products in violation of Sections 1770(a)(5), (7), (9), (14), and (16) of the CRLA.

**MISCELLANEOUS**

110.   Plaintiff and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

**REQUEST FOR JURY TRIAL**

111.   Plaintiff requests a trial by jury as to all claims so triable.

**PRAYER FOR RELIEF**

112.   Plaintiff, on behalf of himself and the Class, requests the following relief:

(a)   An order certifying the Class and appointing Plaintiff as Representative of the Class;

(b)   An order certifying the undersigned counsel as Class Counsel;

(c)   An order requiring HP, INC., at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(d)   An order requiring HP, INC. to engage in corrective advertising regarding the conduct discussed above;

(e)   Actual damages suffered by Plaintiff and Class Members as

1                              applicable or full restitution of all funds acquired from Plaintiff

2                              and Class Members from the sale of misbranded Printers during

3                              the relevant class period;

4          (f)     Punitive damages, as allowable, in an amount determined by

5                     the Court or jury;

6          (g)    Any and all statutory enhanced damages;

7          (h)    All reasonable and necessary attorneys' fees and costs provided

8                     by statute, common law or the Court's inherent power;

9          (i)     Pre- and post-judgment interest; and

10         (j)    All other relief, general or special, legal and equitable, to which

11                  Plaintiff and Class Members may be justly entitled as deemed

12                  by the Court.

13

14  Dated:  December 2, 2016      Respectfully submitted,

15                     LAW OFFICES OF TODD M. FRIEDMAN , PC

16

17                     By: /s Todd. M. Friedman

18                     TODD M. FRIEDMAN, ESQ.

19                     Attorney for Plaintiff Robert Doty

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

## **PROOF OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. On December 2, 2016, I served a true copy of First Amended Complaint by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:

Samuel Liversidge
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071

Place of Mailing: 21550 Oxnard St., Suite 780, Woodland Hills, CA 91367.

Executed on December 2, 2016, at Woodland Hills, CA

[x] I hereby certify that I am employed in the Law Offices of Todd M. Friedman, P.C.

[x] I hereby certify under the penalty of perjury that the foregoing is true and correct.

By:_____
          Yoel S. Hanohov

CLASS ACTION COMPLAINT