1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SAMUEL G. LIVERSIDGE (SBN 180578)
    sliversidge@gibsondunn.com
RODNEY J. STONE (SBN 145405)
    rstone@gibsondunn.com
JARED M. STRUMWASSER (SBN 275326)
    jstrumwasser@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone: (213) 229-7365
Facsimile:  (213) 229-6365

Attorneys for Defendant
HP INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE HP PRINTER FIRMWARE UPDATE
LITIGATION

CASE NO. 5:16-cv-05820-EJD-SVK

**DEFENDANT HP INC.'S MOTION TO
DISMISS CONSOLIDATED COMPLAINT**

**Hearing:**
Date:         July 6, 2017
Time:         9:00 a.m.
Place:        Courtroom 4
Judge:       Hon. Edward J. Davila

Action Filed:  September 28, 2016

Gibson, Dunn &
Crutcher LLP

1  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2      **PLEASE TAKE NOTICE THAT**, on Thursday, July 6, 2017 at 9:00 a.m., or as soon

3  thereafter as the matter may be heard before the Honorable Edward J. Davila, in Courtroom 4, the

4  United States District Court, Northern District of California, located at the Robert F. Peckham Federal

5  Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant HP Inc.

6  ("HP") will and hereby does move this Court, pursuant to Federal Rules of Civil Procedure 9(b) and

7  12(b)(6), to dismiss plaintiffs' Consolidated Complaint (ECF No. 60).

8      Plaintiffs incurably fail to state a claim for relief for any of their claims for unlawful computer

9  intrusions—the federal Computer Fraud and Abuse Act (18 U.S.C. § 1030), California's anti-hacking

10  statute (Cal. Penal Code § 502), and common law trespass to chattels—because, among other things,

11  HP had authority to access the printers.

12      Plaintiffs' Complaint also fails to state any plausible claim for relief against HP under

13  California's consumer protection statutes.  First, under the "unlawful" prong of the Unfair Competition

14  Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) ("UCL"), plaintiffs predicate their claim on the other

15  claims alleged in the Complaint, and consequently it fails derivatively along with the others.  Second,

16  under the "unfair" prong of the UCL, plaintiffs' claims likewise fail because they do not adequately

17  tether the purported "unfairness" of HP's alleged conduct to any legislatively declared policy or impact

18  on competition.  Plaintiffs also do not sufficiently allege that the gravity of any harm to the alleged

19  victims outweighs the utility of HP's conduct.  Third, under the "fraudulent" prong of the UCL, the

20  False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*) ("FAL"), and the Consumer Legal

21  Remedies Act (Cal. Civ. Code § 1750, *et seq.*) ("CLRA"), plaintiffs' claims fail because plaintiffs have

22  not sufficiently alleged any misrepresentations by HP.  Nor do they allege any cognizable duty to

23  disclose on the part of HP.  As for plaintiff San Miguel's claim under the Texas Deceptive Trade

24  Practices – Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.01, *et seq.*), plaintiff Lawty's

25  claim under the New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, *et seq.*), and plaintiff Ware's

26  claim under the Washington Consumer Protection Act (Wash. Rev. Code Ann. § 19.86.10, *et seq.*),

27  these claims fail for the same, and additional, reasons as the claims under California's consumer

28  protection statutes.

Plaintiffs also fail to state a claim for tortious interference with contractual relations or tortious interference with prospective economic advantage because they insufficiently allege each element of the torts they invoke and these business torts do not apply to consumer transactions such as those at issue here.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Jared M. Strumwasser, the papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

Dated: April 21, 2017

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Samuel Liversidge*
Samuel Liversidge

Attorneys for Defendant
HP INC.

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3)) ............................ 2

III.  SUMMARY OF PLAINTIFFS' ALLEGATIONS................................................... 3

IV.   LEGAL STANDARDS......................................................................................... 5

V.    ARGUMENT ..................................................................................................... 5

A.   Plaintiffs' Computer Intrusion Claims Should Be Dismissed With Prejudice
     Because They Do Not Apply To This Case ................................................. 6

   1.   Under plain statutory language and settled case law, plaintiffs fail to
        state a CFAA claim (Claim 8)............................................................ 6

   2.   Plaintiffs' kitchen-sink approach to the California anti-hacking statute
        fails for the same, and additional, reasons (Claim 9)....................... 8

   3.   Plaintiffs fail to state a cognizable trespass-to-chattels claim
        (Claim 10). ..................................................................................... 10

B.   Plaintiffs' Consumer Protection Claims Should Be Dismissed ................. 11

   1.   Plaintiffs' California consumer protection claims fail. ...................... 11

      a.   Plaintiffs fail to state a claim under the FAL, the CLRA, and the
           "fraudulent" prong of the UCL (Claims 2-4)..................................... 11

      b.   Plaintiffs fail to plead a violation of the UCL "unfair" prong
           (Claim 1). ..................................................................................... 15

      c.   Plaintiffs' derivative "unlawful" UCL claim fails (Claim 1)............. 20

   2.   The Court should dismiss Plaintiffs' other consumer protection law
        claims. ........................................................................................... 20

      a.   San Miguel's Texas Deceptive Trade Practices claim fails
           (Claim 5). ..................................................................................... 20

      b.   Lawty's Washington Consumer Protection Act claim fails
           (Claim 6). ..................................................................................... 21

      c.   Ware's New Jersey Consumer Fraud Act claim fails (Claim 7)......... 22

C.   Plaintiffs' Tortious Interference Claim Should Be Dismissed With Prejudice
     As Inapplicable And Incurably Pleaded (Claim 11) ................................. 23

VI.   CONCLUSION ................................................................................................. 25

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abarca v. Merck & Co.*,
    2010 WL 1054010 (E.D. Cal. Mar. 17, 2010) ................................................12

*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*,
    47 Cal. App. 4th 464 (1996) ....................................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................5, 16

*Bardin v. Daimlerchrysler Corp.*,
    136 Cal. App. 4th 1255 (2006) ............................................................17, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................5, 17, 22

*Brodie v. Northwest Trustee Servs., Inc.*,
    2012 WL 4468491 (E.D. Wash. Sep. 27, 2012) ........................................21

*Campa v. Nationwide Prop. & Cas. Ins. Co.*,
    2010 WL 3733469 (S.D. Tex. Sept. 7, 2010) ..........................................21

*Campos v. Bank of Am., Inc.*,
    2012 WL 2862603 (N.D. Cal. July 11, 2012)............................................17

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) .............................................................16, 17, 20

*Cullen v. Netflix, Inc.*,
    2013 WL 140103 (N.D. Cal. Jan. 10, 2013) (Davila, J.) ............................19

*Cushman v. GC Servs., LP*,
    657 F. Supp. 2d 834 (S.D. Tex. 2009) ..................................................21

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012)........................................................14, 18, 20

*Dominic Corea LP v. ILD Telecommc'ns, Inc.*,
    2013 WL 821193 (C.D. Cal. Jan. 23, 2013) ..........................................16

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ..................................................18

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014)...................................................5, 9, 16, 17, 19, 22

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004)................................................................5

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) ...................................................................12, 20

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016)...................................................................................7, 9

*Ferranti v. Hewlett-Packard Co.*,
   2015 WL 5302674 (N.D. Cal. Sept. 10, 2015) (Davila, J.)...........................................15

*Ford v. Hotwire, Inc.*,
   2007 WL 6235779 (S.D. Cal. Nov. 19, 2007) ...............................................................13

*Green v. Wachovia Mortg. FSB*,
   2012 WL 993586 (E.D. Wash. Mar. 22, 2012)..............................................................22

*Hall v. Sea World Entm't, Inc.*,
   2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ...............................................................14

*Hodges v. Apple, Inc.*,
   640 F. App'x 687 (9th Cir. 2016) .................................................................................15

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011).....................................................................12, 14

*In re iPhone Application Litigation*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) .........................................................................8

*Johnson v. United States*,
   135 S. Ct. 2551 (2015) ................................................................................................10

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*,
   115 Cal. App. 4th 168 (2004) ......................................................................................25

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)..................................................................................5, 13

*Kenery v. Wells Fargo, N.A.*,
   2015 WL 5138635 (N.D. Cal. Sept. 1, 2015) ...............................................................15

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005).......................................................................................3

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ..............................................................................................24

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ................................................................................................15

*Leocal v. Ashcroft*,
   543 U.S. 1 (2004)........................................................................................................10

TABLE OF AUTHORITIES (*continued*)

Page(s)

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014)..................................................................................18

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007)..........................................................................15, 16, 20

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009)..................................................................................6, 7

*Maple v. Costco Wholesale Corp.*,
    2013 WL 11842009 (E.D. Wash. Aug. 1, 2013) .....................................................22

*McCoy v. Nestle USA, Inc.*,
    173 F. Supp. 3d 954 (N.D. Cal. 2016) ....................................................................15

*Miller v. Nat'l Broad. Co.*,
    187 Cal. App. 3d 1463 (1986).............................................................................10, 11

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989)...................................................................................12

*Morris v. BMW of N. Am., LLC*,
    2007 WL 3342612 (N.D. Cal. Nov. 7, 2007)..........................................................16

*Name.space, Inc. v. ICANN*,
    2013 WL 2151478 (C.D. Cal. Mar. 4, 2013) ..........................................................24

