Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Elizabeth A. Kramer (SBN 293129)
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*dcg@girardgibbs.com*
*je@girardgibbs.com*
*eak@girardgibbs.com*

*Counsel for Plaintiffs*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTHERN CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE HP PRINTER FIRMWARE UPDATE LITIGATION | Case No. 5:16-cv-05820-EJD-SVK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: May 31, 2018<br>Time: 9:00 a.m.<br>Place: Courtroom 4<br>Judge: Hon. Edward J. Davila |

# REDACTED
Filed Under Seal

1

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION...................................................................................1

INTRODUCTION ...............................................................................................................2

STATEMENT OF ISSUES TO BE DECIDED ...................................................................3

STATEMENT OF FACTS .................................................................................................3

    A.    HP Designed Dynamic Security to Restrict Consumer Choice and
        Increase Its Profits from Sales of Ink Cartridges. ...........................................4

    B.    Dynamic Security Applied Uniform Technology to All Class Printers
        Identically. ...............................................................................................5

    C.    HP Implemented Dynamic Security in the Class Printers, Resulting in
        Unexpected Product Failures. .......................................................................6

    D.    Consumers Were Deceived by HP's Course of Conduct.....................................8

    E.    HP Sought to Capitalize on the Print Failures by Steering Affected
        Consumers to Purchase Its Products and Services...........................................10

    F.    Despite Apologizing, HP Intends to Disable Consumers' Working
        Printers Again in the Future.........................................................................11

LEGAL STANDARD .......................................................................................................12

ARGUMENT ..................................................................................................................12

I.      PLAINTIFFS SATISFY THE PREREQUISITES OF RULE 23(A). ....................................12

    A.    The Class Members Are Sufficiently Numerous to Make Joinder
        Impracticable............................................................................................12

    B.    The Claims Involve Common Issues of Fact and Law. ....................................13

    C.    Plaintiffs' Claims Are Typical of the Class. ..................................................14

    D.    Plaintiffs and Their Counsel Will Adequately Represent the Class. ..................14

II.     CERTIFICATION OF AN INJUNCTIVE RELIEF CLASS IS WARRANTED....................15

III.    COMMON QUESTIONS PREDOMINATE WITH RESPECT TO HP'S LIABILITY
      FOR COMPUTER ABUSE AND TRESPASS TO CHATTELS...........................................21

    A.    Bifurcation of Liability and Damages, as Provided for Under
        Subdivisions (b)(3) and (c)(4), Is a Superior Method for Advancing
        Plaintiffs' Damage Claims. .........................................................................21

    B.    Common Questions Predominate with Respect to the Liability Elements
        of Plaintiffs' Claims. .................................................................................23

CONCLUSION ...............................................................................................................25

ATTESTATION ..............................................................................................................27

APPENDIX A .................................................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Alfred v. Pepperidge Farm, Inc.*
  2017 WL 5665590 (C.D. Cal. Apr. 11, 2017)................................................................22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*
  568 U.S. 455 (2013)................................................................................................12

*Atlantic Refining Co. v. FTC*
  381 U.S. 357 (1965)................................................................................................18

*Brickman v. Fitbit, Inc.*
  2017 WL 5569827 (N.D. Cal. Nov. 20, 2017).............................................................13

*Bridge v. Phoenix Bond & Indem. Co.*
  553 U.S. 639 (2008)................................................................................................24

*Briseno v. ConAgra Foods, Inc.*
  844 F.3d 1121 (9th Cir. 2017),
  *cert. denied*, 138 S. Ct. 313 (2017) ..............................................................2, 21, 22, 24

*Butler v. Sears, Roebuck & Co.*
  727 F.3d 796 (7th Cir. 2013)....................................................................................21

*DeFunis v. Odegaard*
  416 U.S. 312 (1974)................................................................................................20

*Ehret v. Uber Techs., Inc.*
  148 F. Supp. 3d 884 (N.D. Cal. 2015).......................................................................13

*Ellsworth v. U.S. Bank, N.A.*
  2014 WL 2734953 (N.D. Cal. June 13, 2014) ............................................................25

*Fraser v. Wal-Mart Stores, Inc.*
  2016 WL 6208367 (E.D. Cal. Oct. 24, 2016) .............................................................22

*Gaudet v. Am. Home Shield Corp.*
  2013 WL 12238499 (E.D. La. Sept. 10, 2013) ...........................................................23

*Gutierrez v. Carmax Auto Superstores Calif.*
  2018 WL 627453 (Cal. Ct. App. Jan. 30, 2018)..........................................................14

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998)..............................................................................13, 23

*Harris v. comScore, Inc.*
  292 F.R.D. 579 (N.D. Ill. 2013)................................................................................23

ii

*Hart v. Colvin*
   310 F.R.D. 427 (N.D. Cal. 2015) ................................................................15

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*
   137 S. Ct. 1523 (2017) ...............................................................................19

*In re Abbott Labs. Norvir Anti-trust Litig.*
   2007 WL 1689899 (N.D. Cal. June 11, 2007) ............................................25

*In re Activision Sec. Litig.*
   621 F. Supp. 415 (N.D. Cal. 1985)..............................................................22

*In re Checking Account Overdraft Litig.*
   307 F.R.D. 656 (S.D. Fla. 2015) ................................................................25

*In re Intuitive Surgical Sec. Litig.*
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)
   *reconsideration denied*, 2017 WL 4355072 (N.D. Cal. Sept. 29, 2017)..........15

*In re Online DVD Rental Antitrust Litig.*
   2010 WL 5396064 (N.D. Cal. Dec. 23, 2010)
    *aff'd*, 779 F.3d 934 (9th Cir. 2015) ..........................................................14

*Jimenez v. Allstate Ins. Co.*
   765 F.3d 1161 (9th Cir. 2014).....................................................................21

*Kamakahi v. Am. Soc'y for Reprod. Med.*
   305 F.R.D. 164 (N.D. Cal. 2015) ...............................................................22

*Klay v. Humana, Inc.*
   382 F.3d 1241 (11th Cir. 2004)...................................................................24

*Knox v. Serv. Employees Int'l Union, Local 1000*
   567 U.S. 298 (2012) ...................................................................................20

*Kumar v. Salov N. Am. Corp.*
   2016 WL 3844334 (N.D. Cal. July 15, 2016) .............................................12

*Lilly v. Jamba Juice Co.*
   308 F.R.D. 231 (N.D. Cal. 2014) ..........................................................12, 22

*Lucasey Mfg. Corp. v. Anchor Pad Int'l, Inc.*
   698 F. Supp. 190 (N.D. Cal. 1988).............................................................19

*Miles v. America Online Inc.*
   202 F.R.D. 297 (M.D. Fla. 2001) ...............................................................23

*Mullins v. Premier Nutrition Corp.*
   2016 WL 1535057 (N.D. Cal. Apr. 15, 2016)........................................................................23

*NAACP v. Ameriquest Mortg. Co.*
   653 F. Supp. 2d 1013 (C.D. Cal. 2008)..............................................................................20

*Nat'l Fed'n of the Blind v. Target Corp.*
   582 F. Supp. 2d 1185 (N.D. Cal. 2007).............................................................................20

*Nieberding v. Barrette Outdoor Living, Inc.*
   302 F.R.D. 600 (D. Kan. 2014) ..........................................................................................22

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*
   551 U.S. 701 (2007) ............................................................................................................20

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797 (1985) ............................................................................................................24

*Raffin v. Medicredit, Inc.*
   2017 WL 131745 (C.D. Cal. Jan. 3, 2017).........................................................................20

*Reyes v. Educ. Credit Mgmt. Corp.*
   2017 WL 4169720 (S.D. Cal. Sept. 20, 2017)
   *pet. for interlocutory review granted*, 2017 WL 6762227 (9th Cir. Dec. 21, 2017).........................20

*Rodriguez v. Hayes*
   591 F.3d 1105 (9th Cir. 2010) .......................................................................................14, 15

*Smith v. Triad of Alabama, LLC*
   2017 WL 1044692 (M.D. Ala. Mar. 17, 2017)
    *modified in part on reconsideration*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017)....................22

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) ..............................................................................................15

*Sun Microsystems, Inc. v. Microsoft Corp.*
   87 F. Supp. 2d 992 (N.D. Cal. 2000)............................................................................17, 18

*Tyson Foods, Inc. v. Bouaphakeo*
   136 S. Ct. 1036 (2016) ..................................................................................................21, 22

*United States v. Nosal*
   844 F.3d 1024 (9th Cir. 2016)
   *cert. denied*, 138 S. Ct. 314 (2017). ..................................................................................24

*United States v. Univis Lens Co.*
   316 U.S. 241 (1942) ............................................................................................................19

iv

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ........................................................................................13, 16

*Walsh v. CorePower Yoga LLC*
   2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ................................................................13

*Walters v. Reno*
   145 F.3d 1032 (9th Cir. 1998) ...............................................................................13, 16

**Statutes**

18 U.S.C. § 1030 .............................................................................................12, 23, 24

Cal. Civ. Code. § 3426.1(a) ...................................................................................18

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................*passim*

Fed. R. Civ. P. 42 ...................................................................................................21

**Other Authorities**

American Law Institute, *Principles of the Law of Aggregate Litigation* § 2.05(b) (2010)...................25

Restatement (Second) of Torts §§ 217-18 (1965) ........................................................25, 30

Wright & Miller, *Federal Practice & Procedure* § 1778 (3d ed. 2005) ...............................................21

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on May 31, 2018, at 9:00 a.m., before the Honorable Edward J. Davila, Plaintiffs Richard San Miguel, DeLores Lawty, Richard Faust, Christopher Ware, and James Andrews will and do hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), for an order certifying two Classes:

- The "Injunctive Relief Class": All persons in California who own a Class Printer.  The Class Printers consist of:

  o   HP OfficeJet printer series 4500, 6220, 6230, 6810, 6820, 8600
  o   HP OfficeJet Pro printers 8610, 8616, 8620, 8625, 8630, 8640, 8660, 251dw, 276dw
  o   HP Officejet 6600 e-All-in-One Printer – H711a/H711g (CZ155A) and (CZ162A)
  o   HP Officejet e-All-in-One printers 6812, 6815, 6830, 6835, 8600, 8610, 8615, 8620
  o   HP OfficeJet Pro e-All-in-One – N911a
  o   HP OfficeJet Pro 8600 Plus e-All-in-One – N911g
  o   HP Officejet Premium e-All-in-One Printer 6700 H711n (CN583A) and 8600
  o   HP Officejet 6100 ePrinter – H611a (CB863A)
  o   HP Officejet 7110 Wide Format ePrinter – H812a (CR768A)
  o   HP OfficeJet 7510 Wide Format All-in-One Printer (G3J47A)
  o   HP Officejet Wide Format e-All-in-One 7610 (CR769A) and 7612 (G1X85A)
  o   HP OfficeJet Pro 6230 e
  o   HP OfficeJet Pro 8100 e – N811a/N811d
  o   HP OfficeJet Pro X series including X451dn Printer (CN459A), X451dw (CN463A), X456dn, X456dw
  o   HP Officejet Pro Multifunction Printers X476dn (CN460A), X476dw (CN461A), X576dw (CN598A), X551dw (CV037A)

- The "Disablement Class": All persons in the United States who purchased a Class Printer and experienced a print failure while using a non-HP aftermarket cartridge during the period between March 1, 2015 and December 31, 2017.[1]

Plaintiffs also will move the Court to appoint them as class representatives and to appoint the law firms of Girard Gibbs LLP, Law Offices of Todd M. Friedman, P.C., and Joseph Saveri Law Firm, Inc. as class counsel.  This motion is based upon this Notice of Motion and Motion, the incorporated Memorandum of Law, the evidence submitted in support of the motion, and any argument that may be presented to the Court.

