```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

                          SAN JOSE DIVISION



  IN RE HP PRINTER FIRMWARE      )   C-16-05820 EJD
  UPDATE LITIGATION              )
                                 )   SAN JOSE, CALIFORNIA
                                 )
                                 )   NOVEMBER 8, 2018
                                 )
                                 )   PAGES 1-16
  _____)



                     TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE



  A P P E A R A N C E S:

  FOR THE PLAINTIFF:      GIRARD SHARP LLP
                          BY:  ELIZABETH A. KRAMER
                               JORDAN S. ELIAS
                          601 CALIFORNIA STREET, SUITE 1400
                          SAN FRANCISCO, CALIFORNIA  94108



  FOR THE DEFENDANT:      GIBSON, DUNN & CRUTCHER
                          BY:  SAMUEL G. LIVERSIDGE
                          333 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071



  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                              CERTIFICATE NUMBER 9595


           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1       SAN JOSE, CALIFORNIA                        NOVEMBER 8, 2018
 2                        P R O C E E D I N G S
 3            (COURT CONVENED AT 9:08 A.M.)
 4            THE COURT:  LET'S TURN TO OUR MORNING CALENDAR.
 5    LET'S FIRST CALL 16-5820, H.P. PRINTER FIRMWARE.
 6         IF THOSE PARTIES COULD COME FORWARD, PLEASE.
 7            MS. KRAMER:  GOOD MORNING, YOUR HONOR.
 8         I'M ELIZABETH KRAMER FROM GIRARD SHARP HERE FOR THE
 9    PLAINTIFFS.
10            THE COURT:  THANK YOU.  GOOD MORNING.
11            MR. ELIAS:  AND I'M JORDAN ELIAS, ALSO FOR THE
12    PLAINTIFFS.
13            THE COURT:  THANK YOU.  GOOD MORNING.
14            MR. LIVERSIDGE:  GOOD MORNING, YOUR HONOR.
15         SAM LIVERSIDGE FOR THE DEFENDANT, H.P.
16            THE COURT:  THANK YOU.  GOOD MORNING.
17         THIS MATTER APPEARS FOR PRELIMINARY APPROVAL OF THIS CLASS
18     ACTION SETTLEMENT.
19            AND, MS. KRAMER, LET ME HEAR FROM YOU, PLEASE, WHY YOU
20     THINK THE COURT SHOULD GRANT PRELIMINARY APPROVAL.
21            MS. KRAMER:  THANK YOU, YOUR HONOR.
22         I'M PLEASED TO BE HERE TODAY ON BEHALF OF THE PLAINTIFFS
23     TO BE PRESENTING TO THE COURT A ONE AND A HALF MILLION DOLLAR
24     SETTLEMENT, ALL OF WHICH WILL BE DEDICATED TO PAYING CLASS
25     MEMBERS.
```

1          THE SETTLEMENT ALSO SECURES THE EQUITABLE RELIEF THAT
2     PLAINTIFFS WANTED FROM DAY ONE, WHICH IS TO ENSURE THAT THESE
3     PRINTERS WILL OPERATE WITH NON-H.P. CARTRIDGES.
4          THE SETTLEMENT WAS NEGOTIATED AFTER SUBSTANTIAL DISCOVERY,
5     BRIEFING AND ARGUMENT ON H.P.'S MOTION TO DISMISS, PLAINTIFFS'
6     CLASS CERTIFICATION MOTION, AND EARLIER THIS YEAR, THE COURT
7     ISSUED A THOROUGH AND INSTRUCTIVE OPINION ON H.P.'S MOTION TO
8     DISMISS.
9          WELL INFORMED COUNSEL REACHED THIS AGREEMENT AT ARM'S
10    LENGTH, THE SUBSTANTIAL RELIEF TO THE CLASS PUTS IT WELL WITHIN
11    THE RANGE OF REASONABLENESS, AND THERE ARE NO OBVIOUS
12    DEFICIENCIES.
13         SO WE'RE HERE TODAY TO ASK THE COURT TO GRANT PRELIMINARY
14    APPROVAL, TO APPOINT PLAINTIFFS AND THEIR COUNSEL TO REPRESENT
15    THE SETTLEMENT CLASS, TO APPROVE THE NOTICE PROGRAM THAT IS
16    DETAILED IN OUR PAPERS, AND TO SET A FINAL FAIRNESS HEARING.
17         I'M PREPARED TO SUMMARIZE THE SETTLEMENT AND THE NOTICE
18    PROGRAM IF THE COURT WISHES, OR IF YOU HAVE ANY QUESTIONS OR
19    CONCERNS, I'M HAPPY TO START WITH THOSE.
20         THE COURT:  WELL, THANK YOU.
21    I'M CURIOUS ABOUT A COUPLE OF MATTERS.  IT APPEARS THAT --
22    ARE THERE 50,000 CLASS MEMBERS WHO ARE ESTIMATED TO BE
23    CLAIMANTS HERE?
24         MS. KRAMER:  THAT IS OUR ESTIMATION.
25         AND JUST TO TAKE A STEP BACK, WE HAVE A NOTICE PROGRAM

