1  Daniel C. Girard (SBN 114826)
2  Jordan Elias (SBN 228731)
   Elizabeth A. Kramer (SBN 293129)
3  **GIRARD SHARP LLP**
   601 California Street, Suite 1400
4  San Francisco, California 94108
   Telephone: 415-981-4800
5  Facsimile: 415-981-4846
6  *dgirard@girardsharp.com*
   *jelias@girardsharp.com*
7  *ekramer@girardsharp.com*

8  *Counsel for Plaintiffs*

9
10 [Additional Counsel Listed on Signature Page]

11          **UNITED STATES DISTRICT COURT**
12      **FOR THE DISTRICT OF NORTHERN CALIFORNIA**
              **SAN JOSE DIVISION**
13

14
15 IN RE HP PRINTER FIRMWARE UPDATE
   LITIGATION
16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| IN RE HP PRINTER FIRMWARE UPDATE LITIGATION | Case No. 5:16-cv-05820-EJD-SVK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Date: April 25, 2019<br>Time: 9:00 a.m.<br>Place: Courtroom 4<br>Judge: Hon. Edward J. Davila |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION..............................................................................1

INTRODUCTION .......................................................................................................1

BACKGROUND .........................................................................................................3

I.     SUMMARY OF THE LITIGATION.............................................................3

     A.     Plaintiffs' Factual Allegations and Claims................................3

     B.     Procedural History and Discovery .............................................3

     C.     Settlement Discussions and Preliminary Approval ...................5

II.    SUMMARY OF THE SETTLEMENT.........................................................5

     A.     The Settlement Class .................................................................5

     B.     The Settlement Benefits ............................................................6

     C.     Releases .....................................................................................6

III.   CLASS NOTICE AND CLAIMS ADMINISTRATION .............................7

     A.     Notice and Settlement Administration ......................................7

          1.     Direct Notice by Email and First-Class Mail; Publication Notice........7

          2.     The Dedicated Settlement Website and Toll-Free Number .................8

          3.     Claims and Requests for Exclusion ............................8

     B.     Settlement Notice and Administration Expenses .................9

ARGUMENT ...........................................................................................................9

I.     CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS
       APPROPRIATE. ....................................................................................9

     A.     Rule 23(a) Is Satisfied. ..........................................................10

          1.     The Class Members Are Too Numerous to Be Joined........................10

          2.     The Action Involves Common Questions of Law and Fact................10

          3.     Plaintiffs' Claims Are Typical of Those of the Class. ........................10

          4.     Plaintiffs and Their Counsel Will Fairly and Adequately Protect
              the Interests of Class Members. ........................11

i

B.    Rule 23(b)(3) Is Satisfied. ................................................................11

    1.    Common Questions of Law and Fact Predominate. ............................11

    2.    A Class Action Is a Superior Means of Resolving These Claims........13

II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED. ........................................................13

    1.    The Settlement Provides Substantial Benefits to the Class.................14

    2.    The Strength of Plaintiffs' Case, Balanced Against the Risks and Expense of Litigation, Favors Approval. ............................................15

    3.    The Settlement Resulted From Informed, Arm's Length Negotiations Between Experienced Counsel. .....................................16

    4.    The Significant Discovery, Research, and Motion Practice in This Case Informed Settlement Negotiations and Supports Final Approval...........................................................................................17

    5.    Class Members' Positive Reaction to the Settlement Favors Approval...........................................................................................17

    6.    The Settlement Treats the Class Members Equitably Relative to Each Other........................................................................................18

III.    THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED. ..................18

CONCLUSION ........................................................................................................20

ATTESTATION.......................................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)........................................................12

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015)........................17

*Bias v. Wells Fargo & Co.*, 312 F.R.D. 528 (N.D. Cal. 2015)........................................12

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ......................13, 14, 15, 17

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)................................13, 16

*Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884 (N.D. Cal. 2015) ...............................11

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ........................10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...........................................13

*Harris v. comScore, Inc.*, 292 F.R.D. 579 (N.D. Ill. 2013) ..........................................12

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011) ......16

*In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152 (N.D. Cal. 2001)...................19

*In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 313 (D.N.J. 1998) ...................19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .................................17

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................16

*K.H. v. Secretary of Dep't of Homeland Sec.*, 2018 WL 6606248 (N.D. Cal. Dec. 17, 2018) .................7

*Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997).................16

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ................................18

*Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016)............13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...........17, 18

*Nicholson v. UTi Worldwide, Inc.*, 2011 WL 1775726 (S.D. Ill. May 10, 2011) ..................12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)..........................13, 14

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .........................................................11, 13

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016)............................................10

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ..........................................14

*Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227 (9th Cir. 1996) ........................................13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)..........................................................10

**<u>Statutes</u>**

California Code of Civil Procedure § 1021.5 ..........................................................................6

Class Action Fairness Act, 28 U.S.C. § 1715.........................................................................8

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ......................................................2, 4, 12

**<u>Rules</u>**

Fed. R. Civ. P. 23 ..........................................................................................................*passim*

Fed. R. Civ. P. 30(b)(6) .........................................................................................................17

**<u>Other Authorities</u>**

4 William B. Rubenstein, *Newberg on Class Actions* § 13:39 (5th ed. 2014) ........................9

PLAINTIFFS' MOTION FOR FINAL APPROVAL, CASE NO. 5:16-CV-05820-EJD-SVK

1

### NOTICE OF MOTION AND MOTION

2      **PLEASE TAKE NOTICE** that on April 25, 2019, or as soon thereafter as the matter may be

3 heard before the Honorable Edward J. Davila, United States District Judge for the Northern District

4 of California, Plaintiffs Richard San Miguel, DeLores Lawty, Richard Faust, Christopher Ware, and

5 James Andrews ("Plaintiffs") will and hereby do move the Court, pursuant to Federal Rule of Civil

6 Procedure 23, for an Order:

7      1.      Granting final approval of the proposed Settlement Agreement (the "Settlement") with

8 Defendant HP Inc. ("HP");

9      2.      Determining that the Settlement Class, as defined in the Court's Preliminary Approval

10 Order (Dkt. No. 116) and in the Settlement, satisfies the prerequisites for a class action under Fed. R.

11 Civ. P. 23(a) and (b)(3), and certifying the Settlement Class;

12      3.      Finally determining that the Settlement is fair, reasonable, and adequate;

13      4.      Finally approving the plan of allocation and directing payment of claims;

14      5.      Dismissing this action with prejudice.

