Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Elizabeth A. Kramer (SBN 293129)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846
dgirard@girardsharp.com
jelias@girardsharp.com
ekramer@girardsharp.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE HP PRINTER FIRMWARE UPDATE LITIGATION | Case No. 5:16-cv-05820-EJD-SVK |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | Date: April 25, 2019 |
| | Time: 9:00 a.m. |
| | Place: Courtroom 4 |
| | Judge: Hon. Edward J. Davila |

1

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.......................................................1

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ...................................................................................................2

    A.    Class Counsel Invested the Time and Expertise Needed to Successfully Resolve These Class Action Claims. ....................................................................2

    B.    HP Agreed That Plaintiffs Prevailed in the Case. ..................................................6

III.   ARGUMENT ..........................................................................................................7

    A.    California Law Entitles Class Counsel to a Reasonable Fee. .................................7

    B.    Class Counsel's Requested Fee Is Reasonable. ......................................................9

        1.    Class Counsel's Lodestar Is Reasonable. ...................................................10

        2.    Class Counsel's Hourly Rates Are Reasonable..........................................10

        3.    The Number of Hours Class Counsel Worked Is Reasonable...................11

        4.    The Requested Fee Represents a Negative Multiplier on the Current Lodestar........................................................................................................12

        5.    A Comparison to the Value of Relief for the Class Is Not Part of the Lodestar Analysis.......................................................................................15

    C.    Class Counsel Should Be Reimbursed for Our Out-Of-Pocket Expenses, Which Are Reasonable. ..........................................................................................16

    D.    The Agreed-Upon Service Awards Are Reasonable and Should Be Approved. ...............17

IV.   CONCLUSION......................................................................................................17

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Aarons v. BMW of N. Am., LLC*
   2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ...................................................................9, 12

*Barbosa v. Cargill Meat Solutions Corp.*
   297 F.R.D. 431 (C.D. Cal. 2013) ....................................................................................14

*Bellinghausen v. Tractor Supply Co.*
   306 F.R.D. 245 (N.D. Cal. 2015) ....................................................................................17

*Blackwell v. Foley*
   724 F. Supp. 2d 1068 (N.D. Cal. 2010)..........................................................................9

*Blum v. Stenson,*
   465 U.S. 886 (1994) .......................................................................................................10

*Bottoni v. Sallie Mae, Inc.*
   2013 WL 12312794 (N.D. Cal. Nov. 21, 2013) .............................................................9

*Cabrales v. County of Los Angeles*
   935 F.2d 1050 (9th Cir. 1991) ........................................................................................12

*Caudle v. Bristow Optical Co.*
   224 F.3d 1014 (9th Cir. 2000) ........................................................................................11

*Cunningham v. County of Los Angeles*
   879 F.2d 481 (9th Cir. 1988) ......................................................................................7, 9

*Delacruz v. CytoSport, Inc.*
   2014 WL 12648451 (N.D. Cal. July 1, 2014) ...............................................................8

*Fox v. Vice*
   563 U.S. 826 (2011) .......................................................................................................10

*Gong-Chun v. Aetna Inc.*
   2012 WL 2872788 (E.D. Cal. July 12, 2012) ...............................................................16

*Graciano v. Robinson Ford Sales, Inc.*
   144 Cal. App. 4th 140 (2006)....................................................................................8, 15

*Graham v. DaimlerChrsyler Corp.*
   34 Cal. 4th 553 (2004) ...............................................................................................7, 9

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ...............................................................................9, 12, 15

*Harman v. City & County of San Francisco*
   158 Cal. App. 4th 407 (2007)........................................................................................16

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ............................................................................................10, 12

*Howard v. First Horizon Home Loan Corp.*
2013 WL 6174920 (N.D. Cal. Nov. 25, 2013) ................................................................8

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*
137 S. Ct. 1523 (2017) .....................................................................................................8

*In re Consumer Privacy Cases*
175 Cal. App. 4th 545 (2009) ..........................................................................................7

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*
55 F.3d 768 (3d Cir. 1995) ............................................................................................15

*In re Heritage Bond Litig.*
2005 WL 1594403 (C.D. Cal. June 10, 2005) ...............................................................14

*In re High-Tech Emp. Antitrust Litig.*
2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................................................................16

*In re Media Vision Tech. Sec. Litig.*
913 F. Supp. 1362 (N.D. Cal. 1996) ..............................................................................16

*In re Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir. 2000) .........................................................................................17

*In re Nassau County Strip Search Cases*
12 F. Supp. 3d 485 (E.D.N.Y. 2014) .............................................................................13

*In re NFL Players' Concussion Injury Litig.*
2018 WL 1635648 (E.D. Pa. Apr. 5, 2018) ..................................................................13

*In re Online DVD-Rental Antitrust Litig.*
779 F.3d 934 (9th Cir. 2015) .........................................................................................17

*In re Washington Public Power Supply Sys. Sec. Litig.*
19 F.3d 1291 (9th Cir. 1994) .........................................................................................10

*Jefferson v. Chase Home Fin.*
2009 WL 2051424 (N.D. Cal. July 10, 2009) ...............................................................15

*Kasky v. Nike, Inc.*
27 Cal. 4th 939 (2002) .....................................................................................................8

*Ketchum v. Moses*
24 Cal. 4th 1122 (2001) .........................................................................................7, 9, 12

*Kim v. Euromotors W./The Auto Gallery*
149 Cal. App. 4th 170 (2007) ..........................................................................................9

iii

*Kulesa v. PC Cleaner, Inc.*
　2014 WL 12581770 (C.D. Cal. Aug. 26, 2014) ......................................................9

*MacDonald v. Ford Motor Co.*
　142 F. Supp. 3d 884 (N.D. Cal. 2015).................................................................8

