SAMUEL G. LIVERSIDGE (SBN 180578)
  sliversidge@gibsondunn.com
RODNEY J. STONE (SBN 145405)
  rstone@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  (213) 229-7365
Facsimile:  (213) 229-6365

Attorneys for Defendant
HP INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HP PRINTER FIRMWARE UPDATE LITIGATION | CASE NO. 5:16-cv-05820-EJD-SVK<br><br>**DEFENDANT HP INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>**Hearing:**<br>Date:       April 25, 2019<br>Time:      9:00 a.m.<br>Place:     Courtroom 4<br>Judge:    Hon. Edward J. Davila<br><br>Action Filed:  September 28, 2016 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 3

    A.  The Technology At Issue ......................................................................... 3

    B.  Procedural History and Settlement........................................................... 4

III.  ARGUMENT ...................................................................................................... 6

    A.  Class Counsel's Requested Fee Award Is Unreasonable When Cross-Checked With The Percentage-Of-Recovery Benchmark ......................................... 6

        1.  *This Court Has An Independent Duty To Ensure The Attorneys' Fee Award Is Fair And Reasonable By Cross-Checking The Lodestar With The Percentage-Of-Recovery Benchmark.* ................................................ 6

        2.  *Class Counsel's Attempts To Escape The Cross-Check Method Are Not Supported By California Or Federal Law.* ................................................. 8

        3.  *The Applicable Factors Show Class Counsel's Requested Lodestar Is Unreasonable And Should Be Substantially Reduced.* .............................. 12

    B.  Class Counsel's Lodestar And Expense Request Should Be Rejected Because They Lack Evidentiary Support ............................................................... 14

IV.  CONCLUSION ................................................................................................. 18

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Banas v. Volcano Corp.*,
    47 F. Supp. 3d 957 (N.D. Cal. 2014) ...................................................................17, 18

*Best v. Cal. Apprenticeship Council*,
    193 Cal. App. 3d 1448 (1987)...........................................................................17

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011).......................................................1, 6, 7, 10, 12, 13

*Bottoni v. Sallie Mae, Inc.*,
    No. 10-3602-LB, 2013 WL 12312794 (N.D. Cal. Nov. 21, 2013) .......................9

*Branco v. Credit Collection Servs., Inc.*,
    No. 10-1242, 2011 WL 6003877 (E.D. Cal. Dec. 1, 2011) ...........................12

*In re Celera Corp. Secs. Litig.*,
    No. 10-2604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ...................7

*In re Cendant Corp. Litig.*,
    404 F.3d 173 (3d Cir. 2005)..............................................................................17

*Chavez v. Netflix, Inc.*,
    162 Cal. App. 4th 43 (2008) .............................................................................10

*Ching v. Siemens Indus., Inc.*,
    No. 11-4838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ...................7

*Democratic Pty. of Wash. State v. Reed*,
    388 F.3d 1282 (9th Cir. 2004).........................................................................15

*In re Easysaver Rewards Litig.*,
    906 F.3d 747 (9th Cir. 2018)..............................................................................7

*Fuller v. Interview, Inc.*,
    No. 07-5728, 2009 WL 3241542 (S.D.N.Y. Sept. 30, 2009)...........................16

*Garcia v. Resurgent Capital Servs., L.P.*,
    No. 11-1253-EMC, 2012 WL 3778852 (N.D. Cal. Aug. 30, 2012) .................15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)..................................................................................7

*Glass v. UBS Fin. Serv., Inc.*,
    No. 06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...............................8

*United States ex rel. Glumac v. Don Todd Assocs., Inc.*,
    No. 09-1442-WHA, 2010 WL 545839 (N.D. Cal. Feb. 11, 2010) ...................18

TABLE OF AUTHORITIES (*continued*)

Page(s)

*Gong-Chun v. Aetna Inc.*,
No. 09-1995, 2012 WL 2872788 (E.D. Cal. July 12, 2012) ........................................12

*In re Google Referrer Header Privacy Litig.*,
87 F. Supp. 3d 1122 (N.D. Cal. 2015) .......................................................................7

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...........................................................................11, 12

*Harman v. City & Cty. of San Francisco*,
158 Cal. App. 4th 407 (2007) .................................................................................12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................2, 3, 12, 15, 17

*In re Heritage Bond Litig.*,
No. 02-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................................17

*Hoffman v. Constr. Protective Servs., Inc.*,
No. 03-1006, 2006 WL 6105638 (C.D. Cal. Aug. 31, 2006)........................................8

*Intel Corp. v. Terabyte Int'l, Inc.*,
6 F.3d 614 (9th Cir. 1993) ......................................................................................17

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ........................................................................................10

*Khanna v. Intercon Sec. Sys., Inc.*,
No. 09-2214, 2014 WL 1379861 (E.D. Cal. Apr. 8, 2014) ........................................17

*Laffitte v. Robert Half Int'l Inc.*,
1 Cal. 5th 480 (2016) .....................................................................................1, 3, 10

*Levy v. Toyota Motor Sales, U.S.A., Inc.*,
4 Cal. App. 4th 807 (1992) .....................................................................................15

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ...........................................................................7, 9

*In re Magsafe Apple Power Adapter Litig.*,
No. 09-1911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015)................................7, 9

*Mahach-Watkins v. Depee*,
593 F.3d 1054 (9th Cir. 2010)................................................................................12

*Mangold v. Cal. Pub. Utils. Comm'n*,
67 F.3d 1470 (9th Cir. 1995)................................................................................8, 9

Gibson, Dunn &
Crutcher LLP

TABLE OF AUTHORITIES (*continued*)

Page(s)

*Mendoza v. Hyundai Motor Co., Ltd.*,
No. 15-1685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ........................................9

*Montano v. Bonnie Brae Convalescent Hosp. Inc.*,
No. 12-3462, 2015 WL 12698407 (C.D. Cal. Sept. 14, 2015) ........................................8

*Moore v. PetSmart, Inc.*,
No. 12-3577-EJD, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) ...........................7, 8, 9

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
544 F. Supp. 330 (E.D.N.Y. 1982) ........................................17

*In re Netflix Privacy Litig.*,
No. 11-379-EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................7

*Noll v. eBay, Inc.*,
309 F.R.D. 593 (N.D. Cal. 2015) ........................................7, 9

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)........................................1, 6, 7

