UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE HP PRINTER FIRMWARE UPDATE LITIGATION

Case No. 5:16-cv-05820-EJD

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS**

Re: Dkt. No. 119

## I. INTRODUCTION

The court approved the parties' settlement of this consumer class action suit. Presently before the court is Plaintiffs' motion for attorneys' fees in the amount of $2,750,000, costs in the amount of $83,011.78 and $5,000 service awards to each of the five class representatives. Having considered the parties' briefing and conducted an *in camera* review of the billing records, the court will grant in part and deny in part Plaintiffs' motion for attorneys' fees, and will grant Plaintiffs' motion for costs and service awards.

## II. BACKGROUND

Numerous consumers reported that their HP printers unexpectedly stopped working on or around September 13, 2016. Approximately a month later, Plaintiffs Richard San Miguel and DeLores Lawty filed suit, alleging that HP had violated California's Unfair Competition Law ("UCL") by executing a firmware update that disabled HP inkjet printers that were fitted with certain replacement ink cartridges manufactured by HP's competitors. Dkt. No. 1. Plaintiffs alleged that the failed HP printers displayed a false or misleading error message that the ink

Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS

1

Case 5:16-cv-05820-EJD   Document 146   Filed 06/28/19   Page 2 of 10

cartridges were "damaged or missing," when in fact HP had disabled the printers to induce purchases of its own higher-priced cartridges. *Id*. ¶ 2. Approximately a week after the lawsuit was filed, HP issued a modified apology on its website to add an offer of a remedial "patch" that HP claimed would restore printer functionality.

In December of 2016, HP moved to dismiss the action, arguing that it had no duty to keep its printers compatible with third-party ink cartridges with infringing security chips, and that it made no representation of that compatibility. Dkt. No. 19. After a few cases were related and consolidated, Plaintiffs filed a consolidated amended complaint adding several more claims. Dkt. No. 60. HP renewed its motion to dismiss (Dkt. No. 66) and the matter was taken under submission. Dkt. No. 83.

Meanwhile, the parties engaged in discovery. Plaintiffs learned that HP's "Dynamic Security" technology caused the printers to stop functioning, but that HP had "turned off" the Dynamic Security technology in the Class Printers as of December 2017. Dynamic Security is "an HP-developed technology which causes Class Printers to run authentication checks that change over time on installed ink cartridges to determine whether the ink cartridges contain a non-HP security chip, and that may prevent Class Printers from operating with any such ink cartridges." Dkt. No. 110-2, p. 6.

Plaintiffs later moved for a hybrid Rule 23(b)(2)-(c)(4) certification of (1) a subclass of California printer owners seeking injunctive relief under the UCL, and (2) a national class of consumers who experienced print interruptions for purposes of adjudicating the liability elements of the Computer Fraud and Abuse Act ("CFAA") and trespass-to-chattels claims, with individualized damages proceedings to follow. Dkt. No. 91. Plaintiffs also sought and were granted leave to file a consolidated amended complaint. Dkt. Nos. 92, 94. The parties stipulated that the pending motion to dismiss would apply to the consolidated amended complaint. Dkt. No. 92.

In March of 2018, the court entered an order granting in part and denying in part HP's

Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS

2

motion to dismiss. Dkt. No. 97. The court upheld Plaintiffs' computer intrusion claims under the CFAA and the California Penal Code, the trespass claims at common law (*id*. at 7-13), and the statutory consumer fraud claims to the extent they were based on HP's misleading error messages and material omissions (*id*. at 16-17). The court dismissed Plaintiffs' UCL unfairness and tortious interference claims and others with leave to amend. *Id*. at 17-23. A few days later the parties entered into settlement discussions and succeeded in reaching a settlement in principle in mid-July of 2018. Dkt. No. 106. In November of 2018, the court granted Plaintiffs' motion for preliminary approval of the proposed settlement ("Settlement"), and in April of 2019, the court granted final approval of the settlement. Dkt. Nos. 116, 139.