*Name.Space, Inc. v. ICANN*,
    795 F.3d 1124 (9th Cir. 2015)..................................................................................23

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
    939 F. Supp. 2d 1002 (N.D. Cal. 2013) .............................................................23, 24

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) ........................................................................2, 23, 25

*Palmer v. Apple Inc.*,
    2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ...........................................17, 18, 19, 20

*Patel v. Holiday Hosp. Franchising, Inc.*,
    172 F. Supp. 2d 821 (N.D. Tex. 2001).....................................................................21

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ....................................................................14

*People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*,
    2016 WL 1642577 (N.D. Cal. Apr. 26, 2016) .........................................................15

*People v. Davis*,
    29 Cal. 3d 814 (1981) ..............................................................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

MOTION TO DISMISS CONSOLIDATED COMPLAINT -- CASE NO. 5:16-CV-05820

TABLE OF AUTHORITIES (*continued*)

Page(s)

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ...................................................................12, 14

*R Power Biofuels, LLC v. Chemex LLC*,
   2016 WL 6663002 (N.D. Cal. Nov. 11, 2016).........................................................23, 24

*Reckitt Benckiser LLC v. Cotiviti, LLC*,
   2016 WL 5791410 (D.N.J. Oct. 3, 2016).......................................................................22

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016) ........................................................................20

*Sanchez v. Bear Stearns Residential Mortg. Corp.*,
   2010 WL 1911154 (S.D. Cal. May 11, 2010)................................................................17

*Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*,
   957 F. Supp. 2d 1189 (S.D. Cal. 2013) .........................................................................24

*Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*,
   858 F.2d 1095 (5th Cir. 1988).......................................................................................21

*Smith v. Level 4 Commc'ns Inc.*,
   2014 WL 7463803 (N.D. Cal. Dec. 30, 2014)...............................................................20

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
   72 Cal. App. 4th 861 (1999) ....................................................................................16, 18

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)...........................................................................................3

*Symbolic Aviation, Inc. v. PNCEF, LLC*,
   2010 WL 3584509 (S.D. Cal. Sept. 8, 2010) ................................................................17

*Thrifty-Tel, Inc. v. Bezenek*,
   46 Cal. App. 4th 1559 (1996) ........................................................................................11

*Torres-Hernandez v. CVT Prepaid Sols., Inc.*,
   2008 WL 5381227 (D.N.J. Dec. 17, 2008) ...................................................................22

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ..................................................................23, 24

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) (en banc)..................................................................7, 8, 10

*United States v. Nosal*,
   844 F.3d 1024 (9th Cir. 2016).........................................................................................7

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)..........................................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

TABLE OF AUTHORITIES (*continued*)

Page(s)

*Werbel v. PepsiCo, Inc.*,
2010 WL 2673860 (N.D. Cal. July 2, 2010)...................................................................13

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017)......................................................................................15

*Williamson v. McAfee, Inc.*,
2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) (Davila, J.)..........................................19

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012)......................................................................................15

*Zadvydas v. Davis*,
533 U.S. 678 (2001).......................................................................................................10

**Statutes**

15 U.S.C. § 45(a)...............................................................................................................20

18 U.S.C. § 1030.................................................................................................................7

18 U.S.C. § 1030(a)(5)(A), (B), (C)..................................................................................8

18 U.S.C. § 1030(c)(4)(A)(i), (g)......................................................................................6

18 U.S.C. § 1030(e)(6).......................................................................................................7

18 U.S.C. § 1030(g)...........................................................................................................6

Cal. Bus. & Prof. Code § 17200, *et seq.*.......................................................................11

Cal. Bus. & Prof. Code § 17500, *et seq.*.......................................................................11

Cal. Civ. Code § 1750, *et seq.*.......................................................................................11

Cal. Penal Code § 502........................................................................................................20

Cal. Penal Code § 502(a)...................................................................................................10

Cal. Penal Code § 502(c)..................................................................................................8, 9

Cal. Penal Code § 502(c)(5)...............................................................................................9

Cal. Penal Code § 502(c)(8)...............................................................................................9

N.J. Stat. Ann. § 56:8-1, *et seq.*....................................................................................22

Tex. Bus. & Com. Code Ann. § 17.01, *et seq.*.............................................................20

Tex. Bus. & Com. Code Ann. § 17.505(a)........................................................................21

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

Wash. Rev. Code Ann. § 19.86.010, *et seq.*.........................................................................21

**Other Authorities**

Joshua McLaurin, *Making Cyberspace Safe for Democracy: The Challenge Posed by
        Denial-of-Service Attacks*, 30 Yale L. & Pol'y Rev. 211, 216 (2011)................................9

**Rules**

Fed. R. Civ P. 9(b) ...............................................................5, 12, 13, 15, 17, 21, 22

Rule 8 ................................................................................................15, 17, 22

Rule 11 ......................................................................................................8

Gibson, Dunn &
Crutcher LLP

MOTION TO DISMISS CONSOLIDATED COMPLAINT -- CASE NO. 5:16-CV-05820

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs seek to bring a nationwide class action because HP allegedly installed a firmware update on their HP printers that prevented them from using certain third-party ink cartridges in those printers.  But plaintiffs' case is built on the false premise that HP is under an obligation to make its printers compatible with any and all third-party ink cartridges.  In fact, HP is under no such inherent legal duty and, as plaintiffs' own allegations reveal, HP never made any representations that would otherwise give rise to such a duty.  None of plaintiffs' myriad legal theories supports a claim that HP's conduct here—which plaintiffs acknowledge HP undertook for the stated purpose of protecting its intellectual property rights from cartridges with cloned and infringing security chips—was unlawful, unfair or fraudulent.  Plaintiffs' Complaint should be dismissed in its entirety, and some of the claims should be dismissed without leave to amend.

Plaintiffs' computer hacking and trespass claims are foreclosed by unambiguous statutory language and Ninth Circuit precedent.  A party does not act "without authorization" in violation of state or federal anti-hacking statutes when it has permission to access a device.  Here, HP had the authority to access the printers—in plaintiffs' words, HP had "authorized access."  Compl. ¶ 228.  Leave to amend would be futile:  HP did not break into the printers, so plaintiffs cannot sustain hacking or trespass claims.

Additionally, plaintiffs' statutory consumer protection claims all fail to state a claim.  For example, plaintiffs ground three claims in fraud, but only one plaintiff (Doty) alleges any affirmative misrepresentations.  At a minimum, the other five plaintiffs cannot bring a fraud claim, since they do not even allege misrepresentations or reliance—in fact, plaintiffs San Miguel and Lawty *expressly disavowed* any fraud claims before the cases were consolidated, stating in prior briefing that: "Plaintiffs do not sue on a warranty or fraud theory" (ECF No. 29 at 1); "Plaintiffs do *not* allege that HP failed to deliver a benefit of the bargain connected with their earlier printer purchases" (*id*. at 3, emphasis in original); and "Plaintiffs do not assert a broken promise or other point-of-sale injury" (*id*. at 4).  And the central misstatement alleged (by plaintiff Doty alone)—that HP printer boxes advertised compatibility with generic ink—says exactly the *opposite*, promoting only the use of "Original HP

Gibson, Dunn &
Crutcher LLP

1   Ink." Compl. ¶ 46.  Moreover, plaintiffs' alternative fraudulent-omission theory fails, because they do

2   not allege any facts that would give rise to a duty on HP's part to disclose that certain third-party

3   cartridges may not always work in their printers—particularly cartridges that use cloned and infringing

4   security chips like those affected by the firmware here.

5          Plaintiffs' claim that HP engaged in "unfair" business practices under California's Unfair

6   Competition Law ("UCL") also fails because, *inter alia*, plaintiffs do not plausibly allege an incipient

7   violation of any antitrust law or policy, any anticompetitive effect that HP's conduct had or threatens

8   to have, or any harm outweighing the utility of HP's conduct.  These shortcomings are fatal.  Plaintiffs'

9   similar claims under Texas, Washington, and New Jersey consumer protection statutes fail for related

10  and additional reasons discussed below.

11         Finally, the tortious interference claim is far-fetched.  Plaintiffs attempt to import two business

12  torts into consumer transactions, in the face of the California Supreme Court's admonition that these

13  torts should be applied "cautious[ly] … to avoid promoting speculative claims." *Pac. Gas & Elec. Co.*

14  *v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1136-37 (1990).  Plaintiffs' abstract allegations—even

15  pleading in the "and/or" disjunctive—fall apart at each element, including that plaintiffs do not identify

16  the touchstone of any actual contracts or third-party economic relationships.  And with good reason:

17  interference torts do not apply to everyday online retail purchases such as those alleged here.

18         In short, plaintiffs fail to plausibly allege that HP's act of updating printer firmware was illegal.

19  HP respectfully submits that plaintiffs' Complaint should be dismissed in its entirety.

20      **II.    STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3))**

21         The following issues are raised by this motion:

22         1.    Whether plaintiffs' Eighth through Tenth Claims for Relief, which allege violations of

23  anti-hacking statutes and trespass to chattels, should be dismissed *with prejudice* for failure to state a

24  viable claim for relief.

25         2.    Whether plaintiffs' First through Seventh Claims for Relief, which allege violations of

26  various consumer protection statutes, should be dismissed for failure to state a viable claim for relief.