---

[1] The parties have stipulated to the filing of a consolidated amended complaint that sets out the class definitions proposed herein.  Dkt. No. 88.  In addition, Plaintiff Robert Doty has voluntarily dismissed his claims, with prejudice, by stipulation under Rule 41(a)(1)(A)(ii).  Dkt. No. 89.

**INTRODUCTION**

Beginning in 2015, HP implemented secret "dynamic security" technology to disable aftermarket print cartridges installed in HP inkjet printers.  Confusion ensued, as consumers complained to HP and on social media.  The press reported. ███████████████  HP apologized.  Many consumers, like Plaintiffs Richard Faust and James Andrews, had been printing for months using competing aftermarket products, which typically cost three to six times less than HP's own branded cartridges.  Internal documents show that ████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████

HP did not notify its customers of its plan to modify their printers with dynamic security—a technology that ███████████████████████████—to prevent the printers from continuing to work with third-party cartridges.  Printers that failed falsely informed the consumers that the forcibly disabled cartridges were "damaged or missing."  Only after the September 2016 incident that gave rise to this litigation did HP offer a "patch" that it said would undo its disablement of printers.  But even then, people had to find out about the patch on their own, and many people, including Faust, were not able to use the patch to fix their printers even with the assistance of HP's customer service agents.

HP contends that it can continue to disable people's printers as it alone sees fit.  HP asserts this right ████████████████████████████████████████████████  Plaintiffs say HP has no right to interfere with consumers' printers.  On behalf of the California printer owners, Plaintiffs seek certification of an injunctive relief class for the purpose of determining whether HP's conduct violates the unfair prong of the Unfair Competition Law.  For damage claims, Plaintiffs propose a class trial in the first instance on liability issues, with individualized damages proceedings to follow.  If HP is found liable under (1) the federal statute prohibiting computer fraud and abuse, or (2) the common law of trespass to chattels, people across the country with economic losses can efficiently claim recovery in subsequent proceedings, which a claims administrator or special master can supervise.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131-32 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 313 (2017).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, CASE NO. 5:16-CV-05820-EJD-SVK

1

**STATEMENT OF ISSUES TO BE DECIDED**

2      1.      Whether the Court should certify the Injunctive Relief Class under Rule 23(b)(2).

3      2.      Whether the Court should certify the Disablement Class under Rules 23(b)(3) and (c)(4)

4 with respect to the liability elements of two claims.

5

**STATEMENT OF FACTS**

6          In mid-September 2016, several thousand HP inkjet printers in homes and small offices

7 rejected non-HP cartridges and stopped working.  Compl., Dkt. No. 60, ¶ 1.  These unexpected failures

8 resulted from "dynamic security" technology that HP embedded ████████████████████ to

9 shut down certain non-HP cartridges.  Declaration of Elizabeth A. Kramer in Support of Plaintiffs'

10 Motion for Class Certification ("Kramer Decl."), Ex. D (HP's Responses to Pls.' First Set of Interrogs.

11 at 5:13-14).  Evidence developed in discovery ████████████████████████████████████

12 ████████████████████████████████████████████.  *Id*.; Kramer Decl., Ex. 2 (HP-

13 0000006671); Ex. A (Barkley Dep. at 192:21-24).  HP admits that, ████████████████████

14 ███████████████████████████████████████████████

15 ████████████      Kramer Decl., Ex. A (Barkley Dep. at 222:19-22).  ████████████████████

16 █████████████████████████████████      Kramer Decl., Ex. B (Novak

17 Dep. at 77:16); *see also* Ex. C (HP's Responses to Pls.' Third Set of Interrogs. at 6:14-15).  ████████

18 ████████████████████████████████████████      Kramer Decl., Ex. B (Novak

19 Dep.  at 112:12-13); *accord* Ex. A (Barkley Dep. at 18:3-4) (████████████████████████

20 ████████████████████████████████).  ████████████████████████

21 ██████████████████████████████████████████████████████

22 ███████████████████████      Kramer Decl., Ex. B (Novak Dep. at 104:12-14).  Hence

23 HP's dynamic security ████████████████████████████████████████

24 ████████████████████████      *Id*. at 89:11, 130:10-12.

25          HP's intrusions caused thousands of consumers to lose time and money.  Kramer Decl., Ex. A

26 (Barkley Dep. at 167:19-20); Ex. 3 (LAWTY00019-20); Ex. 4 (SANMIGUEL 00011).  HP maintains

27 that, based upon ████████████████████████████████████████████████

28 ██████████████████████.  Kramer Decl., Ex. A (Barkley Dep. at 192-93, 232:10-12).

3

A.    **HP Designed Dynamic Security to Restrict Consumer Choice and Increase Its Profits from Sales of Ink Cartridges.**

█████████████████████████████████████████████████████████████

████████████████████████████████. Kramer Decl., Ex. 2 (HP-0000006672). ████████

████████████████████████████████████████████████████████

Kramer Decl., Ex. A (Barkley Dep. at 222:4-8).  From HP's standpoint, ███████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Kramer Decl., Ex. 5 (HP-0000011450-51).  To this end, ████████████████████████

█████████████████████████████████████████████████████████████

██████████     Kramer Decl., Ex. A (Barkley Dep. at 222:17-22); *see also id.* at 191:7-13; Ex. 6 (HP-0000009349) █████████████████████████████████████████████████████).

███████████████████████████████████████████████████████████████

██████████████████████████ Kramer Decl., Ex. 1 (HP-0000011429). ███████████████

████████████████████████████████████████████████. Kramer Decl.,

Ex. 7 (HP-0000007180).  █████████████████████████████████████

████████████████████████████████████████████████████████.

Kramer Decl., Ex. 2 (HP-0000006665-77).

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████. Kramer Decl.,

Ex. 2 (HP-0000006672).  HP could have responded by lowering the prices of its products, or attempted through marketing and advertising to convince consumers to pay more for the name brand. Instead, ██████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████

4



*Id*. at 6673.

*Id*. at 6675.

**B.    Dynamic Security Applied Uniform Technology to All Class Printers Identically.**

Dynamic security

Kramer Decl., Ex. B (Novak Dep. at 28:12-14).  Dynamic security

*Id*. at 32:17-19.

*Id*. at 33:18-20.

Kramer Decl., Ex. A (Barkley Dep. at 160:24-161:6); Ex. B (Novak Dep. at 65:19).

*Id*. at 93:7-19.

5

1    ███████████████████████████████████████████. Kramer Decl., Ex. A (Barkley Dep.

2    at 232:10-12). ████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ████████████████████████ *Id*. at 222:19-22; Kramer Decl., Ex. 8 (HP-0000001863, 1867-69)

5    Ex. 14 (HP-0000006695). ████████████████████████████████

6    ████████████████████████████████████ Kramer Decl., Ex. 13 (HP-

7    0000006693).  Reasonable consumers were thereby misled in their purchasing decisions.

8    ███████████████████████████████████████████████████

9    ████████████████████. Kramer Decl., Ex. B (Novak Dep. at 149:17, 24:9-23). ██████████

10   █████████████████████████████████████████████

11   *Id*. at 24:9-23. ████████████████████████████████████████

12   ████████████████████████████. Kramer Decl., Ex. B (Novak Dep. at 81:15-20;

13   103:13-21). ██████████████████████████████████

14   ████████████████████. *Id*. at 83:21-85:5.

15       HP's error message—which incorrectly informed consumers that a cartridge was "damaged or

16   missing"—████████████████████████████████████████. *Id*. at

17   149:17; Kramer Decl., Ex. D (HP's Responses to Pls.' First Set of Interrogs. at 5:14). ██████████

18   ███████████████████████████████████████████████

19   ████████████████████████ Kramer Decl., Ex. B (Novak Dep. at 114:18-24, 149:20-150:7).

20   ███████████████████████████████████████████████████

21   ███████████████████████████████████████████

22   ██████████████████████████████████ Kramer Decl., Ex. 25 (HP-

23   0000008967); Ex. 9 (HP-0000008974-75).

24       **C.    HP Implemented Dynamic Security in the Class Printers, Resulting in Unexpected**

25           **Product Failures.**

26   ███████████████████████████████████████████████. Kramer

27   Decl., Ex. B (Novak Dep. at 37:9-24). ████████████████████████████████

28   ████████████████████████████████████████████████

                                                    6

Kramer Decl., Ex. 9 (HP-0000008974); Ex. A (Barkley Dep. at 100:3-18). ████████████████



. Kramer Decl., Ex.
9 (HP-0000008974); Ex. A (Barkley Dep. at 100:19-101:24).

Kramer Decl., Ex. A (Barkley Dep.
at 147:14-17).

Kramer Decl., Ex. B (Novak Dep. at 104:12-14).

. Kramer Decl., Ex. A (Barkley Dep. at 167:12-14).

. *Id*. at 167:24.

. Kramer Decl., Ex. 10
(HP-0000002018) (                                                              ); Ex. A
(Barkley Dep. at 162:11-13); Ex. 11 (HP-0000005358).

Kramer Decl., Ex. 12 (HP-0000003782).

The September 2016 authentication challenge drew more attention.  Numerous media outlets reported that HP customers were confused and frustrated because they could not print due to an unannounced firmware update.  *See* Kramer Decl., Ex. 13 (HP-0000006693); Ex. 14 (HP-0000006695).

Kramer Decl., Ex. A (Barkley Dep. at 167:19-20).

. Kramer Decl., Ex. E (

).

. Kramer Decl., Ex. 16 (HP-0000003807).

7

1   ████████████████████████████████████   Kramer Decl., Ex. 15 (HP-0000006513).   ████████████

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   Kramer Decl., Ex. 17 (HP-0000003796); *see also* Ex. F (San Miguel Dep., Rough Tr. at 62:8-10)

5   (noting that "the Internet was on fire, I should say, with this issue.  And so I did follow a few

6   suggestions but to no avail.  Nothing worked.").