1    THAT CONTEMPLATES DIRECT NOTICE TO ALL PEOPLE THAT WE CAN
2    IDENTIFY THROUGH H.P.'S RECORDS WHO PURCHASED ONE OF THE CLASS
3    PRINTERS.
4         THE 50,000 ESTIMATE IS OF PEOPLE WHO WOULD BE ELIGIBLE TO
5    MAKE CLAIMS, AND CLAIMANTS ARE PEOPLE WHO OWNED A CLASS PRINTER
6    AND ALSO EXPERIENCED A PRINT INTERRUPTION.
7         H.P.'S ESTIMATE OF THE INDIVIDUALS WHO EXPERIENCED A PRINT
8    INTERRUPTION IN SEPTEMBER 2016, WHICH WAS THE BIG DYNAMIC
9    SECURITY PUSH THAT GOT A LOT OF PRESS AND DISABLED THE MOST
10   PRINTERS, THE ESTIMATE BY H.P. IS THAT THAT NUMBER IS LESS THAN
11   12,000.
12        THE COURT:  RIGHT.
13        MS. KRAMER:  SO WE KNOW FROM DISCOVERY THAT THERE
14   WERE OTHER IMPLEMENTATIONS OF DYNAMIC DISCOVERY, AND SO WE
15   WANTED TO, FOR PURPOSES OF THIS ESTIMATE, USE A HIGHER NUMBER
16   THAN H.P.'S.
17        THE COURT:  SO DID I READ ALSO THAT THE TOTAL NOTICES
18   ARE GOING TO BE SENT TO APPROXIMATELY TWO MILLION PEOPLE?
19        MS. KRAMER:  TWO AND A HALF MILLION, YOUR HONOR,
20   THAT'S CORRECT.  AND FORTUNATELY, HERE WE HAVE A -- BECAUSE OF
21   THE NATURE OF THE PRODUCT AND THAT MANY OF THESE PRODUCTS WERE
22   PURCHASED DIRECTLY FROM H.P., WE DO HAVE E-MAILS FOR MOST
23   PEOPLE WHO PURCHASED ONE OF THE CLASS PRINTERS, AND WE'RE
24   WORKING WITH H.P. AND WITH THE CLAIMS ADMINISTRATOR TO PROVIDE
25   DIRECT NOTICE TO THOSE INDIVIDUALS.