15      This motion is based on this notice of motion and motion, the below memorandum of points

16 and authorities, the Declaration of Elizabeth A. Kramer ("Kramer Decl."), the Declaration of

17 Cameron Azari ("Azari Decl."), all papers and records on file in this matter, and such other matters as

18 the Court may consider.

19

### INTRODUCTION

20      On November 19, 2018, this Court granted preliminary approval of the proposed Settlement

21 that would resolve this litigation.  The Court provisionally found that the proposed class met the

22 requirements of Rule 23(a) and 23(b)(3) for settlement purposes, preliminarily approved the

23 settlement terms as fair, reasonable, and adequate, and directed notice to the class.  The Court also

24 scheduled a final approval hearing for April 25, 2019.  Plaintiffs now respectfully ask the Court to

25 enter an order granting final approval to the Settlement.

26      The law favors compromise and settlement of complex class actions, and the Settlement in

27 this case is the product of arms' length negotiations between experienced and informed counsel after

28 a year and a half of litigation that saw extensive discovery into the facts of the case and HP's relevant

technology and business units.  The Settlement achieves the goals of the litigation, delivering all or most of the relief class members could expect to obtain at trial while avoiding risky, expensive and protracted litigation.  The settled claims arise from technology known as Dynamic Security that HP activated in certain of its printers which disabled them if they were equipped with certain third-party replacement ink cartridges.[1]  The Settlement was reached after Plaintiffs moved to certify a nationwide class for the purpose of adjudicating key liability issues, such as whether HP's use of Dynamic Security violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (CFAA).  The Settlement prohibits HP from reinstalling or reactivating Dynamic Security in the printers at issue and creates a $1.5 million cash fund to reimburse owners of affected printers for their lost money or time.  None of the $1.5 million will revert to HP.  In addition to the non-monetary relief and money for class members, HP agreed to pay (and has paid) for all notice and administration costs required to effect the Settlement.  Class Counsel separately apply for an award of attorneys' fees of $2.75 million—less than the value of their hours expended in prosecuting and resolving these claims—to be paid by HP separately from the $1.5 million class fund and the notice and administration costs.

The claims administrator, Epiq, under the supervision of Class Counsel, carried out the notice program set forth in the Preliminary Approval Motion and approved by this Court.  Epiq disseminated notice to class members through direct mailings, publications, online advertising, and social media, satisfying the requirements of due process and Rule 23(c)(2)(B).  Epiq emailed notice to over 2 million class members using email addresses in HP's possession, sent postcards to nearly 7,500 more, and implemented a robust publication notice campaign.  The dedicated Settlement website (hpprinterfirmwarelawsuit.com) has received nearly 100,000 unique visitors, and Class Counsel have responded to several class member inquiries regarding the claims process and participation in the Settlement.  The class members' response to the Settlement has been overwhelmingly positive.  Over 7,300 claims have been received to date, including over 2,500 with substantiating documentation.  No class member objects to the Settlement and only five have requested exclusion.  The claims process

---

[1] Unless otherwise indicated, capitalized terms have the meaning ascribed to them in the Settlement. *See* Kramer Decl., Ex. A §§ 1.1-1.35.

PLAINTIFFS' MOTION FOR FINAL APPROVAL, CASE NO. 5:16-CV-05820-EJD-SVK

1    and proposed Plan of Allocation give priority to class members who sustained documented out-of-

2    pocket losses—e.g., from purchasing replacement cartridges or incurring other expenses—after print

3    interruptions.  Those without receipts or other proof of loss also can make claims, for lost money or

4    time, and those claims will be paid on a *pro rata* basis after accounting for the documented claims.

5    Subject to verification from the claims administrator, based on the claims received to date, the $1.5

6    million settlement fund will be sufficient to pay all valid claims, and the parties will not need to ask

7    the Court to approve a second round of distributions.

8           As set forth herein, Plaintiffs respectfully submit that the Settlement and its associated

9    procedures meet the criteria for final approval, conform to all Northern District class settlement

10   guidelines, and should be finally approved.

11                                              **BACKGROUND**

12   **I.      SUMMARY OF THE LITIGATION**

13           **A.      Plaintiffs' Factual Allegations and Claims**

14           The litigation arose out of unexpected printer failures that HP consumers experienced on or

15   around September 13, 2016.  Plaintiffs Richard San Miguel and DeLores Lawty filed a complaint

16   on October 7, 2016, alleging that HP had violated California's Unfair Competition Law by

17   executing a firmware update that disabled HP inkjet printers fitted with certain replacement ink

18   cartridges manufactured by HP's competitors.  Dkt. No. 1.  Plaintiffs alleged that the failed HP

19   printers displayed an error message that the ink cartridges were "damaged or missing" when that

20   was not true, as HP in fact had disabled the printers to induce purchases of its own higher-priced

21   cartridges.  *Id.*, ¶ 2.  Plaintiffs sought equitable relief and restitution for class members with affected

22   printers.  *Id.*, Prayer for Relief.