*Mangold v. Calif. Pub. Utils. Comm'n*
　67 F.3d 1470 (9th Cir. 1995) ...........................................................................7

*Mills v. Electric Auto-Lite Co.*
　396 U.S. 375 (1970) .......................................................................................16

*Morales v. City of San Rafael*
　96 F.3d 359 (9th Cir. 1996) .............................................................................9

*Moreno v. City of Sacramento*
　534 F.3d 1106 (9th Cir. 2008) .......................................................................12

*Oxina v. Lands' End, Inc.*
　2016 WL 7626190 (S.D. Cal. Dec. 2, 2016) ...................................................13

*Rosado v. Ebay Inc.*
　2016 WL 3401987 (N.D. Cal. June 21, 2016) ................................................13

*San Miguel v. HP Inc.*
　317 F. Supp. 3d 1075 (N.D. Cal. 2018).............................................................8

*Serrano v. Unruh*
　32 Cal. 3d 621 (1982) ..............................................................................7, 11

*Staton v. Boeing Co.*
　327 F.3d 938 (9th Cir. 2003) .........................................................................17

*Taylor v. Nabors Drilling USA, LP*
　222 Cal. App. 4th 1228 (2014) ......................................................................15

*Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*
　460 F.3d 1253 (9th Cir. 2006) .......................................................................16

*Velez v. Wynne*
　220 F. App'x 512 (9th Cir. 2007) .....................................................................7

*Vizcaino v. Microsoft Corp.*
　290 F.3d 1043 (9th Cir. 2002) .........................................................................7

*Vo v. Las Virgenes Mun. Water Dist.*
　79 Cal. App. 4th 440 (2000)...........................................................................16

*Warren v. Kia Motors Am., Inc.*
　30 Cal. App. 5th 24 (2018)........................................................................15, 16

*Wershba v. Apple Computer, Inc.*
    110 Cal. Rptr. 2d 145 (2001)...................................................................................................10

*Wing v. Asarco Inc.*
    114 F.3d 986 (9th Cir. 1997) ...............................................................................................14

**<u>Statutes</u>**

Civ. Code § 1021.5.................................................................................................................. *passim*

Civ. Code § 1780(e) ........................................................................................................................8

**<u>Rules</u>**

Fed. R. Civ. P. 23..............................................................................................................1, 5, 6, 7

Fed. R. Civ. P. 54...........................................................................................................................1

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on April 25, 2019 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Edward J. Davila, United States District Judge for the Northern District of California, Plaintiffs, having prosecuted this action successfully to a class-wide settlement, will and do move, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), for an award of attorneys' fees and expenses in the amount of $2,833,011.78, to be paid by Defendant HP Inc. ("HP").  Plaintiffs also respectfully request that the Court approve the payment of service awards in the amount of $5,000 to each of the five class representatives.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum, the Declarations of Elizabeth A. Kramer ("Kramer Decl."), Todd M. Friedman ("Friedman Decl."), Joseph R. Saveri ("Saveri Decl."), Daniel R. Karon ("Karon Decl."), Christopher B. Hood ("Hood Decl.") and the materials attached thereto, the Declarations of Plaintiffs Richard San Miguel ("San Miguel Decl."), James Andrews ("Andrews Decl."), Richard Faust ("Faust Decl."), DeLores Lawty ("Lawty Decl."), and Christopher Ware ("Ware Decl."), the argument of counsel, and all papers and records on file in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

In accordance with the Court's Preliminary Approval Order (Dkt. No. 116), Class Counsel respectfully submit this application for attorneys' fees and reimbursement of litigation expenses, and for service awards to the class representatives.  Class Counsel seek reimbursement of $83,011.78 in case expenses, and an award of attorneys' fees in the amount of $2.75 million, or 0.93 times Class Counsel's documented lodestar (*i.e.*, a negative multiplier).  Thus, Class Counsel seek a total award of $2,833,011.78 for their work in investigating, prosecuting, and successfully resolving this action.  The notice informed the class members of Class Counsel's intent to seek up to $2.75 million in attorneys' fees, and the requested payment will not diminish the equitable and monetary relief obtained for the class.  In addition, Plaintiffs respectfully request that the Court approve $5,000 service awards in recognition of the time and effort they devoted to this matter and the result achieved for the class.

The requested fee is fair, reasonable, and justified under the applicable law and the factual circumstances, including the risks and challenges counsel faced in taking this case and the substantial

benefits generated for the class.  Plaintiffs filed suit primarily to protect the class members from HP's remote disablements of printers, and the Settlement achieves this goal by securing HP's agreement not to use the offending technology on the Class Printers.  Absent Class Counsel's efforts, the class would still be exposed to the threat of Dynamic Security.  The Settlement also provides for generous cash awards out of the non-reversionary $1.5 million fund that, based upon the current claims received, should make class members whole for their out-of-pocket losses.

Class Counsel, who overcame considerable risk to win this relief, and who accepted this representation on a contingent basis, should be appropriately compensated for their work in obtaining this favorable result.  Prosecuting this matter to a successful conclusion required significant commitments of time and resources to investigate the technology and business practices at issue, both before and after suit was filed.  Motion practice and discovery were extensive and complex.  Settlement negotiations proved time-consuming as well, requiring several months of back-and-forth between experienced counsel. Ultimately, Class Counsel were able to secure valuable relief for the class—as HP recognized in agreeing not to dispute that Plaintiffs are "succeeding parties" under California Code of Civil Procedure section 1021.5.  That provision, and the mandatory fee-shifting provision for successful parties under the Consumers Legal Remedies Act, California Civil Code section 1780(e), support the lodestar-based fee requested here.  As set forth below, Class Counsel's requested fee and cost award is reasonable and should be approved.