*Pigford v. Vilsack*,
89 F. Supp. 3d 25 (D.D.C. 2015) ........................................16

*Rainbow Bus. Sols. v. MBF Leasing LLC*,
No. 10-1993-CW, 2017 WL 6017844 (N.D. Cal. Dec. 5, 2017) ........................................9

*Roe v. Halbig*,
29 Cal. App. 5th 286, 310 (2018) ........................................10

*Rosado v. eBay Inc.*,
No. 12-4005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016)........................................7, 9

*Rose v. Bank of Am. Corp.*,
No. 11-2390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ........................................7

*Serrano v. Priest*,
20 Cal. 3d 25 (1977) ........................................17

*Serrano v. Unruh*,
32 Cal. 3d 621 (1982) ........................................15

*Smith v. CRST Van Expedited, Inc.*,
No. 10-1116, 2013 WL 163293 (S.D. Cal. 2013)........................................11

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016) ........................................10

Gibson, Dunn &
Crutcher LLP

Page(s)

*Stovall-Gusman v. W.W. Granger, Inc.*,
  No. 13-2540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015)..................................9

*Taylor v. Nabors Drilling USA, LP*,
  222 Cal. App. 4th 1228 (2014) ...............................................................................12

*True v. Am. Honda Motor Co.*,
  749 F. Supp. 2d 1052 (C.D. Cal. 2010) .....................................................................6

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) ..............................................................................8

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002).............................................................................6, 8, 9

*Vo v. Las Virgenes Mun. Water Dist.*,
  79 Cal. App. 4th 440 (2000) ...................................................................................12

*Walker v. Gruver*,
  No. 11-1223, 2013 WL 5947623 (M.D. Pa. Nov. 5, 2013) .......................................16

*Warren v. Kia Motors Am., Inc.*,
  30 Cal. App. 5th 24, 39 (2018) ................................................................................11

*Weeks v. Baker & McKenzie*,
  63 Cal. App. 4th 1128 (1998) ..................................................................................11

*Welch v. Metro. Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007)....................................................................................14

*Williamson v. McAfee, Inc.*,
  No. 14-158-EJD, 2017 WL 6033070 (N.D. Cal. Feb. 3, 2017) ...................................7

**Statutes**

Cal. Civ. Proc. Code § 1021.5....................................................................................5, 9, 11

Cal. Civ. Proc. Code § 1794........................................................................................11

**Rules**

Fed. R. Civ. P. 23(h) advisory committee's note ...........................................................13

## I.   INTRODUCTION

Through their Motion for Attorneys' Fees, Costs, and Service Awards (Dkt. 119 ("Mot.")), Class Counsel ask this Court to award them $2.83 million in attorneys' fees and expenses—an amount that is nearly *twice* the monetary benefit they secured for the entire class ($1.5 million), and more than *seven* times what would be reasonable if the applicable Ninth Circuit percentage-of-recovery benchmark of 25% was applied to the class recovery.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  The fair, but ultimately modest, settlement reached in this case does not support the extravagant award Class Counsel now seek, which would make the class attorneys—rather than the class members—the primary beneficiaries of this litigation.  Class Counsel's request for an award of $2.83 million is unreasonable and therefore Class Counsel's Motion should be denied.

Class Counsel's attorneys' fee request is based solely on a lodestar analysis that is plainly unreasonable when cross-checked with this Circuit's percentage-of-recovery benchmark, which suggests that a reasonable attorneys' fee would be 25% of the class recovery, or $375,000.[1]  Class Counsel's insistence that the Court ignore the applicable benchmark and blindly adhere to their lodestar is contrary to Ninth Circuit and California law, neither of which supports rigid adherence to a lodestar to calculate attorneys' fees.  *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) ("[E]ven though the lodestar method may be a perfectly appropriate method of fee calculation, we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method."); *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–04 (2016) ("[U]sing a percentage method for [the] primary calculation of the fee award" is proper because "[t]he choice of a fee calculation method is generally one within the discretion of the trial court, the goal . . . being the award of a reasonable fee.").  Rather, the proper way for the Court to determine the reasonableness of a fee award—endorsed by the Ninth Circuit and routinely used by this Court in other

---

[1]  Any attorneys' fees that this Court awards through Class Counsel's Motion would be paid in addition to the $1.5 million class recovery, to which the parties have already agreed upon through the non-reversionary settlement fund.  Because any attorneys' fees award will not offset the class recovery, it is appropriate to apply the percentage-of-recovery benchmark of 25% to the $1.5 million settlement fund, which suggests a reasonable fee award of $375,000.  Even if the Court was inclined to include attorneys' fees in the class recovery for purposes of the constructive common fund analysis, the maximum amount of reasonable attorneys' fees under the Ninth Circuit's benchmark percentage would be $500,000 (= 25% * ($1.5 million + $500,000)).

cases involving similar claims—is to cross-check the lodestar with the percentage-of-recovery benchmark.  The seven-fold difference between Class Counsel's lodestar and the percentage-of-recovery benchmark strongly supports a substantial downward adjustment of the lodestar to $375,000.

Nor should Class Counsel's flawed and unsupported lodestar itself be credited.  Although it is Class Counsel's duty to provide evidence that allows this Court and HP Inc. ("HP") to assess the reasonableness of their lodestar, they have not attempted to discharge that burden here.  Class Counsel have only provided conclusory statements that their lodestar "is reasonable," and have not offered any specific evidence that would allow this Court to assess whether the 5,363 hours allegedly spent on this case were reasonable.  Class Counsel provide no records regarding how much time they spent on specific tasks in this litigation, thereby making it impossible for this Court to determine whether the hours were reasonably incurred, or whether reductions are warranted for "excessive, redundant, or otherwise unnecessary" work.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

In fact, Class Counsel's lodestar is belied by the record in this case, which indicates that the litigation was neither complex nor time consuming.  In litigating this consolidated case, Class Counsel only filed two substantive briefs, appeared at two hearings, and deposed two witnesses.  Document discovery was also modest, with HP having produced fewer than 13,000 pages of documents, and Plaintiffs and third parties having produced just a fraction of that.  The lack of evidentiary support from Class Counsel, coupled with the litigation and discovery record in this case, indicates that the lodestar should not be relied upon as a measure of reasonable attorneys' fees.