Through the Settlement, HP agreed to pay $1.5 million in compensation to owners of certain HP inkjet printers. Dkt. No. 110-2 ¶ 1.32. HP also agreed to pay for all notice and administration costs required to effectuate the Settlement. *Id*. ¶ 2.2. With respect to non-monetary relief, HP agreed not to reactivate Dynamic Security on the printers at issue. *Id*. ¶ 2.3. HP also agreed to reimburse Plaintiffs' counsel for out-of-pocket litigation costs that were "actually and reasonably incurred." *Id*. ¶ 6.1. The Settlement further provided that Plaintiffs' counsel would apply to the court for attorneys' fees and expenses to be paid by HP. *Id*.

### III. DISCUSSION

#### A. Attorneys' Fees

Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Here, the Settlement Agreement provides that "HP shall not dispute that plaintiffs are successful parties for purposes of California Code of Civil Procedure section 1021.5." Settlement Agreement ¶ 6.1 (Dkt. No. 110-2).

Under California law, "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001) (emphasis omitted).
Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS
3

Section 1021.5 authorizes fee shifting and provides that a court may award attorney fees to a successful party when the action has resulted in the enforcement of an important right affecting the public interest. *See Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 560-61 (2004) (awarding fees in nationwide class settlement under section 1021.5). In addition to section 1021.5, the CLRA—under which Plaintiffs brought a claim—mandates fee-shifting to the prevailing party. Cal. Civ. Code §1780(e).

One well-accepted method of determining fees is the lodestar method. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Id*. "The reasonableness of an hourly rate should be determined based on the rates prevailing in the community for 'lawyers of reasonably comparable skill, experience and reputation.'" *Lewis v. Silvertree Mohave Homeonwers' Ass'n, Inc.*, No. 16-3581 HWA, 2017 WL 5495816, at *3 (N.D. Cal. Nov. 16, 2017) (quoting *Blum v. Stenson*, 465 U.S. 886, n.11 (1984)). The lodestar figure may then be increased or decreased depending on a variety of factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).[1] The Supreme Court "has instructed district courts to . . . 'award only that amount of fees that is reasonable in relation to the results obtained.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 440 (1983)). "The party seeking an award of attorneys' fees bears the burden of establishing the reasonableness of both the hours worked and the rates claimed." *Postier v. Louisiana-Pacific Corp.*, No. 09-3290 JCS, 2014 WL 1760010, at *3 (N.D. Cal. April 29, 2014) (citing *Blum v. Stenson*, 465 U.S. 886, 896 (1984)).

To guard against an unreasonable fee award, the Ninth Circuit encourages district courts to "cross-check[ ] their calculations against a second method." *In re Bluetooth Headset Prods. Liab.*

---

[1] The "[l]odestar analysis is generally the same under California law and Federal law." *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1017 (C.D. Cal. 2014).

*Litig.*, 654 F.3d 935, 944 (9th 2011). The lodestar method and percentage-of-recovery method are usually applied to cross-check each other. *Id*. "Just as the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate,' the percentage-of-recovery method can likewise 'be used to assure that counsel's fee does not dwarf class recovery.'" *Id*. (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 821 n.40 (3d Cir. 1995)).

Here, the Joseph Saveri Law Firm, Inc. ("Saveri Firm") calculated lodestar figure is $246,209.50; the Law Offices of Todd M. Friedman, P.C. ("Friedman Firm") figure is $413,855; the Girard Sharp LLP law firm ("Girard Firm") figure is $1,991,950; the Heninger Garrison Davis LLC law firm ("Heninger Firm") figure is $170,170; and the Karon LLC law firm ("Karon Firm") figure is $135,914. Dkt. No. 120. The total calculated lodestar is $2,958,099. Plaintiffs' counsel, however, seek a lesser amount—$2.75 million—which is approximately .93 of counsels' calculated lodestar. Plaintiffs' counsel have submitted declarations attesting to the reasonableness of their hourly rates and summaries of the hours they spent on five categories of work: (1) case investigation and factual research; (2) pleadings; (3) discovery and document review; (4) pretrial motions and hearings; (5) settlement negotiations and motions. At the request of the court, counsel also submitted their time records for *in camera* review. Dkt. No. 140.