27         3.    Whether plaintiffs' Eleventh Claim for Relief, which alleges tortious interference,

28  should be dismissed *with prejudice* for failure to state a viable claim for relief.

### III.   SUMMARY OF PLAINTIFFS' ALLEGATIONS[1]

Plaintiffs allege that they each purchased an HP printer and then bought third-party ink cartridges when the original HP ink cartridges that came with their printers ran out of ink.  Compl. ¶¶ 14, 20, 26-27, 38-39, 45, 53, 63, 66.  Plaintiffs assert that "[t]he ability to use compatible printer ink cartridges made by a third party was material and highly important to Plaintiffs … in deciding to purchase [their] [p]rinters."  *Id.* ¶ 157; *see also id.* ¶¶ 19, 25, 37, 49, 60, 72.

In September 2016, according to plaintiffs, their printers stopped operating properly and displayed a message indicating that there was "problem" or that their ink cartridges were "damaged" or "missing."  *Id.* ¶¶ 1, 17, 21, 29, 40, 55, 67, 97.  Plaintiffs assert that "[t]hese failures resulted from HP implementing a firmware update that disabled printers containing ink cartridges manufactured by HP's competitors."  *Id.* ¶ 1; *see also id.* ¶¶ 16, 24, 30, 41, 56, 68.  Plaintiffs further allege that "HP devised and executed its firmware update as a means of gaining an advantage over its competitors in the market for printer ink cartridges" by "disabl[ing] HP printers containing non-HP ink cartridges."  *Id.* ¶¶ 1, 106; *see also id.* ¶¶ 107, 138-39.

Then on September 28, 2016, HP issued a public statement concerning the firmware modification, which plaintiffs incorporate by reference in their Complaint.  *Id.* ¶ 109 & n.2.  In this statement, HP explained the purpose and rationale for the cartridge authentication procedure at issue:

> We updated a cartridge authentication procedure in select models of HP office inkjet printers to ensure the best consumer experience and protect them from counterfeit and third-party ink cartridges that do not contain an original HP security chip and that infringe on our IP.
>
> HP printers and original HP ink products deliver the best quality, security and reliability. When ink cartridges are cloned or counterfeited, the customer is exposed to quality and potential security risks, compromising the printing experience.
>
> As is standard in the printing business, we have a process for authenticating supplies. The most recent firmware update included a dynamic security feature that prevented some untested third-party cartridges that use cloned security chips from working, even if they had previously functioned.

Declaration of Jared M. Strumwasser, Ex. A.[2]  Because the authentication procedure in the firmware

---

[1]  HP does not concede any allegations contained in plaintiffs' Complaint and reserves all rights to contest them.  *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

[2]  *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) ("[U]nder the incorporation by reference doctrine, [courts can] take into account documents whose contents are alleged in a complaint and

of involved printers affected only "counterfeit and third-party ink cartridges that do not contain an original HP security chip," third-party ink cartridges with original HP security chips at all times continued to function properly with the firmware installed.  *Id.*  Additionally, HP has since made available "an optional firmware update that removes the dynamic security feature" and permits the use of third-party ink cartridges that do not contain an original HP security chip.  *Id.*; Compl. ¶ 114.  Thus, any customer with an affected printer who wants to remove the features that are the subject of Plaintiffs' Complaint can do so by electing to download and install the optional firmware patch.

Plaintiffs contend that HP made certain "uniform misrepresentations and material omissions" that "deceived Plaintiffs ... and reinforced their reasonable expectation and belief that they could use compatible non-HP ink cartridges to print documents with [their] [p]rinters."  Compl. ¶¶ 149, 151.  Plaintiff Doty alleges that "HP affirmatively represented on the product box that the printer used [950, 950xl, 951, and 951xl] cartridges" and that these "labels are generic part numbers for all cartridges that are compatible in size and function with his printer." *Id.* ¶¶ 46-47.  He further contends that HP's "representations and omissions reinforced his belief when he bought the printer that he could use any brand of 950, 950xl, 951, and 951xl ink cartridges, including those not made or sold by HP." *Id.* ¶ 48.  Plaintiff Andrews alleges that "HP represented on the product box that the printer used [901 and 61 ink cartridges]," and that these "labels are generic part numbers for cartridges that are compatible ... with his printer." *Id.* ¶ 63.  No other plaintiff alleges any specific misrepresentations.

Plaintiff Doty also asserts that his HP printer box contained "printer ink card[s]" that included an advertisement stating "Say it best with Original HP ink," which he alleges "communicated to reasonable consumers that the printers would operate with third-party ink cartridges." *Id.* ¶¶ 52, 152.

Plaintiffs further allege that the express Limited Warranty for their printers "communicated to reasonable consumers that the printers would, in fact, operate with non-HP cartridges." *Id.* ¶ 153.  In support of this contention, plaintiffs allege that HP made the following statements in the express Limited Warranty:  (1) "[t]he use of a non-HP or refilled cartridge does not affect either the HP Limited Warranty to the end-user customer or any HP support contract with the end-user customer for the

---

whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.") (citation and quotation marks omitted).

printer"; and (2) HP technical support services do "NOT include assistance with … installation of non-HP software purchased separately," but "non-HP manufacturers and suppliers or publishers may provide their own warranties directly to you." *Id.* ¶¶ 122-23.

## IV.     LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations that "'are no more than conclusions, are not entitled to the assumption of truth.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). Rather, "plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Id.* at 995 (quoting *Twombly*, 550 U.S. at 557).

Rule 9(b) imposes a heightened pleading standard for all claims grounded in fraud. Fed. R. Civ. P. 9(b); *see, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). To satisfy this standard, a plaintiff must "'state with particularity the circumstances constituting fraud.'" *Kearns*, 567 F.3d at 1124 (quoting Fed. R. Civ. P. 9(b)). This means that a complaint must specify "'the who, what, when, where, and how' of the misconduct charged." *Id.* (citation omitted); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (plaintiff must provide "the time, place, and specific content of the false representations") (citation and quotation marks omitted). The plaintiff also must allege with specificity "what is false or misleading about [that] statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and quotation marks omitted).

## V.     ARGUMENT

HP is not under any legal duty to make its printers compatible with third-party ink cartridges. Nor do plaintiffs allege any such duty. But plaintiffs grasp for a viable legal theory predicated upon the presumption that such a duty exists, alleging hacking, trespass, unfair competition, fraud, false advertising, unfair practices, and tortious interference. These legal theories all start from the underlying and deficient premise that HP had some duty to make its printers compatible with third-party ink cartridges, even those using cloned and infringing security chips affected by the authentication

procedure in HP's firmware at issue here.  HP was under no such legal obligation, did not make any such representations, and did nothing unlawful.  Plaintiffs fail to plead each claim they attempt to attach to this lawful conduct.

### A.      Plaintiffs' Computer Intrusion Claims Should Be Dismissed With Prejudice Because They Do Not Apply To This Case

When a manufacturer installs a security update on products it is authorized to access, it does not commit computer hacking or trespass.  Yet, under plaintiffs' view, a manufacturer violates those laws simply because a consumer does not like the *content* of the installed update.  That remarkable theory is not the law.  Hacking statutes and trespass prohibit *accessing* a computer without authorization (such as a hacker overcoming technical barriers to gain access).  Plaintiffs do not (and cannot) allege such behavior, and instead admit precisely the opposite:  that HP had "authorized access" to their printers.  Compl. ¶ 228.  Plaintiffs take issue with what HP's firmware did *after* it was installed, but not whether HP was authorized to access the printers in the first place.  The laws of computer hacking and trespass therefore do not apply.  The Court should dismiss these claims with prejudice.

### 1.      Under plain statutory language and settled case law, plaintiffs fail to state a CFAA claim (Claim 8).

Plaintiffs allege that HP violated three prongs of the Computer Fraud and Abuse Act ("CFAA"), each of which applies only if HP accessed plaintiffs' printers without any authorization at all.  Plaintiffs fail to state a claim under the plain language of the statute and well-settled case law because, as plaintiffs expressly recognize, HP had at least some authority to access the printers.

The CFAA was enacted "to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009).  It is a criminal law that authorizes civil actions for "[a]ny person who suffers damage or loss by reason of a violation" of the law (18 U.S.C. § 1030(g)), provided that the offense caused "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value" (or other predicates not alleged here).  18 U.S.C. §§ 1030(c)(4)(A)(i), (g).  Because the CFAA is "primarily a criminal statute," the rule of lenity applies even in civil actions to resolve any ambiguity in favor of the defendant.  *Brekka*, 581 F.3d at 1134.  Relatedly, the en banc Ninth Circuit court has cautioned that courts must interpret the CFAA narrowly so as to avoid "transform[ing] the CFAA from an anti-

1    hacking statute into an expansive misappropriation statute." *United States v. Nosal*, 676 F.3d 854, 857

2    (9th Cir. 2012) (en banc) (*"Nosal I"*).