7         Plaintiffs were among the thousands of HP customers harmed in September 2016.  Plaintiff

8   DeLores Lawty spent "several hours on the phone with HP representatives attempting to resolve the

9   issues with her printer" and ultimately "purchased a replacement printer from HP" when nothing else

10   worked.  Kramer Decl., Ex. G (Lawty's Responses to HP's First Set of Interrogs. at 8:24-25, 3:11-12,

11   9:27-28).  When Andrews's printer failed, he had "to go to FedEx and print out stuff at 13 cents for a

12   black and white copy as opposed to printing it right there" in his home, causing him "a lot of

13   hardship."  Kramer Decl., Ex. H (Andrews Dep. at 86:1-3, 86:11).  Faust bought replacement third-

14   party cartridges, and when they did not work either, he spent "hours and hours and hours" trying to

15   get his printer to work again and ultimately had to buy a new printer.  Kramer Decl., Ex. 18; Ex. I

16   (Faust Dep. at 71-72).  Explaining his frustration, Faust testified that "HP broke my printer.  I didn't

17   ask for them to do that. . . . I was happy with that printer just the way it was."  *Id*. at 71:22-72:2.

18        **D.**      **Consumers Were Deceived by HP's Course of Conduct.**

19         Like many consumers, Plaintiffs bought HP printers on the understanding that they would be

20   able to use more affordable third-party ink cartridges.   ████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████   Kramer Decl., Ex. A (Barkley Dep. at 207:16-22).  Andrews "used

24   third-party ink cartridges at a much discounted price than . . . HP cartridges."  Kramer Decl., Ex. H

25   (Andrews Dep. at 84:18-20).  Faust "always used third-party ink when the original runs out" and

26   "would not have purchased a printer that didn't have the capability of buying third-party

27   ink."  Kramer Decl., Ex. I (Faust Dep. at 70:12-15).  Plaintiff Richard San Miguel testified that,

28   "[j]ust like I had in the past, I purchased third-party cartridges and never had issues" with them

1    "other than the ones that failed" unexpectedly when "they should have had enough ink."  Kramer

2    Decl., Ex. F (San Miguel Dep., Rough Tr. at 39:4-6, 43:15-16, 91-92, 112-13). 

3    

4    

5    .  Kramer Decl., Ex. B (Novak Dep. at 60:18-20).

6    

7    *Id.* at 27:21-25.  There were

8    *Id.* at 18:22-23.

9    Kramer Decl., Ex. A (Barkley

10   Dep. at 101:7-16).  Users

11   Kramer Decl., Ex. B (Novak Dep. at 28:1-9); *see also* Ex. 16 (HP-

12   0000003807) ( ).

13   

14   Kramer Decl., Ex. 11 (HP-0000005358).

15   

16   *Id.*

17   

18   Kramer Decl., Ex. 8 (HP-0000001863).

19   

20   

21   Kramer Decl., Ex. 19 (HP-0000005273).

22   

23   . *Id.*; Kramer Decl., Ex. 8 (HP-0000001863); *see also*

24   Ex. B (Novak Dep. at 72:14-15) ).

25   

26   

27   

28   

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, CASE NO. 5:16-CV-05820-EJD-SVK

1 ████████████████████████████████████████████████████

2 ██████████████████████████████████. Kramer Decl., Ex. B (Novak Dep. at 116:13-22,

3 119:7-9, 121:20-22, 137:21-23). ███████████████████████████

4 ████████████████ *Id*. at 114:1-4. ████████████████████████

5 ██████████████████████████ *Id*. at 112:4-23.  HP's message confused customers

6 trying to resolve their printing problems.  Faust's experience was typical: "because the error message

7 said that the ink cartridge was missing, or whatever . . . and indicated it was the yellow that was

8 faulty[,] I purchased a new yellow ink cartridge . . . [t]hat did not correct the problem."  Kramer

9 Decl., Ex. I (Faust Dep. at 42:1-7).

10    **E.    HP Sought to Capitalize on the Print Failures by Steering Affected Consumers to**
      **Purchase Its Products and Services.**

11

12 ████████████████████████████████████████████████

13 ███████████████ Kramer Decl., Ex. 20 (HP-0000010402); *see, e.g.*, Ex. 12 (HP-0000003781)

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████

17 ██████████████████████████████. Kramer Decl., Ex. 9 (HP-0000008978). ████████

18 ████████████████████████████████████████████████

19 ██████████████████████████████████ Kramer Decl., Ex. 20 (HP-

20 0000010402). █████████████████████████████████████

21 ██████████████████████████████████████████████████ Kramer

22 Decl., Ex. 21 (HP-0000006525). ██████████████████████

23 ████████████████████████████████████████████████

24 ████████████ *Id*. at 6523. ███████████████████████████

25 ████████████████████████████████████████████

26 ██████████████████████████████ Kramer Decl., Ex. 20 (HP-0000010402). ██

27 ████████████████████████████████████████████████

28 ██████████████████████████████████████ *Id*.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, CASE NO. 5:16-CV-05820-EJD-SVK

[REDACTED] Kramer Decl., Ex. 20 (HP-0000010397). [REDACTED]

[REDACTED] *Id.* at 10397-98.  HP's promotional efforts proved effective.  When Lawty bought her replacement HP printer on September 24, 2016, "an HP representative signed [her] up for HP Instant Ink."  Kramer Decl., Ex. G (Lawty's Responses to HP's First Set of Interrogs. at 5:12-13); Ex. 22 (LAWTY00006-07).

**F.      Despite Apologizing, HP Intends to Disable Consumers' Working Printers Again in the Future.**

Two weeks after the September 2016 incident, HP's Chief Operating Officer Jon Flaxman conceded that "[HP] should have done a better job of communicating about the authentication procedure to customers, and we apologize. . . . Again, to our loyal customers who were affected, we apologize."  Kramer Decl., Ex. 23 (HP-0000000052-53).  At the same time, Flaxman said that HP "will continue to use security features to . . . protect our IP including authentication methods that may prevent some third-party supplies from working."  *Id.* at 53.

HP later revised its apology posted on its website to add a notification of an "optional firmware update" (or "patch") [REDACTED] Kramer Decl., Ex. 24 (HP-0000000226); Ex. B (Novak Dep. at 96:24-97:2).  HP's patch was not a "push," like dynamic security itself, but rather, a "pull" that required individual consumers to learn of the offer and take affirmative steps to download and install the corrective firmware.  Kramer Decl., Ex. B (Novak Dep. at 21:2, 94:23-95:3); *cf.* Ex. F (San Miguel Dep., Rough Tr. at 86:18-22) ("Q.  So you weren't aware of any update available on HP's website that would allow previously disabled cartridges to -- third-party cartridges to work again?  A.  Not from HP's website, no."). [REDACTED] Kramer Decl., Ex. B (Novak Dep. at 102:20-22).  Even where customers found out about the patch, it did not necessarily fix their printers.  Faust spent "hours and hours and hours" trying to get his printer to work again, including by downloading the patch and contacting HP customer service, without success.  Kramer Decl., Ex. I (Faust Dep. at 71-72).

11

1 ████████████████████████████████████████████████████████

2 █████████████████████ Kramer Decl., Ex. A (Barkley Dep. at 115:3-10, 103-105). █████

3 ████████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████ *Id*. at 121:9-122:8,

5 118-23. ██████████████████████████████████████████████████

6 ██████████████████████████████ *Id*. at 192:21-193:16.  In other words, ███

7 ████████████████████████████████████████████████

8 █████ *Id*. at 232:10-12; *accord* Kramer Decl., Ex. 9 (HP-0000008974) ██████████

9 ██████████████████████████████████).

## LEGAL STANDARD

To obtain certification, "Plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b)" by the preponderance of the evidence.  *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *2 (N.D. Cal. July 15, 2016); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 236 (N.D. Cal. 2014).  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## ARGUMENT

Plaintiffs move for certification of (1) an injunctive relief class of California owners of Class Printers, based on HP's alleged violations of the UCL's unfair prong, and (2) a nationwide class of purchasers of Class Printers who experienced print failures with non-HP cartridges, based on HP's alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (CFAA), and the common law of trespass to chattels, with damages questions reserved for later proceedings.

## I.  PLAINTIFFS SATISFY THE PREREQUISITES OF RULE 23(A).

### A.  The Class Members Are Sufficiently Numerous to Make Joinder Impracticable.

Plaintiffs satisfy the first requirement of Rule 23(a) because the Class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  HP installed dynamic security on about 3.5 million printers, and complaints of print failures in September 2016 "were in the ten

---

12

thousand number of interactions[.]"  Kramer Decl., Ex. D (HP's Responses to Plaintiffs' First Set of

Interrogs. at 5:14); Ex. A (Barkley Dep. at 167:19-20).

**B.    The Claims Involve Common Issues of Fact and Law.**

The commonality requirement of Rule 23(a)(2) is met where a class proceeding will "generate

common answers apt to drive the resolution of the litigation."  *Brickman v. Fitbit, Inc.*, 2017 WL

5569827, at *4 (N.D. Cal. Nov. 20, 2017) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

(2011)).  Commonality is "construed permissively," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019

(9th Cir. 1998), and can be satisfied "[s]o long as there is 'even a single common question' . . . ."

*Walsh v. CorePower Yoga LLC*, 2017 WL 589199, at *7 (N.D. Cal. Feb. 14, 2017) (citation omitted).

"[V]ariation among class members in their motivation for purchasing the product, the factual

circumstances behind their purchase, or the price that they paid does not defeat the relatively

'minimal' showing required to establish commonality."  *Ehret v. Uber Techs., Inc*., 148 F. Supp. 3d

884, 891 (N.D. Cal. 2015) (citation omitted); *see, e.g.*, *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir.

1998) (affirming injunctive certification, rejecting contention "that the commonality requirement is

lacking because the actual experiences of the class members are not sufficiently similar.").

Common evidence in this case shows that, ██████████████████████████████████████

██████████████████████████████████████████████████████████████████ Kramer

Decl., Ex. 7 (HP-0000007180); Ex. 1 (HP-0000011429).  The technology HP implemented ██

██████████████████████████████████████  Kramer Decl., Ex. B (Novak Dep. 24:9-23;

149:13-17).  A key question for the entire Class is whether HP's use of dynamic security to increase

its share of the aftermarket constitutes unfair competition.  Other common questions include whether

HP, by installing dynamic security on printers without warning, exceeded its authorized access to the

printers and meddled with class members' property.  Kramer Decl., Ex. 9 (HP-0000008974)

██████████████████████████████████████████████████████; Ex. A (Barkley

Dep. at 101:15-16) ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████.  HP failed to tell any of its customers when they purchased their printers

that it could or would disable third-party cartridges, despite this being a material term of purchase to

---

13

1   reasonable consumers, or before invading their devices with undisclosed, facially injurious updates.

2   *See Gutierrez v. Carmax Auto Superstores Calif.*, 2018 WL 627453, at \*8-20 (Cal. Ct. App. Jan. 30,

3   2018) (failure to disclose a material fact violates California consumer protection law).  HP's

4   intellectual property defense also raises common issues.  *See* Tr. of 7/14/17 Hr'g at 3:25 (HP's

5   counsel asserting that HP is entitled to disable "cartridges that may infringe").  Thus, commonality is

6   satisfied because the answers to these central questions will be the same for all class members.