1      THE COURT:  SO OF THOSE TWO MILLION, THERE ARE
2 POTENTIALLY 50,000, SOMETHING LIKE THAT, PEOPLE WHO YOU BELIEVE
3 WILL BE ACTUAL LEGITIMATE CLAIMANTS, SHALL WE SAY?
4      MS. KRAMER:  THAT'S OUR ESTIMATE, YOUR HONOR.
5      THE COURT:  AND I THINK H.P. THINKS THE NUMBER IS
6 LOWER THAN THAT.
7      MR. LIVERSIDGE:  WE DO THINK THE NUMBER IS LOWER.  WE
8 THINK IT'S PROBABLY LESS THAN 20,000.
9    THE CHALLENGE HERE IS WE HAVE NO IDEA WHO THOSE PEOPLE ARE
10 OR HOW TO IDENTIFY THEM, AND SO WE'RE GIVING NOTICE TO THE
11 ENTIRE CLASS AND ALLOWING ANYONE TO COME FORWARD WHO THINKS
12 THEY HAVE A CLAIM HERE.
13      THE COURT:  I SEE.  AND THEN THE CLAIMS -- THE
14 ADMINISTRATOR IS GOING TO PROPERLY FILTER OUT CLAIMS THAT ARE
15 OUTSIDE THE PERIOD OR ACTUALLY DID NOT SUFFER THE INJURY?
16      MS. KRAMER:  THAT'S CORRECT, YOUR HONOR.  WE'LL BE
17 WORKING WITH THE CLAIMS ADMINISTRATOR TO IMPLEMENT AUDIT AND
18 VERIFICATION PROCESSES.
19      THE COURT:  I SEE.  AND THEN THE INJUNCTIVE RELIEF,
20 IF YOU WILL, OF THIS LAWSUIT, I THINK H.P. HAS ALREADY TAKEN
21 SOME ACTION.
22      MR. LIVERSIDGE:  WE HAVE TAKEN SOME ACTION -- AND WE
23 DON'T REFER TO IT AS INJUNCTIVE RELIEF, NON-MONETARY -- BUT WE
24 HAVE TAKEN SOME ACTION TO DEAL WITH THIS SITUATION, AND WE DID
25 THAT ON OUR OWN.  WE HAVE COMMITTED, AS PART OF THE SETTLEMENT,

```
 1        NOT TO TAKE STEPS TO REINSTITUTE THE DYNAMIC SECURITY ON THESE

 2        PARTICULAR MACHINES.

 3             THE COURT:  OKAY.  THANK YOU.

 4        SO CAN I ASK A LITTLE BIT ABOUT THE -- I THINK YOUR

 5        PROJECTION IS PERHAPS 20 PERCENT OF THE 50,000 WILL BE

 6        CLAIMANTS HERE, AND THEN CAN YOU TELL ME HOW THAT PARSES OUT TO

 7        PAYMENTS FOR THOSE CLASS MEMBERS?

 8             MS. KRAMER:  WELL, THE -- JUST TO CLARIFY, THE

 9        50,000, WE USED THAT NUMBER AS OUR ESTIMATE FOR PEOPLE WHO

10        COULD FILE LEGITIMATE CLAIMS THAT ARE PAID, SO THAT'S A HIGHER

11        NUMBER THAN THE NUMBER FROM H.P.

12        BUT USING THAT 50,000 ESTIMATE, WE USED A FAIRLY

13        OPTIMISTIC CLAIMS RATE OF 20 PERCENT, AND USING THAT, THE PER

14        PERSON RECOVERY WOULD BE ABOUT $150.

15             THE COURT:  AND IT LOOKS LIKE THE REPLACEMENT OF THE

16        CARTRIDGES IS ABOUT $100.  THAT'S THE RETAIL COST.  IS THAT

17        RIGHT, SOMEWHERE AROUND THERE?

18             MR. LIVERSIDGE:  SOMEWHERE IN THAT RANGE.  IT DEPENDS

19        ON WHAT YOU BUY EXACTLY, BUT IT COULD BE IN THAT RANGE.

20             THE COURT:  AND THEN THE REPLACEMENT VALUE FOR A

21        PRINTER, IS THAT ESTIMATED TO BE APPROXIMATELY $150 ALSO?

22             MR. LIVERSIDGE:  IT CAN BE.

23             THE COURT:  DEPENDING ON THE MODEL.

24             MR. LIVERSIDGE:  DEPENDING ON THE MODEL.  IT CAN BE

25        ABOUT $150, THAT'S CORRECT.
```

```
 1              THE COURT:  SO TELL ME WHAT HAPPENS IN REGARDS TO THE
 2   PAYMENT IF NOT ALL THE 20 PERCENT ARE RECEIVED, OR LESS THAT,
 3   OR MORE THAN THAT.  WHAT HAPPENS TO THE 1.5?
 4              MS. KRAMER:  SO THE PLAN OF ALLOCATION CONTEMPLATES A
 5   FIRST WHOLE PAYMENT OF ALL DOCUMENTED CLAIMS, AND THEN A
 6   PRO RATA DISTRIBUTION TO ALL CLAIMANTS OF THE AMOUNT REMAINING
 7   IN THE FUND.  SO IT'S DESIGNED TO EXHAUST.
 8         HOWEVER, IF THE AMOUNT PER PERSON WOULD EXCEED $250, THEN
 9   WE WOULD COME BACK TO THE COURT AND PROPOSE ADDITIONAL MEASURES
10   TO DISTRIBUTE THE FUNDS.
11              THE COURT:  OF COURSE, THAT'S WHY I ASKED THE
12   QUESTION.
13              MS. KRAMER:  RIGHT.
14              THE COURT:  WHENEVER YOU SAY "WE'RE GOING TO COME
15   BACK TO THE COURT," THE COURT IS CURIOUS ABOUT WHAT DOES THAT
16   MEAN.
17              MS. KRAMER:  WELL, WE MAY, FOR EXAMPLE, PROPOSE
18   ADDITIONAL MEASURES TO REACH NON-PARTICIPATING CLASS MEMBERS.
19              THE COURT:  RIGHT.  AND I WONDERED -- I THOUGHT THAT
20   MIGHT BE THE SOLUTION.
21         SO IS THERE SOME WAY TO CAPTURE THAT UP FRONT?  HOW WOULD
22   WE CAPTURE THAT UP FRONT?  YOU REALLY DON'T KNOW UNTIL YOU GET
23   THE RESPONSE RATE, I SUPPOSE.
24              MS. KRAMER:  THAT'S CORRECT, YOUR HONOR.
25         AND WE ALSO HAVE A DEADLINE SET WITH RESPECT TO REPORTING
```