23           **B.      Procedural History and Discovery**

24           As described in the Declaration of Elizabeth A. Kramer filed herewith ("Kramer Decl."), in the

25   wake of HP's September 2016 printer disablements, four lawsuits were filed in three districts.  Kramer

26   Decl., ¶ 5.  HP separately moved to dismiss the *San Miguel* and *Doty* complaints in December 2016,

27   and plaintiffs in those cases opposed HP's motions.  Kramer Decl., ¶ 7.  Discussions among plaintiffs'

28   counsel in December 2016 and January 2017 produced a consensus to concentrate the litigation in this

district, which served to moot the *San Miguel* Plaintiffs' MDL petition and HP's motion to transfer under the first-to-file rule.  Kramer Decl., ¶¶ 8-10; 15-17.  The *San Miguel* action was then reassigned to this Court, on February 24, 2017, and the parties stipulated to consolidate the related *Ware* and *Doty* actions under this caption.  Dkt. Nos. 57, 59.  Plaintiffs filed a consolidated complaint on March 22, 2017.  Dkt. No. 60.  HP moved to dismiss (Dkt. No. 66), Plaintiffs opposed the motion (Dkt. No. 74), and the Court heard argument on July 14, 2017 (Dkt. No. 83).

The parties then engaged in significant discovery for several months, during which Plaintiffs reviewed thousands of documents from HP and conducted two Rule 30(b)(6) depositions of HP's corporate representatives, and HP deposed each Plaintiff.  Kramer Decl., ¶ 31-35.  Plaintiffs also pursued third-party discovery related to class certification and damages from approximately 15 manufacturers and retailers.  Kramer Decl., ¶ 32.

On February 7, 2018, Plaintiffs moved for a hybrid Rule 23(b)(2)-(c)(4) certification of (1) a subclass of California printer owners seeking injunctive relief under the UCL, and (2) a national class of consumers who experienced print interruptions for purposes of adjudicating the liability elements of the CFAA and trespass to chattels claims, with individualized damages proceedings to follow.  Dkt. No. 91.  Plaintiffs explained that "[t]he primary relief" sought is injunctive, and that the amount of individual damages "varies and is too low to justify individual lawsuits."  *Id.* at 16, 22.  With HP's agreement and leave of Court, Plaintiffs submitted a consolidated amended complaint conforming to their class certification request.  Dkt. Nos. 88, 92, 94.

On March 29, 2018, the Court entered an order granting in part and denying in part HP's motion to dismiss.  Dkt. No. 97.  The Court upheld Plaintiffs' computer intrusion claims under the CFAA and the California Penal Code and their trespass claims at common law (*id*. at 7-13), together with their statutory consumer fraud claims to the extent they were based on HP's misleading error messages and material omissions (*id*. at 16-17).  The Court dismissed Plaintiffs' UCL unfairness and tortious interference claims, among others, with leave to replead.  *Id.* at 17-23.  The Court invited the parties to stipulate as needed to an extension of time for filing a second amended complaint and completing the class certification proceedings.  *Id.* at 24.

### C.     Settlement Discussions and Preliminary Approval

Informed by the Court's motion to dismiss order, the parties entered into settlement discussions and spent several months negotiating a resolution of these claims.  Kramer Decl., ¶ 39.  The parties' settlement talks led to an agreement in principle memorialized in a term sheet signed on July 11, 2018.  Kramer Decl., ¶ 40.  The Court then allowed 60 days to prepare settlement papers (Dkt. No. 107), and several weeks of often difficult negotiations followed.  Kramer Decl., ¶ 41.  The parties were able to agree on a comprehensive set of terms to settle the claims, and deferred any effort to resolve the amount of attorneys' fees and litigation expenses that HP will pay to Plaintiffs' counsel for prevailing in the litigation.  Kramer Decl., ¶ 44 & Ex. A § 6.1.

Plaintiffs filed their motion for preliminary settlement approval on September 18, 2018, and the Court heard the motion on November 8, 2018.  Dkt. Nos. 110, 114.  The Court preliminarily found the Settlement fair, adequate, and reasonable.  Dkt. No. 114.  As directed by the Court, Plaintiffs submitted a revised proposed order with a modified schedule to afford class members additional time to decide whether and how to participate in the Settlement.  On November 19, 2018, the Court entered an order preliminarily approving the Settlement and providing for notice to the Class.  Dkt. No. 116.

## II.     SUMMARY OF THE SETTLEMENT

### A.     The Settlement Class

The proposed Settlement provides for certification of a class defined as all persons who owned a Class Printer from March 1, 2015 through December 31, 2017 ("Settlement Class").  Kramer Decl., Ex. A § 1.7.  The Class Printers are:

- HP OfficeJet Pro 6230
- HP OfficeJet 6812
- HP OfficeJet 6815
- HP OfficeJet 6820
- HP OfficeJet Pro 6830
- HP OfficeJet Pro 6835
- HP OfficeJet Pro 8610
- HP OfficeJet Pro 8615
- HP OfficeJet Pro 8616
- HP OfficeJet Pro 8620
- HP OfficeJet Pro 8625
- HP OfficeJet Pro 8630
- HP OfficeJet Pro X551dw

5

- HP OfficeJet Pro X451dn
- HP OfficeJet Pro X451dw
- HP OfficeJet Pro X576dw
- HP OfficeJet Pro X476dn
- HP OfficeJet Pro X476dw

Kramer Decl., Ex. A § 1.8.[2]

### B.   The Settlement Benefits

The Settlement provides relief similar to what the class could have hoped to obtain through continued litigation.  First, under the Settlement's non-monetary relief provisions, HP acknowledges that it has released firmware that turns off Dynamic Security in the Class Printers and agrees that it "will not at any time take any action to employ Dynamic Security on the Class Printers, including by releasing or otherwise making available firmware that enables Dynamic Security."  Kramer Decl., Ex. A § 2.3.  Second, HP also agrees to implement customer services procedures to assist class members who inquire as to whether Dynamic Security is installed on their printer and how to remove it.  *Id.*  Third, HP will pay $1,500,000 into a Settlement Fund to be distributed to class members who experienced a print interruption.  Kramer Decl., Ex. A §§ 1.32, 2.1.  Fourth, HP will pay (and has paid) all Administrative Expenses to fund the notice program and the claims process.  Kramer Decl., Ex. A §§ 1.1, 2.2.  None of these payments will revert to HP.  Kramer Decl., Ex. A §§ 2.2, 2.15, 7.4.