## II.      BACKGROUND

### A.      Class Counsel Invested the Time and Expertise Needed to Successfully Resolve These Class Action Claims.

Class Counsel invested thousands of hours and tens of thousands of dollars in expenses investigating, developing, prosecuting, and resolving this difficult action over the course of more than two years.  Class Counsel "have significant expertise in prosecuting consumer class actions and have committed the necessary resources to represent the Settlement Class," and "were thoroughly informed of the strengths and weaknesses of the Action, including through discovery and motion practice." Preliminary Approval Order, ¶¶ 3.d, 4.

Class Counsel were retained by consumers following widespread remote disablements of HP

printers in September 2016.  Consumers complained of the inexplicable failure of their printers and HP's confusing error message.  Class Counsel's factual investigation required substantial attorney time and included close examination of HP's prior infringement suits relating to ink cartridge technology and patents.  Kramer Decl., ¶ 29.  Before filing the initial complaints, and continuing throughout the case, Class Counsel also researched the law to determine and refine their theories of liability, and to explain how the conduct at issue—though relying on new technology associated with the "internet of things"— appeared to fall within the ambit of trade practices long condemned for giving the actor an unfair advantage in a product aftermarket.  Kramer Decl., ¶ 28.

The early phases of the litigation presented both substantive and procedural challenges.  Although neither motion was heard or decided, HP moved to dismiss *San Miguel* on December 7, 2016, and the related *Doty* case in the Central District of California on December 23, 2016.  Kramer Decl., ¶ 7.  Class Counsel opposed each motion and concurrently negotiated an agreement to centralize the litigation in a single court.  Kramer Decl., ¶¶ 8-10.  The parties in *Doty* agreed to a transfer of that matter to the Northern District of California.  Kramer Decl., ¶ 15.  The plaintiff in the Alabama case, *Bayse*, voluntarily dismissed his claims, and his attorney was admitted *pro hac vice* on this docket.  Kramer Decl., ¶ 10.  Counsel's private ordering saved party and judicial resources, mooting HP's transfer motion under the first-to-file rule as well as *San Miguel* counsel's MDL petition.  Kramer Decl., ¶ 10; 15-17.

With the litigation consolidated and reassigned to this Court, Class Counsel set about interviewing potential witnesses, further investigating the facts and relevant product markets, and preparing a consolidated complaint with 11 claims for relief, both statutory and common law.  Kramer Decl., ¶ 19.  HP moved to dismiss, arguing that it had no legal obligation to make its printers compatible with all third-party cartridges, that it was entitled to protect its intellectual property, and that Plaintiffs could not state computer intrusion claims because HP had authority to access the printers.  Kramer Decl., ¶ 20.  Class Counsel prepared and filed an opposition, and argued the motion on July 14, 2017.  Kramer Decl., ¶ 21.  Discovery then began in earnest.

HP produced, and Class Counsel reviewed and analyzed, thousands of pages of documents relating to the development and implementation of Dynamic Security, information that was given to HP printer end-users, consumer complaints following the release of firmware updates containing Dynamic Security

and HP's handling of those complaints, and HP's revenue and profit numbers for printers and ink cartridges, among other subjects.  Kramer Decl., ¶ 22.  Class Counsel carefully reviewed HP's privilege log and conferred with defense counsel concerning redactions and withheld documents.  Kramer Decl., ¶ 23.  Further, Class Counsel served HP with multiple sets of interrogatories aimed at identifying the printers affected by Dynamic Security, and probing HP's defenses and purported justifications for employing the technology.  *Id.*  With the Girard Sharp firm coordinating assignments, Class Counsel efficiently allocated the written discovery work, document review and analysis, and the many meet-and-confer sessions during the second half of 2017.  Kramer Decl., ¶ 24.  Working collaboratively to minimize the burden on the Court, the parties resolved their discovery disputes through arm's length negotiations rather than motion practice.  Kramer Decl., ¶ 25.

Plaintiffs also sought third-party discovery related to class certification and damages from approximately 15 manufacturers and retailers.  Kramer Decl., ¶ 32.  Class Counsel served subpoenas and negotiated compliance with these non-parties.  *Id.*  On December 5, 2017, Class Counsel served a Freedom of Information Act request on the Federal Trade Commission, which granted the request in part and produced relevant documents on February 15, 2018.  Kramer Decl., ¶ 33.

In late 2017 and early 2018, Class Counsel focused on preparing the motion for class certification.  Kramer Decl., ¶¶ 36-37.  Class Counsel conducted full-day depositions of two HP corporate representatives pursuant to Rule 30(b)(6).  Kramer Decl., ¶ 31.  Topics covered in those depositions included the technical aspects of Dynamic Security and the firmware updates that delivered Dynamic Security to the printers, the individuals and business units at HP responsible for Dynamic Security, HP's decision-making in connection with developing and implementing Dynamic Security, and HP's then-current and anticipated future use of security tools that might prevent third-party ink cartridges from working in the HP printers at issue in this case.  Kramer Decl., ¶ 31.  Class Counsel prepared each class representative to be deposed, and defended their depositions.  Kramer Decl., ¶ 35.  Class Counsel also interviewed experts on the inkjet printer business and related technology and retained a consultant to assist in the review and analysis of documents and preparation for depositions.  The consultant also helped with the investigation and refinement of claims, providing analysis of key facts and guiding additional discovery.  Kramer Decl., ¶ 34. Understanding how Dynamic Security was installed on printers, detected

information about ink cartridges, disabled certain printers, and generated the "missing or damaged" error message required substantial research and analysis of HP's documents, as well as extensive work with Plaintiffs' expert.  Kramer Decl., ¶ 26.  The technical aspects of Dynamic Security were important to several of Plaintiffs' claims.  Kramer Decl., ¶ 27.  For instance, assessing whether HP was authorized to access the printers for purposes of the computer intrusion claims called for a detailed technical analysis of the firmware updates that implanted Dynamic Security on the printers.  *Id.*