The Court should exercise its discretion and downward-adjust the attorneys' fee award to $375,000, which is what is reasonable under a percentage-of-recovery method, proportional to the benefit Class Counsel secured for their clients, and consistent with attorneys' fee awards in similar class actions.  In the alternative, this Court at a minimum should reject Class Counsel's lodestar as presented because Class Counsel have not presented sufficient support to demonstrate that the requested amount is reasonable.

## II.     FACTUAL BACKGROUND

### A.     The Technology At Issue

This case arose from the consolidation of three complaints involving HP's use of "dynamic security" on certain of its printers. █████████████████████████████████

███████████████████████████████████████████ (Dkt. 91-15 at 12.)  HP

has obtained numerous patents relating to its innovative technology.  (*Id.*) ██████████

███████████████████████████████████████████████████████████

███████████████████████████ (*Id.* at 12–13.) ██████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████ (*Id.* at 13.)

Over the years, HP has developed technological security measures to protect itself and its

customers from the use of unlawful non-HP chips in ink cartridges. ████████████████

██████████████████ (Ex. 1 to Liversidge Decl. [Barkley Dep. Tr.] at 21:17–24.) ███████

███████████████████████████████████████████████████████████

███████████████ (*Id.* at 22:25–23:6.) ███████████████████████████

██████ (*See id.*)

       ███████████████████████████████████████████████████████

█████████████████████ This led HP to develop more sophisticated security mechanisms

known as "dynamic security," ████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████ (*Id.* at 160:23–161:1.) ██████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████ (*Id.* at 199:14–24.)

The printers that were affected by dynamic security were referred to as Tier 1 printers. ██████

███████████████████████████████████████████████████████████

Gibson, Dunn & Crutcher LLP

███████████████████████████████████████   Out of the estimated 3.5 million Tier 1 printers in the United States (*see* Dkt. 110 at 11), HP estimates that fewer than 20,000 printers have been affected by Tier 1 dynamic security (Dkt. 91-15 at 4).  Plaintiffs accept that the figure is in the "thousands."  (Dkt. 91 at 3, 8.)  In other words, it is uncontested that less than 1% of Tier 1 printers may have rejected ink cartridges as a consequence of the dynamic security at issue.

Moreover, by early October 2016, HP developed a firmware update that was available for manual download and would disable dynamic security on Tier 1 printers.  As HP's Rule 30(b)(6) witness explained, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  (Ex. 1 to Liversidge Decl. [Barkley Dep. Tr.] at 116:11–21; *see also id.* at 110:9–14; 114:18–23.)  Indeed, ████████████████████████████████████████████████████  (*Id.* at 103:25–105:15.) ██████████████████████████ ███████████████  (*Id.*)

## B.    Procedural History and Settlement

Class Counsel filed a consolidated complaint on March 22, 2017, which asserted 11 causes of action under federal and state law on behalf of a putative nationwide class.  (Dkt. 60.)  HP filed a motion to dismiss on April 21, 2017.  (Dkt. 66.)  A hearing occurred on July 14, 2017, and this Court took the motion under submission.  (Dkt. 83.)

Discovery in this matter was neither complex, extensive, nor contentious.  HP produced fewer than 13,000 pages of documents and offered two corporate representatives for deposition under Rule 30(b)(6).  (Liversidge Decl. ¶¶ 3, 8.)  Plaintiffs produced to HP 527 pages of documents and Class Counsel defended the six named, or former named, Plaintiffs in brief depositions that each lasted between 1.8 and 2.6 hours.  (*Id.* ¶¶ 4, 8.)  And while Class Counsel served document subpoenas on a handful of manufacturers and retailers, only two third parties made document productions, each comprising 10 or fewer documents.  (*Id.* ¶ 5.)  No third parties were deposed.  (*Id.* ¶ 12.)  No discovery motions were filed by any party.  (*Id.* ¶ 7.)  As Class Counsel admit, "the parties resolved their discovery disputes through arm's length negotiations rather than motion practice."  (Mot. at 4.)

Class Counsel filed a motion for class certification on February 7, 2018. (Dkt. 91.) Before HP filed an opposition to the certification motion (and before Class Counsel filed a reply brief in support of certification), the Court ruled on HP's motion to dismiss. (Dkt. 97.) In its order, the Court dismissed many of Plaintiffs' California claims, including those under the unfairness prong of the UCL, as well as portions of the fraud-based claims and claims under section 502 of the California Penal Code. (*Id.* at 14–21.) The Court also dismissed Plaintiffs' claims under Texas, Washington, and New Jersey law. (*Id.* at 22.) Overall, of the Plaintiffs' 11 claims, only one claim—trespass to chattels—survived the Court's order in its entirety. (*Id.* at 13–14.) The Court invited Plaintiffs to file an amended complaint. (*Id.* at 24.)

Prior to the filing of an amended complaint, the parties began exploring settlement. To avoid the uncertainty and expense of further litigation, HP reached a fair and reasonable settlement with the class (*see* Dkt. 120 [Kramer Decl.] ¶ 41), which this Court preliminarily approved on November 19, 2018 (Dkt. 116). Through the settlement, HP agreed to pay $1.5 million in compensation to the settlement class, and to further pay all administrative expenses relating to class notice and the disbursement of settlement funds. (Dkt. 110-2 ¶¶ 1.32, 2.1–2.2.) With respect to non-monetary relief, HP agreed "not to reactivate Dynamic Security on the printers in question." (Mot. at 8.) Although Class Counsel claim this was the "primary benefit obtained through this settlement" (*id.*), the settlement recognized that HP had already "released firmware that disables Dynamic Security for the Class Printers" (Dkt. 110-2 ¶ 2.3; *see also* Ex. 1 to Liversidge Decl. [Barkley Dep. Tr.] at 103:25–105:15, 110:9–14, 114:18–23, 116:11–21).

In the settlement, HP agreed to reimburse out-of-pocket litigation costs that Class Counsel "actually and reasonably incurred," but Class Counsel were otherwise required to "apply to the Court for the Fee and Expense Award to be paid by HP." (Dkt. 110-2 ¶ 6.1.) The settlement further provided that HP "shall not dispute that plaintiffs are successful parties for purposes of California Code of Civil Procedure section 1021.5" (*id.*), under which a court "may award attorneys' fees" to a "successful party." Cal. Civ. Proc. Code § 1021.5. However, HP expressly "reserve[d] the right to oppose any application" for fees, and also "reserve[d] all arguments with respect to the amount of fees and costs to which Class Counsel is entitled." (Dkt. 110-2 ¶ 6.1.)