The court finds that the hourly rates for the partners and associates of each Plaintiffs' firm are consistent with market rates and are reasonable. The court next considers whether the hours claimed are reasonable.

### i. Vague Entries

There are numerous entries that are too vague to determine whether the hours billed were reasonable. For example, there are entries with descriptions such as emails "re case status"; "communicate with client re case status"; call re "case strategy"; "update [ ] on case progress." These types of inadequately supported entries appear in the billing records of the Friedman Firm in the amount to $20,652, and in the records of the Girard Firm in the amount of $8,190. There

Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS

5

are also several vague entries and/or block entries in the billing records of the Karon Firm with descriptions such as "email to co-counsel" and "email to client" that total $7,717.50. These amounts will be excluded.

### ii. MDL-Related Entries

The billing records include numerous entries related to MDL proceedings No. 2763.[2] Counsel have not provided any information regarding the MDL proceedings or any explanation as to why hours associated with the MDL proceedings were reasonably expended for this litigation. The billing records from the Friedman Firm include entries related to MDL proceedings totaling $9,870; the records from the Saveri Firm include similar entries totaling $35,264.50; the records from the Girard Firm include similar entries totaling $112,052.50; the records from the Heninger Firm include similar entries totaling $1,370; and the records from the Karon Firm include similar entries totaling $9,730. These amounts will be excluded.

### iii. Travel

The billing records from the Friedman Firm include 20 hours for Mr. Friedman's travel time and appearances at the July 14, 2017 hearing on HP's motion to dismiss and the November 8, 2018 hearing on Plaintiffs' motion for preliminary approval. These hours are unreasonably high given that Mr. Friedman did not argue either motion and the hearings for the motions took less than an hour in total. Accordingly, the court will exclude $12,325 (17 hours x $725/hour) from the Friedman Firm's fee request.

### iv. The Benefit Obtained For The Class

In assessing the reasonableness of the lodestar figure, the "[f]oremost . . . consideration[]" is "the benefit obtained for the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434–36, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir.2009) (ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff")). The

---

[2] Some MDL related entries refer to case No. 2793, which appears to be a typographical error.

Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS

6

Supreme Court "has instructed district courts to . . . 'award only that amount of fees that is reasonable in relation to the results obtained.'" *Id*. (quoting *Hensley*, 461 U.S. at 436, 440). Courts have relied on this factor to substantially reduce requested lodestars in light of the results achieved. *See, e.g., Mahach-Watkins v. Depee*, 593 F.3d 1054, 1063 (9th Cir. 2010) (affirming 80% cut in fees because of limited success on plaintiff's section 1983 claim); *Branco v. Credit Collection Servs., Inc.*, No. 10-1242 MCE, 2011 WL 6003877, at *4-5 (E.D. Cal. Dec. 1, 2011) (cutting fee request by 90% because plaintiff achieved minimal success on claim for violation of the Fair Debt Collection Practices Act).

Here, Plaintiffs were successful in achieving benefits for the class. The level of success achieved, however, does not justify an award of fees that is 200% of the monetary amount obtained for the class. Nor does the non-monetary benefit justify such a high fee award. HP's commitment not to reactive dynamic security on the class printers in the future is not injunctive relief. Even if it were injunctive relief, it added very little value to the settlement because HP disabled the Dynamic Security technology in October 2016, long before the settlement was reached. Plaintiffs also learned through discovery that HP had no intention of reactivating the Dynamic Security technology on the class printers because of the dwindling effectiveness of the technology and the end-of-life status of the class printers. In late 2017, HP released a further software update that disabled Dynamic Security in Tier 1 printers.