3          The CFAA "prohibits a number of different computer crimes, the majority of which involve

4    accessing computers [1] without authorization or [2] in excess of authorization, and then taking

5    specified forbidden actions."    *Brekka*, 581 F.3d at 1131; *see* 18 U.S.C. § 1030.    "[W]ithout

6    authorization" is a "prohibition [that] applies to hackers" (*Nosal I*, 676 F.3d at 858):  It means either

7    that "the person has not received permission to use the computer for any purpose (such as when a

8    hacker accesses someone's computer without any permission)" or "the [computer owner] has rescinded

9    permission to access the computer and the defendant uses the computer anyway." *Brekka*, 581 F.3d at

10    1135; *see Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016) (same).  The

11    prohibition on access must be absolute, meaning the defendant has no right *at all* to access the

12    computer. *See United States v. Nosal*, 844 F.3d 1024, 1034 (9th Cir. 2016) ("*Nosal II*") ("unauthorized

13    access" is "getting into the computer after categorically being barred from entry"); *Brekka*, 581 F.3d at

14    1135 (no permission to access "for any purpose").  In contrast, "[e]xceeds authorized access," as used

15    in the CFAA, means "to access a computer with authorization and to use such access to obtain or alter

16    information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C.

17    § 1030(e)(6).  It is "limited to violations of restrictions on *access* to information, and not restrictions

18    on its *use*."  *Nosal I*, 676 F.3d at 864 (emphasis in original).

19          Here, plaintiffs attempt to allege a theory of "exceeding authorized access," not accessing

20    "without authorization."  *See, e.g.*, Compl. ¶ 229.  Plaintiffs expressly admit (as they must) that HP had

21    "*authorized access* to Plaintiffs' and Class members' printers"—i.e., HP did not hack into their printers.

22    *Id.* ¶ 228 (emphasis added).  Rather, as plaintiffs explain, and as is typical for modern "smart" printers

23    connected to the internet, HP had the authority to access printers in order to install firmware updates.

24    *See, e.g., id.* ¶ 81 ("HP can communicate with HP printers after it sells them.  One way to communicate

25    with printers is by updating their firmware"); *id.* ¶¶ 101-103 (describing "HP's pattern of pushing

26    firmware updates").  Plaintiffs even fault HP for *not* later using this authorized access to unilaterally

27    "push" to customers a further update reversing the features to which they object. *Id.* ¶ 120 (HP "should

28    have pushed through" a fix to the firmware, rather than making it optional for download).  Pursuant to

this authority, HP updated the firmware to protect customers from "quality and potential security risks" (Strumwasser Decl., Ex. A)—plaintiffs just dislike the updated firmware. *See* Compl. ¶¶ 109, 229.

Plaintiffs' CFAA claim should be dismissed because plaintiffs must prove HP accessed the printers "without authorization," but they have not alleged the necessary facts to support such a theory. The three CFAA prongs that plaintiffs invoke apply *only* when a defendant accesses the device "without authorization." 18 U.S.C. § 1030(a)(5)(A), (B), (C). They do not permit liability for *exceeding* authorized access. *See id.* Thus, because plaintiffs correctly admit that HP had authority to access the printers, they do not allege the necessary predicate acts for subsection 1030(a)(5) liability.[3]

For example, the court in *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012), dismissed the same CFAA claims alleged here under analogous circumstances. There, plaintiffs alleged that Apple violated the CFAA because it continued to collect geolocation data after plaintiffs turned off the feature. The court dismissed the CFAA claims on the pleadings because "Apple had authority to access the iDevice"—at most "Apple arguably exceeded its authority when it continued to collect geolocation data." *Id.* Thus, plaintiffs "failed to sufficiently allege that" Apple "accessed Plaintiffs' iDevices 'without authorization.'" *Id.* at 1068. The same result is warranted here.

The Court should dismiss the CFAA claim with prejudice. The deficiency in the claim is not curable. Plaintiffs cannot credibly (or within the confines of Rule 11) allege that HP acted entirely "without authorization"—HP did not break into their printers when it allegedly accessed them to install a firmware update. Dismissal with prejudice is particularly appropriate for the CFAA, which is not a statute intended to be stretched through creative lawyering; the en banc Ninth Circuit has emphasized that courts must interpret the CFAA narrowly. *See Nosal I*, 676 F.3d at 858 (courts should "maintain[] the CFAA's focus on hacking rather than turning it into a sweeping Internet-policing mandate").

**2.    Plaintiffs' kitchen-sink approach to the California anti-hacking statute fails for the same, and additional, reasons (Claim 9).**

Plaintiffs' claim under California's anti-hacking statute fails for the same reason. California's criminal anti-hacking statute prohibits certain conduct taken "without permission." Cal. Penal Code

---

[3] To be sure, plaintiffs reference the words "without authorization" when reciting the statutory language. Compl. ¶¶ 231-32. But the *factual* allegations upon which they base their claim describe only a theory of exceeding authorized access. Compl. ¶¶ 228-229.

Gibson, Dunn &
Crutcher LLP

§ 502(c).  "[D]espite differences in wording, the analysis under both [the CFAA and California statute] is similar":  If a party has even "implied authorization to access" the computers, it does "not … violate the statute." *Facebook*, 844 F.3d at 1069.  Here, again, plaintiffs admit that HP had "authorized access" to their printers.  Compl. ¶ 228; *see id.* ¶ 239 ("HP had 'access' to Plaintiffs' and Class members' computers'").  Authorized access does "not … violate the statute." *Facebook*, 844 F.3d at 1069.  Thus, the claim should be dismissed with prejudice.

This claim should also be dismissed because plaintiffs plead only threadbare legal conclusions unsupported by factual allegations.  The only computer crime that plaintiffs allege is "HP's knowing implementation of its firmware update."  Compl. ¶ 242.  Based on that single alleged firmware update, plaintiffs allege that HP violated *seven* different subsections of California's anti-hacking statute.  *Id.*  Yet they provide no factual allegations to support the implausible idea that a firmware update from the manufacturer constitutes seven different types of computer hacking.  Instead, they just recycle the statutory language.  *Id.*  Such threadbare legal conclusions do not state a claim as a matter of law.  *See Eclectic Props.*, 751 F.3d at 996.  Particularly not here, because nothing in the statute criminalizes a company's installation of a firmware update.  *See* Cal. Penal Code § 502(c).

Although unnecessary, further scrutiny on a prong-by-prong level confirms that dismissal is appropriate.  For example, plaintiffs claim that HP violated subsection 502(c)(5) (Compl. ¶ 242(c)), which prohibits "[k]nowingly and without permission disrupt[ing] or caus[ing] the disruption of computer services or den[ying] or caus[ing] the denial of computer services to an authorized user of a computer, computer system, or computer network."  Cal. Penal Code § 502(c)(5).  But denial-of-service attacks are a specific type of hacking through which a hacker floods a computer system with so many requests that it becomes inoperable.  *See, e.g.*, Joshua McLaurin, *Making Cyberspace Safe for Democracy: The Challenge Posed by Denial-of-Service Attacks*, 30 Yale L. & Pol'y Rev. 211, 216 (2011) ("The simplest form of a DoS attack is information overload.").  That provision plainly does not apply:  plaintiffs do not allege that HP so overloaded their printers that they stopped functioning.

Similarly, it defies plausibility to claim that the alleged firmware update was a "computer contaminant" (Cal. Penal Code § 502(c)(8)), which is defined as "computer instructions commonly called viruses or worms, that are self-replicating or self-propagating and are designed to contaminate

other computer programs" (*id.* § 502(a)(12))—plaintiffs certainly provide no factual allegations to support a theory that HP injected a virus into their printers. Nor do plaintiffs plausibly allege that HP violated the prohibition on "tak[ing], cop[ying], or mak[ing] use of any data" (*id.* § 502(c)(2)) because, of course, the update did not take, copy, or use anything. The individual prohibition on unauthorized access (*id.* § 502(c)(7)) fails for the same reason as the CFAA claim. The remaining three prongs (subsections 502(c)(1), (3), and (4)) are also pleaded in bare statutory form; it is implausible as pled that the alleged firmware update was a "computer crime" flowing from "unauthorized access" under any of these provisions. Cal. Penal Code § 502(a). Were there any lingering doubt about the applicability of any ambiguous terms, the rule of lenity applies (*Leocal v. Ashcroft*, 543 U.S. 1, 11 n. 8 (2004)), and the statute must be interpreted narrowly (*see, e.g.*, *People v. Davis*, 29 Cal. 3d 814, 828 (1981)).

At bottom, these are criminal laws drafted in the 1980s. They were not intended to be tools for creating liability wherever the internet is involved. The en banc Ninth Circuit has been unequivocal that the Due Process Clause requires interpreting these laws narrowly, which is also the "more sensible reading of the text and legislative history of … statute[s] whose general purpose is to punish hacking." *Nosal I*, 676 F.3d at 863. For this reason, the canon of constitutional avoidance also requires dismissing the hacking claims. If the statutory provisions are interpreted as broadly as plaintiffs allege, then they are void for vagueness facially and as applied because they fail to define the offenses with sufficient definiteness and allow for arbitrary and discriminatory enforcement. *See, e.g.*, *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015); *Nosal I*, 676 F.3d at 861-63. This Court should choose the narrow interpretation of the statutes that does not create constitutional problems by turning the installation of a security update into a crime. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). The Court should dismiss this claim with prejudice.

### 3. Plaintiffs fail to state a cognizable trespass-to-chattels claim (Claim 10).

Plaintiffs' trespass claim is their third take on unlawful computer intrusion, and it should be dismissed for the same reason: HP did not access the printers without authorization.