7   **C.   Plaintiffs' Claims Are Typical of the Class.**

8   "Like the commonality requirement, the typicality requirement [of Rule 23(a)(3)] is

9   permissive and requires only that the representative's claims are reasonably co-extensive with those

10   of absent class members." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation

11   omitted).  The requirement is met where the plaintiffs' claims "arise[] from the same event, practice

12   or course of conduct that gives rise to the claims of the absent class members and if their claims are

13   based on the same legal or remedial theory." *In re Online DVD Rental Antitrust Litig.*, 2010 WL

14   5396064, at \*4 (N.D. Cal. Dec. 23, 2010) (citation omitted), *aff'd*, 779 F.3d 934 (9th Cir. 2015).

15   Plaintiffs' claims arise from the same course of conduct—HP's use of dynamic security—as

16   all class members' claims, and Plaintiffs base the claims on common legal doctrines.  Plaintiffs'

17   claims are typical of class members' claims, involving the same evidence and tortious harm.  The

18   evidence demonstrates HP prevented Injunctive Relief Class members' printers from operating with

19   affordable competing cartridges, restricting end-usage of already purchased (and working) products.

20   All owners of HP inkjet printer owners are at risk of HP redeploying dynamic security technology

21   with the same effect.  HP never told Disablement Class members of its plans in any conspicuous way

22   before carrying them out.  These consumers are entitled to claim damages, having bought HP printers

23   that stopped working with non-HP cartridges as a result of HP's unannounced remote interference.

24   **D.   Plaintiffs and Their Counsel Will Adequately Represent the Class.**

25   As Rule 23(a)(4) requires, Plaintiffs and their counsel will "fairly and adequately protect the

26   interests of the class."  Courts ask two questions to evaluate adequacy of representation: "(1) Do the

27   representative plaintiffs and their counsel have any conflicts of interest with other class members, and

28   (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the

1   class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  "To establish adequacy, class

2   representatives generally need only to be familiar with the basis for the suit and their responsibilities as

3   lead plaintiffs such that they can uphold their obligations to other class members."  *In re Intuitive*

4   *Surgical Sec. Litig.*, 2016 WL 7425926, at *7 (N.D. Cal. Dec. 22, 2016) (quotation marks and citation

5   omitted), *reconsideration denied*, 2017 WL 4355072 (N.D. Cal. Sept. 29, 2017) (Davila, J.).

6           First, Plaintiffs have demonstrated that they are adequate class representatives, and that they

7   will continue to vigorously prosecute these claims.  Plaintiffs have already made notable contributions

8   to the litigation, regularly communicating with counsel, reviewing the consolidated complaint and

9   their responses to written discovery, and appearing for depositions.  Plaintiffs will undergo an

10  inspection of their printers, computer hard drives, and ink cartridges by HP.  Kramer Decl., ¶ 6.

11          Second, proposed class counsel have demonstrated that they are adequate.  *See* Fed. R. Civ. P.

12  23(g)(1)(A).  The attorneys working on this case at Girard Gibbs LLP, Law Offices of Todd M.

13  Friedman, P.C., and Joseph Saveri Law Firm, Inc. are skilled and experienced in prosecuting

14  consumer class actions.  *See* Kramer Decl., ¶¶ 7-9; Declaration of Todd M. Friedman, ¶¶ 15-22;

15  Declaration of Joseph R. Saveri, ¶¶ 6-7 & Ex. A thereto.  Proposed class counsel have dedicated

16  significant time to investigating, pleading, and pursuing these claims, and have demonstrated expertise

17  in representing class members.  Kramer Decl., ¶¶ 3-6.  In addition, to ensure that the litigation is

18  prosecuted efficiently and without duplication of effort, Plaintiffs request that the Court designate

19  Girard Gibbs to continue coordinating work on behalf of the class.  Kramer Decl., ¶ 2.

20  **II.      CERTIFICATION OF AN INJUNCTIVE RELIEF CLASS IS WARRANTED.**

21          HP's use of dynamic security to disable competing ink cartridges makes "final injunctive

22  relief or corresponding declaratory relief . . . appropriate respecting the class as a whole."  *Hart v.*

23  *Colvin*, 310 F.R.D. 427, 438 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 23(b)(2)).  The rule provides

24  for class certification if the defendant "has acted or refused to act on grounds that apply generally to

25  the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

26  the class as a whole."  Fed. R. Civ. P. 23(b)(2).

27          Rule 23(b)(2) is accordingly satisfied where "class members complain of a pattern or practice

28  that is generally applicable to the class as a whole."  *Rodriguez*, 591 F.3d at 1125 (citation omitted).

---

15

1   "The rule does not require us to examine the viability or bases of class members' claims for

2   declaratory and injunctive relief, but only to look at whether class members seek uniform relief from

3   a practice applicable to all of them." *Id*. Unlike a Rule 23(b)(3) class action for money damages, an

4   injunctive class merely requires a defendant's common conduct:

5           Although common issues must predominate for class certification under Rule
            23(b)(3), no such requirement exists under 23(b)(2). It is sufficient if class
6           members complain of a pattern or practice that is generally applicable to the class
            as a whole. Even if some class members have not been injured by the challenged
7           practice, a class may nevertheless be appropriate.

8   *Walters*, 145 F.3d at 1047.

9           HP's dynamic security, ████████████████████████████████████████████████████

10  ███████████████████████████████ Kramer Decl., Ex. 9 (HP-0000008974); Ex. B

11  (Novak Dep. at 89:9-11, 24:22-23). HP ██████████████████████████████████████████

12  ████████████████ Kramer Decl., Ex. B (Novak Dep. at 24:9-23, 149:17); Ex. 5 (HP-0000011450-51)

13  (██████████████████████████████████████████████). HP ████████████████████████

14  ████████████████████████████████████████

15  ████████ Kramer Decl., Ex. 2 (HP-0000006665-77); Ex. 1 (HP-0000011429); *see also* Ex. 6 (HP-

16  0000009349) ██████████████████████████████████████████████████████████████████

17  ████████████████████████████; Ex. B (Novak Dep. at 77:16) (████████████████████

18  ████████████████████████). HP █████████████████████████████████████████████

19  █████████████████████████████████████████. Kramer Decl., Ex. B (Novak Dep. at 24:9-

20  23, 149:17). ███████████████████████████████████████████

21  Kramer Decl., Ex. 16 (HP-0000003807); Ex. A (Barkley Dep. at 167:19-20).

22          The primary relief Plaintiffs seek is injunctive and "indivisible" in nature, *Wal-Mart*, 564 U.S.

23  at 360, for this relief either is or is not justified as to the entire Class. *See* Compl. ¶ 3 ("Plaintiffs seek

24  an injunction prohibiting HP from hijacking their printers again, and appropriate recovery for

25  themselves and the other owners of HP printers affected by the firmware update."); Tr. of 7/14/17

26  Hr'g at 14:12-14 ("So our case is for injunctive relief as well as damages to protect the consumers and

27  make them whole."). Plaintiffs define their Injunctive Relief Class by reference to the facts of record

28  and the California Unfair Competition Law that supports the injunction Plaintiffs will request. Compl.

¶¶ 135-45 (First Claim for Relief).  All members of this Class ████████████████

████████████████████████████████████████████████████████████████

████████        Kramer Decl., Ex. B (Novak Dep. at 30-34); Ex. 9 (HP-0000008974) (████████

████████████████████).  Because that consequence is unfair to consumers, no lawful

basis exists for this technology being on the printers.  And because HP ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████  *See, e.g.*, Kramer Decl.,

Ex. F (San Miguel Dep., Rough Tr. at 90:10-12) (testifying that "not knowing if HP was going to

implement another firmware and I'm back to square one, that's always on the back of my mind.").

This Court may enjoin HP's common conduct that artificially limits consumer choice and has

"an adverse effect on competition."  *FTC v. Texaco, Inc.*, 393 U.S. 223, 229 (1968).  Established

principles of law require that the separate market—the aftermarket—for replacement ink cartridges be

kept open to competition.  Courts will grant a UCL injunction where a defendant's actions "adversely

affects the commercial viability of competitive" products in a secondary market.  *Sun Microsystems,

Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992, 1001 (N.D. Cal. 2000).  A plaintiff seeking injunctive

relief to halt an anticompetitive practice "is not required to show that a practice it condemns has

totally eliminated competition in the relevant market," but only "that the practice in question unfairly

burdened competition for a not insignificant volume of commerce."  *Texaco*, 393 U.S. at 230.

In *Texaco*, the Supreme Court reinstated an injunction against an oil company for compelling

its gas station dealers to use only Goodrich tires and batteries in the aftermarket, where Goodrich was

paying the oil company for the coercion.  *Id.* at 225-27.  The Court reasoned that the "nonsponsored

brands do not compete on the even terms of price and quality competition; they must overcome, in

addition, the influence of the dominant oil company."  *Id.* at 230.

In *Sun Microsystems*, this court applied *Texaco* to preliminarily enjoin Microsoft from

engaging in conduct directed at the secondary market for Java products and technology.  Microsoft

was distributing "extensions to the java.* class libraries, which ensured that applications created with

Microsoft's Java development tools were tied to its virtual machine and operating system."  87 F.

Supp. 2d at 995.  Plaintiff "demonstrated that Microsoft introduced strategic incompatibilities in its

1  implementations of the Java Technology and relied on its unparalleled market power and distribution

2  channels in computer operating systems to unfairly impede competition in the Java development tools

3  market." *Id.* at 1000.  Put simply, "Microsoft's Java tools products did not compete on their merits

4  alone, but also possessed the added, unfair advantage of offering the only way of creating hybrid

5  Java/native applications that run on Microsoft's non-compliant virtual machine." *Id.* at 1001.

6         HP gained a similar unfair advantage by disabling competing cartridges, and consumers bore

7  the brunt of HP's sharp practices.  Andrews summed up the basic unfairness: "I don't think it is right

8  that a reliable printer that I've used third-party ink cartridges at a much discounted price . . . fails

9  because of some update I should have looked into receiving or should have been told about.  It failed

10 and I'm not able to use it."  Kramer Decl., Ex. H (Andrews Dep. at 84:17-22).

11        Even HP's documents indicate ███████████████████████████████████

12 ████████████████  Kramer Decl., Ex. 2 (HP-0000006675). ███████████████████████

13 █████████████████████████████████████████████████████████████████████

14 ███████████████████████████████████████████  Kramer Decl., Ex. A

15 (Barkley Dep. at 201:20-23).  By forcibly shutting down working aftermarket products ████████

16 ██████  HP sowed confusion and coerced consumers to buy its own products ████████████████

17 ████████████████████████████████████  Kramer Decl., Ex. 13 (HP-

18 0000006693); Ex. A (Barkley Dep. at 201:24-25); *see also* Ex. 21 (HP-0000006523-25) (███████

19 ████████████████████████████████████████████████████); Ex. 2 (HP-

20 0000006673) (██████████████████████████████████████████).  The dynamic

21 security lockouts engineered by HP thus conferred an "added[] unfair advantage" because its

22 "products did not compete on their merits alone" and other cartridge manufacturers could "not

23 compete on the even terms of price and quality competition." *Sun Microsystems*, 87 F. Supp. 2d at

24 1001; *see also Texaco*, 393 U.S. at 230; *Atlantic Refining Co. v. FTC*, 381 U.S. 357 (1965).