1   TO THE COURT ON THE CLAIMS PROCESS SO THAT ONCE WE'VE WORKED
2   WITH THE CLAIMS ADMINISTRATOR AND SEEN WHAT THE INITIAL
3   RESPONSE RATE WOULD BE, THEN WE CAN REPORT TO YOUR HONOR.
4            THE COURT:  THEN IS IT CONTEMPLATED THAT THERE WOULD
5   BE A SECOND ROUND OF DISBURSEMENT OF SOME SORT?  OR IT WOULD BE
6   EXPANDING THE OPPORTUNITY FOR CLAIMS?
7            MS. KRAMER:  I THINK EITHER OF THOSE OPTIONS WOULD BE
8   AVAILABLE.
9            THE COURT:  WOULD IT MAKE SENSE TO CREATE A LARGER,
10  AT LEAST INITIALLY, PERHAPS GIVE MORE TIME, GREATER PUBLICITY,
11  MORE OPPORTUNITY TO PUBLICIZE SO WE CAN CAPTURE AS MANY AS
12  POSSIBLE UP FRONT?
13           MR. LIVERSIDGE:  WELL, IF I CAN MENTION ONE THING --
14           THE COURT:  YEAH, SURE.
15           MR. LIVERSIDGE:  -- ABOUT THE PLAN?  ONE OF THE
16  THINGS IT DOES IS ALLOWS PEOPLE THAT DON'T HAVE DOCUMENTED
17  PROOF OF THEIR CLAIM TO COME FORWARD.  AND WE'RE GIVING NOTICE
18  TO, YOU KNOW, TWO TO THREE MILLION PEOPLE.  AND SO YOU ARE ABLE
19  TO COME FORWARD AND ATTEST THAT YOU HAVE ONE OF THE MACHINES AT
20  ISSUE AND THAT YOU USED A THIRD PARTY CARTRIDGE AND SUFFERED A
21  PRINT INTERRUPTION.
22         WE'RE NOT REALLY -- WE'RE NOT DEMANDING MORE THAN THAT TO
23  GET SOME LEVEL OF RECOVERY.
24         SO THE THOUGHT WOULD BE, ONCE YOU MOVE PAST THE DOCUMENTED
25  CLAIMS, YOU HAVE A SITUATION WHERE A LOT OF PEOPLE COULD COME

```
 1      FORWARD AND SAY, "YES, I EXPERIENCED THIS," AND GET SOME
 2      RECOVERY.
 3           AND SO WE ARE HOPEFUL, WITH THAT, THAT WE WOULD EXHAUST
 4      THE FUND.
 5                THE COURT:  SURE.
 6                MR. LIVERSIDGE:  THAT IS THE PLAN.
 7                THE COURT:  OKAY.  YOU KNOW, A THOUGHT OCCURS TO ME
 8      THAT, IN LOOKING AT YOUR NOTICE, THE TIMELINES FOR THE
 9      NOTICE -- AND THEY FALL SOMEWHERE, I THINK IT'S JUST 45 DAYS
10      MIGHT BE THE FIRST, FIRST DATE -- THE CONCERN I HAD JUST A
11      MOMENT AGO WAS THIS NOTICE IS GOING TO GO OUT POTENTIALLY
12      DURING THE HOLIDAY SEASON, AND I DON'T KNOW IF THERE'S ANYTHING
13      WE NEED TO BE CONCERNED ABOUT.  PEOPLE HAVE OTHER THINGS ON
14      THEIR MINDS TYPICALLY IN THE HOLIDAY SEASON.  DO WE JUST WAIT
15      AND SEE WHAT HAPPENS?  HAVE YOU HAD EXPERIENCE IN NOTICING
16      LAWSUITS IN THE HOLIDAY SEASON?  I'M JUST CURIOUS.
17                MR. LIVERSIDGE:  NOT THAT I CAN RECALL.
18           BUT I THINK IF, IF YOUR HONOR IS CONCERNED ABOUT THE
19      LENGTH OF THE TIME PEOPLE HAVE TO MAKE CLAIMS, THAT'S CERTAINLY
20      SOMETHING WE COULD DISCUSS AND I THINK WE'D BE AMENABLE TO
21      EXTENDING THAT SOME PERIOD OF TIME.
22                THE COURT:  DO YOU THINK THAT'S AN ISSUE?  AM I JUST
23      PICKING NITS HERE?
24                MS. KRAMER:  I THINK IT WOULD -- YOU KNOW, WE COULD
25      CERTAINLY EXTEND THE TIMELINE.
```