In regard to the attorneys' fee application, HP agreed that it will not dispute that Plaintiffs are successful parties under the private attorney general statute codified at California Code of Civil Procedure section 1021.5.  Kramer Decl., Ex. A § 6.1.  Plaintiffs are separately applying for an award of attorneys' fees, which will not reduce or otherwise affect the Settlement relief.

### C.   Releases

If the Court approves the Settlement, class members will release all claims that "relate to Dynamic Security and/or any representations regarding the ability to use third-party ink cartridges with the Class Printers, and that were or could have been alleged in the Litigation."  Kramer Decl.,

---

[2] Excluded from the class are HP, its officers, directors, and affiliates at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which HP had or has a controlling interest.  Also excluded from the class are any Persons who timely and validly request exclusion.  Kramer Decl., Ex. A § 1.7.

6

Ex. A §§ 1.30, 1.31, 4.1, 8.17; *cf. K.H. v. Secretary of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 6606248, at *4 (N.D. Cal. Dec. 17, 2018) ("Because the release is appropriately limited to claims related to those litigated in this lawsuit, the Court finds it is sufficiently narrow to support approval.").

## III.      CLASS NOTICE AND CLAIMS ADMINISTRATION

### A.      Notice and Settlement Administration

In its Preliminary Approval Order, the Court appointed Epiq Class Action & Claims Solutions, Inc. to serve as the claims administrator and give notice of the Settlement to the class.  Dkt. No. 116, ¶ 8.  As detailed in the Azari Declaration ("Azari Decl.") submitted herewith, Epiq fully implemented the Notice Plan as outlined in Mr. Azari's earlier declaration submitted with Plaintiffs' Motion for Preliminary Approval.  *See* Dkt. No. 110-5.

#### 1.      Direct Notice by Email and First-Class Mail; Publication Notice

In accordance with the Settlement Agreement and the Court-approved notice program, the claims administrator notified class members of the Settlement and their rights in several ways.  First, the claims administrator caused the approved Notice and claim form to be emailed to 2,115,338 class members whose email addresses are in HP's records.  Azari Decl., ¶ 11.  Second, the claims administrator mailed postcard notice to an additional 7,451 class members for whom mailing addresses, but not email addresses, were available.  Azari Decl., ¶ 11.  The claims administrator confirmed successful direct email notice for 1,685,801 of the 2,115,338 class members it emailed, and successful direct mail notice for all but 762 of the 7,451 class members to whom it sent postcards.  Azari Decl., ¶¶ 12-17.  For the 429,537 email notices returned as undeliverable, Epiq was able to identify 163,358 records with an associated mailing address, and a follow-up mailing of direct postcard notice will occur on February 13, 2019.  Azari Decl., ¶ 15.

Further, the claims administrator published notice, including by placing internet banner notices on websites across the Google Display Network, and by placing banners on a Google Display Network's Custom Intent Audience targeted to consumers who actively search for "HP Printer" related topics.  Azari Decl., ¶ 20.  The claims administrator also placed banner notices on Facebook targeting users who may have an interest in HP-branded printers. *Id*.  The banner notices ran for 31

days, and generated approximately 70.3 million unique adult impressions.  Azari Decl., ¶ 21.  In

addition, the claims administrator acquired sponsored listings on the three most-visited search

engines—Google, Yahoo! and Bing—to direct search engine users to the Settlement website when

they searched keyword combinations such as "HP Printer Settlement," "HP Printer Disablement,"

"OfficeJet Settlement," and "HP Firmware Lawsuit."  Azari Decl., ¶¶ 22-23.  And the claims

administrator also implemented an information release program, which entailed sending a party-

neutral statement describing the Settlement—and providing links to the Settlement Website and toll-

free number—to approximately 5,000 general media (print and broadcast) outlets across the United

States and 5,400 online databases and websites.  Azari Decl., ¶ 24.[3]

### 2.    The Dedicated Settlement Website and Toll-Free Number

The claims administrator established and operates a dedicated Settlement website

("Website"), hpprinterfirmwarelawsuit.com, as well as a dedicated toll-free number.  Azari Decl., ¶¶

25-27.  These resources provide information about the Settlement and claims process to class

members in real time and allow them to request and access the claim form and other documents.  *Id*.

Posted on the Website for public viewing and download are the Short and Long Form Notice, Claim

Form, Complaint, Plan of Allocation, Preliminary Approval Order, and Settlement Agreement.  *Id*.

The Website is included on all forms of notice provided to class members, and on all published

notices implemented through the notice campaign.  Azari Decl., ¶ 25.  As of February 1, 2019, there

have been 96,950 unique visitors to the case website, and over 223,562 web pages have been

presented to visitors.  Azari Decl., ¶ 26.

### 3.    Claims and Requests for Exclusion

Class Counsel and Epiq designed the claim form for ease of use, allowing class members to

submit claims online or by mail.  Kramer Decl., Ex. A at Ex. 2.  As of February 5, 2019, Epiq has

received 7,332 claims, of which 2,698 included supporting documentation.  Azari Decl., ¶ 28.  These

claims are subject to review and audit by Epiq.  Azari Decl., ¶ 29.  Claimants who submit forms that

do not meet the submission requirements will be given notice and an opportunity to remedy any

---

[3] Notice of the Settlement was provided to the appropriate federal and state authorities as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  Azari Decl., ¶ 10.

8

1   curable deficiencies, under a procedure set forth in the Settlement Agreement.  Dkt. No. 110-2, ¶¶ 5.6,

2   5.7.  The deadline to submit claims is March 8, 2019.