On February 7, 2018, Plaintiffs filed their motion for class certification under Rules 23(b)(2) and (c)(4).  Dkt. No. 91.  Plaintiffs moved for certification of (1) a subclass of California printer owners seeking injunctive relief under the UCL; and (2) a national class of consumers who experienced print interruptions for purposes of adjudicating the liability elements of the CFAA and trespass to chattels claims, with individualized damages proceedings to follow.  Pursuant to a joint stipulation and order, Plaintiffs submitted a consolidated amended complaint conforming to their class certification request.  Dkt. Nos. 88, 92, 94.  Class Counsel researched class certification case law and, in particular, their relatively novel approach of proposing issue certification under Rule 23(c)(4) in conjunction with hybrid injunctive relief and damages classes.  Kramer Decl., ¶ 37.  To support a class damage claim, Class Counsel also researched and organized a 44-state survey of trespass to chattels law.  *Id.*  Class Counsel's memorandum explained the Dynamic Security technology and how traditional legal principles could be applied, by, for example, analogizing the "push" firmware update (one that occurs without the end-user taking any action) to the intrusion element of the trespass claim.  Kramer Decl., ¶ 27.

On March 29, 2018, the Court entered an order granting in part and denying in part HP's motion to dismiss.  Dkt. No. 97.  With the benefit of the Court's order, Class Counsel spent several months negotiating with HP counsel to narrow the issues in dispute and possibly resolve the action in its entirety.  Negotiations were hard-fought and time-consuming.  In early April 2018, the parties stipulated to stay the class certification proceedings pending the parties' efforts at settlement.  In July 2018, after several months of active negotiation, the parties reached an agreement in principle and asked the Court for 60 days to prepare the settlement papers.  Dkt. No. 170.  Class Counsel spent the next two months negotiating final settlement documentation and claims procedures and signed the Settlement Agreement ("Settlement") on September 18, 2018.  Kramer Decl., ¶ 41 & Ex. A.

The Settlement provides in relevant part, "HP has released firmware that disables Dynamic Security for the Class Printers.  HP will not at any time take any action to employ Dynamic Security on the Class Printers, including by releasing or otherwise making available firmware that enables Dynamic Security."  Kramer Decl., Ex. A § 2.3.  HP also agreed to implement customer service procedures to respond to Class Member inquiries regarding whether Dynamic Security has been disabled on their Class Printer and assist as needed.  *Id*.  HP further agreed to pay the costs of notice and settlement administration separate and apart from the $1.5 million fund to pay claims.  *Id*. §§ 1.1, 1.32, 2.1, 2.2. Class Counsel spent significant time negotiating the exhibits to the Settlement, including the notice and the plan of allocation—which was particularly important here given that the fund is $1.5 million but over 2 million people received notice by email—as well as the selection of a claims administrator through a competitive bidding process.  Kramer Decl., ¶ 41.

Plaintiffs moved for preliminary approval of the Settlement on September 18, 2018.  Dkt. No. 110. The Court heard the motion for preliminary approval on November 8, 2018.  After modifying the notice schedule at the Court's direction, Class Counsel submitted a revised proposed preliminary approval order, which the Court entered on November 19, 2018.  Kramer Decl., ¶ 42.

Class Counsel then communicated regularly with the Court-appointed Claims Administrator, Epiq, to ensure the notice and claims forms were properly prepared and implemented.  Kramer Decl., ¶ 43.  This work included updates to the Settlement website and monitoring the incoming claims in regular communication with Epiq.  Kramer Decl., ¶ 43.[1]

## B.    HP Agreed That Plaintiffs Prevailed in the Case.

In bringing this matter to a resolution, Class Counsel incurred $2,958,099 in attorneys' fees and advanced $83,011.78 in case costs.  Kramer Decl., ¶ 62.  The parties' Settlement Agreement provides that any award to Class Counsel for attorneys' fees and expenses will be paid by HP, separate from the settlement fund.  HP also acknowledges that Plaintiffs succeeded in the litigation for purposes of California's private attorney general fee-shifting statute:

---

[1] In accordance with Rule 23(h)(1), Plaintiffs' fee motion and final approval motion will be immediately posted on the Settlement website.  In addition, the Notice already provided to the class discloses Class Counsel's intent to seek up to $2.75 million for their fee.  *See* https://hpprinterfirmwarelawsuit.com/Content/Documents/Notice.pdf at p. 5.

> Class Counsel shall apply to the Court for the Fee and Expense Award to be
> paid by HP.  HP reserves the right to oppose any application, except that HP
> shall not dispute that plaintiffs are successful parties for purposes of
> California Code of Civil Procedure section 1021.5, and that Class Counsel are
> entitled to reimbursement of out-of-pocket litigation costs actually and
> reasonably incurred. HP reserves all arguments with respect to the amount of
> fees and costs to which Class Counsel is entitled under the applicable law.

Kramer Decl., Ex. A § 2.3.

## III.  ARGUMENT

### A.  California Law Entitles Class Counsel to a Reasonable Fee.

Federal Rule of Civil Procedure 23(h) permits the Court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement.  Fed. R. Civ. P. 23(h). Here, because Plaintiffs' claims arise under California law, California law governs the award of attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Calif. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("[W]e follow other circuits that apply state law in calculating the fee.").

Under California law, "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (emphasis omitted); *accord Serrano v. Unruh*, 32 Cal. 3d 621, 632-33 (1982) ("The rule in federal courts of appeals when they construe statutes like section 1021.5, embodying the private-attorney-general doctrine, is that, absent facts rendering the award unjust, parties who qualify for a fee should recover for all hours reasonably spent, including those on fee-related matters.") (footnotes omitted).  As the Ninth Circuit held: "Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled." *Velez v. Wynne*, 220 F. App'x 512, 514 (9th Cir. 2007) (quoting *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988)).