Gibson, Dunn & Crutcher LLP

1    Class Counsel filed their Motion for Attorneys' Fees, Costs, and Service Awards on February

2    7, 2019, seeking attorneys' fees in the amount of $2.75 million and an additional $83,012 in expenses.

3    (*See* Dkt. 119.)  Because the benefit for the class was negotiated independent of the fees award, this

4    Court may reach any decision regarding Class Counsel's present motion without disturbing the

5    settlement and the award to the class members.

6                              **III.    ARGUMENT**

7    **A.    Class Counsel's Requested Fee Award Is Unreasonable When Cross-Checked With The**
     **Percentage-Of-Recovery Benchmark**

8            Class Counsel's lodestar analysis is unreasonable when cross-checked with a percentage-of-

9    recovery benchmark, which suggests that a reasonable fee award should be 25% of the class recovery.

10   Rather than offer a compelling reason to depart from this benchmark, Class Counsel simply tell this

11   Court to ignore the percentage-of-recovery method.  That is not consistent with this Court's obligations

12   under federal and California law to ensure that the attorneys' fee award is fair and reasonable.

13       *1.    This Court Has An Independent Duty To Ensure The Attorneys' Fee Award Is Fair*
14       *And Reasonable By Cross-Checking The Lodestar With The Percentage-Of-*
         *Recovery Benchmark.*

15           To support their requested fee award, Class Counsel rely exclusively on a lodestar analysis,

16   which calculates attorneys' fees by "multiplying the number of hours the prevailing party reasonably

17   expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for

18   the region and for the experience of the lawyer."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

19   at 949.  (*See* Mot. at 9–12.)  While Class Counsel contend that their lodestar is "presumptively

20   reasonable" (*id.* at 9), this Court has absolute discretion to "adjust [the lodestar] downward" to ensure

21   it is reasonable, as it is an abuse of that discretion to apply a "mechanical or formulaic approach that

22   results in an unreasonable award."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 944.

23   Indeed, the dangers of relying on a mechanical application of a lodestar are well known:  a lodestar

24   encourages plaintiffs' counsel "to expend more hours than may be necessary on litigating a case so as

25   to recover a reasonable fee."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002);

26   *see also True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010) ("The lodestar

27   amount is particularly inappropriate where . . . the benefit achieved for the class is small and the

28

Gibson, Dunn &
Crutcher LLP

lodestar award large."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("[T]he lodestar method has been criticized as giving class counsel the incentive to . . . run up fees while still failing to align the interests of the class and its counsel, and for not rewarding counsel incrementally for undertaking the risk of going to trial.").

To guard against this risk, the Ninth Circuit requires courts to apply a cross-check, which compares a lodestar to what would be considered reasonable under the percentage-of-recovery benchmark. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944–45 ("[A] court may demonstrate that its use of a particular method or the amount awarded is reasonable . . . by conducting a cross-check using the other method.").[2]  This cross-check requirement is simple and intuitive, and provides a flexible framework for courts to contextualize attorneys' fee requests and to discharge their duty to "guard against an unreasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 944; *see also id.* ("Just as the lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate, the percentage-of-recovery method can likewise be used to assure that counsel's fee does not dwarf class recovery." (internal quotation marks omitted)).

Under the percentage-of-recovery method, attorneys' fees are calculated to "equal some percentage" of the total class settlement award. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949.  In the Ninth Circuit, "the benchmark percentage is 25%." *Id.*; *In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th Cir. 2018).  And while courts have discretion to adjust the benchmark percentage, courts rarely deviate more than 10 or 15 percentage points from the Ninth Circuit's established benchmark of 25%. *See, e.g.*, *Ching v. Siemens Indus., Inc.*, No. 11-4838-MEJ, 2014 WL

---

[2]  This Court has routinely used a cross-check to consider the reasonableness of requests for attorneys' fees in settlements covering a wide array of claims.  *See, e.g.*, *Rosado v. eBay Inc.*, No. 12-4005-EJD, 2016 WL 3401987, at *7 (N.D. Cal. June 21, 2016); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 590 (N.D. Cal. 2015); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 609 (N.D. Cal. 2015); *Moore v. PetSmart, Inc.*, No. 12-3577-EJD, 2015 WL 5439000, at *11–*12 (N.D. Cal. Aug. 4, 2015); *In re Celera Corp. Secs. Litig.*, No. 10-2604-EJD, 2015 WL 7351449, at *8–*10 (N.D. Cal. Nov. 20, 2015); *Rose v. Bank of Am. Corp.*, No. 11-2390-EJD, 2014 WL 4273358, at *7 (N.D. Cal. Aug. 29, 2014); *In re Netflix Privacy Litig.*, No. 11-379-EJD, 2013 WL 1120801, at *10 (N.D. Cal. Mar. 18, 2013); *In re Magsafe Apple Power Adapter Litig.*, No. 09-1911-EJD, 2015 WL 428105, at *10–*15 (N.D. Cal. Jan. 30, 2015); *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1135 (N.D. Cal. 2015), *aff'd*, 869 F.3d 737 (9th Cir. 2017), *rev'd and vacated on other grounds sub nom. Frank v. Gaos*, No. 17-961, --- U.S. --- (U.S. Mar. 20, 2019); *Williamson v. McAfee, Inc.*, No. 14-158-EJD, 2017 WL 6033070, at *1 (N.D. Cal. Feb. 3, 2017).  Indeed, HP's review of this Court's jurisprudence has not identified a single case in which this Court did not use a cross-check.

2926210, at *8 (N.D. Cal. June 27, 2014) (30% of the fund); *Glass v. UBS Fin. Serv., Inc.*, No. 06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (25 to 35% of the claimed damages is reasonable); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3%."); *Vizcaino*, 290 F.3d at 1047 (28% fee award). This Court has rejected requests to deviate significantly from the Ninth Circuit's 25% benchmark. *See, e.g.*, *Moore*, 2015 WL 5439000, at *11 (rejecting a 33% request).

Applying the cross-check here reveals the patent unreasonableness of Class Counsel's fee request. Whereas Class Counsel's lodestar calculates attorneys' fees of $2.75 million (plus roughly $83,000 in expenses), application of the standard 25% benchmark percentage results in a reasonable attorneys' fee award of $375,000.