In light of the modest benefits achieved for the class, the court finds that a 30% across-the-board reduction is appropriate. "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 2000) (citing *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). The selected 30% reduction is also justified by other *Hanlon* factors. First, the case did not present such complex and novel issues that would justify an extraordinarily high fee award in relation to the benefits obtained for the class. Second,

Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS
7

the risk of nonpayment Plaintiffs' counsel faced in is this case is no different from any other consumer class action. In sum, this case did not present such special circumstances as to support an award of fees that far exceeds the monetary benefits to the class.

### v. Cross-check

HP contends that a cross-check is appropriate to determine whether the requested fees are excessive and asks that the court award no more than $375,000, which is 25% of the monetary benefit to the class. The court has already applied a 30% across-the-board reduction to arrive a reasonable fee amount. Any further reductions are unwarranted. Furthermore, a cross-check is not required. *In re Hyundai & Kia Fuel Economy Litig.*, No. 15-56014, – F.3d. – , 2019 WL 2376831 (9th Cir. June 6, 2019) (en banc).

### vi. Final Award

The final award for each firm is set forth in the "FIRM TOTAL" column below.

| FIRM | REQUESTED AMOUNT[3] | REDUCTIONS FOR ENTRIES | ADJUSTED TOTAL | 30% REDUCTION | FIRM TOTAL |
|---|---|---|---|---|---|
| Girard | $1,851,818.00 | $120,242.50 | $1,731,575.50 | $519,472.65 | $1,212,102.85 |
| Friedman | $384,741.00 | $42,847.00 | $341,894.00 | $102,568.20 | $239,325.80 |
| Saveri | $228,889.00 | $35,264.50 | $193,624.50 | $58,087.35 | $135,537.15 |
| Heninger | $158,199.00 | $1,370.00 | $156,829.00 | $47,048.70 | $109,780.30 |
| Karon | $126,353.00 | $17,447.50 | $108,905.50 | $32,671.65 | $76,233.85 |
| TOTAL | $2,750,000.00 | $218,621.50 | $2,531,378.50 | $759,413.55 | $1,772,979.95 |

### B. Costs

Counsel incurred $83,011.78 in unreimbursed, out-of-pocket expenses in this action. Kramer Decl., ¶ 62. These include costs advanced in connection with expert witnesses, court reporting services, legal research, travel, a document review platform, and other customary

---

[3] The court calculated the Requested Amount by multiplying each firm's calculated lodestar as reflected in Docket Number 120 at pages 11-12 by approximately .93 in order to arrive at the Requested Amount of $2,750,000.

Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS
8

litigation expenses. HP contends that Plaintiffs have not provided sufficient documentation of these expenses.

The court accepts counsels' declarations as verification of the costs that have been incurred and finds that the requested amount is reasonable. *See, e.g., In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. Jan. 23, 1996) (reimbursable costs include expenses for travel and legal research); *In re High-Tech Emp. Antitrust Litig.*, No. 11-02509 LHK, 2015 WL 5158730, at *16 (N.D. Cal. Sept. 2, 2015) (expert witnesses, court reporters, document review vendor).

The costs are approved.

### C. Service Awards

Plaintiffs request that the court approve service awards in the amount of $5,000 to each of the five class representatives. HP agrees to pay each of the five class representatives $5,000, subject to court approval.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and "the amount of time and effort the plaintiff expended in pursuing the litigation." *Id*. "In this district, a $5,000 payment is presumptively reasonable." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942-43 (9th Cir. 2015) (rejecting an objector's argument that payment of $5,000 incentive awards rendered the class representatives inadequate).

Here, the requested service awards are reasonable considering each representative's efforts in this case. The representatives regularly communicated with counsel, provided documents and information, sat for depositions, participated in the settlement discussions, and reviewed and approved the settlement.

Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS
9

The service awards are approved.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for fees is granted in part and denied in part, and Plaintiffs' motion for costs and incentive awards is granted in full.

**IT IS SO ORDERED.**

Dated: June 28, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-05820-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES; GRANTING MOTION FOR COSTS AND SERVICE AWARDS
10