"The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another." *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1480 (1986) (citations omitted). "Where

there is a consensual entry, there is no tort." *Id.* (citations omitted).  In *Intel Corp. v. Hamidi*, the California Supreme Court held that regular common law principles apply to allegations of digital trespass to chattels.  30 Cal. 4th 1342, 1364 (2003).  The court rejected the argument that "unauthorized use of another's chattel is actionable even without any showing of injury," and, in doing so, made clear that there must be at least *unauthorized* access in the first place.  *Id.* at 1356; *see also id.* at 1347 ("After reviewing the decisions analyzing *unauthorized electronic contact* with computer systems as potential trespasses to chattels, we conclude….") (emphasis added); *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566 (1996) ("Prosser notes trespass to chattel has evolved considerably from its original common law application—concerning the asportation of another's tangible property—to include even the *unauthorized* use of personal property.") (emphasis modified).[4]

Here, plaintiffs allege that HP "wrongfully and intentionally interfered" with their printers.  Compl. ¶ 246.  But they fail to allege the touchstone of trespass:  that HP entered their printers without authorization.  *See Miller*, 187 Cal. App. 3d at 1480.  As explained above in the CFAA section, that is an allegation plaintiffs cannot make, because plaintiffs admit that HP had "authorized access."  Compl. ¶ 228.  Thus, like the CFAA claim, the trespass claim should be dismissed with prejudice.

**B.    Plaintiffs' Consumer Protection Claims Should Be Dismissed**

**1.    Plaintiffs' California consumer protection claims fail.**

Plaintiffs' claims under the UCL (Cal. Bus. & Prof. Code § 17200, *et seq.*), False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*) ("FAL"), and Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) ("CLRA") all fail to state a plausible claim and should be dismissed.

**a.    Plaintiffs fail to state a claim under the FAL, the CLRA, and the "fraudulent" prong of the UCL (Claims 2-4).**

Plaintiffs allege that HP made misrepresentations and omissions about the compatibility of third-party ink cartridges with their printers, and based on those allegations, assert three duplicative claims under the FAL, the CLRA, and the "fraudulent" prong of the UCL.  *See generally* Compl. ¶¶ 146-92 (claims 2, 3 and 4).  These claims should be summarily dismissed as to plaintiffs San Miguel,

---

[4]  In addressing plaintiffs' common-law tort claims, HP cites California law for purposes of the motion to dismiss only.  HP does not concede the applicability of California law to the putative nationwide class or any non-California plaintiff.

Gibson, Dunn & Crutcher LLP

Lawty, Faust, and Ware, who do not even *allege* that they were affirmatively misled.  The claims should also be dismissed as to plaintiff Andrews, whose allegations fail the heightened Rule 9(b) standard that applies, and as to plaintiff Doty, whose theory of fraud fails the "reasonable consumer" test.  *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) ("Plaintiff's claims under the UCL, FAL, [and] CLRA … sound in fraud, and are subject to the heightened pleading requirements of Rule 9(b)."); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) ("The standard for all three statutes is the 'reasonable consumer' test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue.").

Plaintiffs San Miguel, Lawty, Faust, and Ware do not allege or identify any HP representation that they saw or relied upon when purchasing their printers.  That is a basic element of their UCL, FAL, and CLRA claims, and therefore the claims are inadequately pleaded as to those four plaintiffs.  *See, e.g.*, *Pirozzi*, 913 F. Supp. 2d at 850 (dismissing UCL, FAL, and CLRA claims because, "[w]hile Plaintiff identifies a number of representations made by Apple," "she fails to provide the particulars of her own experience reviewing or relying upon any of those statements").  Indeed, plaintiffs San Miguel and Lawty have *expressly disclaimed* any theory of fraud.  *See* ECF No. 29 at 1 ("Plaintiffs do not sue on a warranty or fraud theory, or broadly assert that HP was inherently obligated to make its printers compatible with any and all third-party cartridges.") (citation and quotation marks omitted).[5]

Plaintiff Andrews' vague allegations are also insufficient under Rule 9(b).  He alleges generally that "HP represented on the product box that the printer used [901 and 61 ink cartridges]," that these "labels are generic part numbers for cartridges that are compatible … with his printer," and that "[h]e relied to his determinant on HP's material misrepresentations … that he would be able to buy third-

---

[5] General allegations elsewhere (*see, e.g.*, Compl. ¶¶ 149-156) cannot save the individual plaintiffs' pleading deficiencies.  *See, e.g.*, *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (complaint failed Rule 9(b) when it did "not specify which plaintiff received which" allegedly fraudulent statement "or which plaintiff(s)" relied on it); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1006 (S.D. Cal. 2011) (dismissing claims pursuant to Rule 9(b) where the complaint did "not specify which of the advertising claims *each* Plaintiff saw or read" and did "not consistently allege that *each* Plaintiff saw or read the advertising claims before purchasing the product and purchased the product in reliance on the advertising representations"); *Abarca v. Merck & Co.*, 2010 WL 1054010, at *7 (E.D. Cal. Mar. 17, 2010) ("The complaint does not specifically articulate either the nature of the communications received by each Plaintiff or the actions each Plaintiff undertook in reliance on those communications.… Plaintiffs must specifically articulate which Plaintiffs received which allegedly misleading, half-truth communications and how each Plaintiff relied upon those communications to their detriment.").

1    party ink cartridges and use them in his printer." *Id.* ¶¶ 63, 71. But Andrews does not identify the

2    specific content of the statements appearing on his printer box that he supposedly relied on when buying

3    the printer. Rule 9(b) requires that he allege the *specific* words HP used *and* how those words

4    supposedly misled him. *See, e.g.*, *Kearns*, 567 F.3d at 1126 (a plaintiff must "specify what [the alleged]

5    advertisements or other sales material specifically stated"). His failure to do so requires dismissal.

6         Plaintiff Doty alleges that he was misled by HP representations on the printer box and a "printer

7    ink card" that was inside the printer box. Compl. ¶¶ 46-52. His claim fails because no reasonable

8    consumer would have been misled by the language upon which he relies—which says precisely the

9    *opposite* of what Doty alleges it says. Doty does not identify *any* HP representation guaranteeing the

10   compatibility of third-party ink cartridges. According to Doty, "HP affirmatively represented on the

11   product box that the printer used [950, 950xl, 951, and 951xl] cartridges" and these "labels are generic

12   part numbers for all cartridges that are compatible in size and function with his printer." Compl. ¶ 46.

13   He contends that HP's "representations and omissions reinforced his belief when he bought the printer

14   that he could use any brand of 950, 950xl, 951, and 951xl ink cartridges, including those not made or

15   sold by HP." *Id.* ¶ 48. He also claims his understating was "reinforced" by a "printer ink card" inside

16   his HP printer box, which stated: "Say it best with Original HP ink." *Id.* ¶ 52.

17        No reasonable consumer would reach Doty's alleged conclusion. The packaging and ink card

18   do not state that generic print cartridges are compatible—they do not even mention generic cartridges.

19   As is clear from the very picture of the product packaging that Doty includes in the Complaint, the

20   packaging (and the ink card inside) state the opposite: the printer is compatible with "HP Original Ink"

21   950 and 951 cartridges (which are original HP parts numbers). *Id.* ¶ 46. It is simply not plausible that

22   statements promoting the use of "HP Original Ink" fraudulently represented compatibility with *non-*

23   HP ink. *See, e.g.*, *Werbel v. PepsiCo, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010)

24   (dismissing FAL, UCL, and CLRA claims where "[i]t is obvious from the product packaging that no

25   reasonable consumer would believe" plaintiff's alleged interpretation); *Ford v. Hotwire, Inc.*, 2007 WL

26   6235779, at *4 (S.D. Cal. Nov. 19, 2007) (same where "[p]laintiff's complaint fail[ed] to allege a

27   plausible claim that a reasonable consumer is likely to be deceived by" defendant's representations);

28

Gibson, Dunn &
Crutcher LLP

1    *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 980 (C.D. Cal. 2013) (same where plaintiff's

2    understanding of defendant's representation would not be "shared by the reasonable consumer").

3         Indeed, Doty's isolated experience demonstrates the implausibility of his position.  Four of his

4    co-plaintiffs do not even claim to have been misled by this packaging, two of which already *disavowed*

5    any theory of fraud at all.[6]  "[A] representation does not become false and deceptive merely because it

6    will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of

7    persons to whom the representation is addressed."  *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152,

8    1162 (9th Cir. 2012) (citation and quotation marks omitted).  That is the situation here:  at best, Doty

9    "unreasonably misunderstood" that references to "HP ink" were references to generic ink.  This is

10   apparent from the face of the Complaint.