25        HP's proffered intellectual property justification applies to dynamic security in general.

26 Resolving this defense will not vary by class member.  The defense fails for two reasons:

27        1)  Competitors enjoy a *wide berth* under uniform trade secret law to reverse engineer HP's

28            products. *See, e.g.*, Cal. Civ. Code § 3426.1(a). ██████████████████████

1 ████████████████████████████████████ Kramer Decl.,

2 Ex. B (Novak Dep. at 56:21-57:4, 42:2-5, 61:23-62:1, 113:5-13) (███████████████

3 █████████████████████████████████████████

4 █████████████████████████████████████████

5 ██████████).  Not all reverse engineering is illegal.  HP has not provided evidence

6 substantiating any claim of illegal reverse engineering.

2) Moreover, patent law does not permit a patentee to enforce its rights against customers,

8 but instead favors enforcement against actual infringers.  *See Lucasey Mfg. Corp. v.*

9 *Anchor Pad Int'l, Inc.*, 698 F. Supp. 190, 193 (N.D. Cal. 1988) ("Public policy . . .

10 favors litigation of patent rights against the alleged wrongful manufacturer and restraint

11 of suits against customers for the same relief until the original suit is determined.")

12 (citation omitted).  Consistent with this policy, firms may not assert those rights against

13 end-purchasers of patented products.  To prevent uncertainty and inconvenience, patent

14 law "furnishes 'no basis for restraining the use and enjoyment of the thing sold.'"

15 *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1532 (2017) (quoting

16 *United States v. Univis Lens Co.*, 316 U.S. 241, 251 (1942)).  So the defense fails.

17 HP's conduct is at odds with the law and ████████████████████████████

18 ██████████████████ Kramer Decl., Ex. 26 (HP 0000003430).  But, faced with adversarial

19 testing, HP has not obtained injunctions against alleged infringers of its ink cartridge chips.  Compl.

20 ¶¶ 92-93.[2]  In response to Plaintiffs' contention interrogatories asking HP to substantiate its defense,

21 HP could only point to a 2009 International Trade Commission order without providing any evidence

22 that the cartridge products it disabled years later fell within that order's scope.  Kramer Decl., Ex. C

---

[2] In 2014, HP brought and voluntarily dismissed a suit against Ninestar and Apex for manufacturing ink cartridge chips that HP argued infringed three of its patents.  *Hewlett-Packard Co. v. Ninestar*, No. 14-cv- 04473-HSG (N.D. Cal. filed Oct. 6, 2014) (voluntarily dismissed on May 6, 2015).  HP also brought and voluntarily dismissed a lawsuit against Datel for allegedly misappropriating trade secrets concerning ink cartridge key codes.  *Hewlett-Packard Co. v. Datel Holdings Ltd.*, No. 14-cv-02891-EJD (N.D. Cal. filed June 23, 2014) (voluntarily dismissed on Feb. 6, 2015).  And HP lost a patent suit in the Netherlands against a Dutch manufacturer of third-party ink cartridges that HP claimed infringed a European ink cartridge chip patent. *Hewlett-Packard Co. v. Digital Revolution BV* [d.b.a. 123inkt], Case No. C/09/483615 / HA ZA 15-245, The Hague (Netherlands) (decided Nov. 25, 2015).

19

1   (HP's Responses to Pls.' Third Set of Interrogs. at 6:12); *see* Ex. 27 (HP-0000002310-2393).

2   Regardless of its merit, HP's infringement defense applies to the Class uniformly.

3         Finally, given the voluntary cessation doctrine, HP cannot avoid injunctive relief certification

4   by asserting that it has removed the offending technology.  "[I]t is well-settled law that 'voluntary

5   cessation of allegedly illegal conduct . . . does not make the case moot.'"  *Nat'l Fed'n of the Blind v.*

6   *Target Corp.*, 582 F. Supp. 2d 1185, 1193 (N.D. Cal. 2007) (quoting *DeFunis v. Odegaard*, 416 U.S.

7   312, 318 (1974)); *see, e.g.*, *Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *10 (C.D. Cal. Jan. 3,

8   2017) ("Medicredit argues that (b)(2) certification is improper because Raffin's request for injunctive

9   relief is moot. . . . [b]ut '[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily

10  does not suffice to moot a case.'") (citation omitted).

11        "Voluntary cessation does not moot a case or controversy unless subsequent events ma[ke] it

12  *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur."

13  *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (emphasis added)

14  (citation omitted).  Otherwise, "a dismissal for mootness would permit a resumption of the challenged

15  conduct as soon as the case is dismissed."  *Knox v. Serv. Employees Int'l Union, Local 1000*, 567

16  U.S. 298, 307 (2012); *see, e.g.*, *Reyes v. Educ. Credit Mgmt. Corp.*, 2017 WL 4169720, at *14 (S.D.

17  Cal. Sept. 20, 2017) (granting certification under Rule 23(b)(2) despite the defendant's argument that

18  it made technical changes: "It is not implausible that the settings . . . that led to this lawsuit could be

19  again incorrectly programmed in future."), *pet. for interlocutory review granted*, 2017 WL 6762227

20  (9th Cir. Dec. 21, 2017); *see also NAACP v. Ameriquest Mortg. Co.*, 653 F. Supp. 2d 1013, 1015

21  (C.D. Cal. 2008) (finding that the defendant's exit from the relevant market did not moot the action

22  because "there does not seem to be any external barrier to Defendant re-entering the market at any

23  time in the future—for example, if it becomes lucrative again a few years from now.").

24  ██████████████████████████████████████

25  ████████████████   Kramer Decl., Ex. A (Barkley Dep. at 192:21-193:16, 232:10-12); *see also* Ex.

26  23 (HP-0000000053) (████████████████████████████

27  ████████████████████████████████████

28  ████████); Ex. 9 (HP-0000008974) (████████████████████

1

2      ████████████████████████████████████████. Injunctive relief will protect consumers from

3  having their printers disabled by HP, through dynamic security or a similar technology.

4         For these reasons, the Court should certify the Injunctive Relief Class.

5  **III.   COMMON QUESTIONS PREDOMINATE WITH RESPECT TO HP'S LIABILITY
6         FOR COMPUTER ABUSE AND TRESPASS TO CHATTELS.**

7       **A.    Bifurcation of Liability and Damages, as Provided for Under Subdivisions (b)(3)
               and (c)(4), Is a Superior Method for Advancing Plaintiffs' Damage Claims.**

8        Rule 23(c)(4) allows the court to certify a class—here, the proposed Disablement Class—as to

9  "particular issues [w]hen appropriate."  Fed. R. Civ. P. 23(c)(4); *see also* Fed. R. Civ. P. 42(b).  The

10  Supreme Court endorsed this procedure in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016),

11  holding that "[w]hen one or more of the central issues in the action are common to the class and can be

12  said to predominate, the action may be considered proper under Rule 23(b)(3) even though other

13  important matters will have to be tried separately, such as damages or some affirmative defenses

14  peculiar to some individual class members."  *Id.* at 1045 (quoting Wright & Miller, *Federal Practice

15  & Procedure* § 1778 (3d ed. 2005)).  Similarly, the Ninth Circuit has observed that "Rule 23

16  specifically contemplates . . . individualized claim determinations after a finding of liability."  *Briseno*,

17  844 F.3d at 1131; *see* Fed. R. Civ. P. 23(c)(4) advisory committee's note (1966) ("[I]n a fraud or

18  similar case the action may retain its 'class' character only through the adjudication of liability to the

19  class; the members of the class may thereafter be required to come in individually and prove the

20  amounts of their respective claims.").

21       In fact, a trial "limited to determining liability on a class-wide basis, with separate hearings to

22  determine—if liability is established—the damages of individual class members . . . will often be the

23  sensible way to proceed."  *Butler v. Sears, Roebuck & Co*., 727 F.3d 796, 800 (7th Cir. 2013).  The

24  Ninth Circuit favors issue certification where it would capably resolve the litigation:

25         Courts faced with a proposed issue class should consider "whether the adjudication
           of the certified issues would significantly advance the resolution of the underlying
26         case, thereby achieving judicial economy and efficiency."  [Citation.]  In at least
           some circumstances, it is appropriate to certify a class to "accurately and
27         efficiently resolve the question of liability, while leaving the potentially difficult
           issue of individualized damage assessments for a later day."  *Jimenez v. Allstate
28         Ins. Co.*, 765 F.3d 1161, 1164 (9th Cir. 2014).

---

21

1   *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015).

2          As the *Tyson* Court recognized, 136 S. Ct. at 1045, after liability is decided, class members can

3   come forward in individual proceedings with evidentiary items (such as receipts, photographs,

4   credit card statements, or affidavits) that establish their harm.  *See, e.g.*, *Briseno*, 844 F.3d at 1132

5   ("[W]e see no reason to refuse class certification simply because that same consumer will present her

6   affidavit in a claims administration process after a liability determination has already been made.");

7   *Fraser v. Wal-Mart Stores, Inc.*, 2016 WL 6208367, at *5 (E.D. Cal. Oct. 24, 2016) (class members

8   could "prove their membership with reliable records such as credit card statements and receipts.");

9   *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 607 (D. Kan. 2014) (class members

10  could support claims with photographs).

11         Rule 23(c)(4)'s analysis also parallels Rule 23(b)(3)'s superiority analysis: "A class action is

12  superior '[w]here classwide litigation of common issues will reduce litigation costs and promote

13  greater efficiency.'"  *Alfred v. Pepperidge Farm, Inc.*, 2017 WL 5665590, at *28 (C.D. Cal. Apr. 11,

14  2017) (citation omitted); *see, e.g.*, *In re Activision Sec. Litig.*, 621 F. Supp. 415, 438 (N.D. Cal. 1985)

15  (prioritizing "judicial economy" in certifying an issue class); *Lilly*, 308 F.R.D. at 244 ("Since Plaintiff

16  has established that, with the exception of determining damages, all of the required elements of class

17  certification have been met, the Court will exercise its discretion pursuant to Rule 23(c)(4) . . . to

18  certify the proposed class solely for purposes of determining liability.").[3]  Here too, issue class

19  certification will significantly advance the litigation while promoting judicial economy.

20         Plaintiffs and class members lost time and money because HP interfered with their printers.

21  The amount of individual damages—aftermarket cartridge, printer, or printing service costs, or other

22  losses—varies and is too low to justify individual lawsuits.  "Cases, such as this, 'where litigation

23  costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide

24

25  [3] *See also Nieberding*, 302 F.R.D. at 618 (in a product defect case, "[t]he Court f[ound] that the issue
    of liability is appropriate for Rule 23(b)(3) certification, but bifurcate[d] plaintiff's motion to reserve
26  the damages issue for determination at a later date, if plaintiff prevails on the liability question.");
    *Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *15-16 (M.D. Ala. Mar. 17, 2017) (in a patient
27  data breach case, the court ruled that an initial classwide trial would focus on common questions of
    duty and breach), *modified in part on reconsideration*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017).