1          WE COULD ALSO CONSULT WITH THE CLAIMS ADMINISTRATOR AND
2     SEE IF THERE'S DATA ON A MORE OPPORTUNE TIME TO PROVIDE NOTICE.
3              THE COURT:  ALL RIGHT.  I JUST WAS CURIOUS ABOUT THAT
4     BECAUSE I THINK, DRIVING IN, I SAW HOLIDAY ORNAMENTS UP, AND I
5     THOUGHT, "OH MY GOODNESS, WE'RE NOT EVEN AT THANKSGIVING."
6              MR. LIVERSIDGE:  I SAW SOME AS WELL, YOUR HONOR.
7              THE COURT:  RIGHT.  SO I'M JUST CURIOUS WHETHER OR
8     NOT THERE IS ANY DATA ON THAT, WHETHER THAT INFLUENCES RETURNS
9     AT ALL.
10         AND I SEE THERE'S NO AGREEMENT ON ATTORNEYS' FEES.  THAT
11    WILL BE DEALT WITH AT ANOTHER TIME.  WHAT SHOULD I KNOW ABOUT
12    THAT?
13             MS. KRAMER:  WE DEFERRED DISCUSSION OF THE ATTORNEYS'
14     FEES.
15             THE COURT:  OTHER THAN YOU'LL BE ASKING FOR
16     SOMETHING?
17             MS. KRAMER:  RIGHT, YES.
18         SO THE 1.5 MILLION IS EXCLUSIVE OF ANY ATTORNEYS' FEES,
19    ADMINISTRATIVE EXPENSES, INCLUDING NOTICE AND CLAIMS
20    PROCESSING, AND ANY SERVICE AWARDS THAT ARE GRANTED TO THE
21    CLASS REPRESENTATIVES.
22             THE COURT:  ALL RIGHT.
23             MS. KRAMER:  SO WE HAVE NOT REACHED AN AGREEMENT ON
24     ATTORNEYS' FEES.  WE ARE GOING TO CONTINUE NEGOTIATING IN GOOD
25     FAITH AND HOPEFULLY RESOLVE THAT.  IF NOT, WE WILL BRING A