3          As of February 7, 2019, Epiq has processed five exclusion requests. Azari Decl., ¶ 9.  Class

4   members may timely request to opt out of the Settlement until March 13, 2019.  Epiq has monitored

5   the docket in this case, and as of this filing, there have been no objections.  *Id.*

6          **B.      Settlement Notice and Administration Expenses**

7          As of February 5, 2019, Epiq has incurred $138,871 in expenses associated with identifying

8   and notifying Class Members and administering the Settlement Fund.  Azari Decl., ¶ 31.  As provided

9   in the Settlement Agreement, the expenses incurred to date have been paid by HP upon receipt of

10  monthly invoices from Epiq.  Azari Decl., ¶ 32.

11                                        **ARGUMENT**

12         The procedure for judicial approval of a proposed class action settlement is set forth by Rule

13  23(e).  The Rule 23(e) settlement approval procedure includes: (1) preliminary approval of the

14  proposed settlement; (2) dissemination of notice of the proposed settlement and class certification to

15  the class members; and (3) a fairness hearing at which class members may be heard, and at which

16  counsel may introduce evidence and present argument concerning the fairness, adequacy, and

17  reasonableness of the settlement and the propriety of certifying a settlement class.  *See* 4 William B.

18  Rubenstein, *Newberg on Class Actions* § 13:39 *et seq.* (5th ed. 2014).  This procedure safeguards

19  class members' due process rights and enables the Court to fulfill its role as the guardian of class

20  interests.  *Id.*

21  **I.      CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE.**

22         Certification of the proposed Settlement class is appropriate because the requirements of Rule

23  23(a) and (b)(3) are satisfied.  This Court preliminarily found the requirements of Rules 23(a) and

24  (b)(3) satisfied for purposes of the Settlement.  Dkt. No. 116, ¶¶ 1-3.  No class member has objected to

25  the Court's findings, and there have been no intervening events that would affect them.  Those

26  findings accordingly should be made final.

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL, CASE NO. 5:16-CV-05820-EJD-SVK

### A.     Rule 23(a) Is Satisfied.

#### 1.     The Class Members Are Too Numerous to Be Joined.

The proposed Class is so numerous that joinder of all members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  HP installed dynamic security on about 3.5 million printers.  *See* Dkt. No. 91-15 (HP's Responses to Plaintiffs' First Set of Interrogs. at 5:14); Preliminary Approval Order, ¶ 3.a.

#### 2.     The Action Involves Common Questions of Law and Fact.

To satisfy Rule 23(a)(2)'s "commonality" requirement, the claims "must depend upon a common contention" such that "determination of [its] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Commonality is satisfied here because the "circumstances of each particular class member . . . retain a common core of factual or legal issues with the rest of the class[.]"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (citations and quotations omitted).  Plaintiffs' claims center on whether HP's Dynamic Security technology—present on all Class Printers—unlawfully interferes with the rights and incidents of ownership, and whether HP's failure to disclose the technology was unlawfully misleading.  HP's use of Dynamic Security not only involves a common course of conduct but also gives rise to common legal questions.  As this Court recognized, the common questions include how Dynamic Security operated, whether HP's implementation of Dynamic Security was unfair or misleading to class members, and why HP implemented Dynamic Security on the Class Printers.  *See* Preliminary Approval Order, ¶ 3.b.

#### 3.     Plaintiffs' Claims Are Typical of Those of the Class.

"[R]epresentative claims are 'typical' [under Rule 23(a)(3)] if they are reasonably coextensive with those of absent class members."  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (citation omitted).  "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct.'"  *Id.* (citation omitted).

In this case, the claims of Plaintiffs and all class members arise out of the same course of conduct—HP's undisclosed installation of Dynamic Security—and assert the same theories of liability. *See* Preliminary Approval Order, ¶ 3.c ("Plaintiffs' claims are typical" because "[e]ach of Plaintiffs'

claims arises from the actual or potential effects of Dynamic Security and asserts the same theories of liability.").  Thus, the typicality requirement is met.

### 4.   Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of Class Members.

The test for evaluating adequacy of representation under Rule 23(a)(4) is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citation omitted).  Both prongs are met here.

As confirmed by their declarations submitted with this filing, the Plaintiffs are adequate class representatives.  They allege harm to themselves and all class members from having technology implanted on their printers without their knowledge that would disable the printers if they contained certain aftermarket cartridges made by competitors of HP.  Having experienced this common alleged intrusion, each Plaintiff has an incentive to vigorously pursue the class claims for equitable and monetary relief.  Each Plaintiff made important contributions to the case, including by preparing and sitting for deposition.  *See* Dkt. Nos. 91-17 through 91-20.

Proposed settlement class counsel—Girard Sharp LLP, Law Offices of Todd M. Friedman, P.C., and Joseph Saveri Law Firm, Inc.—are also adequate.  Proposed class counsel are experienced class actions attorneys who have litigated and favorably resolved many cases for the benefit of consumers.  *See* Dkt. Nos. 91-1, 91-21, 91-22.  Their track record in obtaining substantial recoveries for injured consumers, as in this case, demonstrates they possess the necessary skill and expertise to ably represent the settlement class.  *Id.*; Preliminary Approval Order, ¶ 3.d.

### B.   Rule 23(b)(3) Is Satisfied.

#### 1.   Common Questions of Law and Fact Predominate.

Predominance analysis under Rule 23(b)(3) "focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive . . . ."  *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 894-95 (N.D. Cal. 2015) (quoting *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 964 (9th Cir. 2013)).  "When a proposed class challenges a uniform

1  policy, the validity of that policy tends to be the predominant issue in the litigation." *Nicholson v.*

2  *UTi Worldwide, Inc.*, No. 3:09-cv-722-JPG-DGW, 2011 WL 1775726, at *7 (S.D. Ill. May 10, 2011)

3  (citation omitted); *see also Bias v. Wells Fargo & Co.*, 312 F.R.D. 528 (N.D. Cal. 2015).  Moreover,

4  when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply.