Code of Civil Procedure section 1021.5 applies to Class Counsel's request for attorneys' fees because the action was brought under California law. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 560-61 (2004) (awarding fees in nationwide class settlement under section 1021.5); *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 551 (2009) (same).  Section 1021.5 entitles Class Counsel to a

reasonable fee, as Plaintiffs succeeded in obtaining substantial benefits to vindicate an important right affecting the public interest. *See generally MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884 (N.D. Cal. 2015); *see also Howard v. First Horizon Home Loan Corp.*, No. 12-CV-05735-JST, 2013 WL 6174920, at *8 (N.D. Cal. Nov. 25, 2013) (the court "determine[s] the significance of the benefit and the size of the class receiving that benefit by realistically assessing the gains that have resulted in a particular case.") (citation omitted).

The primary benefit obtained through this settlement—HP's agreement not to reactivate Dynamic Security on the printers in question—is significant and resulted from private enforcement.  HP's agreement here achieves the central aim of Plaintiffs' case by protecting class members from having their printers disabled again.  The $1.5 million cash fund, out of which 7,332 claims have been made, constitutes another significant benefit. *Cf.* HP's Responses to Plaintiffs' First Set of Interrogs. at 4:25 (Dkt. No. 91-15) (HP represented that `fewer than 12,000 printers were disabled in September 2016`).  Moreover, by securing this fund and HP's agreement not to reenable Dynamic Security, Plaintiffs enforced important public rights, including the right of a product purchaser to use and enjoy the product free from the seller's interference, *see Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1532 (2017), and the public's right to be free from unfair or misleading trade practices. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949-51 (2002); *see also MacDonald*, 142 F. Supp. 3d at 895 (recognizing that "[t]he 'enforcement of the California consumer protection laws' qualifies as 'an important right affecting the public interest.'") (citations omitted); *Delacruz v. CytoSport, Inc.*, No. 4:11-CV-03532-CW, 2014 WL 12648451, at *5 (N.D. Cal. July 1, 2014) ("Class Counsel advanced the public interest by enforcing consumer protection laws, and obtained significant benefits . . . . Accordingly, this Court applies the lodestar method to award fees under the CLRA and Private Attorney General Statute.").

In addition to Section 1021.5, the CLRA—under which Plaintiffs brought a claim, *see San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1090 (N.D. Cal. 2018)—mandates fee-shifting to the prevailing party. Civ. Code § 1780(e); *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 153 (2006) (explaining that under the CLRA, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing suit." (emphasis in original) (internal quotation marks and citation omitted));

1   *Kim v. Euromotors W./The Auto Gallery*, 149 Cal. App. 4th 170, 179-81 (2007) (holding that "a plaintiff is

2   the prevailing party under section 1780(d) 'if he obtained a "net monetary recovery" on his [CLRA]

3   claim,'" including through a settlement) (citations omitted); *Aarons v. BMW of N. Am., LLC*, No. CV 11-

4   7667 PSG CWX, 2014 WL 4090564, at *14 (C.D. Cal. Apr. 29, 2014) ("The Court finds that both statutes

5   are applicable here.  The settlement discussed above is favorable for the Class, and constitutes a victory

6   for Class members.  As a result, the CLRA mandates an award of fees and costs.").

   **B.    Class Counsel's Requested Fee Is Reasonable.**

7        Class Counsel's lodestar is presumptively reasonable: "There is a strong presumption that the

8   lodestar figure represents a reasonable fee." *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir.

9   1996); *see also Cunningham*, 879 F.2d at 488.  The lodestar "constitutes earned compensation; unlike a

10  windfall, it is neither unexpected nor fortuitous.  Rather, it is intended to approximate market-level

11  compensation for such services, which typically includes a premium for the risk of nonpayment or delay

12  in payment of attorney fees." *Ketchum*, 24 Cal. 4th at 1138.  Prevailing counsel are routinely awarded

13  their lodestar.  *See, e.g.*, *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1085 (N.D. Cal. 2010) (holding that,

14  under section 1021.5, prevailing counsel were entitled to be "fully compensated" in the amount of their

15  lodestar); *Kulesa v. PC Cleaner, Inc.*, No. SA CV 12-0725 FMO (ANx), 2014 WL 12581770, at *8-10

16  (C.D. Cal. Aug. 26, 2014) (applying a 1.08 multiplier in a case asserting false advertising of software in

17  violation of California law); *Bottoni v. Sallie Mae, Inc.*, No. C 10-03602 LB, 2013 WL 12312794, at *4-5

18  (N.D. Cal. Nov. 21, 2013) (applying a 1.29 multiplier under section 1021.5 in a case asserting unlawful

19  loan costs).

20       The first step in the lodestar analysis is to multiply the number of hours counsel reasonably spent

21  on the litigation by a reasonable hourly rate.  *See Graham*, 34 Cal. 4th at 579; *Hanlon v. Chrysler Corp.*,

22  150 F.3d 1011, 1029 (9th Cir. 1998).  Once this raw lodestar figure has been determined, the Court may

23  consider "enhancement" factors to adjust the lodestar award, "including the quality of the representation,

24  the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of

25  nonpayment." *Hanlon*, 150 F.3d at 1029; *see also Ketchum*, 24 Cal. 4th at 1132.

26       In this case, Class Counsel's lodestar to date exceeds their $2.75 million fee request, meaning that

27  Class Counsel are requesting a negative multiplier.  Class Counsel respectfully submit that this request is

28

reasonable given the novelty and complexity of the action, the high quality of representation on both sides, the contingent risk of nonpayment, the time and labor required, and the benefits obtained for the class.