### 2. Class Counsel's Attempts To Escape The Cross-Check Method Are Not Supported By California Or Federal Law.

Class Counsel urge the Court to ignore the Ninth Circuit's cross-check for reasonableness and to only strictly apply the lodestar method under California law. (Mot. at 15–16.) Plaintiffs' arguments are not supported by either California or Ninth Circuit law. This Court is not required to follow California law, but even if it were, the analysis is not materially different.

Class Counsel erroneously claim that "because Plaintiffs' claims arise under California law, California law governs the award of attorneys' fees." (*Id.* at 7.) In truth, Plaintiffs brought their claims under *both* California *and* federal law, as well as under the laws of a number of other states. (*See* Dkt. 94 at 25–30 (bringing claims under 18 U.S.C. § 1030, and Texas, Washington, and New Jersey law).) Indeed, Plaintiffs' certification motion, still pending when the case was settled, sought certification of a nationwide class "based on HP's alleged violations of the [federal] Computer Fraud and Abuse Act." (Dkt. 91 at 12.) Because Plaintiffs have "invoke[d] both state and federal law, the method of calculating attorney's fees rests in the Court's discretion." *Montano v. Bonnie Brae Convalescent Hosp. Inc.*, No. 12-3462, 2015 WL 12698407, at *2 (C.D. Cal. Sept. 14, 2015) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995)), *aff'd*, 686 F. App'x 479 (9th Cir. 2017); *see also Hoffman v. Constr. Protective Servs., Inc.*, No. 03-1006, 2006 WL 6105638, at *3 (C.D. Cal. Aug. 31, 2006) ("Where the Complaint invokes both state and federal law, the method of calculating attorney's

fees rests in the Court's discretion.").  Thus, it is unsurprising that numerous courts in this district have continued to apply the Ninth Circuit's cross-check method when analyzing attorney's fee requests made under the exact same fee-shifting statute that Class Counsel rely on, section 1021.5 of the California Civil Procedure Code.  *See, e.g.*, *Rainbow Bus. Sols. v. MBF Leasing LLC*, No. 10-1993-CW, 2017 WL 6017844, at *1 (N.D. Cal. Dec. 5, 2017); *Mendoza v. Hyundai Motor Co., Ltd.*, No. 15-1685-BLF, 2017 WL 342059, at *14 (N.D. Cal. Jan. 23, 2017); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-2540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015); *Bottoni v. Sallie Mae, Inc.*, No. 10-3602-LB, 2013 WL 12312794, at *5, *7 (N.D. Cal. Nov. 21, 2013).  Additionally, many of this Court's decisions using the cross-check method have also involved state law claims—including the same state consumer protection claims brought in this case.  *See, e.g.*, *Rosado*, 2016 WL 3401987, at *1 (involving common law and state law claims, including under the UCL, FAL, and CLRA); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. at 581 (involving claims brought under the UCL); *In re Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, at *15 (involving both federal and state claims, including under the CLRA); *Noll*, 309 F.R.D. at 600–01 (involving state law claims under the UCL, FAL, and CLRA); *Moore*, 2015 WL 5439000, at *2 (involving state claims under the UCL).

Despite this well-settled law, Class Counsel nonetheless insist that the presence of state law claims compels the use of state law in determining attorneys' fees, citing to *Vizcaino*, 290 F.3d at 1047, and *Mangold*, 67 F.3d at 1478.  (*See* Mot. at 7.)  Neither case compels that result.  In *Vizcaino*, the Ninth Circuit was approving the district court's use of both the lodestar and percentage-of-recovery methods as cross-checks on each other.  *See Vizcaino*, 290 F.3d at 1050.  And in *Mangold*, the question of state versus federal law was relevant because plaintiffs' counsel was requesting certain "contingency-fee multipliers" that had explicitly been held available under state law but not under federal law.  *See Mangold*, 67 F.3d at 1478.  By contrast, this case simply involves the ordinary application of the cross-check method, which has been endorsed by both federal and California state courts.

Moreover, Class Counsel's choice-of-law argument is unavailing because even if this Court were to choose to look only to California law, that would not change the outcome.  Although Class Counsel claim that a cross-check "is not part of the lodestar analysis" under California law (Mot. at 15

(capitalization omitted)), California courts have made clear that "a trial court is not obligated to use the lodestar method." *Roe v. Halbig*, 29 Cal. App. 5th 286, 310 (2018); *see also Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1262 (C.D. Cal. 2016) ("[C]ourts have discretion to choose among two different methods for calculating a reasonable attorney's fee award."). As the California Supreme Court explained, California law does "not mandat[e] a blanket 'lodestar only' approach"; rather, a trial court has "broad discretion to adjust the fee downward or deny an unreasonable fee altogether." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136, 1138 (2001).

Indeed, the California Supreme Court in *Laffitte v. Robert Half International Inc.*, 1 Cal. 5th 480 (2016), reaffirmed that a cross-check of a lodestar with a percentage of recovery method was appropriate. In that case, the California Supreme Court held that it was proper to determine an attorneys' fee award "as a percentage of the fund, while using the lodestar-multiplier method as a cross-check of the selected percentage." *Id.* at 488. In so holding, the California Supreme Court expressed concern that when used in isolation, the lodestar method encourages "a financial incentive to . . . accrue additional hours (and thus, additional fees)," and "gives counsel less of an incentive to maximize the recovery for the class." *Id.* at 494 (internal quotation marks omitted). The Court therefore concluded, "[t]he most significant trend has been a blending of the two fee calculation methods, an approach in which one method is used to confirm or question the reasonableness of the other's result." *Id.* at 496.[3] California courts have also noted that—consistent with the percentage-of-recovery method— reasonable fee awards average around one-third of the class recovery, further underscoring that the choice between federal and California law is immaterial. *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." (internal

---

[3] *Laffitte*'s holding is not strictly limited to "common fund" settlements. As the Ninth Circuit has noted, "artificially separate fee and settlement agreements should not enable parties to circumvent the 25% benchmark requirement on what is in economic reality a common fund situation." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 943 (internal quotation marks omitted). Thus, the fact that attorneys' fees are being litigated separate from the class settlement does not mean Class Counsel can ignore the percentage-of-recovery benchmark, as the $1.5 million monetary benefit to the class is economically indistinguishable from the portion of a common fund that is paid to the class. Moreover, the policy concerns underlying *Laffitte*'s rule—including the concern that rote adherence to a lodestar would incentivize plaintiffs' attorneys to litigate inefficiently, 1 Cal. 5th at 494—apply equally here.