11        Moreover, the statement on the ink card (which also only referenced "HP Original Ink") was

12   *inside* the printer box and thus by definition could not have induced Doty's printer purchase.  That too

13   prevents it from being actionable as a matter of law.  *See, e.g., Hall v. Sea World Entm't, Inc.*, 2015

14   WL 9659911, at *5 (S.D. Cal. Dec. 23, 2015) (dismissing UCL, FAL, and CLRA claims because "the

15   complaint d[id] not allege that the named plaintiffs actually saw or read [the challenged] statements …

16   *prior to* purchasing their [items]") (emphasis added).  The Court should thus dismiss Doty's FAL,

17   CLRA, and fraudulent UCL claims as well.

18        Separately, plaintiffs point to statements made in HP's Limited Warranty for their UCL and

19   CLRA claims.  *See, e.g.*, Compl. ¶¶ 153, 186.  But no plaintiff alleges to have read or relied upon any

20   of those statements, which means they cannot support a claim of fraud.  *See Pirozzi*, 913 F. Supp. 2d

21   at 850; *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d at 1006.  And the language

22   that plaintiffs cite does not state that HP printers would be compatible with third-party ink cartridges

23   (Compl. ¶¶ 122-23); no reasonable consumer could have thought it said something it does not.

24        Plaintiffs also allege (only in their UCL claim) that the "error messages" displayed on their

25   printers falsely induced them to buy HP ink cartridges.  Compl. ¶¶ 165-67.  But to the extent plaintiffs

26   needed to buy more or different ink cartridges, that alleged injury was not caused by the error

27

28   _____

     [6]  *See* ECF No. 29 at 1; *id.* at 3 ("Plaintiffs do *not* allege that HP failed to deliver a benefit of the
         bargain connected with their earlier printer purchases.") (emphasis in original); *id.* at 4
         ("Plaintiffs do not assert a broken promise or other point-of-sale injury.").

messages.  The messages did not cause an independent economic injury.  The "error messages" therefore cannot support a standalone UCL fraud claim.  *See, e.g.*, *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011)  (plaintiffs must identify "*economic injury* [that] was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim") (emphasis in original).

Finally, plaintiffs invoke a theory of a failure to disclose under the UCL, FAL, and CLRA.  *See, e.g.*, Compl. ¶¶ 160, 162.  That too fails, as plaintiffs have not alleged any facts that could support a finding that HP had a legal duty to disclose anything regarding its printers' compatibility with third-party ink cartridges.  "[A] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (rejecting a "broad obligation to disclose" on the part of manufacturers); *see Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) (same); *Ferranti v. Hewlett-Packard Co.*, 2015 WL 5302674, at *7 (N.D. Cal. Sept. 10, 2015) (Davila, J.) (same).  Absent affirmative misrepresentations, only omissions regarding a "physical injury" or "safety concerns" are actionable under California's consumer protection statutes—but plaintiffs do not and cannot make any such allegations.  *See Hodges v. Apple, Inc.*, 640 F. App'x 687, 690 (9th Cir. 2016); *Wilson*, 668 F.3d at 1141; *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 965 (N.D. Cal. 2016); *People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.,* 2016 WL 1642577, at *4 (N.D. Cal. Apr. 26, 2016).  Plaintiffs do not (and cannot) allege any such product safety omissions.  This theory is not legally viable and should be dismissed.

> **b.    Plaintiffs fail to plead a violation of the UCL "unfair" prong (Claim 1).**

Plaintiffs' claim under the UCL prong prohibiting "unfair" business acts or practices also should be dismissed.  Rule 9(b) applies because plaintiffs' allegations sound in fraud (*e.g. Kenery v. Wells Fargo, N.A.*, 2015 WL 5138635, at *2 (N.D. Cal. Sept. 1, 2015) ("Where a claim under the unfair prong is based upon alleged fraudulent conduct, that claim likewise must satisfy the heightened pleading requirements of Rule 9(b)."))—but Plaintiffs' claim does not even meet Rule 8.

Courts have not coalesced on a uniform standard applicable to the "unfair" prong of the UCL in the consumer context.  *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735-36 (9th Cir.

2007).  Courts generally apply either the "tethering" test set in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), or the "balancing" test in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999).  *See Lozano*, 504 F.3d at 735-36.  Plaintiffs fail to state a viable UCL claim under either test.

*Cel-Tech* "Tethering" Test:  The *Cel-Tech* test requires a plaintiff to establish that the defendant engaged in "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187.  Thus, the alleged "unfairness must 'be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *Lozano*, 504 F.3d at 735 (quoting *Cel-Tech*, 20 Cal. 4th at 186-87).  The most fully reasoned opinions analyzing which of the various standards should govern the "unfair" prong of the UCL in the consumer context conclude that the *Cel-Tech* test is the most appropriate, on the basis that "[a]lthough the California Supreme Court did not reach the issue of consumer cases, the rationale of *Cel-Tech* nonetheless compels the conclusion that the unfairness prong must be tethered to some legislative policy, otherwise the courts will roam across the landscape of consumer transactions picking and choosing which they like and which they dislike." *See Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, at *8 (N.D. Cal. Nov. 7, 2007); *Dominic Corea LP v. ILD Telecommc'ns, Inc.*, 2013 WL 821193, at *4, *5 n.5 (C.D. Cal. Jan. 23, 2013) (same).

Plaintiffs' conclusory allegations do not satisfy the *Cel-Tech* test.  Plaintiffs do not allege what antitrust law or policy any alleged conduct by HP violates, nor do they allege an anticompetitive effect that this conduct had or threatens to have.  These failures are dispositive and require dismissal.

Plaintiffs vaguely contend that HP's conduct is "contrary to California law and policy" (Compl. ¶ 139), but they have not "tethered" this claim to any *specific* constitutional, statutory, or regulatory provision, as required.  *Cel-Tech*, 20 Cal. 4th at 185-87.  Plaintiffs allege that HP's conduct "contravenes the legislatively declared policy against unfair methods of business competition" (Compl. ¶ 137), but this is merely a legal conclusion—and a circular one at that, i.e., that HP violated the UCL by virtue of violating the UCL.  Such allegations, which "'are no more than conclusions, are not entitled to the assumption of truth.'" *Eclectic Props.*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 679); *see*

*Palmer v. Apple Inc.*, 2016 WL 1535087, at *7 (N.D. Cal. Apr. 15, 2016) (dismissing UCL claim similarly alleging that the defendant's conduct offended the "public policy in support of truth in advertising," because "plaintiff fail[ed] to identify which constitutional, regulatory, or statutory provision to which the alleged violation is tethered"); *Campos v. Bank of Am., Inc.*, 2012 WL 2862603, at *9 (N.D. Cal. July 11, 2012) (allegations are "too vague to satisfy the requirements of the UCL [if] they do not state an articulated public policy found in a statute or expressed by an affirmative or specific government enactment"); *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1273 (2006) (plaintiff did not satisfy *Cel-Tech* test because "the 'right' upon which [plaintiffs' claims] actually rely … is one based on a contract such as a warranty, not on a legislatively declared policy").

Moreover, while plaintiffs use a few antitrust buzzwords and catchphrases (*see* Compl. ¶ 138(a)-(j)), they fail to allege any specific *facts* to support their conclusory allegations. *See Twombly*, 550 U.S. at 555. For example, plaintiffs allege a "market for printer cartridges" but they make no attempt to identify the contours of this amorphous alleged market. Plaintiffs fail to allege any facts supporting this alleged separate market for supplies, such as what particular products that market includes, what geography that market covers, who the competitors in that market are, which particular products or competitors HP allegedly excluded from that market, and to what specific qualitative or quantitative effect—nor do plaintiffs allege, let alone plausibly, that HP has the requisite market power in this amorphous market. Absent such particularized factual and legal averments "'tether[ing]' [plaintiffs'] allegations of unfairness to any underlying law," plaintiffs' claims must be dismissed. *Sanchez v. Bear Stearns Residential Mortg. Corp.*, 2010 WL 1911154, at *7 (S.D. Cal. May 11, 2010); *Symbolic Aviation, Inc. v. PNCEF, LLC*, 2010 WL 3584509, at *8 (S.D. Cal. Sept. 8, 2010) (same).

Plaintiffs also fail to tether the alleged unfair conduct to "some actual or threatened impact on competition," another fatal deficiency. *Cel-Tech*, 20 Cal. 4th at 186-87. Plaintiffs generally allege that "HP devised and executed its firmware update as a means of gaining an advantage over its competition in the market for printer ink cartridges." Compl. ¶ 1; *see also*, *e.g.*, *id.* ¶¶ 105-07, 138-43. But, again, plaintiffs do not identify *what* specific impact HP's alleged conduct has had on *which* cognizable product market and *how* any alleged anticompetitive impact on that market came to pass—all of which plaintiffs must plead *plausibly* and *nonspeculatively*, with sufficient factual support. *See Eclectic*

*Props.*, 751 F.3d at 995-96.  Plaintiffs' Complaint thus falls short of even the Rule 8 pleading standard, let alone the heightened Rule 9(b) standard applicable here.  Having failed to plausibly allege that "the effect of [HP's conduct] amounts to a violation of antitrust laws or otherwise significantly threatens or harms competition," plaintiffs' UCL claim should be dismissed.  *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136-37 (9th Cir. 2014) (plaintiff's "very general allegation" of harming competition failed to state a viable claim) (quotation marks and citation omitted); *Davis*, 691 F.3d at 1170 (dismissing action where the complaint "advance[d] no factual allegations to support the claim that [defendant's conduct] threatens to violate the letter, policy, or spirit of the antitrust laws, or that it harms competition").

   *South Bay* "Balancing" Test:  Under the alternative *South Bay* test, conduct is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Davis*, 691 F.3d at 1169 (quoting *South Bay*, 72 Cal. App. 4th at 886-87) (quotation marks omitted).  Courts examine the challenged practice's "impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer."  *Davis*, 691 F.3d at 1169 (quotation marks and citation omitted).