28

prosecution." *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016) (quoting *Hanlon*, 150 F.3d at 1023).

**B.      Common Questions Predominate with Respect to the Liability Elements of Plaintiffs' Claims.**

HP's use of technology to disable working printers represents a uniform course of conduct that either does, or doesn't, violate the CFAA and the common law prohibition of trespass to chattels. Compl. ¶¶ 218-34, 244-48.[4]

**1.      Whether HP's Conduct Violated the Computer Fraud and Abuse Act Turns on Common Issues and Evidence.**

The CFAA creates a private right of action against an entity that intentionally or knowingly accessed a computer without authorization or exceeded its authorized access, causing over $5,000 in damage. 18 U.S.C. §§ 1030(a), (g). CFAA claims typically involve common questions suitable for class treatment. *See, e.g.*, *Harris v. comScore, Inc.*, 292 F.R.D. 579, 581, 585 (N.D. Ill. 2013) (certifying CFAA claim, noting in part that the invasive software "operate[d] in a substantively identical fashion on all computers" and was presented to consumers in a "materially identical" way); *Miles v. America Online Inc.*, 202 F.R.D. 297, 299 (M.D. Fla. 2001) (certifying CFAA claim based on AOL "configuring the computers to dial long-distance numbers to access [its] services" and forcing downloads "without authorization").

HP's evidence—not class members'—demonstrates that HP "knowingly cause[d] the transmission of a program, information, code, or command," and that as a result HP "intentionally cause[d] damage without authorization" by the consumers. 18 U.S.C. § 1030(a)(5)(A). The CFAA's elements center on *defendants'* behavior, not plaintiffs'. HP's documents tell a story of ███████████

██████████████████████████████████████████████████████   They describe ███████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

---

[4] "It is routine for plaintiffs to move for class certification on fewer than all claims asserted." *Gaudet v. Am. Home Shield Corp.*, 2013 WL 12238499, at *1 (E.D. La. Sept. 10, 2013). To ensure an efficient trial, Plaintiffs do not seek classwide relief under the UCL's fraudulent prong, the FAL, the CLRA, the other state statutes invoked in their complaint, or the common law of tortious interference.

1  ██████████████████████████████████████. Kramer Decl., Ex. 17 (HP-

2  0000003795-96) (██████████████████████████████████████████████

3  ████████████████████████); *see also* Ex. 2 (HP-0000006665-77) (██████████████████);

4  Ex. 21 (HP-0000006523-25) ███████████████████████████████████

5  ████████████ Ex. 10 (██████████████████████ Ex. 16 (HP-0000003807).

6  Class members can show their entitlement to "compensatory damages," 18 U.S.C. § 1030(g),

7  subject to HP's defenses, in post-class trial proceedings. *See Briseno*, 844 F.3d at 1131-32. But there

8  is no evidence that HP obtained authorization from any class members to alter their printer

9  functionality by implanting dynamic security. *See, e.g.*, *United States v. Nosal*, 844 F.3d 1024, 1034

10  (9th Cir. 2016) (noting that "the plain language of the CFAA 'target[s] the unauthorized . . . alteration

11  of information'"), *cert. denied*, 138 S. Ct. 314 (2017).

12  ██████████████████████████████████████████████████████████

13  ████████████████████████. *E.g.*, Kramer Decl., Ex. 16 (HP-0000003807) ████████████

14  ██████████); Ex. 9 (HP-0000008974) (█████████████████████████████████

15  █████████████████████████████████  ███████████████████████; Ex. B

16  (Novak Dep. at 27:21-28:9) (█████████████████████████████████████

17  ██████████████████████). Considering HP's failure to disclose the technology or its effects to

18  consumers, HP cannot avoid CFAA liability by claiming that some of them consented to its intrusion.

19
20  **2.     Whether HP's Conduct Constituted Trespass to Chattels Turns on
         Common Issues and Evidence.**

21  Where plaintiffs seek relief on behalf of class members from different states, the court may

22  certify a class or subclass comprising members with materially identical claims. *Phillips Petroleum*

23  *Co. v. Shutts*, 472 U.S. 797, 806-16 (1985) (holding that due process permits a single court to bind a

24  nationwide class, and stating that "[t]here can be no injury in applying Kansas law if it is not in

25  conflict with that of any other jurisdiction connected to this suit."); *Klay v. Humana, Inc.*, 382 F.3d

26  1241, 1262 (11th Cir. 2004) (concluding that "if the applicable state laws can be sorted into a small

27  number of groups, each containing materially identical legal standards, then certification of

28  subclasses embracing each of the dominant legal standards can be appropriate."), *abrogated in part*

*on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). For example, in

24

*Ellsworth v. U.S. Bank, N.A.*, the court certified a multistate class where "Plaintiffs propose[d] a realistic plan to group the breach of contract classes into two subclasses to address differences in state law." 2014 WL 2734953, at *20-25 (N.D. Cal. June 13, 2014); *see also, e.g.*, *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 680-83 (S.D. Fla. 2015) (applying American Law Institute, *Principles of the Law of Aggregate Litigation* § 2.05(b) (2010)).

Only one group exists for Plaintiffs' trespass to chattels claim. It includes class members in the 44 jurisdictions that recognize the Restatement of Torts' articulation of this claim. Forty-two jurisdictions—including each of the states in which Plaintiffs reside—base their trespass to chattels law on the same Restatement sections. *See* Restatement (Second) of Torts §§ 217-18 (1965). These states instruct that a trespass to chattel occurs by intentionally dispossessing another of a chattel or using or intermeddling with a chattel in the possession of another. *See* Appendix A hereto (44-Jurisdiction Survey of Trespass to Chattels Law). The two remaining states have not cited the Restatement but recognize the identical prohibition. *See* Appendix A.

Under the laws of 44 jurisdictions, therefore, a fact finder could find HP liable for interfering with consumers' personal property.[5] *Cf. In re Abbott Labs. Norvir Anti-trust Litig.*, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007) (certifying 48-state class of end-purchasers: "[V]ariations among some States' unjust enrichment laws do not significantly alter the central issue or the manner of proof"). The same common, HP-derived evidence that pertains to the CFAA's elements shows that HP committed a trespass to chattels by depriving consumers of the use of their printers.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the classes defined above, appoint Faust and Andrews to represent the Injunctive Relief Class, appoint Faust, Andrews, San Miguel, Lawty, and Ware to represent the Disablement Class, appoint Girard Gibbs LLP, Law Offices of Todd M. Friedman, P.C., and Joseph Saveri Law Firm, Inc. to serve as class counsel under Rule 23(g), designate Girard Gibbs LLP to coordinate the work of Plaintiffs' counsel, and direct the parties to submit a proposed plan of Notice under Rule 23(c)(2).

---

[5] The requested 44-jurisdiction common law certification will not prejudice class members in the remaining states because they can recover their damages under the CFAA.

25

Dated:  February 7, 2018

Respectfully submitted,

**GIRARD GIBBS LLP**

/s/  *Elizabeth A. Kramer*

Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Elizabeth A. Kramer (SBN 293129)
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*dcg@girardgibbs.com*
*je@girardgibbs.com*
*eak@girardgibbs.com*

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN,
P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, California 91367
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
*tfriedman@toddflaw.com*
*abacon@toddflaw.com*

Joseph R. Saveri (SBN 130064)
Nicomedes S. Herrera (SBN 275332)
Kyla J. Gibboney (SBN 301441)
**JOSEPH SAVERI LAW FIRM, INC.**
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
*jsaveri@saverilawfirm.com*
*nherrera@saverilawfirm.com*
*kgibboney@saverilawfirm.com*

Daniel R. Karon
**KARON LLC**
700 W. St. Clair Avenue, Ste. 200
Cleveland, Ohio 44113
Telephone: (216) 622-1851
Facsimile: (216) 241-8175
*dkaron@karonllc.com*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, CASE NO. 5:16-CV-05820-EJD-SVK

Taylor Bartlett (pro hac vice)
**HENINGER GARRISON DAVIS, LLC**
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Facsimile: (205) 380-8085
*taylor@hgdlawfirm.com*

*Counsel for Plaintiffs*

**ATTESTATION**

I, Elizabeth A. Kramer, am the ECF user whose identification and password are being used to file this motion.  I hereby attest under penalty of perjury that concurrence in this filing has been obtained from all counsel listed above.

DATED: February 7, 2018                    /s/  *Elizabeth A. Kramer*
                                                         Elizabeth A. Kramer

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, CASE NO. 5:16-CV-05820-EJD-SVK

**APPENDIX A**

**44-Jurisdiction Survey of Trespass to Chattels Law**

| Plaintiffs' States | State | Authority |
|---|---|---|
| 1 | CA | "The Restatement Second of Torts, section 217, provides, 'A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.' The Restatement Second of Torts, section 221, provides that 'A dispossession may be committed by intentionally ... barring the possessor's access to a chattel[.]'" *Jamgotchian v. Slender*, 170 Cal. App. 4th 1384, 1401 (Cal. Ct. App. 2009).<br><br>"Under California law, trespass to chattels 'lies where an intentional interference with the possession of personal property has proximately caused injury.'" *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350-51 (2003) (citing *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566 (Cal. Ct. App. 1996)). "[O]ne who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected ...." *Id.* (emphasis omitted) (quoting Restatement (Second) of Torts § 218 cmt. e (1965)). |
| 2 | WA | "Trespass to chattels is something less than a conversion." *Damiano v. Lind*, No. 29416-1-III, 2011 Wash. App. LEXIS 2000, at *12-13 (Wash. Ct. App. Aug. 25, 2011). "It is the intentional interference with a party's personal property without justification that deprives the owner of possession or use." *Id.* (citing Restatement (Second) of Torts § 217 (1965)).<br><br>"While a plaintiff must show that the interference was intentional, no intent to deprive the owner must be shown." *Id.* (citations omitted). |
| 3 | NJ | "[T]he Court turns to the Restatement (Second) of Torts 217 for more guidance: 'a trespass to a chattel may be committed by intentionally ... intermeddling with a chattel in the possession of another.' ... All that is required under the Restatement (Second) is interference with the chattel as a direct or indirect result of an act done by the actor." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 312 (D.N.J. 2009) (quoting Restatement (Second) of Torts § 217 (1965)).<br><br>"Several commentators have indicated the appropriateness of asserting trespass to chattel claims in the context of unauthorized computer access. One reason that an action for trespass to chattels is favored is that unauthorized access to a computer does not deprive the owner of the value and/or use of the computer, as is typically required to sustain an action in conversion.... Trespass to chattels has been analogized to trespass to land in that an intrusion which is sufficient to interfere with the owner's exclusive possession can give rise to a claim." *SCS Healthcare Mktg., LLC v. Allergan USA, Inc.*, No. C-268-12, 2012 N.J. Super. Unpub. LEXIS 2704, at *20 (N.J. Super. Ct. App. Dec. 07, 2012) (citations omitted). |