1    MOTION TO THE COURT ON THE APPROPRIATE TIMELINE SO THAT CLASS
2    MEMBERS WILL HAVE AN OPPORTUNITY TO SEE OUR APPLICATION.
3             THE COURT:  RIGHT.  THAT'S A -- I THINK THEY SHOULD
4    KNOW THAT, OF COURSE.  THAT SHOULD BE PART OF THE NOTICE SO
5    THAT THEY KNOW WHAT THE ATTORNEYS' FEES ARE, SO THAT'S A PUBLIC
6    INFORMATION FILING.  THANK YOU.
7         WHAT ABOUT, I'M ALSO CURIOUS ABOUT, I THINK IT'S
8    PARAGRAPH 17 THAT TALKS ABOUT OPT OUTS, AND I THINK YOU GIVE
9    75 DAYS AFTER ENTRY OF THE ORDER.
10        AND DOES THAT REALLY PENCIL OUT TO 45 ACTUAL DAYS?
11            MS. KRAMER:  WE HAVE A NOTICE DATE THAT WILL BE 30
12   DAYS AFTER ENTRY OF THE PRELIMINARY APPROVAL ORDER, AND THEN WE
13   SET THE OPT OUT DEADLINE AT 75.
14        IF THERE'S ANY CONCERN THAT, YOU KNOW, WE WANT NOTICE TO
15   ACTUALLY BE DELIVERED, WE COULD CERTAINLY TEE THE OPT OUT
16   DEADLINE TO A CERTIFICATION FROM THE CLAIMS ADMINISTRATOR THAT
17   NOTICE HAS, IN FACT, BEEN DELIVERED.
18            THE COURT:  THAT'S PROBABLY APPROPRIATE.  I THINK
19   THAT SOMETIMES THE OPT OUTS SHOULD HAVE A LITTLE BIT MORE
20   WINDOW TO LOOK AT THE INFORMATION AND MAKE AN INFORMED,
21   OTHERWISE INFORMED DECISION.  SO IF YOU COULD ADJUST THAT, THAT
22   WOULD BE GREAT.
23        MS. KRAMER, WHAT ELSE SHOULD I KNOW?
24            MS. KRAMER:  WE CERTAINLY APPRECIATE THE COURT'S
25   TIME.  IT'S BEEN NEARLY TWO YEARS SINCE WE BEGAN THE

1  LITIGATION. BUT WE FEEL THAT THIS IS AN EXCELLENT RESULT FOR
2  THE CLASS.
3      AND IF THERE ARE NO OTHER QUESTIONS FROM THE COURT, I
4  THINK WE'VE SAID WHAT WE NEED TO SAY IN OUR PAPERS.
5          THE COURT: I DO HAVE ONE OTHER QUESTION. I'M SORRY.
6  CAN YOU GIVE ME AN ESTIMATE ABOUT ADMINISTRATIVE COSTS? I
7  KNOW YOU DON'T HAVE THAT PRESENTLY, BUT IS THERE ANY IDEA ABOUT
8  WHERE THOSE WOULD FALL?
9          MS. KRAMER: WE WILL HAVE ESTIMATED COSTS FROM THE
10 NOTICE ADMINISTRATOR, AND WE HAVE BEEN WORKING WITH H.P. TO
11 AGREE ON A PLAN. THE CLAIMS ADMINISTRATOR WOULD BE SENDING
12 INVOICES PERIODICALLY TO H.P. FOR PAYMENT, AND I EXPECT THAT IT
13 WOULD NOT EXCEED 300,000.
14         THE COURT: DO YOU -- HAVE YOU IDENTIFIED SOMEONE TO
15 USE?
16         MS. KRAMER: YES, WE HAVE, YOUR HONOR.
17         THE COURT: OKAY. REMIND ME WHO THAT IS.
18         MS. KRAMER: IT'S EPIQ. AND THAT'S E-P-I-Q.
19         THE COURT: AND DO YOU THINK THE COSTS OF THAT WILL
20 BE NOT MORE THAN $300,000?
21         MS. KRAMER: THAT'S CORRECT, YOUR HONOR.
22         THE COURT: WHAT'S YOUR EXPERIENCE TELL YOU ABOUT THE
23 REASONABLENESS OF THAT PRICE GIVEN THE 1.5 OF THE SETTLEMENT?
24         MS. KRAMER: WELL, GIVEN THAT THE AMOUNT WILL BE PAID
25 BY H.P. AND NOT COMING OUT OF THE SETTLEMENT FUND, I THINK, YOU