5  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

6        This Court provisionally found that "questions of law and fact common to the class

7  predominate over individualized questions."  Preliminary Approval Order, ¶ 3.b.  This case concerns

8  a uniform technology that HP implanted on all class printers without disclosure, and that applied in

9  the same way to each printer regardless of its connected computer's operating system.  *See* Dkt. No.

10  91-13 (Ex. B, Novak Dep. 24:9-23, 149:13-17).  The effects, scope, and technical basis of Dynamic

11  Security, as well as HP's motives for adopting it and lack of disclosure to consumers, represent

12  predominating questions of fact.  And HP's use of this technology to disable working printers that

13  were running on competing aftermarket cartridges either does, or does not, violate the CFAA, state

14  unfair competition laws, and/or the common law prohibition of trespass to chattels.

15        The class members thus are similarly situated in regard to their causes of action against HP.

16  First, no matter where they reside, all class members have standing to recover damages and pursue

17  injunctive relief under the CFAA.  *See* 18 U.S.C. § 1030(g) ("Any person who suffers damage or loss

18  by reason of a violation of this section may maintain a civil action against the violator to obtain

19  compensatory damages and injunctive relief or other equitable relief."); *Harris v. comScore, Inc.*, 292

20  F.R.D. 579, 581, 585 (N.D. Ill. 2013) (granting nationwide class certification with respect to a CFAA

21  claim where invasive software "operate[d] in a substantively identical fashion on all computers").

22  Second, based upon the facts of this case, all class members have claims for identical injunctive relief

23  against HP under the statutes or common laws of their home states.  *E.g.*, Dkt. No. 94, ¶¶ 173-97 (in

24  addition to Plaintiffs' claims for equitable relief under California law, San Miguel, Lawty, and Ware

25  asserted consumer protection claims under the laws of Texas, Washington, and New Jersey,

26  respectively).  Third, all or nearly all class members who experienced print interruptions as a result of

27  Dynamic Security could seek to recover for violation of the common law prohibition of intentional

28  interference with a chattel possessed by another.  *See* Dkt. No. 91 at 25 & Appendix A (44-

1  Jurisdiction Survey of Trespass to Chattels Law).  Fourth, HP's intellectual property defense also

2  raises common questions of law that apply to the case as a whole.  The common issues, therefore,

3  present a significant aspect of the claims and predominate for settlement purposes.

**2.    A Class Action Is a Superior Means of Resolving These Claims.**

5       A class action is superior under Rule 23(b)(3) because it represents the only realistic method

6  for owners of HP printers that were subject to Dynamic Security to obtain relief.  *See, e.g.*, *Valentino*

7  *v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) (holding that a class action may be

8  superior where "classwide litigation of common issues will reduce litigation costs and promote

9  greater efficiency").  Class members lack the incentive to bring their own cases given the small

10 potential recovery for each individual printer owner.  "Cases, such as this, 'where litigation costs

11 dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution."

12 *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr.

13 15, 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)).

14 **II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE**
15 **       FINALLY APPROVED.**

16      The law favors the compromise and settlement of class action suits.  *See Officers for Justice v.*

17 *Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d

18 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

19 Courts are to give:

> proper deference to the private consensual decision of the parties. . . .
> [T]he court's intrusion upon what is otherwise a private consensual
> agreement negotiated between the parties to a lawsuit must be limited to
> the extent necessary to reach a reasoned judgment that the agreement is
> not the product of fraud or overreaching by, or collusion between, the
> negotiating parties, and that the settlement, taken as a whole, is fair,
> reasonable and adequate to all concerned.

25 *Hanlon*, 150 F.3d at 1027 (citation and quotations omitted).

26      When parties reach settlement before a class is certified, the court "must peruse the proposed

27 compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton*,

28 327 F.3d at 952.  A court may approve a settlement only after determining it is "fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e).  To make this determination, tthe court balances a number of factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Churchill*, 361 F.3d at 575 (citing *Hanlon*, 150 F.3d at 1026); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted); *Officers for Justice*, 688 F.2d at 625.  The recent amendments to Rule 23 direct the district court to consider a similar list of factors, namely, whether:

> (A)   the class representatives and class counsel have adequately represented the class;

> (B)   the proposal was negotiated at arm's length;

> (C)   the relief provided for the class is adequate, taking into account:

>> (1)   the costs, risks, and delay of trial and appeal;

>> (2)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>> (3)   the terms of any proposed award of attorney's fees, including timing of payment; and

>> (4)   any agreement required to be identified under Rule 23(e)(3); and

> (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Each consideration weighs in favor of final approval of the Settlement here.

### 1.    The Settlement Provides Substantial Benefits to the Class.

While "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes,'" *Officers for Justice*, 688 F.2d at 624 (citation omitted), in this case the Settlement benefits approximate the benefits class members could expect to obtain after prevailing at trial.

HP's agreement not to reactivate Dynamic Security in the Class Printers protects the class members going forward, and HP also agrees to implement and maintain customer support protocols to assist class members who inquire about whether Dynamic Security is on their printer and how to

remove it.  The monetary relief is substantial, and, given the relatively limited number of consumers who experienced print interruptions based on HP's evidence, should result in generous payments to eligible claimants.  Given the current number of claims, Class Counsel estimate that the *pro rata* amount each class member will receive (in addition to documented claims, which will be paid in full), will be over $150.  Kramer Decl., ¶ 50.  The claims process approximates the post-trial, individual prove-up process that would have followed a successful class trial, but with simplified documentation and proof requirements.  The Settlement provides immediate relief that closely tracks the aims and value of the claims at issue in the litigation.  The value provided is more than adequate considering the risks of continued litigation, and attorneys' fees will neither come out of the Settlement Fund nor reduce the value of the Settlement to the class.