### 1.  Class Counsel's Lodestar Is Reasonable.

The accompanying declarations of Class Counsel set forth the hours worked and billing rates used to calculate the lodestar.  As described therein, Class Counsel and their professional staffs have spent approximately 5,359 hours working on this case to date, for a total lodestar of $2,958,099, exclusive of costs.  Kramer Decl., Ex. B; Friedman Decl., Ex. A; Saveri Decl., Ex. A; Karon Decl., Ex. A; Hood Decl., Ex. A.  Consistent with the Northern District guidelines, the charts submitted with the respective declarations of Class Counsel show how many hours of work specific lawyers spent on various types of tasks.[2]

### 2.  Class Counsel's Hourly Rates Are Reasonable.

In assessing the reasonableness of an attorney's hourly rate, the Court considers whether the rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Further, "to compensate for the delay in payment," the Court should apply each biller's current rate for all hours of work performed, regardless of when the work took place.  *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

Class Counsel here are well-regarded members of the bar with significant expertise.  *See* Preliminary Approval Order, ¶ 3.d.  They brought to this case many years of experience in consumer class actions and complex litigation, including specialized knowledge critical to the success of the case.

---

[2] A lodestar calculation need not be supported by detailed time records.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983) (counsel "is not required to record in great detail how each minute of his time was expended," but "should identify the general subject matter of his time expenditures."); *Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145, 170 (2001) ("California case law permits fee awards in the absence of detailed time sheets"); Northern District of California, *Procedural Guidance for Class Action Settlements* ("Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient"); *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").  Should the Court wish to see detailed time sheets, Class Counsel will provide those records for inspection.

Kramer Decl., ¶ 61.

Class Counsel's customary rates, used to calculate the lodestar here, are squarely in line with prevailing rates in this District, are paid by hourly-paying clients of our firms, and have been repeatedly approved by courts in this District and elsewhere.  Kramer Decl., ¶¶ 65-69; Friedman Decl., ¶¶ 28-40; Saveri Decl., ¶¶ 5-6; Karon Decl., ¶¶ 4-6; Hood Decl., ¶¶ 7-8.  Class Counsel's hourly rates are reasonable.

### 3.      The Number of Hours Class Counsel Worked Is Reasonable.

Likewise, the number of hours that Class Counsel devoted to this case is reasonable.  *See Serrano*, 32 Cal. 3d at 632-33 (counsel are entitled to compensation for all hours reasonably expended); *Caudle v. Bristow Optical Co*., 224 F.3d 1014, 1028 (9th Cir. 2000) (same).  To file and responsibly pursue these claims, Class Counsel had to spend considerable time investigating the practices at issue.  HP was competently represented and aggressively litigated the case for well over a year, requiring Class Counsel to litigate a series of motions involving complex legal and factual issues.  Discovery consumed valuable attorney time for several months, as did settlement negotiations and related work.  Among other necessary tasks, Class Counsel spent substantial time:

- Communicating with clients;
- Performing factual research regarding HP's use of Dynamic Security, its competitor suits involving ink cartridge technology, and characteristics of the inkjet printer market and cartridge aftermarket;
- Interviewing individuals with knowledge relevant to HP's business strategies;
- Researching legal claims and HP's defenses, and drafting complaints;
- Researching and writing the briefs opposing HP's motions to dismiss and supporting class certification;
- Preparing for oral arguments;
- Negotiating with HP on discovery;
- Reviewing HP's document production and privilege log;
- Preparing for and taking depositions;
- Analyzing deposition testimony;

- Preparing the class representatives for depositions and defending them;
- Issuing subpoenas to non-parties and negotiating compliance;
- Negotiating an agreement in principle to resolve the litigation;
- Developing the Plan of Allocation;
- Negotiating the specific terms of the Settlement once an agreement in principle was reached;
- Drafting the settlement papers, including the preliminary approval motion; and
- Closely supervising the work of the Claims Administrator.

*See* Kramer Decl., ¶¶ 19-43.

All of these tasks were performed for the benefit of the class, and the time spent on them was reasonable. Kramer Decl., ¶ 65. Class Counsel took care to prevent the duplication and inefficiencies that might otherwise have resulted from multiple firms working on this case. Kramer Decl., ¶ 60. Consequently, Class Counsel should be paid for all of their time. *See Hensley*, 461 U.S. at 435-36; *Ketchum*, 24 Cal. 4th at 1133 (holding that the fee award should be "fully compensatory [and] absent circumstances rendering the award unjust, . . . should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." (emphasis in original)); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (stating that "lawyers are not likely to spend unnecessary time on contingency fee cases" and that, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case."); *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052-53 (9th Cir. 1991).

### 4. The Requested Fee Represents a Negative Multiplier on the Current Lodestar.

As noted above, counsel's lodestar may be enhanced or reduced based on "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d at 1029; *see also Ketchum*, 24 Cal. 4th at 1132. These factors support the reasonableness of the fee Class Counsel are requesting—which, significantly, represents a negative multiplier (0.93) on the value of their time expended. *See, e.g., Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG CWX, 2014 WL 4090564, at *18 (C.D. Cal. Apr. 29, 2014), *objections overruled*, 2014 WL 4090512 (C.D. Cal. June 20, 2014) (where class counsel "unilaterally reduced" their fee request

to seek a "negative lodestar modifier of 93.6%," the court commented that while it "might ordinarily consider granting an upward lodestar adjustment based on the skill displayed by Class Counsel . . . and the contingent nature of Class Counsel's fee," their "conservative request makes the Court's analysis much simpler."); *Rosado v. Ebay Inc.*, No. 5:12-CV-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016) (conducting a lodestar cross-check, this Court found that a negative multiplier "strongly suggests the reasonableness of the negotiated fee."); *Oxina v. Lands' End, Inc.*, No. 14 CV 2577-MMA (NLS), 2016 WL 7626190, at *5-7 (S.D. Cal. Dec. 2, 2016) (applying the lodestar method under the CLRA and section 1021.5, the court concluded that "Class Counsel's request for fees is reasonable, given that the requested fees are a negative multiplier of Class Counsel's lodestar to date.").