Gibson, Dunn &
Crutcher LLP

quotation marks omitted)); *Smith v. CRST Van Expedited, Inc.*, No. 10-1116, 2013 WL 163293, at *5 (S.D. Cal. 2013) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25%.").

Class Counsel also incorrectly argue that under California law, attorneys bringing lawsuits under consumer protection statutes are entitled to "all attorney fees reasonably expended, without limiting the fees to a proportion of her actual recovery." (Mot. at 15 (citing *Warren v. Kia Motors Am., Inc.*, 30 Cal. App. 5th 24, 39 (2018)) (emphasis omitted).)  California courts only apply this rule where there is a *mandatory* fee-shifting provision, such as in "employment, civil rights and other injunctive relief class actions," where there is often "no way to gauge the net value of the settlement or any percentage thereof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  This is because "the ultimate goal in California, as under federal law, still is to determine a 'reasonable' attorney fee, and not to encourage unnecessary litigation of claims that serve no public purpose either because they have no broad public impact or because they are factually or legally weak." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1173 (1998).

For instance, in *Warren*, the California Court of Appeal considered a request for fees under the Song-Beverly Consumer Warranty Act, Cal. Civ. Proc. Code § 1794(d), which expressly provides that the prevailing party "'shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees *based on actual time expended*.'" 30 Cal. App. 5th at 35 (quoting Cal. Civ. Proc. Code § 1794(d)).  By contrast, section 1021.5 does *not* contain language expressly requiring payment of attorneys' fees "based on the actual time expended," and is in fact not a mandatory fee-shifting provision at all.  *See* Cal. Civ. Proc. Code § 1021.5 (award of attorneys' fees is *conditional* on an action "which has resulted in the enforcement of an important right affecting the public interest").  Courts continue to apply the cross-check even in cases where attorneys' fees are sought pursuant to section 1021.5 of the California Code of Civil Procedure.  *See supra*, p. 9 (citing cases applying cross-check method to analyze recovery of attorneys' fees under section 1021.5).

The other California state cases Class Counsel cite (*see* Mot. at 15–16) similarly involve civil rights or employment statutes where it is inherently difficult to quantify the benefit and therefore necessary to ensure attorneys have adequate economic incentives to bring lawsuits to vindicate these important public rights.  *See, e.g.*, *Taylor v. Nabors Drilling USA, LP*, 222 Cal. App. 4th 1228, 1235 (2014) (claim for hostile work environment sexual harassment under Fair Employment and Housing Act); *Gong-Chun v. Aetna Inc.*, No. 09-1995, 2012 WL 2872788, at *1 (E.D. Cal. July 12, 2012) (claims for violations of employee rights under California Labor Code); *Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 442 (2000) (claim for violations of Fair Employment and Housing Act); *Harman v. City & Cty. of San Francisco*, 158 Cal. App. 4th 407, 411 (2007) (claim for violations of federal employment discrimination laws under 42 U.S.C. § 1983).  This case does not fall into that rubric, as Plaintiffs sued based on purely economic harm to consumers, for which any damages are quantifiable and there is an appropriate balance of economic incentives to pursue these claims.

### 3.    *The Applicable Factors Show Class Counsel's Requested Lodestar Is Unreasonable And Should Be Substantially Reduced.*

Even the factors that Class Counsel point to under *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (*see* Mot. at 12–15), strongly suggest that a substantial reduction of the lodestar is warranted in this case.

**Benefit Obtained for the Class.**    In assessing the reasonableness of the lodestar, the "[f]oremost . . . consideration[]" is "the benefit obtained for the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.  The Supreme Court "has instructed district courts to . . . 'award only that amount of fees that is reasonable in relation to the results obtained.'"  *Id.* (quoting *Hensley*, 461 U.S. at 436, 440).  Courts have relied on this factor to substantially reduce requested lodestars in light of the results achieved.  *See, e.g.*, *Mahach-Watkins v. Depee*, 593 F.3d 1054, 1063 (9th Cir. 2010) (affirming 80% cut in fee request because of limited success); *Branco v. Credit Collection Servs., Inc.*, No. 10-1242, 2011 WL 6003877, at *4–*5 (E.D. Cal. Dec. 1, 2011) (cutting fee request by 90% in light of benefits obtained).

In this case, the benefit that Class Counsel secured for the class was a fair, but modest, settlement.  In terms of monetary compensation, HP agreed to pay $1.5 million to the settlement class.

Gibson, Dunn & Crutcher LLP

While fair and adequate in relation to the strength and scope of the class claims, it is not a result that justifies an award of fees that is 200% of the amount obtained for the class.

Class Counsel attempt to bolster their request by claiming that HP's promise not to reactivate dynamic security on the class printers in the future is a "significant benefit" to the class.  (Mot. at 14.)  This claim deserves "careful scrutiny to ensure that these [nonmonetary] provisions have actual value to the class."  Fed. R. Civ. P. 23(h) advisory committee's note.  To begin with, Class Counsel did not obtain *any* injunctive relief here.  Rather, they obtained a statement from HP in the settlement agreement that HP will not reactivate dynamic security on the class printers.  This is not injunctive relief.  And even if it were, the Ninth Circuit has observed that the value of injunctive relief is "not apparent" in cases where a defendant "ha[s] already voluntarily" changed their practices before settlement.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 945 n.8.  And here, as Class Counsel have acknowledged, in October 2016—long before the settlement was reached—"HP disabled the technology" by voluntarily releasing a firmware update that customers could manually download that would remove dynamic security from their printers.  (Mot. at 14.)  Additionally, Class Counsel learned through discovery that ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ (Ex. 1 to Liversidge Decl. [Barkley Dep. Tr.] at 116:11.)  Indeed, ██████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ███████████  (*Id.* at 103:25–105:15.)  ████████████████████████████████████████ ███████████████████████████  Thus, given that HP had already voluntarily disabled dynamic security ███████████████████████████████████████, Class Counsel's claim that their non-monetary relief secured a "significant benefit" to the class does not survive scrutiny.  Moreover, apart from conclusory statements about how the non-monetary relief enforced "valuable" and "important public rights" (Mot. at 2, 8), Class Counsel have not even attempted to provide the Court with any means to calculate the value of this non-monetary relief, which this Court is required to do.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 944 (finding error where district court "made no findings . . . with regard to the value *vel non*" of the non-monetary relief).