   Plaintiffs' Complaint recites the legal requirements of the *South Bay* balancing test (*see, e.g.*, Compl. ¶¶ 139, 141), but, again, contains no factual allegations explaining how and why the test is satisfied here.  Like the *Cel-Tech* test, the *South Bay* test requires plaintiffs to establish that the conduct at issue "offends an *established* public policy."  As explained in the prior section, plaintiffs have not done so—they have not even tried.  While plaintiffs parrot legal elements, they offer no plausible factual allegations that could support such a finding.  This is not sufficient.  *See Palmer*, 2016 WL 1535087, at *7 ("conclusory" allegations that defendant's conduct was "immoral, unethical, oppressive, unscrupulous, and injurious" held insufficient to satisfy the balancing test).

   Further, plaintiffs do not and cannot plausibly allege that HP's alleged firmware update constitutes "immoral, unethical, oppressive, unscrupulous, or substantially injurious conduct."  *See Davis*, 691 F.3d at 1170 (affirming dismissal of UCL claim because "nothing in the FAC supports the conclusion that the [challenged actions] were against public policy, immoral, unethical, oppressive, or unscrupulous"); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 928 (N.D. Cal. 2012) (dismissing UCL claim under *South Bay* test, explaining that "the court is loath to pass judgment on a design decision

that is clear only in hindsight to have been a mistake"); *Palmer*, 2016 WL 1535087, at *7 ("Without additional allegations of wrongdoing, it is hard to see how Apple's failure to disclose the details of how the iPhone 5 switched off its Wi-Fi capability to improve battery life was 'immoral, unethical, oppressive, or unscrupulous.'"). Indeed, as HP never represented that its printers were compatible with third-party ink cartridges, plaintiffs never bargained for the right to use their HP printers with such cartridges. Therefore, allegedly losing that right cannot constitute "unfair" conduct under the UCL as a matter of law. *See Bardin*, 136 Cal. App. 4th at 1270 (plaintiff could not state UCL claim where plaintiff did not allege that the challenged "use of tubular steel exhaust manifolds violated any warranty or other agreement" or posed "personal injury or safety concerns").

Plaintiffs also fail to plausibly allege that any harm they suffered outweighs the utility of HP's conduct, as the *South Bay* standard requires. Plaintiffs claim that "[t]he gravity of the harm resulting from HP's conduct … outweighs any possible utility of this conduct" (Compl. ¶ 141), but these are just more conclusory allegations. *See Eclectic Props.*, 751 F.3d at 996. Courts routinely dismiss UCL claims so devoid of plausible factual underpinning. *See, e.g., Cullen v. Netflix, Inc.*, 2013 WL 140103, at *9 (N.D. Cal. Jan. 10, 2013) (Davila, J.) ("unsupported and conclusory assertions that the weight of Plaintiff's and class members' damages outweigh the utility of" the defendant's conduct held insufficient); *Williamson v. McAfee, Inc.*, 2014 WL 4220824, at *7 (N.D. Cal. Aug. 22, 2014) (Davila, J.) (dismissing UCL claim for failure to "include[] allegations that go towards comparing the harm to consumers against the utility of [d]efendant's conduct").

Indeed, plaintiffs' allegations *disprove* their unsupported assertions. The statement issued by HP on September 28, 2016 that plaintiffs link to and quote in their Complaint explains that the firmware "updated a cartridge authentication procedure" in HP printers "to ensure the best consumer experience and protect them from counterfeit and third-party ink cartridges that do not contain an original HP security chip and that infringe on [HP's] IP." Strumwasser Decl., Ex. A. The statement further clarifies that, "[w]hen ink cartridges are cloned or counterfeited, the customer is exposed to quality and potential security risks, compromising the printing experience." *Id.* In other words, the firmware was designed to prevent ongoing infringement of HP's intellectual property rights and to protect consumers from potential security risks and less reliable cloned ink cartridges. HP's cartridge authentication procedures

1   cannot be found "unfair" in light of these justifications—certainly, plaintiffs fail to plausibly allege

2   otherwise.  This warrants dismissal.  *See Davis*, 691 F.3d at 1170 (affirming dismissal of complaint in

3   part because "any harm is offset by Best Buy's strong justification for publishing the advertisement"

4   at issue); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1118 (N.D. Cal. 2016) (dismissing UCL

5   claim where defendant's conduct was "not immoral or oppressive" because plaintiff "failed to allege

6   how the[] numerous benefits [of the challenged conduct] outweigh" the alleged harm); *Elias*, 903 F.

7   Supp. 2d at 858 (dismissing UCL claim where plaintiff "d[id] not allege any basis for concluding that

8   [plaintiff's] injury outweighs the reasons, justifications and motives of [d]efendants").

9          Regardless of which test the Court applies, it should dismiss the UCL unfair practices claim.[7]

10                 **c.      Plaintiffs' derivative "unlawful" UCL claim fails (Claim 1).**

11         Plaintiffs also fail to state a claim under the "unlawful" prong of the UCL, which "borrows

12   violations of other law and treats them as unlawful practices."  *Cel-Tech*, 20 Cal. 4th at 180 (citation

13   and quotations omitted).  Plaintiffs predicate this claim on their allegations that HP's conduct has

14   violated the FAL, the CLRA, the CFAA, California Penal Code § 502, and common-law trespass-to-

15   chattels and tortious-interference claims.  *See* Compl. ¶ 137.  Because plaintiffs fail to plead viable

16   claims under those theories, as shown above and below, their derivative "unlawful" UCL claim should

17   be dismissed as well.  *See Palmer*, 2016 WL 1535087, at *6; *Smith v. Level 4 Commc'ns Inc.*, 2014

18   WL 7463803, at *4 (N.D. Cal. Dec. 30, 2014).

19          **2.      The Court should dismiss Plaintiffs' other consumer protection law claims.**

20                 **a.      San Miguel's Texas Deceptive Trade Practices claim fails (Claim 5).**

21         Plaintiff San Miguel seeks relief under the Texas Deceptive Trade Practices – Consumer

22   Protection Act (Tex. Bus. & Com. Code Ann. § 17.01, *et seq.*) ("DTPA").  Compl. ¶¶ 201-02.  His

23   DTPA claim fails for the same reasons as his fraud-based UCL, FAL, and CLRA claims.

24

25   _____

26   [7]  Plaintiffs' allegation that they "could not have reasonably avoided injury from HP's unfair business
     conduct" (Compl. ¶ 142) implies that they might alternatively be trying to plead a UCL claim under
27   the three-pronged standard contained in the Federal Trade Commission Act, 15 U.S.C. § 45(a).
     Such an approach would be misguided, as the Ninth Circuit has expressly stated that it "do[es] not
28   agree that the FTC test is appropriate" in consumer cases such as this one and has "decline[d] to
     apply the FTC standard" in this context.  *Lozano*, 504 F.3d at 736.  Regardless, plaintiffs' claim
     would fail under the FTC standard for the same reasons it fails under the other tests.

1    The DTPA "grants consumers a cause of action for false, misleading, or deceptive acts or

2    practices." *Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 842 (S.D. Tex. 2009) (citation and

3    quotation marks omitted).  "Claims alleging violations of the DTPA are subject to the requirements of

4    Rule 9(b)."  *Patel v. Holiday Hosp. Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001).

5    San Miguel alleges that "HP affirmatively represented that the [printers] would function with

6    compatible third-party ink cartridges, while failing to disclose that HP would disable printers operating

7    with such cartridges."  Compl. ¶¶ 197-98.  But he already represented to the Court that he does "not

8    sue on a warranty or fraud theory."  ECF No. 29 at 1.  And, indeed, he still does not allege that he relied

9    on any misrepresentations or omissions.  Compl. ¶¶ 14-19; *see Campa v. Nationwide Prop. & Cas. Ins.

10   Co.*, 2010 WL 3733469, at *1 (S.D. Tex. Sept. 7, 2010) (dismissing TDPA claim because Rule 9(b)

11   requires "specificity as to the statements (or  omissions) considered to be fraudulent, the speaker, when

12   and why the statements were made, and an explanation why they were fraudulent").  Further, as

13   explained above, none of the alleged HP statements can plausibly be described as false, misleading, or

14   deceptive, because they do not guarantee the compatibility of third-party ink cartridges with HP

15   printers. *See Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1099 (5th Cir. 1988) ("Because

16   we have concluded that Gulf did not make inaccurate representations…, there is accordingly no basis

17   for DTPA misrepresentation liability").

18   Plaintiff San Miguel also fails to allege that he gave HP notice of his DTPA claim as required.

19   Tex. Bus. & Com. Code § 17.505(a).  Thus, at a minimum, HP is entitled to have this claim held in

20   abeyance until he complies with the DTPA's strict notice requirements.  *Patel*, 172 F. Supp. 2d at 826.