| | | | |
|---|---|---|---|
| 4 | **TX** | "[T]he principle as applied to a cause of action for trespass to chattel is the same: 'One who has a property interest in a chattel is in possession of it even if he is not exercising physical control over it at the time of trespass.'" *ED&F Man Biofuels, Ltd. v. MV Fase*, 728 F. Supp. 2d 862, 877 n.11 (S.D. Tex. 2010) (quoting *Great Am. Ins. Co. v. Nicolas*, 1989 U.S. Dist. LEXIS 12375, at *8 (citing Restatement (Second) of Torts § 216 cmt. c)); *see also Simmonds v. TDCJ*, No. 10-07-00361-CV, 2010 Tex. App. LEXIS 1338, at *27 (Tex. Ct. App. Feb. 24, 2010), citing O'Connor's Texas Causes of Action 159 (2008) (citing Restatement (Second) of Torts § 222A cmt. c)). | |
| | | "Destruction of, or injury to, personal property, regardless of negligence, may be a trespass." *Carpenter v. Carpenter*, No. 02-11-00266-CV, 2012 Tex. App. LEXIS 5322, at *11-12 n.10 (Tex. App. July 5, 2012) (quoting *Mountain States Tel. & Tel. Co. v. Vowell Constr. Co.*, 161 Tex. 432, 436 (Tex. 1960) (citing Restatement (Second) of Torts §§ 216-22 (1965) (discussing the tort of trespass to chattel and providing in § 218 that a person who commits trespass to a chattel is subject to liability if "the chattel is impaired as to its condition, quality, or value"))). | |
| **Other Restatement States** | | | |
| 5 | **AL** | *See Poff v. Hayes*, 763 So. 2d 234, 238-39 (Ala. 2000) (quoting Restatement (Second) of Torts § 218 (1965)). | |
| 6 | **AK** | "Trespass to chattels can be committed when a party intentionally dispossesses another of the chattel or intentionally uses or interferes with a chattel in another's possession." *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 n.26 (Alaska 2003) (citing Restatement (Second) of Torts § 217 (1965)). | |
| 7 | **AZ** | "[T]he tort of trespass to a chattel may be committed by intentionally dispossessing another of the chattel or using or intermeddling with a chattel in the possession of another." *Koepnick v. Sears Roebuck & Co.*, 762 P.2d 609, 618-19 (Ariz. Ct. App. 1988) (citing, *inter alia*, Restatement (Second) of Torts § 217 (1965)). "One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, <br> (A) he dispossesses the other of the chattel, or <br> (B) the chattel is impaired as to its condition, quality, or value, or <br> (C) the possessor is deprived of the use of the chattel for a substantial time, or <br> (D) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." <br> *Id.* at 618 (quoting Restatement (Second) of Torts § 218 (1965)). | |
| 8 | **AR** | *See Ark. La. Gas Co. v. Cent. Utils. Constructors, Inc.*, 643 S.W.2d 566, 567 (Ark. 1982) ("We readily concede the existence of the rule" that "one who commits trespass to a chattel is subject to liability if the chattel is impaired as to its condition, quality or value.") (citing, *inter alia*, Restatement of Torts (Second) § 217 (1965)). | |
| 9 | **CO** | "Trespass to chattels is defined as the intentional interference with the possession, or physical condition of a chattel in the possession of another, without justification." *Mountain States Tel. & Tel. Co. v. Horn Tower Constr.* | |

| | | |
|---|---|---|
| | | *Co.*, 147 Colo. 166, 171 (1961). "One who uses or otherwise intentionally intermeddles with a chattel in the possession of another is liable in trespass[.]" *Id.* (citing Restatement (First) of the Law, Torts § 218 (1934)). |
| 10 | **CT** | "Our Supreme Court has defined trespass to chattels as 'intentionally [a] dispossessing another of the chattel, or [b] using or intermeddling with a chattel in the possession of another.'" *Valadez v. Peruta*, No. HHDCV106012594S, 2013 Conn. Super. LEXIS 1352, at *15 (Conn. Super. Ct. June 17, 2013) (quoting *Simms v. Chaisson*, 277 Conn. 319 (2006)); *see also Iovene v. Shree Ram Corp.*, No. CV000273630, 2001 Conn. Super. LEXIS 1250, at *4 (Conn. Super. Ct. May 9, 2001) (quoting Restatement (Second) of Torts §§ 217-18 (1965)). |
| 11 | **DE** | "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *State Farm Mut. Auto. Ins. Co. v. Shively*, No. 1999-11-088, 2000 WL 33653429, at *5-6 (Del. C.C.P. July 24, 2000) (citing Restatement (Second) of Torts § 217 (1965)). "One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, <br><br> (a) he dispossesses the other of the chattel, or <br><br> (b) the chattel is impaired as to its condition, quality, or value, or <br><br> (c) the possessor is deprived of the use of the chattel for a substantial time, or <br><br> (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." <br><br> *Id.* at *6 (quoting Restatement (Second) of Torts § 218 (1965)). |
| 12 | **DC** | "[Appellant] makes a plausible argument that the government's conduct constituted a trespass to his chattel—that is, that the government 'intentionally ... us[ed] or intermeddle[ed]' with his chattel, his cellphone." *Jones v. United States*, 168 A.3d 703, 716 n.27 (D.C. 2017) (quoting Restatement (Second) of Torts § 217 (1965)). |
| 13 | **FL** | "Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification." *UMG Recordings, Inc. v. Del Cid*, No. 8:07-cv-368-T-26TGW, 2007 U.S. Dist. LEXIS 103381, at *4 (M.D. Fla. Sep. 19, 2007) (citing *Coddington v. Staab*, 716 So.2d 850, 851 (Fla. Dist. Ct. App. 1998) (citing Restatement (Second) of Torts § 218). |
| 14 | **HI** | "[T]he Restatement (Second) of Torts § 217 outlines such claim [of trespass to chattels], and Hawaii courts have relied on the Restatement as persuasive authority in numerous instances. *De-Occupy Honolulu v. City & Cty. of Honolulu*, No. 12-00668 JMS-KSC, 2013 U.S. Dist. LEXIS 71969, at *37 (D. Haw. May 21, 2013); *see also, e.g., Young v. Kraus*, No. 15-00383 LEK-KSC, 2016 U.S. Dist. LEXIS 10762, at *20 (D. Haw. Jan. 29, 2016) (quoting Restatement (Second) of Torts § 218). |
| 15 | **ID** | "[T]here is no civil tort of embezzlement. Rather, a civil litigant must bring an action in conversion or trespass to chattels." *Kerr v. Bank of Am.*, No. 37754, 2011 Ida. App. Unpub. LEXIS 413, at *21 (Ct. App. Nov. 22, 2011) (citing Restatement (Second) of Torts §§ 216-51 (1965)). "The intention necessary to subject to liability one who deprives another of the possession of his chattel is merely the intention to deal with the chattel so that such |

| | | |
|---|---|---|
| | | dispossession results. It is not necessary that the actor intend to commit what he knows to be a trespass or a conversion." *Baroni v. Turner*, No. CV-2016-4299, 2017 Ida. LEXIS 246, at \*39 (Idaho Ct. App. 2017) (citing Restatement (Second) of Torts § 222 cmt. c (1965)). |
| 16 | **IL** | "According to the Restatement of Torts, there are two ways to commit this tort: 'A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.'" *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005) (quoting Restatement (Second) of Torts § 217)). "Harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can also result in liability." *Id.* (quoting Restatement (Second) of Torts § 218(b)). |
| 17 | **IN** | "[A] trespasser is liable to the possessor of a chattel only when: <br> (a) he dispossesses the other of the chattel, or <br> (b) the chattel is impaired as to its condition, quality, or value, or <br> (c) the possessor is deprived of the use of the chattel for a substantial time, or <br> (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor had a legally protected interest." <br> *Terrell v. Rowsey*, 647 N.E.2d 662, 666 (Ind. Ct. App. 1995) (quoting Restatement (Second) of Torts § 218 (1965)). |
| 18 | **IA** | "One is privileged to commit an act which would otherwise be a trespass to chattel or a conversion if the act is, or is reasonably believed to be, necessary to protect the actor's land ... or his possession of [land], and the harm inflicted [to the chattel] is not unreasonable as compared with the harm threatened [to the actor]." *Crawley v. Price*, 692 N.W.2d 44, 50 (Iowa Ct. App. 2004) (alterations in original) (quoting Restatement (Second) of Torts § 260 (1965)). |
| 19 | **KS** | "One who intentionally dispossesses another of a chattel without his consent or other privilege to do so is liable to the other either as a trespasser for the damage done or as a converter for the value of the chattel except as stated [otherwise.]" *Taylor v. Mo. Cent. Type Foundry Co.*, 53 P.2d 815, 820 (Kan. 1936) (quoting Restatement of the Law, Torts § 222 (1934)) (internal quotation marks omitted). |
| 20 | **KY** | "'[A] trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.'" *Ingram Trucking, Inc. v. Allen*, 372 S.W.3d 870, 872 (Ky. App. Ct. 2012) (quoting Restatement (Second) of Torts § 217 (1965)). |
| 21 | **ME** | "'A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization.'" *Pearl Invs. LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326, 354 (D. Me. 2003) (quoting *America Online, Inc. v. IMS*, 24 F. Supp.2d 548, 550 (E.D. Va. 1998) (citing Restatement (Second) of Torts § 217(b) (1965)). "'One who commits a trespass to a chattel is liable to the possessor of the chattel if the chattel is impaired as to its condition, quality, or value.'" *Id.* (quoting, *inter alia*, Restatement (Second) of Torts § 218(b) (1965)). |
| 22 | **MD** | "In Maryland, trespass to chattels 'has been defined as an intentional use or intermeddling with the chattel in possession of another ..., such |