1  KNOW, THE CONSIDERATION IS THERE MAY BE A MORE INVOLVED CLAIMS

2  PROCESS HERE BECAUSE WE'RE HAVING PEOPLE SUBMIT DOCUMENTATION.

3      SO I THINK GIVEN THAT THE CLAIMS PROCESSING IS GOING TO

4  RESULT IN MORE PEOPLE GETTING PAID, AND VALID CLAIMS BEING

5  PAID, AND THAT THE COST IS NOT COMING OUT OF THE CLASS RELIEF,

6  I THINK IT'S A REASONABLE SUM.

7           THE COURT:  I ASKED YOUR COLLEAGUE OPPOSITE WHETHER

8  SHE HAD ANY COMMENTS ABOUT YOUR EXPENDITURES, YOUR CLIENT'S

9  EXPENDITURES.

10          MR. LIVERSIDGE:  WE WOULD LIKE IT TO BE LESS.

11          THE COURT:  RIGHT.

12          MR. LIVERSIDGE:  AND WE'RE HOPING THAT IT'S AN

13 EFFICIENT PROCESS.  YOU KNOW, $300,000 IS A SIGNIFICANT EXPENSE

14 FOR A SETTLEMENT LIKE THIS, AND SO I THINK OUR CLIENT IS

15 CERTAINLY HOPEFUL THAT IT'S SOMETHING MORE IN THE 100- TO

16 $200,000 RANGE.  BUT IT'S HARD TO KNOW AT THIS POINT.