> **2.     The Strength of Plaintiffs' Case, Balanced Against the Risks and Expense of Litigation, Favors Approval.**

The "strength of the plaintiffs' case," the "risk, expense, complexity, and likely duration of further litigation," and "the risk of maintaining class action status throughout the trial" further support approval.  *Churchill*, 361 F.3d at 575.  In contrast to the benefits noted above, continued litigation and any trial and appeal would have presented significant risks and delay.  In a renewed motion to dismiss and when opposing class certification, HP could have argued that it effectively mooted Plaintiffs' case by disabling the offending technology and making available a patch to remove Dynamic Security from Class Printers.  There was no guarantee, moreover, that the Court would have accepted Plaintiffs' proposed class definitions and bifurcated trial plan.  And the outcome of HP's intellectual property defense—which relied on an International Trade Commission order banning the import of certain infringing cartridges—also was uncertain.  *See* Dkt. Nos. 91-14 (HP's Responses to Pls.' Third Set of Interrogs. at 6:12); 91-12 (HP-0000002310-2393).

Although Plaintiffs dispute HP's arguments and defenses (*e.g.*, Dkt. No. 91 at 18-21), absent a settlement, class members could have been left empty-handed.  Resolution of their claims ensures a swift and certain recovery while avoiding substantial litigation risks, expenses, and delay.

---

15

### 3.  The Settlement Resulted From Informed, Arm's Length Negotiations Between Experienced Counsel.

In determining whether to approve a class action settlement, "the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties . . . ."  *City of Seattle*, 955 F.2d at 1290 (citation omitted). The judgment of experienced counsel regarding a settlement reached through arms' length negotiations carries significant weight and gives rise to a presumption of reasonableness.  *See Linney v. Cellular Alaska P'ship*, No. 96-3008-DLJ *et al.*, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd* 151 F.3d 1234 (9th Cir. 1998); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007).  Here, to the extent the Settlement might be viewed as an early resolution because class certification was not fully litigated, the record nonetheless "demonstrate[s] that the parties and their counsel are well prepared and well aware of the strength and weaknesses of their positions and of the interests to be served by an amicable end to the case." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 967 (N.D. Ill. 2011) (internal quotation marks and citations omitted).

The parties' Settlement "is the product of non-collusive arm's-length negotiations between experienced counsel who were thoroughly informed of the strengths and weaknesses of the Action, including through discovery and motion practice."  Preliminary Approval Order, ¶ 4.  Settlement negotiations occurred after Plaintiffs moved for class certification and after discovery and the Court's ruling on HP's motion to dismiss had given the parties a thorough understanding of the central issues. Kramer Decl., ¶¶ 36-41.  The negotiation process was active and lengthy, but the parties ultimately were able to reach a compromise providing both non-monetary and monetary relief for the owners of Class Printers.  *Id.*  When Plaintiffs' counsel reached the Settlement, they had researched the law and the facts (including the inkjet printer market, the market for replacement ink, and cartridge competitor suits), reviewed and analyzed HP's document production, deposed its corporate witnesses, conducted discovery of non-parties, consulted with and retained experts, negotiated a printer-inspection protocol, monitored the printer inspections, and produced each Plaintiff for a deposition.  Kramer Decl., ¶¶ 22-39.

16

PLAINTIFFS' MOTION FOR FINAL APPROVAL, CASE NO. 5:16-CV-05820-EJD-SVK

1    The Settlement has no material deficiencies and is supported by all Plaintiffs and participating

2    counsel.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)

3    ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with

4    the facts of the underlying litigation." (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104,

5    125 (S.D.N.Y. 1997))); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015)

6    ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the

7    parties." (citation omitted)).

8            **4.      The Significant Discovery, Research, and Motion Practice in This Case
                       Informed Settlement Negotiations and Supports Final Approval.**

9

10    The "extent of discovery completed and the stage of the proceedings" also favor approval.

11    *Churchill*, 361 F.3d at 575.  The discovery conducted and the procedural development of the case

12    establish the arms' length nature of the proceedings and the sufficiency of counsel's preparation to

13    negotiate settlement.  The settlement negotiations and the ultimate decision to settle were informed by

14    a detailed and complete analysis.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th

15    Cir. 2000).  The parties negotiated the Settlement after a year and a half of litigation that saw

16    extensive discovery into HP's technology and business units.  Plaintiffs reviewed and analyzed

17    thousands of pages of documents HP produced relating to Dynamic Security and the printer

18    disablements, and conducted two Rule 30(b)(6) depositions of HP's corporate representatives.

19    Kramer Decl., ¶¶ 22-24, 31.  Plaintiffs also propounded several sets of written discovery requests,

20    including requests pertaining to HP's intellectual property defense, and analyzed HP's responses.

21    Kramer Decl., ¶¶ 22-23.  In addition, Plaintiffs pursued non-party discovery related to class

22    certification and damages issues from approximately 15 manufacturers and retailers. Kramer Decl., ¶

23    32.  HP deposed each Plaintiff.  *See* Dkt. Nos. 91-17 through 91-20.  The discovery in the case

24    provided a sound basis for the parties' informed settlement negotiations, weighing in favor of final

25    approval.

26            **5.      Class Members' Positive Reaction to the Settlement Favors Approval.**

27    A court may properly infer that a class settlement is fair, adequate, and reasonable when—as

28    here—few class members object to it.  *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th

Cir. 1977); *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.  The claims administrator provided direct notice to over two million potential class members beginning on January 7, 2019.  Azari Decl., ¶ 12.  The claims administrator also caused publication notice to be provided to tens of thousands of others through online and social media advertising.  Azari Decl., ¶¶ 20-24.  As of this filing, there have been no objections and only five opt outs.  Azari Decl., ¶ 9.  The class members' positive response to the Settlement supports its approval.