In addition, the final multiplier here will be even lower because the current lodestar does not reflect Class Counsel's future work.  Class Counsel will continue to communicate with class members and oversee settlement administration, including payment of claims, and will appear at the final fairness hearing.  Class Counsel will also provide the post-distribution accounting called for by the Northern District of California's Procedural Guidance for Class Action Settlements.[3]  Although Class Counsel reserve the right to submit a second fee application, awarding the requested fee should "avoid the need to make successive fee applications for this future work."  *In re Nassau County Strip Search Cases*, 12 F. Supp. 3d 485, 493 (E.D.N.Y. 2014); *see also In re NFL Players' Concussion Injury Litig.*, No. 2:12-MD-02323-AB, 2018 WL 1635648, at *9 n.9 (E.D. Pa. Apr. 5, 2018) ("[E]ven though this multiplier is reasonable, it is artificially high.  The actual lodestar in this case will continue to increase as Class Counsel bills more hours for settlement implementation.").

Consideration of the *Hanlon* factors further demonstrates the reasonableness of the requested fee.

**Quality of representation.**  This case was sharply contested and included two rounds of motions to dismiss, thousands of pages of documents to review, depositions, third-party subpoenas, a FOIA request, and a motion for class certification.  Class Counsel's work speaks for itself—and the opposing

---

[3] https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

counsel they faced are some of the finest litigators in the country.[4]  *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (C.D. Cal. 2013) ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work."); *Wing v. Asarco Inc.*, 114 F.3d 986, 988-89 (9th Cir. 1997) (approving a 2.0 multiplier in part because of "the quality of the [defendant's] opposition").  HP was well-defended and counsel on both sides worked professionally to advance their clients' interests and resolve this matter once the facts and issues were sufficiently developed.

**Benefits obtained for the class.**  HP's written promise not to reactivate Dynamic Security protects class members and provides them with a remedy in the event HP breaks its promise.  This promise provides a significant benefit even after HP disabled the technology during the course of this litigation: HP's witness admitted that Dynamic Security could be reactivated (Novak Dep. at 96:2-15 (Dkt. No. 91-13)), and its executive announced that HP "will continue to use security features to . . . protect our IP including authentication methods that may prevent some third-party supplies from working."[5]  Moreover, even apart from the equitable relief secured by the Settlement, based on the current claims received, the fund will be sufficient to pay all documented claims in full.  Kramer Decl., ¶¶ 49-51.  Thus, this factor strongly favors awarding the requested fee.

**The complexity and novelty of the issues presented.**  The "prosecution and management of a complex national class action requires unique legal skills and abilities."  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (citation omitted).  This case presented special challenges because of the advanced technology at issue and its relevance to HP's bottom line.  Kramer Decl., ¶ 59.  Adding to the complexity were the two product markets implicated (for inkjet printers and replacement cartridges) and the relative dearth of legal precedent concerning the use of security technology similar to Dynamic Security.  Through their hard work Class Counsel gained an understanding of how Dynamic Security operated, how to position the case for maximum benefit and

---

[4] *See, e.g.*, Sam Reisman, "The Four Firms That GCs Fear the Most," *Law360* (Oct. 17, 2018) (naming Gibson Dunn to the "fearsome foursome" of law firms that general counsel least want to litigate against), *available at* https://www.gibsondunn.com/wp-content/uploads/2018/10/GDC-The-Four-Firms-That-GCs-Fear-The-Most-Law360-10-17-2018.pdf.

[5] https://www8.hp.com/us/en/hp-news/blog/Small-Business-Printing/best-possible-printing-experience2.html; *see also* Barkley Dep. at 192:21-193:16; 232:10-12 (Dkt. No. 91-13).

14

1   efficiency, and how to present the issues in a clear and comprehensible fashion to the Court.

2        **Risk of nonpayment.**  Class Counsel prosecuted this consumer protection litigation on a pure

3   contingency basis.  The litigation was risky and precluded work on other matters.  Kramer Decl., ¶ 59; *see*

4   Final Approval Brief, § II.2 (summarizing major litigation risks).  Class Counsel advanced all costs with

5   no guarantee of recovery against a well-capitalized defendant.  Kramer Decl., ¶ 59.  Accordingly, this

6   factor—like the other *Hanlon/Ketchum* factors—weighs in favor of awarding the requested fee.

7        **5.      A Comparison to the Value of Relief for the Class Is Not Part of the Lodestar
            Analysis.**

8        Under California law, "it is inappropriate and an abuse of a trial court's discretion to tie an attorney

9   fee award to the amount of the prevailing buyer/plaintiff's damages or recovery" under a "consumer

10  protection statute with a mandatory fee-shifting provision" like the CLRA.  *Warren v. Kia Motors Am.,*

11  *Inc.*, 30 Cal. App. 5th 24, 37 (2018); *see also Hanlon*, 150 F.3d at 1029 (reiterating that the lodestar-

12  multiplier method supplies the preferred measure of a reasonable fee when, as in this case, the prevailing

13  party has obtained non-monetary relief that is difficult to value); *In re General Motors Corp. Pick-Up*

14  *Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("Because the lodestar award is de-

15  coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (as

16  legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary

17  value of the final relief achieved for the class.").

18       In short, "because this matter involve[d] an individual plaintiff suing under consumer protection

19  statutes involving mandatory fee-shifting provisions, the legislative policies are in favor of . . . recovery of

20  *all attorney fees reasonably expended, without limiting the fees to a proportion of her actual recovery*."