*Complexity and Novelty of the Issues Presented.* Nor did this case involve the adjudication of any complex or novel issues that would justify an extraordinary fee award in relation to the amount of the fund obtained for the class. Once the cases were consolidated, the only substantive motion that was fully briefed and argued was HP's motion to dismiss, which was limited to the pleadings and did not involve any novel or complex issues. Discovery was efficient and targeted. No discovery motions were filed and no expert reports were exchanged. Plaintiffs filed a motion for class certification but the case settled before HP filed its opposition brief. Nor did this case involve summary judgment briefing or trial preparation. In short, there was nothing unusually difficult or complex about this case that would warrant the exceedingly high lodestar.

*Risk of Nonpayment.* Class Counsel also fail to show why the risk of nonpayment in this case supports upholding their lodestar. Class Counsel simply state that they "prosecuted this consumer protection litigation on a pure contingency basis" and that the litigation "precluded work on other matters." (Mot. 15.) But that is almost always true of all class actions, and Class Counsel do not identify any special factors indicating why the risk of this litigation was greater than in any other consumer class action.

*Quality of Representation.* HP does not dispute that Class Counsel are competent attorneys who adequately represented the class. However, there were no particular complexities or challenges in this litigation that required extraordinary advocacy efforts from Class Counsel.

In sum, the *Hanlon* factors demonstrate that there are no special circumstances to justify a lodestar that exceeds the percentage-of-recovery benchmark.

**B.    Class Counsel's Lodestar And Expense Request Should Be Rejected Because They Lack Evidentiary Support**

Even if this Court does not adjust the lodestar to reflect a fee award in line with what is reasonable under the percentage-of-recovery benchmark, it should nonetheless reject the lodestar and request for reimbursement of expenses as presented because Class Counsel have not discharged their burden of proving that they are reasonable.

It is well settled that the "fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Welch v.*

1   *Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *see also Levy v. Toyota Motor Sales, U.S.A.,*

2   *Inc.*, 4 Cal. App. 4th 807, 816 (1992) (fee applicant has "burden of showing that the fees incurred were

3   allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount"

4   (internal quotation marks omitted)).   At a minimum, this requires the fee applicant to provide

5   "sufficient details" of their billing records that enable "'the court to judge whether the work was an

6   appropriate basis for fees.'"   *Garcia v. Resurgent Capital Servs., L.P.*, No. 11-1253-EMC, 2012 WL

7   3778852, at *9 (N.D. Cal. Aug. 30, 2012) (quoting *Democratic Pty. of Wash. State v. Reed*, 388 F.3d

8   1282, 1286 (9th Cir. 2004)); *Serrano v. Unruh*, 32 Cal. 3d 621, 639 & n.28 (1982) ("[A]wards are

9   discretionary" and "hours [must] be carefully documented.").   A court must reduce a fee award if the

10  hours are "excessive, redundant, or otherwise unnecessary."   *Hensley*, 461 U.S. at 434, 437.

11      Here, Class Counsel have offered only the most cursory evidence to support their extraordinary

12  lodestar.   While Class Counsel tout a laundry list of tasks they performed in this litigation (*see* Mot. at

13  11–12), they provide no evidence to show how their 5,363 hours were allocated to any specific tasks.

14  Without knowing how their hours were allocated, it is impossible to determine whether they are

15  reasonable or if they are "excessive, redundant, or otherwise unnecessary."   *Hensley*, 461 U.S. at 434.

16      All Class Counsel have provided is an extremely high-level summary of the number of hours

17  that each timekeeper spent on five "Categor[ies] of Work":   (1) "Case Investigation and Factual

18  Research";  (2) "Pleadings";  (3) "Discovery and Document Review";  (4) "Pretrial Motions and

19  Hearings"; and (5) "Settlement Negotiations and Motions."  (*See* Dkt. 120 [Kramer Decl.] Ex. B; Dkt.

20  121 [Friedman Decl.] Ex. A; Dkt. 122 [Saveri Decl.] Ex. A; Dkt. 123 [Hood Decl.] Ex. A; Dkt. 124

21  [Karon Decl.] Ex. A.)[4]   Each category is broadly defined, unspecified in time, and leaves to the

22  imagination what specific tasks were performed.   Absent these details, the categories are essentially

23  meaningless, and awarding fees based on these vague statements would potentially allow Class Counsel

24  to reap a windfall in attorneys' fees.   Class Counsel must properly account for its requested lodestar,

25  particularly here where it is 200% of the fund obtained for the class.

26

27  _____

28  [4]  For the Court's convenience, the information from these exhibits is consolidated in the Appendix
    concurrently filed with this brief.

Gibson, Dunn &
Crutcher LLP

15

The following examples underscore just how little evidence Class Counsel have provided to support their lodestar. Sixty-eight percent of their lodestar (more than $2 million) is based on hours Class Counsel performed on two tasks that they describe as follows: "Discovery and Document Review" (1,969 hours) and "Pretrial Motions and Hearings" (1,703 hours). (*See* Appendix.) Class Counsel seek *more than $2 million in fees* based only on these eight words of description. There is no way to determine what "discovery" and "document review" tasks were performed, or what tasks were involved in the "pretrial motions" or "hearings" referenced.

Moreover, the record in this case raises serious questions about how Class Counsel could have reasonably spent thousands of hours on these two categories of tasks, making it all the more essential that Class Counsel provide billing records to demonstrate that their hours were reasonably and necessarily incurred in furtherance of the litigation:

**Discovery and Document Review (1,969 hours = $1.03 million).** Contrary to Class Counsel's characterizations, this case did not involve voluminous discovery, and without detailed records it is impossible to evaluate the reasonableness of the nearly 2,000 hours Class Counsel expended on basic discovery tasks in light of the facts in the record regarding the scope of discovery:

- *Document Productions.* Class Counsel produced a total of 527 pages of documents on behalf of Plaintiffs. (Liversidge Decl. ¶ 4.) HP produced fewer than 13,000 pages of documents. (*Id.* ¶ 3.) Even assuming Class Counsel reviewed every single page of each document HP produced, this discovery record does not justify a significant amount of time on document review. *See, e.g.*, *Walker v. Gruver*, No. 11-1223, 2013 WL 5947623, at *14 (M.D. Pa. Nov. 5, 2013) ("In terms of document review, 400 pages of documents were produced, which would take even a newly barred attorney only a few days to review rather than over 70 hours."); *Fuller v. Interview, Inc.*, No. 07-5728, 2009 WL 3241542, at *4 (S.D.N.Y. Sept. 30, 2009) (250 hours to review 70,000 pages); *Pigford v. Vilsack*, 89 F. Supp. 3d 25, 32 (D.D.C. 2015) (152 hours to review 10,000 pages).