21          **b.     Lawty's Washington Consumer Protection Act claim fails (Claim 6).**

22   Plaintiff Lawty seeks relief under the Washington Consumer Protection Act (Wash. Rev. Code

23   Ann. § 19.86.010, *et seq.*) ("WCPA").  Compl. ¶ 211.  Her WCPA claim sounds in fraud, and she

24   cannot satisfy Rule 9(b).  *Id.* ¶¶ 207-209; *see Brodie v. Northwest Trustee Servs., Inc.*, 2012  WL

25   4468491, at *5 (E.D. Wash. Sep. 27, 2012) (applying Rule 9(b) to WCPA claim).

26   Lawty's WCPA claim is indistinguishable from her claims under the "fraudulent" and "unfair"

27   prongs of the UCL and thus fails for the same reasons.  Like San Miguel, Lawty has expressly

28   disclaimed any intent to pursue fraud claims against HP.  *See* ECF No. 29 at 1.  And she too does not

specifically allege the content of, or reliance on, any misleading representation or omission. That requires dismissal. *See, e.g.*, *Green v. Wachovia Mortg. FSB*, 2012 WL 993586, at *3 (E.D. Wash. Mar. 22, 2012) (dismissing WCPA claim where plaintiff failed to "identify any specific misrepresentations that were made by Wachovia or what specific materials were omitted"). Indeed, Lawty does not even allege that she saw any of the purported misstatements before purchasing her printer. *See Maple v. Costco Wholesale Corp.*, 2013 WL 11842009, at *6 (E.D. Wash. Aug. 1, 2013) (dismissing WCPA claim "[i]n light of Plaintiff's failure to allege that he relied on the alleged deceptive statements on the label, or that he even read such statements prior to purchasing the drink, [because] the Court cannot credit the naked assertions that he would not have purchased the drink had the label not contained such statements"). Her anticompetitive theory fares no better. Without additional "factual enhancement," Lawty's speculative antitrust theory that HP's firmware conduct has harmed competition does not "cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 557).

### c.    Ware's New Jersey Consumer Fraud Act claim fails (Claim 7).

Plaintiff Ware invokes the New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, *et seq.*) ("NJCFA"), stating in the most conclusory terms that "[i]n its advertising and sale of [printers], HP employed unconscionable commercial practices, deception, fraud, misrepresentations, and the knowing concealment, suppression, and omission of material facts, with the intent that others rely thereon." Compl. ¶ 215. These "labels and conclusions" do not pass muster under Rule 8 (*Twombly*, 550 U.S. at 555), let alone the exacting Rule 9(b) standard applicable to Ware's NJCFA claim. *See, e.g.*, *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008).

The Court should dismiss the NJCFA claim for the same reasons as the UCL, FAL, and CLRA claims. Most importantly, plaintiff Ware fails to identify any unlawful practice by HP specific to him. The Complaint is devoid of any specific allegations concerning any supposedly misleading representation or omission that caused plaintiff Ware any ascertainable loss. *See Reckitt Benckiser LLC v. Cotiviti, LLC*, 2016 WL 5791410, at *4 (D.N.J. Oct. 3, 2016) ("Plaintiff must identify each statement and/or omission … that he alleges violates the [NJCFA] and plead with particularity the basis upon which he contends that such statement and/or omission is false or misleading."); *Torres-*

*Hernandez*, 2008 WL 5381227, at *6-7 (dismissing NJCFA claim where plaintiff had failed to allege any "specific factual allegations" concerning misrepresentations and concealment by defendant and had "rel[ied] on legal conclusions that fail[ed] to allege 'when statements were made or when the plaintiffs were exposed to the statements'") (citation omitted).  The claim should thus be dismissed.

### C.    Plaintiffs' Tortious Interference Claim Should Be Dismissed With Prejudice As Inapplicable And Incurably Pleaded (Claim 11)

Plaintiffs' final "claim" actually mushes two separate torts—intentional interference with contractual relations and intentional interference with prospective economic advantage—into a single "and/or" claim.  But plaintiffs fail to allege required and basic elements of each tort.  This claim should be dismissed without leave to amend for several reasons, including because neither tort even applies to the consumer transaction context into which plaintiffs seek to import them.

To state a claim for intentional interference with contractual relations, plaintiffs must show: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage.  *See, e.g.*, *Pac. Gas & Electric Co.*, 50 Cal. 3d at 1126; *Name.Space, Inc. v. ICANN*, 795 F.3d 1124, 1133 (9th Cir. 2015).

Plaintiffs fail this test at each element.  For starters, they "supply no facts concerning the identity of any third party with whom they had contracted."  *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015).  The allegations must be specific enough to put defendants "sufficiently on notice to defend themselves from the claim of causing the breach or disruption of those contracts."  *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1012 (N.D. Cal. 2013).  Plaintiffs' Complaint fails this requirement.  Courts routinely dismiss "tortious interference with contract claims where no specific parties to the contracts were alleged," as here.  *R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *17 (N.D. Cal. Nov. 11, 2016) (collecting cases).  Nor do plaintiffs properly allege any of the other elements.  They fail to provide any specific allegations that HP was aware of any specific contracts, that it intended to breach or disrupt those contracts, that those specific contracts were in fact breached or disrupted (or even the material terms of those contracts), or that they were damaged by the disruption of those contracts.  *See, e.g.*,

1  *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1115.  Courts have been clear that generic allegations of the

2  type plaintiffs make do not provide the required specificity for an interference tort and cannot survive

3  a motion to dismiss.  *See, e.g.*, *Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189,

4  1201 (S.D. Cal. 2013); *Name.space, Inc. v. ICANN*, 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013).

5         Plaintiffs also fail to state a claim for intentional interference with prospective economic

6  advantage.  The elements are:  (1) an economic relationship between the plaintiff and a third party,

7  with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the

8  relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual

9  disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of

10  the defendant.  *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

11  To meet the third element, "a plaintiff must plead and prove that the defendant's acts are wrongful

12  apart from the interference itself."  *Id.* at 1154; *Orchard Supply*, 939 F. Supp. 2d at 1012 (same).

13         Plaintiffs insufficiently plead each element of this tort as well.  For example, plaintiffs have not

14  alleged any wrongful act separate from the supposed interference.  *Korea Supply Co.*, 29 Cal. 4th at

15  1160.  And they have not sufficiently alleged any *actual* prospective business relationship interfered

16  with:  "[a]llegations that a defendant interfered with a relationship with an 'as yet unidentified' [third

17  party] will not suffice."  *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1117; *see also R Power Biofuels*,

18  LLC, 2016 WL 6663002, at *17 (dismissing claim based on failure to provide "details about specific

19  companies," rendering it "impossible to even tell how many such relationships existed"); *Seoul Laser*

20  *Dieboard Sys. Co.*, 957 F. Supp. 2d at 1201 ("Conclusory assertions that 'Defendants intentionally and

21  tortiously interfered with the prospective business advantage that [Plaintiff] enjoyed with its suppliers,

22  distributors and customers' and that Plaintiff suffered damage do not suffice.").  Plaintiffs also do not

23  explain how HP prevented them from buying ink cartridges from other sellers (it did not)—so there is

24  no intended or actual disruption of any third-party relationships or proximate causation.

25         These pleading deficiencies are incurable.  These torts are about drawing the proper lines

26  around fair competition among *businesses*, not about finding avenues for tortious liability in *consumer*

27  transactions.  Indeed, the prospective interference tort is regularly called "intentional interference with

28  prospective *business* advantage."  *See, e.g.*, *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1115 (emphasis

Gibson, Dunn &
Crutcher LLP

added).  The California Supreme Court has explained that there is already a difficult balancing act in applying these torts to business transactions:  "The torts of inducing breach of contract and interference with prospective advantage have been criticized as protecting the secure enjoyment of contractual and economic relations at the expense of our interest in a freely competitive economy."  *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1136.  Accordingly, courts have deliberately "been cautious in defining the interference torts, to avoid promoting speculative claims" like those brought here.  *Id.*

Yet plaintiffs seek a wholesale expansion of these torts into the realm of consumer transactions.  They posit a theory that buying a product is a "sales transaction[]" with "contractual conditions of sale," so that any limitations imposed on the use of any product for use with another product become "interference with contractual conditions of sale" and with the "expectation that [plaintiffs] could continue to purchase" the product.  Compl. ¶¶ 250, 255-256.  This theory is as legally unsupportable as it is nonsensical, and it falls apart under even slight scrutiny.  Plaintiffs may have allegedly (and temporarily) lost an incentive to buy generic cartridges from certain as-of-yet undisclosed counterparties, but they did not suffer tortious interference in their ability to make such purchases.[8]

The Court should dismiss these tort claims with prejudice.  Plaintiffs cannot cure their deficient allegations, because these torts do not apply to the conduct for which they seek relief.

## VI.    CONCLUSION

For the foregoing reasons, HP respectfully submits that the Court should dismiss all of plaintiffs' claims, including claims eight through eleven with prejudice.

Dated: April 21, 2017                          Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Samuel Liversidge*
       Samuel Liversidge

Attorneys for Defendant HP INC.

---

[8]  Further, plaintiffs' attempt to import the law of torts into the world of contracts is one that courts reject.  *See, e.g.*, *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 182 (2004) (injecting tort liability would be "a radical departure from well-established limits to commercial recovery"); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 479-80 (1996).  That is particularly true for these interference torts, which are already viewed skeptically, and even more so with plaintiffs' uncertain allegation that HP may have only committed one of the torts.  Compl. at p. 36 (alleging HP "and/or" committed the torts).