| | | |
|---|---|---|
| | | intermeddling occurring ... when 'the chattel is impaired as to its condition, quality, or value.'" *Griaznov v. J-K Techs., LLC.*, Civil Action No. ELH-16-2522, 2017 U.S. Dist. LEXIS 32780, at *32 (D. Md. Mar. 8, 2017) (alterations in original) (quoting *United States v. Arora*, 860 F. Supp. 1091, 1097 (D. Md. 1994) (quoting Restatement (Second) of Torts §§ 217(b), 218(b) (1965)), *aff'd*, 56 F.3d 62 (4th Cir. 1995)). |
| 23 | MA | "It is well settled that possession is the physical control of the chattel accompanied by the intent to exercise such control on one's own behalf. One in possession of personal property is entitled to be free of an illegal or improper interference in the enjoyment of the chattel." *Mancuso v. General Motors Acceptance Corp.*, 1993 Mass. App. Div. 136, 137 (Mass. App. Ct. 1993). For trespass to chattels, "[t]he Restatement gives a broader definition: <br><br> 'One who commits a trespass to chattels is subject to liability to the possessor of the chattel if, but only if, (a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest.'" <br><br> *Smith v. Wright*, 2013 Mass. App. Div. 24, at *18-19 (Mass. App. Ct. Mar. 06, 2013) (quoting Restatement (Second) of Torts § 218 (1965)). |
| 24 | MI | "A trespass to chattels is actionable if one dispossesses another of or intentionally and harmfully interferes with another's property." *Najat Mackie & Freetown Mini Mart v. Bollore S.A.*, App. No. 286461, 2010 Mich. App. LEXIS 390, at *12 (Mich. Ct. App. Feb. 25, 2010) (citing, *inter alia*, Restatement (Second) of Torts §§ 217-19 (1965)). |
| 25 | MN | "'A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.'" *Olson v. LaBrie*, No. A12-1388, 2013 Minn. App. Unpub. LEXIS 369, at *9 (Minn. Ct. App. Apr. 29, 2013) (quoting Restatement (Second) of Torts § 217 (1965)). "Dispossessing includes taking the chattel from the person in possession without his consent, obtaining possession of the chattel by fraud or duress, 'barring the possessor's access to the chattel,' or destroying the chattel while it is in another's possession." *Id.* (quoting Restatement (Second) of Torts § 221 (1965)). "Liability arises if the defendant dispossesses the possessor of the chattel, impairs its condition, quality, or value, or deprives the possessor of the chattel's use for a substantial period of time." *Id.* (quoting, *inter alia*, Restatement (Second) of Torts § 218 (1965)). |
| 26 | MO | "According to Restatement of the Law of Torts 2d, § 217, '[a] trespass to a chattel may be committed by intentionally * * * intermeddling with a chattel in the possession of another,' and the intention required 'is present when an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act.'" *Cover v. Phillips Pipe Line Co.*, 454 S.W.2d 507, 512 (Mo. 1970) (citation omitted). |
| 27 | NE | "The Restatement (Second) of Torts identifies the following elements of a trespass to chattel claim: <br><br> One who commits a trespass to chattel is subject to liability to the possessor of the chattel if, but only if, |

32

| | | | |
|---|---|---|---|
| | | | (a) he dispossesses the other of the chattel, or<br><br>(b) the chattel is impaired as to its condition, quality, or value, or<br><br>(c) the possessor is deprived of the use of the chattel for a substantial time, or<br><br>(d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest."<br><br>*ACI Worldwide Corp. v. Mastercard Techs., LLC*, No. 8:14CV31, 2014 U.S. Dist. LEXIS 179068, at *24 (D. Neb. Dec. 31, 2014) (quoting Restatement (Second) of Torts § 218 (1965)). |
| 28 | NV | | "'One who dispossesses another of a chattel is subject to liability in trespass for the damage done.'" *Gann v. Saylor*, No. 3:15-cv-00264-MMD-WGC, 2015 U.S. Dist. LEXIS 136306, at *13 (D. Nev. Aug. 19, 2015) (quoting Restatement (Second) of Torts § 222 (1965)). "If the dispossession seriously interferes with the right of the other to control the chattel, the action may also be subject to liability for conversion.'" *Id.* at *14 (quoting Restatement (Second) of Torts § 222) (1965)). |
| 29 | NH | | "The law in regard to a trespass to chattels is thus summarized in the Restatement of the Law of Torts, § 218: 'One who without consensual or other privilege to do so, uses or otherwise intentionally intermeddles with a chattel which is in the possession of another is liable for a trespass to such person if, but only if, (a) the chattel is impaired as to its condition, quality or value, or (b) the possessor is deprived of the use of the chattel for a substantial time, or (c) bodily harm is thereby caused to the possessor or harm is caused to some person or thing in which the possessor has a legally protected interest.'" *Glidden v. Szybiak*, 63 A.2d 233, 235 (1949) (quoting Restatement of Torts § 218). |
| 30 | NM | | "The intention required to make one liable for trespass to a chattel is that he must have acted for the purpose of interfering with the chattel or with knowledge that a disturbance thereof is substantially certain to occur." *Tex.-New Mex. Pipeline Co. v. Allstate Constr.*, 369 P.2d 401, 402 (N.M. 1962) (quoting, *inter alia*, Restatement (Second) of Torts § 218 cmt. a (1965)). |
| 31 | NY | | "The trespass to chattels tort action in New York is based upon principles set forth in the Restatement (Second) of Torts." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 437 (2d Cir. 2004). "'A trespass to chattel occurs when a party intentionally damages or interferes with the use of property belonging to another.'" *Id.* (quoting *City of Amsterdam v. Goldreyer, Ltd.*, 882 F. Supp. 1273, 1281 (E.D.N.Y. 1995) (citing Restatement (Second) of Torts §§ 217-21 (1965)). "Interference may be accomplished by 'dispossessing another of the chattel' or 'using or intermeddling with a chattel in the possession of another.'" *Id.* (quoting Restatement (Second) of Torts § 217 (1965)). |
| 32 | NC | | "To be liable for trespass to chattel, he need only intentionally dispossess the chattel of another or intermeddle with the chattel of another, when not privileged or authorized to do so." *McDowell v. Davis*, 33 N.C. App. 529, 535, 235 S.E.2d 896, 900 (1977), *rev'd on other grounds*, *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 95 (N.C. 1990) (citing Restatement (Second) of Torts § 217 (1965)). |
| 33 | ND | | "An actionable claim for trespass to chattels or personal property generally requires dispossession of the property, impairment of the condition, quality |

33

| | | or value of the property, loss of use of the property, or other harm." *Sagebrush Res., LLC v. Peterson*, 841 N.W.2d 705, 712 (N.D. 2014) (citing, *inter alia*, Restatement (Second) of Torts § 218 (1965)). |
|---|---|---|
| 34 | **OH** | *See generally CompuServe, Inc. v. Cyber Promotions*, 962 F. Supp. 1015, 1021-28 (S.D. Ohio 1997). <br><br> "'A trespass to chattel occurs when one intentionally dispossesses another of their personal property.'" *Mercer v. Halmbacher*, 44 N.E.3d 1011, 1017 (Ohio Ct. App. 2015). "According to the Second Restatement, a trespass to a chattel may be committed by intentionally: <br>    (a) dispossessing another of the chattel, or <br>    (b) using or intermeddling with a chattel in the possession of another." *Id.* (quoting Restatement (Second) of Torts § 217 (1965)). "However, one who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if: <br>    (a) he dispossesses the other of the chattel, or <br>    (b) the chattel is impaired as to its condition, quality, or value, or <br>    (c) the possessor is deprived of the use of the chattel for a substantial time, or <br>    (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." <br>*Id.* (quoting Restatement (Second) of Torts § 218 (1965)). |
| 35 | **OK** | "Restatement of Torts, 2nd ed, further elucidates: ... 'A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.'" *Woodis v. Okla. Gas & Elec. Co.*, 704 P.2d 483, 485 (Okla. 1985) (quoting Restatement (Second) of Torts §§ 217(a), (b) (1965)). |
| 36 | **OR** | "Although trespass is an intentional tort, it is sufficient if the defendant simply intends to commit the act of interfering with another's property; the plaintiff need not prove that the defendant believed the action to be wrongful or intended to cause damage to the plaintiff.... 'The point is that the defendant intended the intrusion.' ... Defendants need not have trespassed personally if they caused the receiver to do so." *Clausen v. Carstens*, 730 P.2d 604, 606-07 (Or. Ct. App. 1986) (citing, *inter alia*, Restatement (Second) Torts §§ 158(a), 217(a) (1965)). |
| 37 | **PA** | *See Dickerson v. DeSimone, Inc.*, No. 1581 EDA 2015, 2016 Pa. Super. Unpub. LEXIS 3238, at *7 n.2 (Pa. Super. Ct. 2016) (citing, *inter alia*, Restatement (Second) of Torts §§ 217, 218 (1965)). |
| 38 | **TN** | "'A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization.'" *Garner v. Coffee Cty. Bank*, No. M2014-01956-COA-R3-CV, 2015 Tenn. App. LEXIS 873, at *17-18 (Tenn. Ct. App. Oct. 23, 2015) (quoting *Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998) (citing Restatement (Second) of Torts § 217(b) (1965)). |
| 39 | **VA** | "Virginia recognizes the tort of trespass to chattels." *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 621 (E.D. Va. 2005) (citing *America Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998) (citing *Vines v. Branch*, 418 S.E.2d 890, 894 (Va. 1992))). "Trespass to chattels occurs when a party 'intentionally uses or intermeddles with personal property in |

34

| | | rightful possession of another without authorization.'" *Id.* (quoting *America Online*, 24 F. Supp. 2d at 550 (citing Restatement (Second) of Torts § 217(b) (1965)). "If the chattel is impaired as to its value, condition, or quality, the trespassor is liable to the possessor of the chattel." *Id.* (citing *America Online*, 4 F. Supp. 2d at 550 (citing Restatement (Second) of Torts § 218(b) (1965)). |
|---|---|---|
| 40 | WV | "The Restatement of Torts recognizes the notion of trespass to personal property as follows: 'A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.'" *Yourtee v. Hubbard*, 474 S.E.2d 613, 619 (W. Va. 1996) (quoting Restatement (Second) of Torts § 217 (1965)). |
| 41 | WI | "An intentional interference with the possession or physical condition of a chattel in the possession of another, without justification, is a trespass." *Wis. Power & Light Co. v. Columbia Cty.*, 87 N.W.2d 279, 282-83 (Wis. 1958). "The intent required for trespass ... is present when an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act.'" *Id.* at 283 (citing, *inter alia*, Restatement (Second) of Torts § 218 cmt. a (1965)). |
| 42 | WY | *See Breen v. Pruter*, No. 14-CV-00081-F, 2015 U.S. Dist. LEXIS 144513, at *17-18 (D. Wyo. Aug. 6, 2015) (citing, *inter alia*, Restatement (Second) of Torts §§ 217, 218 (1965)). |
| **Non-Restatement States** | | |
| 43 | MS | "The Encyclopedia of Mississippi Law notes that the tort of trespass to chattels 'requires proof of defendant's intentional interference with plaintiff's chattel or dispossession.'" *Kilgo v. Tolar*, No. 1:13-cv-229-SA-DAS, 2015 U.S. Dist. LEXIS 70999, at *15 (N.D. Miss. June 02, 2015) (quoting 5 Miss. Prac. Encyclopedia MS Law § 41:78 (citing Dan B. Dobbs, *The Law of Torts* § 60 (2000))). "'[I]n order to prevail [the plaintiff] must establish that there has been an unauthorized interference with his possession of personal property, or unauthorized use of his personal property.'" *Grosch v. Tunica Cty.*, No. 2:06CV204-P-A, 2009 U.S. Dist. LEXIS 4966, at *16-17 (N.D. Miss. Jan. 22, 2009) (quoting *Awad v. United States*, 2001 U.S. Dist. LEXIS 8989 (N.D. Miss. 2001)). |
| 44 | MT | "In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *Mortensen v. Bresnan Commun.*, No. CV 10-13-BLG-RFC, 2010 U.S. Dist. LEXIS 131419, at *24 (D. Mont. Dec. 13, 2010) (citing, *inter alia*, *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000)). |

35

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2018, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.  I also caused a copy of the foregoing document to be served via email on counsel of record for all parties.

/s/ *Elizabeth A. Kramer*
Elizabeth A. Kramer

36