17      AS COUNSEL MENTIONED, THERE WILL BE PEOPLE COMING FORWARD

18 WITH DOCUMENTATION AND THEY WILL HAVE TO SORT THROUGH THAT AND

19 MAKE SOME JUDGMENTS ABOUT THAT, SO IT'S HARD TO KNOW AT THIS

20 POINT.

21          THE COURT:  RIGHT.  IT JUST SEEMS LIKE IT'S A LITTLE

22 HIGH FOR THE CLASS, FOR THE SETTLEMENT AMOUNT.  AND I'M

23 GRATEFUL THAT IT'S NOT COMING OUT OF THE CLIENTS' PORTION, BUT

24 I'M ALSO COGNIZANT THAT H.P., THE DEFENDANT HERE, IF HE CAN

25 GET -- AND I MEAN NO DISPARAGEMENT ABOUT BUICKS -- BUT IF HE

1     CAN GET A BUICK, HE DOESN'T NEED A ROLLS ROYCE I GUESS IS WHAT
2     I'D SAY.
3              MR. LIVERSIDGE:  WE ARE FOCUSSED ON THAT AND ARE
4     GOING TO BE WORKING ON IT TO KEEP THOSE COSTS DOWN TO THE
5     EXTENT POSSIBLE.
6              THE COURT:  SURE.  OKAY.
7         ANYTHING YOU'D LIKE TO SAY ABOUT THE PRELIMINARY
8     SETTLEMENT?
9              MR. LIVERSIDGE:  NO, YOUR HONOR.  I THINK COUNSEL HAS
10    SUMMARIZED IT WELL.
11             THE COURT:  GREAT, OKAY.
12        ANYTHING ELSE I SHOULD KNOW?
13             MS. KRAMER:  NOTHING FURTHER, YOUR HONOR.  THANK YOU
14    FOR YOUR TIME.
15             THE COURT:  ALL RIGHT.
16        MR. ELIAS, ANYTHING ELSE?
17             MR. ELIAS:  NO, YOUR HONOR.  THANK YOU VERY MUCH.
18             THE COURT:  ALL RIGHT.  THANK YOU.  YOU'VE BEEN
19    ELOQUENT IN YOUR SILENCE, MR. ELIAS.
20             MR. ELIAS:  APPRECIATE IT, YOUR HONOR.
21             THE COURT:  ALL RIGHT.  THANK YOU.  THANKS FOR THE
22    DISCUSSION.  THANK YOU FOR YOUR PAPERS.  THOSE WERE VERY
23    HELPFUL AND I APPRECIATE YOU ANSWERING MY QUESTIONS.
24        I WILL THEN, CONSIDERING THE PLEADINGS HERE -- I
25    APPRECIATE YOUR GOOD WORK IN RESOLVING THE CASE.  THANK YOU FOR

1       THAT.
2             THE COURT DOES FIND THAT RULE 23 HAS BEEN SATISFIED AND I
3       WILL GRANT PRELIMINARY APPROVAL AS INDICATED.
4             AND I THINK YOU'VE GIVEN ME AN ORDER.  I THINK YOU
5       PROVIDED THAT.
6             MS. KRAMER:  WE DID PROVIDE A PRELIMINARY APPROVAL
7       ORDER, YOUR HONOR.
8             THE COURT:  AND I WILL LOOK AT THAT.
9       DO YOU WANT TO MEET AND CONFER TO RESOLVE ANY OF THESE
10      OTHER ISSUES PRIOR TO ME SIGNING THE ORDER?  OR CAN I SIGN THAT
11      TRUSTING THAT YOU'LL TAKE CARE OF THOSE OTHER ISSUES?
12            MR. LIVERSIDGE:  I THINK WE CAN RESOLVE THEM OUTSIDE
13      THE ORDER.  I'M NOT THINKING OF ANYTHING IN THE ORDER THAT WILL
14      PREVENT US FROM DOING THAT.
15            THE COURT:  I DON'T THINK SO, EITHER.
16            MS. KRAMER:  THE ONLY ADJUSTMENT THAT WE WOULD MAKE
17      WOULD BE TO THE OPT OUT DEADLINE, SO WE CAN EITHER SUBMIT
18      PROMPTLY A REVISED PROPOSED PRELIMINARY APPROVAL ORDER --
19            THE COURT:  THANK YOU FOR THAT INVITATION,
20      MS. KRAMER.  I ACCEPT IT.  AND YOU CAN PROMPTLY SEND THAT AND
21      WE'LL GET IT OUT PROMPTLY AS WELL.
22      SO I WILL GRANT PRELIMINARY APPROVAL AS REQUESTED.  I FIND
23      THAT, AT LEAST AT THIS POINT, IT IS FAIR, ADEQUATE, AND
24      REASONABLE.
25            AND I LOOK FORWARD TO SEEING YOU AGAIN.

```
 1              I THINK YOUR ORDER WILL ALSO HAVE A DATE ON IT FOR FINAL
 2     APPROVAL.
 3              MS. KRAMER:  THAT'S CORRECT.
 4              THE COURT:  RIGHT.  AND WE'LL ADJUST THAT ACCORDING
 5     TO OUR CALENDAR AVAILABILITY.
 6           ALL RIGHT.  THANK YOU VERY MUCH.
 7              MS. KRAMER:  GREAT.  THANK YOU, YOUR HONOR.
 8              MR. ELIAS:  THANKS.
 9              MR. LIVERSIDGE:  THANK YOU, YOUR HONOR.
10           (THE PROCEEDINGS WERE CONCLUDED AT 9:26 A.M.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED: NOVEMBER 27, 2018