### 6. The Settlement Treats the Class Members Equitably Relative to Each Other.

Rule 23(e)(2)(D) asks whether the settlement provides preferential treatment to any class member.[4]  The settlement before the Court was structured to deliver the most complete relief to those class members who make a documented showing to support their claims, while recognizing that many class members prefer to accept a reduced recovery in exchange for the option of filing a claim without supporting documentation.  Those who paid out of pocket for replacement cartridges, replacement printers, printer repair services, or other costs reasonably attributable to Dynamic Security may submit receipts or other documentation to recover their actual losses.  Kramer Decl., Ex. A at Ex. 2. The decision to prioritize documented claims is reasonable given the burden class members would face of proving their claims under the trial structure plaintiffs proposed, which recognized that individual proof of interruption of printer service would be required to show damage attributable to the implementation of Dynamic Security.  After those documented claims have been tallied up and paid (assuming they do not exhaust the fund, which is unlikely based on the current claims received), all claimants, including those who did not submit documentation, will receive a *pro rata* share of the remaining Settlement Fund.  Kramer Decl., Ex. A at Ex. 3 § III.A.  The Settlement thus does not favor any segment of printer owners over any other, but places all class members on equal footing, supporting its approval.

### III. THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED.

A plan for allocating class settlement funds is subject to the fair, reasonable and adequate

---

[4] With respect to Rule 23(e)(2)(C)(iv), there is no agreement, other than the Settlement, required to be identified under Rule 23(e)(3).  With respect to Rule 23(e)(2)(A), Class Counsel and the named Plaintiffs have adequately represented the class, as discussed above in the class certification section.

standard that applies to approval of class settlements as a whole.  *See In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  A plan of allocation that compensates class members based on the type and extent of their injuries is normally reasonable.  *Id.*; *see also In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998).

As previously mentioned, the Plan of Allocation here (*see* Dkt. 110-2, Ex. 3) calls for claims to be processed in two steps.  First, claimants who submit supporting documentation for their out-of-pocket claims will be paid in full.  *Id.*  Then, the amount remaining in the fund will be divided and distributed *pro rata* to all claimants, up to $250.  *Id.*

As of February 5, 2019, 7,332 claims have been submitted, including 2,698 with supporting documentation.  These claims are subject to review and approval by the claims administrator, and the claims period will remain open until March 8, 2019.  Based on the information currently available, however, assuming all claims are valid and estimating that the average documented claim is $100 (totaling $269,800), $1,230,200 would remain in the Settlement Fund after the documented claims were paid.  Kramer Decl., ¶¶ 50-51.  That amount, divided by the total number of claims received as of February 5, would result in about $168 to be paid *pro rata* to each claimant (in addition to payment of valid documented claims).  *Id.*

The Court's provisionally found this Plan of Allocation "fair, reasonable, and adequate, and in the best interest of Plaintiffs and the other Settlement Class Members . . . ."  Preliminary Approval Order, ¶ 5.  No class member has objected to the Plan of Allocation, and Plaintiffs respectfully ask the Court to finally approve it.  In accordance with the Northern District's Class Settlement Guidelines,[5] Plaintiffs will submit a post-distribution accounting to the Court within 21 days after the Settlement Fund is distributed to class members.  The information currently available indicates that the total claims submitted will result in *pro rata* recoveries of less than the cap of $250 per undocumented claim, such that the Settlement Fund will be exhausted.  Therefore, Class Counsel do not foresee a need to return to the Court for approval of a further notice or distribution process.

---

[5] https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

19

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Final Order and Judgment, thereby:

- Finally approving the proposed Settlement and entering final judgment;
- Certifying the proposed Settlement Class;
- Appointing Plaintiffs as Class Representatives;
- Appointing Girard Sharp LLP, Law Offices of Todd M. Friedman, P.C., and Joseph Saveri Law Firm, Inc. as Settlement Class Counsel;
- Finally approving the plan of allocation and directing payment of claims.

Dated:  February 7, 2019                    Respectfully submitted,

**GIRARD SHARP LLP**

*/s/ Elizabeth A. Kramer*

Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Elizabeth A. Kramer (SBN 293129)
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: 415-981-4800
Facsimile: 415-981-4846
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*ekramer@girardsharp.com*

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, California 91367
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
*tfriedman@toddflaw.com*
*abacon@toddflaw.com*

PLAINTIFFS' MOTION FOR FINAL APPROVAL, CASE NO. 5:16-CV-05820-EJD-SVK

Joseph R. Saveri (SBN 130064)
Nicomedes S. Herrera (SBN 275332)
Kyla J. Gibboney (SBN 301441)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
*jsaveri@saverilawfirm.com*
*nherrera@saverilawfirm.com*
*kgibboney@saverilawfirm.com*

Daniel R. Karon
**KARON LLC**
700 W. St. Clair Avenue, Ste. 200
Cleveland, Ohio 44113
Telephone: (216) 622-1851
Facsimile: (216) 241-8175
*dkaron@karonllc.com*

Taylor Bartlett (*pro hac vice*)
**HENINGER GARRISON DAVIS, LLC**
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Facsimile: (205) 380-8085
*taylor@hgdlawfirm.com*

*Counsel for Plaintiffs*

## ATTESTATION

I, Elizabeth A. Kramer, am the ECF user whose identification and password are being used to file this motion. I hereby attest under penalty of perjury that concurrence in this filing has been obtained from all counsel listed above.

DATED: February 7, 2019         */s/ Elizabeth A. Kramer*
                                  Elizabeth A. Kramer

---

21

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2019, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.  I also caused a copy of the foregoing document to be served via email on counsel of record for all parties.

/s/ *Elizabeth A. Kramer*
Elizabeth A. Kramer

PLAINTIFFS' MOTION FOR FINAL APPROVAL, CASE NO. 5:16-CV-05820-EJD-SVK