21  *Warren*, 30 Cal. App. 5th at 39 (emphasis and alteration in original) (quoting *Graciano*, 144 Cal. App. 4th

22  at 164); *see also Jefferson v. Chase Home Fin.*, No. C 06-6510 TEH, 2009 WL 2051424, at *2 (N.D. Cal.

23  July 10, 2009) ("To limit the fee award to an amount less than that reasonably incurred" in a case

24  involving modest damages "would impede the legislative purpose underlying section 1780.") (citation

25  omitted).  So courts applying California law have repeatedly denied attempts to limit a lodestar-based fee

26  by reference to the recovery in the case.  *See, e.g.*, *Taylor v. Nabors Drilling USA, LP*, 222 Cal. App. 4th

27  1228, 1251-52 (2014) (affirming $680,520 fee where jury awarded only $160,000, and stating that

28

"[a]ppellant has not cited any authority requiring that fee awards be proportional to the amount of damages recovered"); *Warren*, 30 Cal. App. 5th at 37-39 (reversing lodestar-based fee to the extent it had been reduced in light of damages awarded); *Gong-Chun v. Aetna Inc.*, No. 1:09-CV-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (recognizing that "where attorneys' fees are awarded pursuant to a statutory fee-shifting provision and are not taken out of a common-fund, the proportionality of the attorneys' fees to the damages award is not the measure of reasonableness.") (citing *Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 446 (2000) (affirming $470,000 fee award when plaintiff recovered only $37,500; "[u]nder the lodestar method, a party who qualifies for a fee should recover for all hours reasonably spent unless special circumstances would render an award unjust."); *see also Harman v. City & County of San Francisco*, 158 Cal. App. 4th 407 (2007) (upholding, subject to limited remand, $1.1 million fee on $30,300 in damages).

### C.   Class Counsel Should Be Reimbursed for Our Out-Of-Pocket Expenses, Which Are Reasonable.

Class Counsel are entitled to recover the out-of-pocket costs they reasonably incurred in investigating, prosecuting, and settling this case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)).  HP agrees that Class Counsel should receive "reimbursement of out-of-pocket litigation costs actually and reasonably incurred."  Kramer Decl., Ex. A § 6.1; *see Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257-58 (9th Cir. 2006) (holding that reimbursable costs are not limited to costs eligible for taxation under 28 U.S.C. § 1920).  The total cost amount requested by Class Counsel reflects the expenses Class Counsel advanced for the benefit of the class.  As with fees, reimbursement of costs will be paid directly by HP and will not affect the relief afforded to the class.

Class Counsel incurred $83,011.78 in unreimbursed, out-of-pocket expenses in this action. Kramer Decl., ¶ 62.  These include costs advanced in connection with expert witnesses, court reporting services, legal research, travel, a document review platform, and other customary litigation expenses.  *See, e.g.*, *In re Media Vision*, 913 F. Supp. at 1367-72 (reimbursable costs include expenses for travel and legal research); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *16 (N.D. Cal. Sept. 2, 2015) (expert witnesses, court reporters, document review vendor).

### D.      The Agreed-Upon Service Awards Are Reasonable and Should Be Approved.

HP agrees to pay $5,000 service awards to each of the five class representatives, subject to Court approval, which again will not reduce the $1.5 million fund.  Kramer Decl., Ex. A § 6.2.  "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and "the amount of time and effort the plaintiff expended in pursuing the litigation."  *Id.*  "In this district, a $5,000 payment is presumptively reasonable."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942-43 (9th Cir. 2015) (rejecting an objector's argument that payment of $5,000 incentive awards rendered the class representatives inadequate).

The $5,000 service awards that HP has agreed to pay are reasonable, considering the named Plaintiffs' efforts as outlined in their declarations filed herewith.  In addition to agreeing to be named in the complaint, thereby subjecting themselves to public attention, the Plaintiffs actively participated in the litigation.  They regularly communicated with counsel, providing documents and information.  They sat for depositions, participated in the settlement discussions, and reviewed and approved the settlement.  In light of these class representatives' efforts and willingness to step forward on behalf of the class, the agreed-upon service awards should be approved.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving $5,000 service awards).

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court award attorneys' fees and costs in the amount of $2,833,011.78, together with a $5,000 service award for each of the five class representatives.

Dated: February 7, 2019                                    Respectfully submitted,

                                                           GIRARD SHARP LLP

                                                           /s/ *Jordan Elias*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Elizabeth A. Kramer (SBN 293129)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846
Email: dgirard@girardsharp.com
Email: jelias@girardsharp.com
Email: ekramer@girardsharp.com

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN,
P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, California 91367
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
Email: tfriedman@toddflaw.com
Email: abacon@toddflaw.com

Joseph R. Saveri (SBN 130064)
Nicomedes S. Herrera (SBN 275332)
Kyla J. Gibboney (SBN 301441)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: nherrera@saverilawfirm.com
Email: kgibboney@saverilawfirm.com

Daniel R. Karon
**KARON LLC**
700 W. St. Clair Avenue, Ste. 200
Cleveland, Ohio 44113
Telephone: (216) 622-1851
Facsimile: (216) 241-8175
Email: dkaron@karonllc.com

Taylor Bartlett (*pro hac vice*)
**HENINGER GARRISON DAVIS, LLC**

18

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 5:16-cv-05820-EJD-SVK

2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Facsimile: (205) 380-8085
Email: taylor@hgdlawfirm.com

*Counsel for Plaintiffs*

## ATTESTATION

I, Jordan Elias, am the ECF user whose identification and password are being used to file this motion. I hereby attest under penalty of perjury that concurrence in this filing has been obtained from all counsel listed above.


DATED: February 7, 2019                    /s/ *Jordan Elias*
                                            Jordan Elias


## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2019, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.


                                            /s/ *Jordan Elias*
                                            Jordan Elias