- *Depositions.* Throughout the entire litigation, Class Counsel only took two depositions, during which they used a total of 18 document exhibits. (Liversidge Decl. ¶¶ 8, 10.) Class Counsel also defended one short deposition for each of the six named, or former named, Plaintiffs, with each deposition lasting from 1.8 to 2.6 hours. (*Id.* ¶¶ 8, 9.) No third parties were deposed. (*Id.* ¶ 12.)

- *Written Discovery.* Neither party served the maximum number of interrogatories, and no requests for admission were served. (*Id.* ¶ 6.)

- *Third-Party Discovery.* Two third parties made document productions, each comprising of 10 or fewer documents. (*Id.* ¶ 5.)

***Pretrial Motions and Hearings (1,702 hours = $937,272).***  It is likewise puzzling how Class Counsel spent 1,702 hours on "pretrial motions and hearings," given that this case involved very few motions and hearings:

- *Pretrial Motions.*  Class Counsel only filed two substantive briefs in this consolidated litigation:  an opposition to HP's motion to dismiss (Dkt. 73), and one class certification brief (Dkt. 91).  It is not at all clear how preparing these two briefs could support 1,702 hours of work.  *See Banas v. Volcano Corp.*, 47 F. Supp. 3d 957 (N.D. Cal. 2014) ("[I]t is beyond me how . . . counsel billed approximately 400 attorney hours . . . for the opening brief and 220 attorney hours . . . for the reply brief."); *Khanna v. Intercon Sec. Sys., Inc.*, No. 09-2214, 2014 WL 1379861, at *15 (E.D. Cal. Apr. 8, 2014) (not reasonable to spend 119 hours to draft opposition to motion to dismiss).[5]

- *Hearings.*  Class Counsel made only two appearances since consolidation of the complaints; the total duration of those hearings is less than one hour.  (*See* Dkts. 83 [34 minutes]; 114 [18 minutes].)

It would be extraordinary for this Court to award millions of dollars in fees based on the lodestar when the lodestar is so poorly supported.  *See Hensley*, 461 U.S. at 434.  Moreover, approving a fee award without holding Class Counsel to their obligation to produce sufficiently detailed time records would violate HP's "need and right" to "see just what was charged and why," given that HP is "not required to take [Class Counsel's] word that every hour was needed and all overlap had been eliminated."  *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 623 (9th Cir. 1993); *see also Best v. Cal. Apprenticeship Council*, 193 Cal. App. 3d 1448, 1470 (1987) (fee award must be based on "a careful compilation" that "detail[s] the hours spent on the case and for what purpose" (citing *Serrano v. Priest*,

---

[5]  The hours Class Counsel spent to resolve the in fighting between competing Plaintiffs' counsel during the early stages of this litigation (*see* Mot. at 3) should be excluded from the lodestar for two reasons.  First, the competition among Plaintiffs' counsel was not necessary to achieve a benefit to the class, as any single case could have resulted in a settlement that would have afforded the same ultimate relief.  *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 544 F. Supp. 330, 341 (E.D.N.Y. 1982) (rejecting fee request "for time spent on internecine squabbles among plaintiffs"), *rev'd in part on other grounds*, 711 F.2d 1136 (2d Cir. 1983); *In re Heritage Bond Litig.*, No. 02-1475, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) ("[T]ime spent vying to become class counsel or promoting their lead plaintiff candidate is not compensable" because "[t]here was no material benefit to the class." (quoting *In re PeopleSoft, Inc. Sec. Litig.*, No. 99-472-WHA, slip op. at 14 (N.D. Cal. Aug. 24, 2001)))).  Second, the work by multiple Plaintiffs' firms was necessarily duplicative prior to consolidation, and it is well established Class Counsel are not entitled to a fee award based on duplicative work.  *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at *26 ("[F]iling a duplicative complaint . . . does not confer a benefit on the class and is not compensable." (citing *In re Cendant Corp. Litig.*, 404 F.3d 173, 204–05 (3d Cir. 2005)))); *Hensley*, 461 U.S. at 434 (counsel may not be awarded fees based on "excessive, redundant, or otherwise unnecessary" tasks).

Gibson, Dunn &
Crutcher LLP

20 Cal. 3d 25, 48 (1977))). Thus, because Class Counsel have not carried their burden of establishing that their lodestar is reasonable, this Court should reject it.

The same evidentiary issues that undermine Class Counsel's attorneys' fee request apply equally to their request for expenses. Because Class Counsel have only provided conclusory summaries of the expenses they incurred, there is no principled way HP or the Court can assess the reasonableness of those expenses. While the amount of expenses sought is not extraordinary on its face ($83,011), unless Class Counsel provides invoices to detail these expenses, it is well within this Court's discretion to deny or, at the very least, reduce them. *See United States ex rel. Glumac v. Don Todd Assocs., Inc.*, No. 09-1442-WHA, 2010 WL 545839, at *5 (N.D. Cal. Feb. 11, 2010) (denying request for costs under California law where insufficient documentation submitted); *Banas*, 47 F. Supp. 3d at 977–81 (reducing expense awards by 10% where not supported by "adequate documentation" to establish the "reasonableness of the costs").

## IV.   CONCLUSION

There is nothing remarkable about this litigation that would justify departure from well-settled California and Ninth Circuit principles to award Class Counsel fees and expenses that are 200% of the amount of the settlement fund achieved for the class. The attorneys' fee request should be reduced to $375,000, which is consistent with the Ninth Circuit's 25% percentage-of-recovery benchmark and proportional to the results Class Counsel achieved in this case. In the alternative, even if this Court was inclined to rely solely on a lodestar, it should reject Class Counsel's lodestar as presented because they have not provided sufficient support to demonstrate that it is reasonable. For similar reasons, this Court should also deny Class Counsel's request for expenses of $83,011.

Dated: March 26, 2019

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Samuel G. Liversidge*
      Samuel G. Liversidge

Attorneys for Defendant HP INC.